JOSEPH HARRINGTON
Acting United States Attorney
Eastern District of Washington
Stephanie Van Marter
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767



FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

OCT 3 1 2017

SEAN F. McAVOY, CLERK
RICHLAND, WASHINGTON DEPUTY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,               )
                                        )
                    Plaintiff,          )     4:15-CR-6049-EFS-12
                                        )
vs.                                     )
                                        )     Plea Agreement
ADAM BENJAMIN GOLDRING,                 )
                                        )
                    Defendant.          )
                                        )

    Plaintiff, United States of America, by and through Joseph Harrington,

Acting United States Attorney for the Eastern District of Washington, and

Stephanie Van Marter, Assistant United States Attorney for the Eastern District

of Washington, and Defendant ADAM BENJAMIN GOLDRING, and the

Defendant's counsel, Richard J. Troberman, agree to the following Plea

Agreement:

    1.    Guilty Plea and Maximum Statutory Penalties:

    The Defendant, ADAM BENJAMIN GOLDRING, agrees to enter a plea

of guilty to Count 2 of the Second Superseding Indictment filed on December 6,

2016, charging the Defendant with Conspiracy to Commit Money Laundering, in

violation of 18 U.S.C. § 1956 (a)(1), (a)(2) and (h).

Plea Agreement - 1
Plea 2.docx

The Defendant, ADAM BENJAMIN GOLDRING, understands that the charge contained in the Superseding Indictment is a Class B felony charge. The Defendant, ADAM BENJAMIN GOLDRING, also understands that the maximum statutory penalty for Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956 (a)(1), (a)(2) and (h), is a term of imprisonment of not more than 20 years imprisonment; a fine up to $500,000 or two times the amount of money laundered; a term of supervised release of not more than 3 years; ***Deportation,*** and a $100 special penalty assessment.

The Defendant, ADAM BENJAMIN GOLDRING, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2.      The Court is Not a Party to the Agreement:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

Plea Agreement - 2
Plea 2.docx

1
2
3
4

The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing his plea of guilty.

5

3.    Effect on Immigration Status:

6
7
8
9
10
11
12
13
14
15
16
17
18

The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the Defendant is pleading guilty. Indeed, because the Defendant is pleading guilty to Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956 (a)(1), (a)(2) and (h), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that while deportation and/or removal appears to be a virtual certainty, no one, including his attorney or the district court, can predict with absolute certainty the effect of his conviction on his immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if automatic removal from the United States is a virtual certainty.

19

4.    Waiver of Constitutional Rights:

20
21
22

The Defendant, ADAM BENJAMIN GOLDRING, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

23

(a).    The right to a jury trial;

24

(b).    The right to see, hear and question the witnesses;

25

(c).    The right to remain silent at trial;

26

(d).    The right to testify at trial; and

27
28

Plea Agreement - 3
Plea 2.docx

1

(e).    The right to compel witnesses to testify.

2    While the Defendant is waiving certain constitutional rights, the Defendant

3    understands the Defendant retains the right to be assisted through the sentencing

4    and any direct appeal of the conviction and sentence by an attorney, who will be

5    appointed at no cost if the Defendant cannot afford to hire an attorney.  The

6    Defendant also acknowledges that any pretrial motions currently pending before

7    the Court are waived.

8    5.    Elements of the Offense:

9    The United States and the Defendant agree that in order to convict the

10    Defendant of Conspiracy to Commit Money Laundering, in violation of 18

11    U.S.C. § 1956 (a)(1), (a)(2) and (h), the United States would have to prove

12    beyond a reasonable doubt the following elements:

13    *First*, beginning on a date unknown but by on or about January 2010[1] and

14    continuing until March 2017, in the Eastern District of Washington and

15    elsewhere, the Defendant, ADAM BENJAMIN GOLDRING, entered

16    into an agreement with one or more persons to commit the crime of

17    Money Laundering in violation of 18 U.S.C. § 1956(a)(1)and (a)(2), as

18    charged in the Second Superseding Indictment; and

19    *Second*, the Defendant became a member of the conspiracy knowing of at

20    least one of its objects and intending to help accomplish it.

