FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEC 0 5 2017

SEAN F. McAVOY, CLERK
_____DEPUTY
RICHLAND, WASHINGTON

JOSEPH HARRINGTON
Acting United States Attorney
Eastern District of Washington
Stephanie Van Marter
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:15-CR-6049-EFS-3 |
| vs. | ) | |
| | ) | Plea Agreement |
| ROSA ARACELI GRANADOS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, United States of America, by and through Joseph Harrington,

Acting United States Attorney for the Eastern District of Washington, and

Stephanie Van Marter, Assistant United States Attorney for the Eastern District

of Washington, and Defendant ROSA ARACELI GRANADOS, and the

Defendant's counsel, Terence Michael Ryan and Adam Robert Pechtel, agree to

the following Plea Agreement:

      1.   <u>Guilty Plea and Maximum Statutory Penalties:</u>

      The Defendant, ROSA ARACELI GRANADOS, agrees to enter a plea of

guilty to Count 1 of the Second Superseding Indictment filed on December 6,

2016, charging the Defendant with Conspiracy to Distribute 500 Grams or More

of a Mixture or Substance Containing a Detectable Amount of

Plea Agreement - 1
Plea 2.docx

Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of N-phenyl-N Propanamide, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846.

The Defendant, ROSA ARACELI GRANADOS, understands that the charge contained in the Superseding Indictment is a Class A felony charge. The Defendant, ROSA ARACELI GRANADOS, also understands that the maximum statutory penalty for Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of N-phenyl-N Propanamide, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846, is not less than 10 years imprisonment, which is non-suspendable and non-parolable, and a maximum possible penalty of life imprisonment; a fine not to exceed $10,000,000; a term of supervised release of not less than 5 years up to a life term; denial of certain federal benefits; and a $100 special penalty assessment.

The Defendant, ROSA ARACELI GRANADOS, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2.    Denial of Federal Benefits:

The Defendant understands that by entering this plea of guilty the Defendant is no longer eligible for assistance under any state program funded under part A of title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Further,

Plea Agreement - 2
Plea 2.docx

the Court may deny the Defendant's eligibility to any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

       3.    <u>The Court is Not a Party to the Agreement</u>:

       The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

       The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

       The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing his plea of guilty.

       4.    <u>Effect on Immigration Status</u>:

       The Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the Defendant is pleading guilty. Indeed, because the Defendant

Plea Agreement - 3
Plea 2.docx

is pleading guilty to Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of N-phenyl-N Propanamide, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that while deportation and/or removal appears to be a virtual certainty, no one, including her attorney or the district court, can predict with absolute certainty the effect of her conviction on his immigration status. The Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if automatic removal from the United States is a virtual certainty.

5.    <u>Waiver of Constitutional Rights</u>:

The Defendant, ROSA ARACELI GRANADOS, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

(a).    The right to a jury trial;

(b).    The right to see, hear and question the witnesses;

(c).    The right to remain silent at trial;

(d).    The right to testify at trial; and

(e).    The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The

Plea Agreement - 4
Plea 2.docx

Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

6.  <u>Elements of the Offense:</u>

The United States and the Defendant agree that in order to convict the Defendant of Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of N-phenyl-N Propanamide, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846, the United States would have to prove beyond a reasonable doubt the following elements:

> *First*, on a date unknown but by on or about January 2010[1] continuing until on or about December 6, 2016, in the Eastern District of Washington, the Defendant, entered into an agreement with one or more persons to commit the crime of Distribution of 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin or 400 grams or More of N-phenyl-N Propanamide, as charged in the Second Superseding Indictment;
>
> *Second*, the Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and
>
> *Third,* the agreement was to distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram *or*

---

[1] The Defendant asserts that she did not join the Conspiracy until January 2011.

Plea Agreement - 5
Plea 2.docx

More of Heroin and 400 grams or More of N-phenyl-N
Propanamide, which would be reasonably foreseeable to her as a
member of the conspiracy.

7. <u>Factual Basis and Statement of Facts</u>:

The United States and the Defendant stipulate and agree that the following
facts are accurate; that the United States could prove these facts beyond a
reasonable doubt at trial; and these facts constitute an adequate factual basis for
ROSA ARACELI GRANADOS's guilty plea. This statement of facts does not
preclude either party from presenting and arguing, for sentencing purposes,
additional facts which are relevant to the guideline computation or sentencing,
unless otherwise prohibited in this agreement.

Members of the FBI Eastern Washington Safe Streets Violent Gang Task
Force- Tri-Cities (EWVGSSTF) have been investigating a transnational drug
trafficking organization operating herein the Eastern District of Washington and
elsewhere since at least 2011 identified as the Ivan Hernandez Calvillo Drug
Trafficking Organization (DTO). During that investigation, Ivan Hernandez
Calvillo (hereinafter Ivan) and Jese David Carillo Casillas (hereafter Casillas)
were identified as a high-ranking members of the DTO.  Members of the Task
Force, through the interviews of multiple cooperating Defendants and drug
seizures, learned the DTO was utilizing backpackers to physically carry
quantities of cocaine and methamphetamine from the Eastern District of
Washington through a trail system into Canada for distribution.

