# EXHIBIT 3

## L. E. A. D. TASK FORCE
## INVESTIGATIVE REPORT

| FILE TITLE | OFFICER'S | CASE NO. |
|---|---|---|
| Esteban Ramirez HERNANDEZ et.al | Detective Tucker | LTF 12-005 |
| **SUBJECT** Search Warrant Report, 4873 East Edison Road, 1280 Forsell Road 2100 Sunnyside Mabton Hwy | **CRIMINAL ACTIVITY CODE** 4-2-1-L | **OTHER CASE NO.** |

Synopsis: On March 22, 2012 at approximately 5:30 am detectives from the LEAD Task Force along with Special Agents from the Drug Enforcement Administration, Deputies from the Yakima County Sheriff's Office, Officers from the Grandview, Sunnyside and Yakima Police Departments and member of the Violent Crimes Task Force executed multiple search warrants at 4873 East Edison Road, Sunnyside, 1280 Forsell Road, Grandview, and 2100 Sunnyside Mabton Hwy in Sunnyside. During the service of the search warrant at 2100 Sunnyside Mabton Hwy detectives located drug paraphernalia and dominion for HERNANDEZ and dominion that related back to 4873 East Edison Road, no suspects were arrested at the location. At 4873 East Edison detectives located a large amount of methamphetamine, packaging material, ledgers, scales, dominion and firearms. Two suspects were arrested from 4873 East Edison Road, which was the suspected source house of HERNANDEZ methamphetamine. The two subjects arrested were Gerardo VILLANUEVA-CARDENAS and Edgar Omar HERRERA-FARIAS. At 1280 Forsell Road detectives located drug paraphernalia in the basement area of the residence, which is where HERNANDEZ was located. They also located digital scales in HERNANDEZ' bedroom along with dominion. A second subject was arrested at 1280 Forsell Road, Juan VISCAINO-GONZALEZ, on fraud related charges for forged identification cards he possessed.

### DETAILS:

1. On March 22, 2012 at approximately 5:30 am detectives from the LEAD Task Force along with Special Agents from the Drug Enforcement Administration, Deputies from the Yakima County Sheriff's Office, Officers from the Grandview, Sunnyside and Yakima Police Departments and member of the Violent Crimes Task Force executed multiple search warrants at 4873 East Edison Road, Sunnyside, 1280 Forsell Road, Grandview, and 2100 Sunnyside Mabton Hwy in Sunnyside. During the service of the search warrant at 2100 Sunnyside Mabton Hwy detectives located drug paraphernalia and dominion for HERNANDEZ and dominion that related back to 4873 East Edison Road, no suspects were arrested at the location. At 4873 East Edison detectives located a large amount of methamphetamine, packaging material, ledgers, scales, dominion and firearms. Two suspects were arrested from 4873 East Edison Road, which was the suspected source house of HERNANDEZ methamphetamine. The two subjects arrested were Gerardo VILLANUEVA-CARDENAS and Edgar Omar HERRERA-FARIAS. At 1280 Forsell Road detectives located drug paraphernalia in the basement area of the residence, which is where HERNANDEZ was located. They also located digital scales in HERNANDEZ' bedroom along with dominion. A second subject was arrested at 1280 Forsell Road, Juan VISCAINO-GONZALEZ, on fraud related charges for forged identification cards he possessed.

| OFFICER'S SIGNATURE | DATE | SUPERVISOR'S SIGNATURE | DATE |
|---|---|---|---|
| R. Tucker | 02-09-12 | | |

LEAD 01                              Page 1 of 11

| *ve Report (Cont.)* | *Detective R. Tucker* | *LTF 11-162* |

At approximately 4:30 am, Detective Tucker of the LEAD Task Force conducted a briefing for the three search warrant locations. Detective Tucker had separate teams assigned to the three locations, team leaders were Detective Tucker (4873 East Edison Road, Sunnyside), Officer Martin (2100 Sunnyside Mabton Hwy in Sunnyside), and Sgt. Wilson (1280 Forsell Road, Grandview). At approximately 5:30 am Detective Tucker and Officer Martin's teams deployed on their locations and executed the search warrants. Sgt. Wilson's team, which was comprised mostly of Grandview and Sunnyside SWAT team members, delayed their deployment in hopes of getting a HERNANDEZ on a traffic stop leaving the location. (See individual team leader reports for execution of warrants and significant events that transpired).