21

22    The elements of Money Laundering, in violation of 18 U.S.C. 1956(a)(1)(B) are

23    as follows:

24

25    _____

26    1 The Defendant contends that he did not enter into this conspiracy until on or
about August 2015 and was no longer involved after July 2016.

27    Plea Agreement - 4

28    Plea 2.docx

*First*, the Defendant conducted a financial transaction involving property that represented proceeds of the Conspiracy to and Distribution of Controlled Substances;

*Second*, the Defendant knew that the property represented proceeds of some form of unlawful activity;

*Third*, the Defendant knew that the transaction was designed in whole or in part to disguise the nature, location, source, ownership or control of the proceeds with the intent to promote the specified unlawful activity.

The elements of International Money Laundering, in violation of 18 U.S.C. 1956(a)(2) are as follows:

*First*, the Defendant knowingly transferred or caused to be transferred money from a place outside the United States to a place inside the United States2;  and

*Second*, the Defendant acted with the intent to promote the conspiracy to and distribution of controlled substances.

7.      Factual Basis and Statement of Facts:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis ADAM BENJAMIN GOLDRING's guilty plea. The parties acknowledge there are global facts pertaining to the overall conspiracy included within this factual statement to which the Defendant does not have personal knowledge.  However, the Defendant agrees and stipulates that the facts as they pertain directly to his

_____

2 The Defendant contends that he was not aware that of any of the money involved in the financial transactions in which he participated would be transferred into the United States.

Plea Agreement - 5
Plea 2.docx

involvement, are accurate.  This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

Members of the FBI Eastern Washington Safe Streets Violent Gang Task Force- Tri-Cities (EWVGSSTF) have been investigating a transnational drug trafficking organization operating herein the Eastern District of Washington and elsewhere since at least 2011 identified as the Ivan Hernandez Calvillo Drug Trafficking Organization (DTO). During that investigation, Ivan Hernadez Cavillo ((hereinafter Ivan) and Jese David Carillo Casillas (hereafter Casillas) were identified as a high-ranking members of the DTO.  Members of the Task Force, through the interviews of multiple cooperating Defendants and drug seizures, learned the DTO was utilizing backpackers to physically carry quantities of cocaine and methamphetamine from the Eastern District of Washington through a trail system into Canada for distribution.

During this same time-frame, members of the Boston DEA were conducting a parallel investigation into the money laundering activities of the Ivan Hernandez Calvillo DTO. The DTO was moving bulk cash out of Canada that it had gained through the sale of cocaine, heroin, and methamphetamine. The DEA successfully placed an undercover operator (DEA UC) into the money-laundering network. The basic need the DEA UC filled for the organization was his ability to accept Canadian cash, deposit it, wash it electronically through his business, and then wire US currency out in smaller deposits in Mexico and the United States.  The DEA UC would then charge a commission or percentage for the washed cash, keep that percentage and report to Ivan and later Jese Casillas as to the remaining amount available for wire transfer.  This relationship ultimately

Plea Agreement - 6
Plea 2.docx

cultivated into Ivan and the organization seeking the DEA UC's assistance in developing a new drug distribution group in Vancouver BC with ties to China.

In October 2014, an undercover money laundering operation was initiated by Royal Canadian Mounted Police Federal Serious Organized Crime Unit (RCMP FSOC) members to collect bulk money in the area of Vancouver, British Columbia from the DTO and to deliver it to the DEA investigators. Between October 2014 and July 2016, Ivan, and later Casillas, were in direct communication with the DEA UC via recorded What's App messenger and arranged for approximately 15 cash money drops to be laundered by the DEA UC. The way the code worked was that Ivan or Casillas provided the DEA UC a serial number of a piece of currency. The DEA UC would communicate that serial number so that when the two associates would meet, they would compare serial numbers. Once that was confirmed, the money was handed off. The amount laundered during these money drops totaled over $1.6 million Canadian Dollars.