In May and June of 2013, several Defendants were identified and targeted
as being new workers for Ivan's organization.  One of those individuals, hereafter
referred to as CD4 identified the Defendant as working directly with Ivan in his
organization.  CD4 identified Ivan as the leader organizer of this organization

Plea Agreement - 6
Plea 2.docx

that had an entire cell operating in the EDWA. CD4 stated that he/she met Ivan when he was still living here in 2010 at Ivan's Sunnyside WA residence and started working for Ivan as a driver, taking 10-pound loads of methamphetamine to Missouri and Minnesota. During the summer of 2010, CD4 stated Ivan became "big" due to his ability to smuggle cocaine into Canada. CD4 stated at that time, Ivan was receiving 50-pound shipments of meth and cocaine every week. CD4 was arrested and deported back to Mexico. Ivan requested CD4 return to work for him and as a result paid for CD4's coyote. CD4 returned in January 2012.

When CD4 returned, she/he was asked to backpack approximately 45 kilograms of cocaine across the border for Ivan with two other individuals. CD4 made a number of additional trips after that, meeting several of the backpackers utilized by Ivan. CD4 advised that Ivan was transporting at least 45 kilograms of cocaine across the border every week at that time.

CD4 identified a number of individuals working for Ivan during that time period to include the Defendant known as La China, who was a relative of Ivan's. CD4 identified the Defendant as a member of the organization who assisted CD4 and Ivan with receiving the drug shipments in Sunnyside WA. CD4 further stated that he first met the Defendant when she/he returned in January 2012 and that the Defendant would often drive CD4 and the other backpackers to the trail locations at the border. The Defendant would then wait for their return and take custody of the cash drug proceeds. CD4 also stated that the Defendant would drive to the half-way point in CA to pick up the shipments on occasion.

During this time, EWVGSSTF was able to also develop a confidential source (CHS)(referred to as CD1 in discovery) who was arrested while working for Ivan's organization. This CHS agreed to cooperate in consideration of those

Plea Agreement - 7
Plea 2.docx

charges.  The CHS would testify that he/she has known Ivan his/her entire life and that Ivan has been involved in drug trafficking for as long as the CHS can remember.  The CHS moved to the tri-cities in 2009 and knew that Ivan was heavily involved in drug trafficking.  The CHS began to make trips for Ivan on and off during that time period.  Ultimately, the CHS stopped driving loads but instead, helped by paying rent on properties, paying drivers and assisting with load cars for Ivan.  As a result, the CHS met and paid a number of employees working for Ivan.

The CHS testified that Ivan in 2012, was sending approximately 30 kilograms of meth and 30 kilograms of cocaine per shipment to the EDWA every 15 days for distribution to various locations to include EDWA, Canada, Minnesota, North Dakota and Chicago.  The cash proceeds were mostly laundered out of Canada however; large sums come back into the EDWA for payment of overhead costs.  The CHS further identified and confirmed the Defendant's role in the organization.  Specifically, that she was a trusted family member to Ivan and that she assisted just as detailed by CD4.

In the summer and fall of 2014, another cooperating Defendant was arrested while working for this organization, hereafter referred to as CD5.  CD 5 was arrested while on his/her way to backpack a load of 20 kilograms of cocaine across the border.  CD5 agreed to cooperate for leniency on his/her sentence.  CD5 also identified the Defendant and stated she/he was recruited directly by the Defendant and Ivan[2].  CD5 reported that at first CD5 was paid by the Defendant to use her/his vehicle. CD5 was then asked by Ivan to drive backpackers to the border for him as well as try and recruit young men to backpack.  CD5 agreed

---

2 The Defendant denied "recruiting" CD5.

Plea Agreement - 8
Plea 2.docx

and transported backpackers on several occasions, each time the backpackers transported 20-45 kilograms of cocaine and returned with upwards of $500,000 in cash proceeds.

During the same time period of the investigation into CD5, EWVGSSTF was able to identify and place a tracker on the vehicle being operated by a well-known driver/transporter for the organization. This transporter, hereafter CD3, was also arrested in September 2014, with a load of 20 pounds of methamphetamine for the organization. CD3 confirmed that she/he was recruited as a driver for Ivan. CD3 advised that Ivan and others in the organization recruited him/her because he/she was able to cross over the Mexican border lawfully. As a result, CD3 began working for the organization in 2010. CD3 positively identified the Defendant, also known to CD3 as La China, as the main point of contact for CD3 and the person CD3 would meet with to deliver the drug loads to when she/he came to Washington. CD3 was also utilized to pick up backpackers at the Canadian border on occasion and as was familiar with several properties controlled by Ivan.

In October 2014, yet another transporter for the organization was arrested with 10 kilograms of cocaine. This individual is also cooperating and referred to as CD14. CD14 advised that he/she was recruited by the Defendant in order to drive loads for the organization. The Defendant was also the one to pay CD14 for the two trips CD14 made before CD14's arrest.