3.  Officer Martin executed the search warrant at 2100 Sunnyside Mabton Hwy in Sunnyside. They located a female in the residence, who detectives had seen with HERNANDEZ on several occasions. The female was identified as Martina Bravo Rivera. She claimed that she was in a relationship with HERNANDEZ. She said that HERNANDEZ had stayed the night at the residence the two prior nights, but went to his residence at 1280 Forsell Road last night. She advised that HERNANDEZ lived at the residence with his sister's family. Detectives searching the residence located a glass smoking device with a burnt residue. The glass smoking device was wrapped in a blue disposable shop rag. Rivera claimed that HERNANDEZ had left the pipe at her residence. She claimed that his drug usage is/was causing them relationship related issues. Detectives also located dominion for Rivera with the address of 4873 East Edison Road, Sunnyside, the suspected source of methamphetamine that HERNANDEZ was selling. Detectives recovered further amounts of dominion at the location to include dominion for HERNANDEZ. No one was taken into custody at 2100 Sunnyside Mabton Hwy in Sunnyside, Washington.

4.  Detective Tucker's team executed the search warrant at 4873 East Edison Road, Sunnyside, Washington. On entering the driveway of the residence Detective Tucker observed that all the vehicles he had observed on surveillance missions were at the location with the exception of the silver Mercedes Benz and the blue Oldsmobile Brava. On approaching the door of the residence, which swung out, which is not common for residential construction, detectives knocked and announced loudly in English and Spanish, "POLICE SEARCH WARRANT." No response was received initially. Due to the door not opening in detectives had to utilize a bar to pry open the door. While attempting to breach the door a female began to yell that she was coming. Prior to her opening the door detectives had forced the door open and made entry into the residence.

5.  Three subjects were located inside the residence, Diana Viveros, Gerardo VILLANUEVA-CARDENAS and Edgar Omar HERRERA-FARIAS. It was determined that Viveros and VILLANUEVA-CARDENAS had a bedroom in the northwest corner of the residence and HERRERA-FARIAS had the bedroom in the southwest corner of the residence. Detective Tucker had all three subjects placed in the kitchen area. Detective Tucker at that point read the search warrant to all three subjects. Detective Tucker read Miranda Rights to all three subjects in English and Detective Sanchez read Miranda Rights to the subjects in Spanish. All three acknowledged their rights at this point. Detective Tucker spoke with Viveros, who was the only English speaking occupant of the residence. She claimed to be VILLANUEVA-CARDENAS' girlfriend and only lived at the residence for approximately three (3) months. Detective Tucker asked her if she was aware of the drug trafficking happening at the residence. She stated she had no idea what Detective Tucker was referring to. Viveros was smiling and laughing about the situation. Detective Tucker informed her that the situation was very real and the she could be facing criminal charges. Detective Tucker told her that she needed to evaluate her current situation and he would speak with her in while about the issues.

| Investigative Report (Cont.) | Detective R. Tucker | LTF 11-162 |

6. At this point detectives started to search the residence. In the southwest bedroom, HERRERA-FARIAS bedroom, detectives located several firearms in open view in a closet shelf. Detectives located at total of four (4) firearms, two pistols and two shot guns. One of the pistols was loaded at the time of recovery. In the same closet area detectives located approximately 211.3 grams of crystalline substance that field tested positive for the presence of methamphetamine. Detectives also located multiple cellular telephones, most of which were turned on and functional. The same closet also had two digital scale, cutting agents (27.4 grams of cutting agent), smoking device with burnt residue, metal spoon with white residue, dominion for HERRERA-FARIAS, and a drug ledger. There were also accessories for the firearms located in the closet and dominion or other subjects.

7. In the northwest bedroom detectives located dominion for Viveros and VILLANUEVA-CARDENAS. No drug related evidence was located in the northwest bedroom. Detectives also located a small amount of crystalline substance concealed in the kitchen. The crystalline substance later field tested positive for the presence of methamphetamine and weighed 5.1 grams. Detectives also located a roll of cellophane in the entrance way closet. Detectives also located a large amount of backpacks, which is commonly used to transported supplies and equipment into outdoor marijuana growing operations.

8. Detective Tucker spoke with Viveros again about the situation. She stated she still understood her rights and wanted to talk. Detective Tucker noted a distinct change in behavior during the contact. Viveros was very upset and crying. Detective Tucker spoke with Viveros about the situation. She stated that she had moved into the residence about three (3) months ago. She said that she was dating VILLANUEVA-CARDENAS for about a total of nine months and she lived out past Pasco so it made sense to move in with him. She said that VILLANUEVA-CARDENAS and HERRERA-FARIAS had already been living at the residence prior to her moving in. She did not know how long they had lived together.

9. Detective Tucker asked Viveros about the financial aspect of the arrangement. She stated that they split the rent. Viveros claimed she worked in a medical related job taking care of disabled subjects. She stated she made approximately $300.00 a month. Detective Tucker asked about her monthly expenses. She advised that she had a car payment for the vehicle that was in the driveway, 2007 Chrysler Sebring. She said that her mother co-signed for her to get the vehicle. Detective Tucker asked about the monthly payment, which she stated was approximately $240.00 a month plus $130.00 for insurance. Detective Tucker concluded that just in the vehicle alone she spent her monthly income. Detective Tucker asked about cellular telephone or other expenses she might have, to include rent and utilities. She stated that she got help from her family sometimes to pay bills. Detective Tucker explained that it must be a lot of help a month in assistance from her family. She said it was not really that much money.