In August of 2015, Ivan negotiated the delivery of a kilogram of heroin to a RCMP UC (UC1) in Surrey, British Columbia. On August 25, 2015, RCMP UC1 communicated via text message using telephone number 604-500-8176 to arrange the delivery of heroin. This is a number previously used by an individual that was involved in organizing the money drops for the DTO in Vancouver, BC. For purposes of this plea, that person will be referred to as the Vancouver leader organizer. The meet location was agreed upon to be at a Best Buy parking lot on King George Highway in Surrey, British Columbia. Surveillance was established at the Vancouver leader/organizer's residence prior to the meet time. Two unknown males were observed exiting the apartment building and walking to the Best Buy parking lot. One of the males was later identified as the Defendant,

Plea Agreement - 7
Plea 2.docx

Adam Goldring. The unidentified male with the Defendant was carrying a dark colored gift bag. The Defendant and the unidentified male approached RCMP UC1 in her vehicle. The unidentified male handed the gift bag (Harry Rosen Boutique) to RCMP UC1. The Defendant and the unidentified male were observed walking back to the Vancouver leader/organizer's residence and entered the front lobby. The item in the bag was weighed and found to be approximately 990 grams. The item was tested by the Health Canada – Drug Analysis Service and was found to be "Diacetylmorphine (heroin) calculated as the hydrochloride 87%".3

On December 2, 2015, a money exchange between RCMP UC1 and the DTO was scheduled. The United States would present evidence that Ivan arranged for and orchestrated the money drop utilizing the Vancouver leader/organizer who in turn arranged for the Defendant to assist. Text messages were exchanged between RCMP UC1 and the Vancouver leader/organizer. The meet location was agreed to be the parking lot of IGA Foods near 200th St and 88th Ave in Langley, British Columbia. Surveillance units observed a person arrive who was later confirmed to be the Defendant, driving a black Mazda 3, bearing Alberta license BLT4081, also registered to the Defendant. The Defendant gave RCMP UC1 a white cloth bag. When asked by RCMP UC1 if he had a count, the Defendant said that he did not, as he was only told by "Senor 500" to deliver the package. "500" is a nickname previously known to be used by Ivan. RCMP UC1 on this operation was the same RCMP UC1 that had received the approximate kilogram of heroin in Surrey, British Columbia. RCMP UC1 identified the male as the same one that had delivered the heroin. RCMP

_____

3 It is the Defendant's position that he was not aware at the time that the bag delivered by the unidentified male contained heroin.

Plea Agreement - 8
Plea 2.docx

UC1 stated "You're the one who gave me the pants" and Defendant responded "Yeah." "Pants" is a code/slang term used in this case for heroin although it is the Defendant's position that he did not know "pants" was a slang term for heroin.  The Defendant was observed by surveillance units driving from the area into an underground parking garage at 13555 Gateway Dr., Surrey, British Columbia. The bulk currency in the bag was later counted and confirmed to be **$25,000** Canadian[4].

On December 13, 2015, Ivan was killed in Mexico. The United States would present evidence that Casillas was identified as taking over operations for the DTO within the Eastern District of Washington, to include the continued money laundering operations in Canada.

On March 1, 2016, another money exchange between RCMP UC1 and the DTO was scheduled. Co-Defendant Casillas while in the EDWA, arranged for and orchestrated the money drop, utilizing again the Vancouver leader/organizer in Canada who in turn arranged for the Defendant to assist.  On this occasion, text messages were exchanged between RCMP UC1 and the Defendant directly rather than through the Vancouver leader/organizer, using telephone number 604-401-0287, regarding where and when the money drop would take place.  The meet location was agreed upon to be at a Best Buy parking lot on King George Highway in Surrey, British Columbia. Surveillance units observed the Defendant arrive at the meet location. This time there were two undercovers present, hereafter referred to as UC1 and UC2.  The Defendant previously met UC1 and introduced himself to the UC UC2 as "Adam."  The Defendant turned over a

_____

4 The parties will provide the conversion amounts in US currency at the time of sentencing.  The exchange rates were calculated by the RCMP on the dates of each delivery.

Plea Agreement - 9

Plea 2.docx

duffle bag to RCMP UC1 and indicated he did not know how much was in the bag.  RCMP UC1 inquired of the Defendant as to future purchases of heroin, again using the code/slang term "pants."   The Defendant stated that he would speak to his bosses and call her back.  Defendant, however, had no further contact with UC1. The bulk currency in the bag was later counted and confirmed to be *$46,950* Canadian and *$7,000* U.S. currency.