Based upon the above information members of the EWVGSSTF were able to not only identify the residence utilized by the Defendant during the investigation, but also a number of vehicles. The Defendant's phone was also identified during the course of the investigation as in contact directly with Ivan before his murder in December 2015. After Ivan's murder, the Defendant's

Plea Agreement - 9
Plea 2.docx

involvement lessened and the United States has no evidence this Defendant was involvement in the money laundering or Fentanyl aspect of this investigation.

8.    <u>The United States Agrees Not to File Additional Charges</u>:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Indictment, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

9.    <u>United States Sentencing Guideline Calculations</u>:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

(a).    <u>Base Offense Level and Application of U.S.S.G. §1B1.3</u>:

The Government and Defendant agree and stipulate that more than 4.5 kilograms of actual methamphetamine[3] was distributed in furtherance of the criminal activity jointly undertaken by the Defendant and her co-conspirators; this amount was within the scope of the Defendant's agreement; this amount was reasonably foreseeable to this Defendant in connection with the conspiracy; and this Defendant's relevant conduct for sentencing purposes should be calculated based upon this amount, pursuant to U.S.S.G. §1B1.3.

Thus, the Government and Defendant agree that the base offense level for Count 1, is 38.  *See* U.S.S.G. §2D1.1(c)(1) and Commentary 8(b).

---

[3] The Defendant also had involvement and knowledge in regard to cocaine shipments in this conspiracy.  However, the calculation of those amounts would lead to the same applicable offense level.

Plea Agreement - 10
Plea 2.docx

(b).    Acceptance of Responsibility:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than the next Pre-Trial Conference, the United States will move for a three (3) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

Furthermore, the Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

(d).    Criminal History:

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report.  The United States and the Defendant have made no agreement and make no representations as to the criminal history

Plea Agreement - 11
Plea 2.docx

category, which shall be determined after the Presentence Investigative Report is completed.

10.    Safety Valve:

The United States and the Defendant agree that the Defendant may be eligible for the safety valve provisions of 18 U.S.C. § 3553(f) and U.S.S.G. §5C1.2. At the time of this change of plea, the parties acknowledge that the Defendant has not satisfied the fifth requirement of the safety valve.  If the Court finds that the Defendant meets the criteria set forth at 18 U.S.C. § 3553(f)(1)-(5), the Court shall impose a sentence in accordance with the applicable sentencing guidelines without regard to any statutory minimum sentence.

11.    Departures:

The Defendant intends to request downward departures and variances from the sentencing guidelines. The United States reserves its right to oppose any downward departure.

12.    Length of Incarceration:

The United States will recommend that the Court impose a sentence at the low end of the applicable advisory sentencing guideline range.   The Defendant is free to argue her sentence.

13.    Criminal Fine:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

14.    Supervised Release:

Should the Defendant be allowed to remain in the United States or lawfully return, the parties agree to recommend that the Court impose a 5-year term of

Plea Agreement - 12
Plea 2.docx

supervised release, to include the following special conditions, in addition to the standard conditions of supervised release:

    (1)    that the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Office; and

    (2)    that the Defendant have no contact with any witnesses or Co-defendants in this cause number.

15.    <u>Mandatory Special Penalty Assessment</u>:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

16.    <u>Payments While Incarcerated</u>:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17.    <u>Additional Violations of Law Can Void Plea Agreement</u>:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

18.    <u>Appeal Rights</u>:

In return for the concessions that the United States has made in this Plea Agreement, the Defendant agrees to waive her right to appeal the conviction and

Plea Agreement - 13
Plea 2.docx

sentence if the Court imposes a prison term no higher than the applicable guideline range and imposes no more than 5 years supervised release. Defendant further expressly waives her right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence. Should the Defendant successfully move to withdraw from this Plea Agreement or should the Defendant's conviction on Count 1 of the Second Superseding Indictment be dismissed, set aside, vacated, or reversed, the Plea Agreement shall become null and void; the United States may move to reinstate all counts of Indictment No. 4:15-CR-6049-EFS-3; and the United States may prosecute the Defendant on all available charges involving or arising out of Indictment No. 4:15-CR-6049-EFS-3. Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack of the conviction or sentence, including, but not limited to, proceedings pursuant to 28 U.S.C. § 2255 (writ of habeas corpus).

19.    <u>Integration Clause:</u>

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement

Plea Agreement - 14
Plea 2.docx

cannot be modified except in a writing that is signed by the United States and the Defendant.

Approvals and Signature

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

JOSEPH H. HARRINGTON
Acting United States Attorney

_____        12 -5-17
Stephanie Van Marter                    Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. My attorney has advised me that by pleading guilty to the charge relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____        11-28-17
ROSA ARACELI GRANADOS                    Date
Defendant

Plea Agreement - 15
Plea 2.docx

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. I have further advised my client by pleading guilty to the charge relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____    12-5-2017
Terence Michael Ryan                 Date
Attorney for the Defendant


_____    11/28/2017
Adam Robert Pechtel                  Date
Attorney for Defendant

Plea Agreement - 16
Plea 2.docx