10. Detective Tucker asked her about VILLANUEVA-CARDENAS' income. She thought he made about $600.00 a month working at some onion plant. She did not know where or how often he worked. Detective Tucker asked her about VILLANUEVA-CARDENAS' vehicle. She claimed he had just purchased the white GMC truck that was in the carport. Detective Tucker asked her how much he paid a month for the vehicle. She stated he paid around $250.00 a month for the truck, but did not know about insurance. She also said that the rent at the location was only $400.00 a month to her knowledge. She said that VILLANUEVA-CARDENAS and HERRERA-FARIAS split the rent.

| *Investigative Report (Cont.)* | *Detective R. Tucker* | *LTF 11-162* |
|---|---|---|

11. Detective Tucker asked her about the silver Mercedes Benz he had observed at the address for several days. She stated that it belonged to Rosa, a friend of hers. She said that she meet Rosa, who is believed to be the owner of the vehicle Rosa Granados, through HERRERA-FARIAS. She said that Rosa would come over and visit with HERRERA-FARIAS. Detective Tucker asked if they were in a relationship, but Viveros did not know. She said that Rosa would come over all the time though and hang out. Detective Tucker asked where she would hang out at. She said it was mostly in HERRERA-FARIAS bedroom. Detective Tucker asked about the blue Oldsmobile Brava that was observed at the residence. Viveros initially did not recall the vehicle. Detective Tucker reminded her that it was registered in her name. She said that the vehicle actually belonged to VILLANUEVA-CARDENAS, but he made her put the vehicle into her name. Detective Tucker asked why he would make her do that. She stated she did not know why he had her do that, but she did it for him. Detective Tucker asked where the vehicle was currently at. She stated she did not know because as soon as she transferred it to her name VILLANUEVA-CARDENAS gave the vehicle to a friend. She did not know who the friend was and had not seen him before.

12. Detective Tucker asked about the relationship between VILLANUEVA-CARDENAS and HERRERA-FARIAS. She stated they did a lot of stuff together. She said that she spent a lot of time in the bedroom by herself because they were always doing stuff together. Detective Tucker asked what they did together. She stated she did not know because she was not allowed to be involved.

13. Detective Tucker asked if a lot of vehicles came and went from the residence. She said at times a lot of vehicles would be coming or going from the residence for short times. She said that people would show up and they (VILLANUEVA-CARDENAS and HERRERA-FARIAS) would go into HERRERA-FARIAS bedroom for a short time. She did not question what was going on or what they were doing. She said she would just go to her room and hang out. Detective Tucker asked if VILLANUEVA-CARDENAS used or sold drugs. She stated she never seen him use or selling drugs, but again she was not allowed to be with him all the time. She believed that it was suspicious to have subjects coming and going from the residence all the time, but she did not suspect it was drug related.

14. Detective Tucker asked about the other three vehicles in the driveway of the residence, the Dodge truck, the Kia SUV and the Hummer H2. She stated they all belonged to HERRERA-FARIAS. She said he usually only drove the Hummer though. Detective Tucker asked where HERRERA-FARIAS worked at. Viveros did not know and had no idea how or where he obtained his money. Detective Tucker asked if VILLANUEVA-CARDENAS ever had unexplained amounts of currency that was beyond his $600.00 a month income that she claimed he made. She said he had money, but he saved it a lot that was why he had money. Detective Tucker explained that based on her statement of his income he lived well beyond his means. She said she did not know where he got all his money and did not ask. Detective Tucker asked who paid the cable, which the residence had, and electrical bill for the residence. She said the cable was in her name, but they all paid for it.

15. Detective Tucker asked who Pedro Cortez was, since he was the actual registered owner of the white GMC truck and the Hummer. She stated she did not know who he was. She claimed to have never met him before, but again stated a lot of people came to the residence and she went to the bedroom while they did whatever it was they did.

| Investigative Report (Cont.) | Detective R. Tucker | LTF 11-162 |

16. Detective Tucker told Viveros that he believed she was not being totally truthful about the her knowledge of the drug transactions that took place at the residence. She again claimed that when people came over VILLANUEVA-CARDENAS, HERRERA-FARIAS and the other subjects would either talk outside or in HERRERA-FARIAS' bedroom. She claimed never to be present when any of the illegal drug transactions took place. Detective Tucker advised Viveros that she needed to be more aware of what was transpiring around her.