On June 28, 2016 a money exchange between yet a different a RCMP UC (hereinafter UC3) and the DTO was again scheduled. Co-Defendant Casillas while in the EDWA, arranged for and orchestrated the money drop. The DEA UC provided the contact information for the new Canadian UC3 who communicated via text message with the Defendant to discuss when and where the money drop would take place. The meet location was agreed upon to be at a Home Depot parking lot in Coquitlam, British Columbia. Surveillance units observed the Defendant arrive at the meet location. The Defendant introduced himself to RCMP UC3 as "Adam". The Defendant again utilized the same cash code system as described above and turned over a bag to RCMP UC3 and left. RCMP UC3 asked the Defendant how much was in the bag and the Defendant replied that he did not know.  The bulk currency in the bag was later counted and confirmed to be *$143,145* Canadian.

On July 13, 2016, another money exchange between RCMP UC3 and the DTO was scheduled. Co-Defendant Casillas while in the EDWA, arranged for and orchestrated the money drop.  RCMP UC 3 and the Defendant then communicated via text message to discuss where and when the cash money drop would occur. The meet location was agreed upon to be at a Starbuck's parking lot near 152nd Ave and Highway 99 in Surrey, British Columbia. Surveillance units observed the Defendant arrive at the meet time location. The Defendant again

Plea Agreement - 10
Plea 2.docx

utilized the same cash code system and turned over a white plastic bag to RCMP UC3 and left. The Defendant again indicated he did not know how much was in the bag.  The bulk currency in the bag was later counted and confirmed to be *$91,020* Canadian.

The Defendant therefore agrees that he conspired with one or more persons to launder money that he knew or had reason to know was obtained from unlawful activity, in this case the conspiracy to and distribution of controlled substances.

8.    The United States Agrees:

(a).    Dismissals:

At the time of sentencing, the United States agrees to move to dismiss Count 1 of the Indictment, charging the Defendant with Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of N-phenyl-N Propanamide, in violation of 21 U.S.C. §841 (a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846

(b).    Not to File Additional Charges:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Indictment, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

9.    United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that

Plea Agreement - 11
Plea 2.docx

the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

        (a).    Base Offense Level and Application of U.S.S.G. §1B1.3:

The Government and Defendant agree and stipulate that this Defendant would not be accountable under the provisions of Relevant Conduct for the overall conduct attributed to the underlying offense.  As a result, his base offense level should be 8.[5]  *See* U.S.S.G. §2S1.1(a)(2).

        (b).    Specific Offense Characteristics:

The parties agree that after conversion to US currency, an additional 10 levels should be added based upon the total amount of funds laundered by the Defendant. *See,* U.S.S.G. § 2S1.1 (1)(b) and 2B1.1(b)(1)(F).

The parties further agree and stipulate that an additional 6 levels is properly added because the Defendant knew the funds were drug proceeds.  *See* U.S.S.G. §2S1.1(b)(1).

The parties further agree and stipulate that an additional 2 levels is properly added based upon the offense of conviction.  *See* U.S.S.G. §2S1.1(b)(2)(B).

_____

[5] The parties understand that it could be argued that the Defendant's relevant conduct should include the approximate 990 grams of heroin delivered August 25, 2015 which would give the Defendant a base offense level of 28 pursuant to U.S.S.G. § 2S1.1(a)(1).  However, it is the Defendant's position that he was not aware at the time that the bag delivered by the unidentified male contained heroin. As the evidence indicates, the delivery was arranged by the Vancouver leader/organizer and not through the Defendant.  The Defendant further claims that although he later became aware it contained drugs he was not aware of the quantity nor was he directly involved in the drug distribution aspect of the organization.  Although the United States does not concede these facts, it does agree for purposes of this plea agreement, that it should not be counted as relevant conduct for this Defendant.

Plea Agreement - 12
Plea 2.docx

(c)   Role in the Offense:

The Defendant intends to recommend to the Court that Defendant is entitled to a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2. The United States reserves its right to oppose any mitigating role adjustment.