17. Detective Tucker asked for and was granted voluntary consent to search of Viveros vehicle in the driveway. Detective Tucker provided her with her Ferrier Warnings, which she stated she understood and waived. Detective Tucker had Officer Andrews (Yakima City Police Department K-9 unit) search the vehicle. The K-9 unit showed interest in the center console area of the vehicle, but a hand search showed not drugs or drug related items. It is possible that drug/contraband had been in the center console but recently removed.

18. Detective Tucker then attempted to speak with VILLANUEVA-CARDENAS using a translator at the scene. Detective Tucker was able to confirm that VILLANUEVA-CARDENAS did work, but he claimed to make $400-$600 a week, but could not give a location. He also claimed ownership to the white GMC truck. Detective Tucker did not get any further information from VILLANUEVA-CARDENAS before he was transported from the scene, along with HERRERA-FARIAS.

19. Detectives searched the exterior of the residence and located dominion in a small shed that belonged to a Vicente Guerrero Fernandez. Due to distractions at the scene the K-9 unit was not able to conduct exterior checks of the vehicles at the address. Detectives did locate the keys for the Hummer and the Kia in HERRERA-FARIAS's bedroom. They keys for Viveros' vehicle, the GMC truck and the Dodge Dakota were located in VILLANUEVA-CARDENAS/Viveros' bedroom. Detective Tucker asked Viveros why the keys to the Dodge were in her bedroom, since she claimed that HERRERA-FARIAS owned the vehicle. She thought maybe VILLANUEVA-CARDENAS had taken some items to the garbage.

20. Based on the information gathered during the course of the investigation and the information gathered at the scene of the search warrant it was apparent to Detective Tucker that both VILLANUEVA-CARDENAS and HERRERA-FARIAS were actively involved in the drug trade. They both were also concealing assets by either failing to properly registered or transfer the vehicles or using another person to appear to have legal possession of the vehicles. Based on the information gathered at the scene of the search warrant it was also apparent that both were living beyond their means.

21. Viveros was provided with a copy of the items taken from the residence. Detective Tucker seized the four vehicles from the residence, Hummer H2, GMC Canyon, Kia Sorento and the Dodge Dakota, based on the information and location of evidence at the search warrant. In the Kia Sorento, detectives could see in plain view several cases of ammunition. Detective Tucker believed that the seized vehicles would also have evidence of further concealment of assets and drug trafficking, to include drugs and related evidence. All four vehicles were transported to the LEAD Task Force office and secured until search warrants were obtained on the vehicles.

22. No further evidence was located at 4873 East Edison Road, Sunnyside, Washington. Detective Tucker advised Viveros that she needed to more aware of what was going on around her and that her defense of "I just did not know" would not be of any assistance to her in the future if a similar situation occurred. She stated she understood and stated she was going to go back home with her family. All units cleared the location with no further actions taken at 4873 East Edison Road.

| *Investigative Report (Cont.)* | *Detective R. Tucker* | *LTF 11-162* |

23. Detective Tucker then detailed to 1280 Forsell Road, Grandview, Washington to check on the status of the search warrant at the location. On arrival Detective Tucker spoke with Detective Fairchild, one of the SWAT team members that had secured the residence. He indicated that everything during the execution went as planned. He stated that the suspect, Esteban Ramirez HERNANDEZ, did not comply with verbal commands and exit the residence, but was located in the basement of the residence in the southwest corner pretending to be a sleep. Detective Fairchild advised that HERNANDEZ and another subject, later identified as Juan VISCAINO, were currently at Grandview Police Department in the holding cell. The remaining subjects at the residence were in a jail van currently. Detective Tucker advised that once the living room was cleared or weapons they could be released back into the residence during the search.

24. The remaining family members that were located in the residence were escorted back into the residence a short time later. Detective Tucker contacted the family members, Macedonio Oros, J. Isabel Herrera-Lemus, Antonio Morales, Pedro Ceja Barron, Catalina Oros, George Oros, Gustavo Hernandez, Josue Oros, and Noel Oros. Detective Tucker at this point did not believe the family was involved in HERNANDEZ' illegal drug trade and explained the situation to them. Detective Tucker mostly spoke with George Oros, who assisted Detective Tucker in translating information to the remaining parties at the residence. George stated that the family did not know of HERNANDEZ' illegal actions, nor would his father have allowed him in his residence knowing what he was doing. George stated that HERNANDEZ had lived at the residence for approximately two years. He stated that HERNANDEZ paid his father approximately $100.00 a month for rent and then gave money for food, which was about $50.00 a month. Detective Tucker asked about the vehicle that HERNANDEZ drove. George stated that he was not sure. George translated for his father, who stated that the vehicle had belonged to Jose Cardoza. He stated that Jose gave the vehicle to HERNANDEZ to use a long time ago. Detective Tucker asked if Jose lived at the residence. He was advised that Jose had lived there a long time ago, but now lived somewhere else, but they did not recall the address or location. Detective Tucker asked if HERNANDEZ had purchased the vehicle from Jose. They did not know other than he was the only person that drives the 1996 Chevrolet Blazer. Detective Tucker did find out that Catalina Oros was HERNANDEZ' sister, which is what Detective Tucker believed was the relationship based on the investigation. No further information was obtained from the family about HERNANDEZ.