(d).   Acceptance of Responsibility:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than the next Pre-Trial Conference, the United States will move for a three (3) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

Furthermore, the Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

(e).   Criminal History:

Plea Agreement - 13
Plea 2.docx

1
2
3
4
5
6
7

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report. The United States and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

8
9
10
11
12

    10.   Safety Valve:

The United States and the Defendant agree that the provisions of the safety valve do not apply to this offense. However, should the defendant otherwise meet all of its requirements, the United States will recommend that the Court depart two levels pursuant to application of the 18 U.S.C. § 3553(a) factors.

13
14
15
16

    11.   Departures:

The Defendant intends to request downward departures and variances from the sentencing guidelines. The United States reserves its right to oppose any downward departure.

17
18

    12.   Length of Incarceration:

The parties are free to argue any appropriate sentence.

19
20
21
22

    13.   Criminal Fine:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

23
24
25

    14.   Supervised Release:

Should the Defendant be allowed to remain in the United States or lawfully return, the parties agree to recommend that the Court impose a 3-year term of

26
27
28

Plea Agreement - 14
Plea 2.docx

supervised release, to include the following special conditions, in addition to the standard conditions of supervised release:

(1)     that the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Office; and

(2)     that the Defendant have no contact with any witnesses or Co-defendants in this cause number.

15.     Mandatory Special Penalty Assessment:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

16.     Payments While Incarcerated:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17.     Additional Violations of Law Can Void Plea Agreement:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

18.     Appeal Rights:

In return for the concessions that the United States has made in this Plea Agreement, the Defendant agrees to waive his right to appeal the conviction and

Plea Agreement - 15
Plea 2.docx

sentence if the Court imposes a prison term no higher than the applicable guideline range and imposes no more than 3 years supervised release. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence. Should the Defendant successfully move to withdraw from this Plea Agreement or should the Defendant's conviction on Count 2 of the Second Superseding Indictment be dismissed, set aside, vacated, or reversed, the Plea Agreement shall become null and void; the United States may move to reinstate all counts of Indictment No. 4:15-CR-6049-EFS; and the United States may prosecute the Defendant on all available charges involving or arising out of Indictment No. 4:15-CR-6049-EFS. Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack of the conviction or sentence, including, but not limited to, proceedings pursuant to 28 U.S.C. § 2255 (writ of habeas corpus).

19.    Integration Clause:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement

Plea Agreement - 16
Plea 2.docx

1  cannot be modified except in a writing that is signed by the United States and the

2  Defendant.

3

4  //

5  //

6  //

7

8  <u>Approvals and Signature</u>

9  Agreed and submitted on behalf of the United States Attorney's Office for

10  the Eastern District of Washington.

11  JOSEPH H. HARRINGTON
   Acting United States Attorney

12

13  _____          __10/31/07__
                                           Date
14  Stephanie Van Marter
   Assistant U.S. Attorney

15

16  I have read this Plea Agreement and have carefully reviewed and discussed

17  every part of the agreement with my attorney. I understand and voluntarily enter

18  into this Plea Agreement. Furthermore, I have consulted with my attorney about

19  my rights, I understand those rights, and I am satisfied with the representation of

20  my attorney in this case. My attorney has advised me that by pleading guilty to

21  the charge relevant to this Plea Agreement, as of this date deportation appears to

22  be a virtual certainty. No other promises or inducements have been made to me,

23  other than those contained in this Plea Agreement and no one has threatened or

24  forced me in any way to enter into this Plea Agreement. I am agreeing to plead

25  guilty because I am guilty.

26

27  Plea Agreement - 17
   Plea 2.docx
28

1    _____        _Oct. 31/17_
     ADAM BENJAMIN GOLDRING                    Date
2    Defendant

3
4        I have read the Plea Agreement and have discussed the contents of the
5    agreement with my client.  The Plea Agreement accurately and completely sets
6    forth the entirety of the agreement between the parties.  I concur in my client's
7    decision to plead guilty as set forth in the Plea Agreement.  I have further advised
8    my client by pleading guilty to the charge relevant to this Plea Agreement, as of
9    this date deportation appears to be a virtual certainty.  There is no legal reason
10   why the Court should not accept the Defendant's plea of guilty.

11
12   _____        _10/31/17_
     Richard J. Troberman                     Date
13   Attorney for the Defendant

14
15
16
17
18
19
20
21
22
23
24
25
26
27   Plea Agreement - 18
     Plea 2.docx
28