25. During this time Deputy Rojas and Officer Andrews, both K-9 units, searched the residence and exterior of the vehicles. Detective Tucker informed Officer Andrews that he had an actually warrant for HERNANDEZ' vehicle, Washington License 290ZVZ.

26. On deploying a K-9 unit in the basement of the residence, which consisted of a storage room, three bedrooms, a common room and a utility room, the K-9 unit started to alert high in the southeast bedroom. The K-9 unit continued to alert high in the bedroom. A hand search of the ceiling area in the bedroom was negative for any visible signs of contraband or drugs. All of the basement bedrooms did have a common air duct running through them, but no signs of tampering or concealment locations were located in the system.

27. The second K-9 unit was deployed in the basement to determine if both K-9 units would alert in the same manner. Again the second K-9 unit alerted high in the bedroom, again indicating either there was drugs/contraband or recently was drugs/contraband in the area. Detectives conducted a thorough search of the southeast bedroom with no evidence located. Detectives did locate dominion for subjects that resided in the residence.

| Investigative Report (Cont.) | Detective R. Tucker | LTF 11-162 |
|---|---|---|

28. Detective Tucker searched the southwest bedroom, HERNANDEZ' bedroom. In the bedroom Detective Tucker located two digital scales, one larger than the other, and dominion for HERNANDEZ. Some of the dominion included forged United States issued identification cards, to include two forged social security cards with HERNANDEZ name, but different numbers. Both cards were of poor quality and were easily identified as fraudulent documents. Detective Tucker also located two United States Permanent Resident Cards, again with HERNANDEZ' name and photograph. Both cards had different INS numbers assigned to them, but again were of very poor quality and easily identified as being fraudulent. Detective Tucker also located paystubs in the bedroom for a Jose Cardoza, who is the legal owner of the vehicle that HERNANDEZ has been using to deliver methamphetamine with during the investigation. The located pay stubs show HERNANDEZ using both of the fraudulent social security numbers to obtain employment.

29. In the middle bedroom of the basement detectives located some drug paraphernalia concealed under a night stand. The paraphernalia included two glass smoking devices wrapped in a blue shop towel, similar to the same type of shop towel located at 2100 Sunnyside Mabton Hwy. They also located a prescription bottle with the name Isabel Herrera on the label with the located smoking devices.

30. In a small storage room north of the bedrooms in the basement detectives located a 22 caliber rifle concealed with come can foods. No further evidence was located in the basement. No further evidence was located in the basement. Detectives did a very unobtrusive search on the upper floor of the residence and outbuildings, due to the family having no obvious signs of involvement in HERNANDEZ' drug trade.

31. Detective Tucker was advised of a vehicle that was parked next to HERNANDEZ' vehicle in the driveway, a 2001 Dodge Neon (Washington License 869ZTF). The Neon had been observed by surveillance units prior to the execution of the search warrant at the residence. Surveillance units observed the Neon pull into the driveway and park next to HERNANDEZ' vehicle. A subject exit the Neon and appear to either transfer something from HERNANDEZ' vehicle or out of the Neon. The subject then got back into the Neon and proceed to leave the residence. At this point the SWAT team was approaching the residence on Forsell Road. The Neon at this time pulled back into the driveway and came to a stop again next to HERNANDEZ' vehicle. Shortly afterwards the occupant of the vehicle, Juan VISCAINO, was detained during the execution of the search warrant.

32. Officer Andrews and her K-9 partner conducted a perimeter check of the Neon. The K-9 unit alerted to the rear driver's side door of the vehicle. Detective Tucker was aware of this vehicle from a prior controlled purchase that was conducted with HERNANDEZ. During that transaction HERNANDEZ' vehicle was parked on Wallace Way. HERNANDEZ was observed being dropped off by the same Dodge Neon just prior to the drug transaction with the LEAD Task Force. Detectives were not able to follow the Neon at the time due to limited personnel, but based on the description that Detective Hubbard provided of the Neon it was the same vehicle as the one located at 1280 Forsell Road during the search warrant execution.

33. Detective Tucker secured the Neon and transported the vehicle to the LEAD Task Force office along with HERNANDEZ' Chevrolet Blazer. Both vehicles were secured with no further actions taken at the time on them. Detective Tucker provided the family at 1280 Forsell Road with a copy of the items taken and also advised them of several code violations that were observed during the execution. Some of the code violations included subjects living in the outbuildings located at 1280 Forsell Road, which was violation.

| Investigative Report (Cont.) | Detective R. Tucker | LTF 11-162 |

34. After all vehicles and evidence had been transported to the LEAD Task Force office Detective Tucker field tested the located methamphetamine at 4873 East Edison Road and checked the located firearms for stolen. All of the field tested methamphetamine field tested positive for the presence of methamphetamine. The located firearms did not show an stolen record, but not of the firearms were currently registered to HERRERA-FARIAS, who did not possess a permit to possess the firearms, since he was not a United States citizen.

35. Detective Tucker completed an SIR on HERRERA-FARIAS requesting that he be charged with Possession of a Controlled Substance with Intent to Deliver – Methamphetamine and for four (4) counts of Alien in Possession of a Firearm without a Permit. Detective Tucker also requested that VILLANUEVA-CARDENAS be charged with Possession of a Controlled Substance with Intent to Deliver – Methamphetamine.

36. Detective Tucker detailed to Grandview Police Department and with the assistance of Detective Martin spoke with VISCAINO and HERNANDEZ. Detective Tucker first spoke with VISCAINO. He was read his Miranda Rights, which he stated he understood. VISCAINO stated he went to the house to look for work. He stated he was going to call someone in the house so he could work today. He later recanted and stated he was friends with HERNANDEZ and was trying to get a hold of him. He denied any knowledge of drugs or drug involvement. Detective Tucker asked why he was observed either moving something from the Blazer into the Neon or vice versa. He again denied moving anything at all. When asked why the K-9 unit had alerted to his vehicle he stated he did know why it would alert to his vehicle. Based on the incident it is possible that VISCAINO could have discard illegal drugs prior to being contacted during the search warrant. VISCAINO denied any knowledge of HERNANDEZ selling or using drugs. Detective Tucker had been provided with VISCAINO's identifications, two of which were United States issues identification cards, social security card and a permanent resident card. Both were of very poor quality and obviously fraudulent. Neither card had the commonly observed security identifiers in place. Detective Tucker asked VISCAINO about the fraudulent documents. VISCAINO stated he purchased the cards several years ago for a set amount of money. He acknowledged that he was illegally in the United States and used the cards to obtain a driver's license and employment. VISCAINO stated the worked for Wyckoff Farms. No further information was obtained from VISCAINO at this time. VISCAINO was charged with Forgery, for using the forged documents to fraudulently obtained employment.

37. Detective Tucker then spoke with HERNANDEZ with Detective Martin's assistance. HERNANDEZ was read his Miranda Rights, which he acknowledged. HERNANDEZ admitted to selling methamphetamine for the past three months. When confronted about him selling longer that three months he denied he had been selling any longer. HERNANDEZ at this point refused to answer any further questions as to his source of supply or further concealed amounts of drugs.

38. Detective Tucker searched HERNANDEZ' possessions at the time of arrest. HERNANDEZ had a forged social security card and a permanent resident card in his wallet along with $296.00 of United States currency. Detective Tucker retained all the evidence that was located on VISCAINO and HERNANDEZ' person at the time of arrest. Detective Tucker also seized the $296.00 of United States currency from HERNANDEZ.

| *Investigative Report (Cont.)* | *Detective R. Tucker* | *LTF 11-162* |

39. Detective Tucker completed an SIR on HERNANDEZ requesting that he be charged with six (6) counts of Delivery of a Controlled Substance – Methamphetamine (two of which were in a known school zone) and possession of Drug Paraphernalia. At the time of the completion of the SIR Detective Tucker had forgotten to charge HERNANDEZ with Forgery, but later submitted the charges to the jail and the court for filing.

40. Detective Tucker executed the search warrant on HERNANDEZ' vehicle, 1996 Chevrolet Blazer. Inside the vehicle Detective Tucker located dominion, a glass smoking device with burnt residue wrapped in a blue shop towel, consistent with the other three pipes that were located related to HERNANDEZ, and a Jesus Malverda medallion.

41. Detective Tucker at this point also requested employment security on all the subjects he had arrested reference the drug investigation. Detective Tucker did not have the information prior to the search warrants to obtain the employment security checks. Detective Tucker also completed the seizure notices on the vehicles that were seized on for the personal property that had also been seized as a result of the investigation. All notices were either personally served on the subjects or sent via certified mail to the subjects.

42. Detective Tucker attempted to locate the current registered owner on the Kia Sorento that had been seized from HERRERA-FARIAS. Washington State Department of Licensing showed a Bruce and Terra Johnsen as the registered owners out of Suquamish, Washington. It also showed the vehicle as being sold, but not transferred. Detective Tucker was able to contact the local law enforcement authorities in the area and track down a telephone number for Bruce Johnsen. Detective Tucker contacted Bruce Johnsen about the KIA Sorento. Bruce indicated that he had owned the vehicle, but used the vehicle for a trade-in almost a year ago for the purchase of new vehicle at Courtesy Auto Group in Poulbsob, Washington. Bruce said that they also had been made aware that the vehicle was still in their name approximately two months ago by Federal Way Municipal Court. Bruce stated that they had received a red light camera ticket for a violation in the vehicle. Bruce stated they were currently fighting the violation, since they could show they did not own the vehicle and had documentation. Detective Tucker also spoke with Terra about the situation and she provided a similar account of events. Detective Tucker thanked them both for their assistance in the investigation. Detective Tucker contacted Federal Way Municipal Court in an attempt to obtain a copy of the red light camera violation. Detective Tucker was advised that the camera only showed the rear license plate and would not show the driver of the vehicle. At this point it appears the vehicle might have gone to auction and the new owner failed to transfer the vehicle into their name. Detective Tucker suspects this was done deliberately to conceal true ownership of the vehicle.

43. Detective Tucker then attempted to locate the current registered owner of the Dodge Dakota that had also been seized from HERRERA-FARIAS. Washington State Department of Licensing showed Abel Sanchez out of Renton, Washington as being the listed legal owner. It also showed that the vehicle had been sold, but not transferred to the new owner. Detective Tucker attempted to locate contact information for Abel Sanchez but was unable to locate any further contact information for Abel Sanchez. A certified letter was sent to the address listed on the vehicle registration reference the seizure of the vehicle. Again Detective Tucker believes the vehicle was purchased and not transferred to avoid detection like the Kia.

| *Investigative Report (Cont.)* | *Detective R. Tucker* | *LTF 11-162* |

44. Detective Tucker also attempted to locate Jose Cardoza, the registered owner of the 1996 Chevrolet Blazer that HERNANDEZ has been driving. Again Detective Tucker was unable to locate any contact information or obtain information from the residence at 1280 Forsell Road on Cardoza's current location and contact information. Based on the dominion located in the vehicle during the search of the vehicle it appears that HERNANDEZ has possession of the vehicle, since he had receipts for vehicle repair and no paperwork for Cardoza was located in the vehicle. Detective Tucker still sent a certified letter to Cardoza at the address the vehicle is registered at, 1280 Forsell Road.

45. Detective Tucker knows that both the Hummer H2 and the GMC Canyon that were at 4873 East Edison Road, were both purchased under the name of Pedro Cortez. VILLANUEVA-CARDENAS claimed ownership of the GMC and HERRERA-FARIAS claimed ownership of the Hummer. Detective Tucker also observed that each vehicle showed Pedro Cortez living at a different address in Sunnyside, Washington. Detective Tucker checked Spillman and observed that only one Pedro G. Cortez was listed. Cortez showed that he had recently been arrested on an incident and that he also had an immigration hold. Detective Tucker believes that either Cortez purchased the two vehicles for VILLANUEVA-CARDENAS and HERRERA-FARIAS, which is a common in the drug trade as a form of payment, or they stole his identity and purchased the vehicles themselves fraudulently. Again this would be to avoid detection and deliberately conceal the true ownership of the vehicle. Detective Tucker sent certified letters to Cortez at this listed address's on the registration and also to the legal owners.

**EVIDENCE:**

1. On March 22, 2012 at approximately 5:27 am during pre-approved drug search warrants at 4873 East Edison Road, Sunnyside, Washington, 2100 Sunnyside Mabton Hwy in Sunnyside, Washington and at 1280 Forsell Road, Grandview, Washington,

2. Multiple detectives took photographs of all evidentiary items.

3. B. Stiles and Sgt. Brock logged evidence located during the search and bagged the items.

4. For a complete list of evidence collected, see attached LEAD Task Force property/evidence report.

5. Detective Tucker transported all evidence to the LEAD Task Force where the items were secured in an evidence locker at approximately 5:45 pm.

**INDEXING SECTION:**

1. Diana C. Viveros  
   4873 East Edison Road  
   Sunnyside, WA 98944  
   DOB: 03-16-1990  
   H/F  
   Cellular 509-346-5117

2. Gerardo VILLANUEVA-CARDENAS  
   4873 East Edison Road  
   Sunnyside, WA 98944  
   DOB: 09-18-1991  
   H/M

3. Edgar Omar HERRERA-FARIAS  
   4873 East Edison Road  
   Sunnyside, WA 98944  
   DOB: 08-17-1987  
   H/M

| *Investigative Report (Cont.)* | *Detective R. Tucker* | *LTF 11-162* |
|---|---|---|

4.  Martina Bravo Rivera  
    2100 Sunnyside Mabton HWY  
    Sunnyside, WA 98944  
    DOB: 01-25-1977  
    H/F

5.  Alexis Rivera  
    2100 Sunnyside Mabton Hwy  
    Sunnyside, WA 98944  
    DOB: 01-17-2000  
    H/F

6.  Ramon Macias Munoz  
    2100 Sunnyside Mabton Hwy  
    Sunnyside, WA 98944  
    DOB: 04-29-1980  
    H/M

7.  Yesenna Z. Perez Terriquez  
    2100 Sunnyside Mabton Hwy  
    Sunnyside, WA 98944  
    DOB: 02-09-1991  
    H/F

8.  Wendy Joseline Ibarra  
    2100 Sunnyside Mabton Hwy  
    Sunnyside, WA 98944  
    DOB: 11-02-2009  
    H/F

9.  Macedonio Talavera Oros  
    1280 Forsell Road  
    Grandview, WA 98930  
    DOB: 11-21-1956  
    H/M

10. J. Isabel Herrera-Lemus  
    1280 Forsell Road  
    Grandview, WA 98930  
    DOB: 05-25-1953  
    H/M

11. Antonio M. Morales  
    1280 Forsell Road  
    Grandview, WA 98930  
    DOB: 01-16-1957  
    H/M

12. Pedro Ceja Barron  
    1280 Forsell Road  
    Grandview, WA 98930  
    DOB: 11-22-1963  
    H/M

13. Noel Oros-Servin  
    1280 Forsell Road  
    Grandview, WA 98930  
    DOB: 09-20-1989  
    H/M

14. Catalina Oros  
    1280 Forsell Road  
    Grandview, WA 98930  
    DOB: 04-30-1967  
    H/F

15. George Oros  
    1280 Forsell Road  
    Grandview, WA 98930  
    DOB: 03-31-1997  
    H/M

| Investigative Report (Cont.) | Detective R. Tucker | LTF 11-162 |

16. Juan F. Gonzalez VISCAINO  
    1280 Forsell Road  
    Grandview, WA 98930  
    DOB: 08-01-1971  
    H/M

17. Gustavo Hernandez  
    1280 Forsell Road  
    Grandview, WA 98930  
    DOB: 08-14-1998  
    H/M

18. Josue Oros  
    1280 Forsell Road  
    Grandview, WA 98930  
    DOB: 07-18-1992  
    H/M

19. Esteban Ramirez HERNANDEZ  
    1280 Forsell Road  
    Grandview, WA 98930  
    DOB: 09-02-1972  
    H/M

## WITNESS SECTION:

1. L.E.A.D. Task Force  
   P.O. Box 248  
   Zillah, WA 98953  
   (509) 865-5900  
   
   Detective Tucker  
   Sgt. Wilson  
   Officer Martin  
   Officer Hawkinson  
   Detective Scott  
   Evidence Tech Stiles  
   Sgt. P. Brock

2. Yakima County Sheriff's Office  
   P.O. Box 1388  
   Yakima, WA 98907  
   (509) 574-2500  
   
   Deputy Rojas  
   Sgt. Udell  
   Chief Graham  
   Detective Jackson  
   Detective Mallonee

3. Grandview Police Department  
   201 West Second  
   Grandview, WA 98930  
   
   Detective Fairchild  
   Sgt. Hopp  
   Sgt. Fuller  
   CO Hecker  
   Detective Martin  
   Officer Bailey  
   Officer Glasenapp  
   Officer Ames

| *Investigative Report (Cont.)* | *Detective R. Tucker* | *LTF 11-162* |
|---|---|---|

4. Sunnyside Police Department  
   401 Homer Avenue  
   Sunnyside, WA 98944  

   Officer Orate  
   Officer Hutchenson  
   Officer Gilbert  
   Sgt. Bailey  
   Sgt. Hernandez  
   Detective Prieto  
   Officer Ortiz  
   Officer Russel  
   Officer Harris  
   Officer Chiprez  
   Officer Lemmon  
   Officer Sparks  

5. Yakima Police Department  

   Officer Andrews  

6. Yakima Drug Enforcement Administration  

   RAC Lopez  
   S/A Vian  
   S/A Petty  
   S/A Minor  
   S/A Gustin  
   S/A Diaz  
   S/A Ashton  
   FTO Dunn  
   Sgt. Costello  
   TFO Posada  
   TFO Sanchez  

7. Violent Crimes Task Force  

   Sgt. Towell  
   Detective Steadman  
   Detective Boyer  
   USM Deputy Smith  
   Detective Hampton  

I certify (Declare) under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct (RCW 9A.72.085)

_____ Date: April 12, 2012 - Place: Yakima County WA.

Detective R. Tucker, LEAD