Joseph H. Harrington
United States Attorney
Eastern District of Washington
Stephanie Van Marter
Caitlin Baunsgard
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767


UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 2:15-CR-6049-EFS-16 |
| Plaintiff, | ) | |
| | ) | UNITED STATES' RESPONSE TO |
| vs. | ) | DEFENDANT'S MOTION TO |
| | ) | SUPPRESS |
| EDGAR OMAR HERRERA FARIAS, | ) | |
| Defendant. | ) | |

Plaintiff, United States of America, by and through, Joseph H. Harrington,

United States Attorney for the Eastern District of Washington, and Stephanie Van

Marter and Caitlin Baunsgard, Assistant United States Attorneys for the Eastern

District of Washington, submits the following response to the Defendant's Motion to

Suppress (ECF. 614).

The Defendant has moved the Court to suppress the evidence seized from the

Defendant's bedroom at 4873 E. Edison Road in Sunnyside, Washington, to include 4

firearms, over 200 grams of methamphetamine, dominion paperwork, scales, drug use

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS - 1

paraphernalia, cutting agent, and cell phones.  ECF. 614.  The Defendant also asks the

Court to suppress backpacks seized from the common area of the residence.  ECF.

614.  In support of his request, the Defendant asserts the warrant itself did not have

sufficient particularity to authorize the seizure of these items, and further, the officers

should not have searched the Defendant's bedroom in this single-family residence

without first obtaining a supplemental warrant.  ECF. 614.  The United States

disagrees with the Defendant's contentions for the reasons outlined herein.

## FACTS

The affidavit in support of the search warrant in this case speaks for itself.

ECF. 614 at Exhibit "2".  In the first part of the affidavit, the affiant, Detective Tucker

provides his background to include his training and experience, as well as facts about

drug trafficking organizations and drug dealers that he has learned through that

training and experience.  The affidavit proceeds to outline the investigation the LEAD

Task Force, to include Detective Tucker, had been conducting into the drug trafficking

activities of Esteban Ramirez HERNANDEZ, to include the identification of several

locations of interest Detective Tucker believed he had probable cause to search for

evidence of drug trafficking.  Those locations included what the investigation showed

was likely HERNANDEZ's residence (1280 Forsell Road in Grandview,

Washington), a stash house or source of supply's location (4873 East Edison Road in

Sunnyside, Washington), and a downline distributer (2100 Sunnyside Mabton

Highway in Sunnyside, Washington).

The affidavit continues, outlining the investigation into HERNANDEZ, to

include controlled buys, physical surveillance, and GPS tracking data obtained from

HERNANDEZ's vehicle.  Specifically as to the 4873 East Edison Road residence, the

affidavit recounts the fact the confidential source ("CS") who was participating in the

controlled buys advised that HERNANDEZ "commonly obtains the

methamphetamine from other location before selling."  ECF. 614 at Exhibit "2" at p.

7.  Det. Tucker notes this could be the Forsell Road location or a stash house that was

yet unknown to the investigation.  *Id.* at p. 7.  Once the GPS tracker was affixed to

HERNANDEZ's vehicle, Det. Tucker could monitor HERNANDEZ's general

movements and noted connectivity to the Edison address as well as the Sunnyside

Mabton Hwy address.  *Id.* at p. 9.  Det. Tucker then learned the residence at the

Sunnyside Mabton Hwy address was occupied by "active gang members in the

Sunnyside area and were actively involved in small level street drug trafficking." *Id.*

at p. 9.  Det. Tucker notes he still does not know the significance of the Edison

address at this point in the investigation.  *Id.* at p. 9.

The CS provided Det. Tucker with additional information about

HERNANDEZ's organization, to include the fact HERNANDEZ had "workers"

helping him distribute the methamphetamine, and was trying to recruit more

individuals to this pursuit.  *Id.* at p. 9.

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS - 3

The affidavit further outlines that on February 28, 2012, the CS contacted HERNANDEZ to arrange for the purchase of more methamphetamine. *Id.* at p. 10. HERNANDEZ advised the CS he (HERNANDEZ) "was out of methamphetamine and would need to contact his source to obtain more." *Id.* At that time, the GPS tracking data on HERNANDEZ's vehicle showed the vehicle was in an agricultural area and observed, via the GPS tracking data, HERNANDEZ's vehicle leave the area and travel to the Edison address. *Id.* Other Detectives confirmed this fact via physical surveillance as well. *Id.* Surveillance observed HERNANDEZ's vehicle parked at the Edison address and a male subject exiting the vehicle. *Id.* HERNANDEZ then called the CS back and stated his source was not currently home and that he would have to wait approximately 1 hour for the source to return. *Id.* Det. Tucker terminated the buy operation, but noted that HERNANDEZ's vehicle, via GPS tracking data, left the Edison address approximately 1 hour after he contacted the CS. *Id.*

Det. Tucker then discusses additional, relatively consistent, traffic patterns between the Edison, Forsell, and Sunnyside Mabton Hwy residences. The affidavit goes on to advise that on March 2, 2012, the CS and an undercover detective called HERNANDEZ to arrange to purchase additional methamphetamine. HERNANDEZ advised he was currently out of methamphetamine and would have to contact his source of supply. *Id.* at p. 11. HERNANDEZ's vehicle was observed, via GPS tracker and physical surveillance, proceeding to the Edison address, and then to the

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS - 4

meeting location where HERNANDEZ sold the CS and the undercover officer methamphetamine. *Id.*

Det. Tucker proceeds to detail his efforts to identify the any possible individuals who may be residing at the Edison address. *Id.* at p. 11-13. Det. Tucker notes multiple vehicles, to include those that appear to have been sold, but not registered in a new name – which is common among the drug traffickers who are trying to avoid identification by law enforcement. *Id.* at p. 11-12. Ultimately, Det. Tucker is not able to positively identify a resident of the Edison residence. *Id.*

Det. Tucker also recounts the fact that HERNANDEZ reportedly owed his source of supply "a large amount of money for drugs he had been fronted and they were looking to collect money from HERNANDEZ." *Id.* at p. 14. Det. Tucker then details an instance where it is believed HERNANDEZ sees a vehicle that had been observed at the Edison address at a stop light, and avoids it, conducting multiple "heat checks" along the way. *Id.*

Based on the totality of the investigation, Det. Tucker formed the opinion that the source house was the Edison residence. *Id.* at p. 15. Det. Tucker also outlines his knowledge of stash houses and their function in a drug trafficking organization. *Id.*

A search warrant was issued by a Yakima County District Court Judge for the Edison residence and John/Jane Doe et al on March 17, 2012. ECF. 614 at Exhibit "1" at p. 19-20. The residence is noted to be a "single story family dwelling" with only one known point of entry, which was located at the south side of the residence

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS - 5

from the driveway.  *Id.*  The search warrant was executed on March 22, 2012.  ECF. 614 at Exhibit "A" at p. 40.  During the execution of the warrant, detectives noted that two individuals, Diana Viveros and Gerardo Villanueva-Cardenas shared a bedroom in the residence, and the Defendant, Edgar Omar HERRERA-FARIAS, occupied another bedroom.  *Id.* at p. 41.[1]  The detectives searched the residence and located in the Defendant's bedroom multiple items of evidentiary value, to include 4 firearms, approximately 200 grams of methamphetamine, a digital scale, cutting agent, a smoke device with burnt residue, a metal spoon with white residue, a drug ledger, dominion paperwork for the Defendant, and multiple cell phones, most of which were functioning.  *Id.* at p. 42.  In the common area of the residence, the detectives located "a large number of backpacks", which the officers knew, based on their training and experience, are commonly utilized for facilitating outdoor marijuana grows.  In the kitchen, the detectives located approximately 5 grams of methamphetamine.

## LAW AND ARGUMENT

**A.**    **SEARCH WARRANT WAS SUPPORTED BY PROBABLE CAUSE.**

The Defendant critiques the law enforcement investigation into who resided at this address, describing it as "scant."  ECF. 614 at p. 2.  The Defendant does not appear to further articulate a probable cause challenge in the remainder of his motion.

---

[1] The United States anticipates having photographs from the execution of the search warrant that it will supplement to this motion as soon as they are received.

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS - 6

To the extent the Defendant is challenging the probable cause supporting the search warrant, the United States offers the following response.

The law is in this area is clear and well-established. "A search warrant … is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place." *United States v. Adjani*, 452 F.3d 1140, 1145 (9th Cir.), *cert. denied sub nom*, *Reinhold v. United States*, 549 U.S. 1025 (2006) (quoting *Steagald v. United States*, 451 U.S. 204, 213 (1981)). "Probable cause exists if it would be *reasonable* to seek the evidence in the place indicated in the affidavit." *Adjani*, 452 F.3d at 1145 (quoting *United States v. Wong*, 334 F.3d 831, 836 (9th Cir. 2003) (internal quotations omitted) (emphasis added)); *United States v. Crews*, 502 F.3d 1130, 1136-37 (9th Cir. 2007) ("need only be reasonable to seek the evidence at the location indicated in the affidavit – neither certainty, nor even near certainty is required") (internal citations omitted).

The Supreme Court relatively recently reminded and re-affirmed:

> the long-prevailing standard of probable cause protects citizens from rash and unreasonable interference with privacy and from unfounded charges of crime, while giving fair leeway for enforcing the law in the community's protection. On many occasions, we have reiterated that the probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar*, supra, at 175–176); *see, e.g., Ornelas v. United States*, 517 U.S. 690, 695 (1996); *United States v. Sokolow*, 490 U.S. 1, 7–8 (1989). Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS - 7

> even usefully, reduced to a neat set of legal rules. *Gates*, 462
> U.S., at 232. The probable-cause standard is incapable of
> precise definition or quantification into percentages because it
> deals with probabilities and depends on the totality of the
> circumstances.

*Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003) (internal citation marks omitted);

*see also Florida v. Harris*, 568 U.S. 237, 243 (2013) (the test for probable cause is

meant to be an "all-things-considered approach") (quoting *Gates*, 462 U.S. at 235, 238

and *Pringle*, 540 U.S. at 371)).

In order for an affidavit to be sufficient under the probable cause standard, it

need only establish that "there was a *fair probability* that contraband or evidence of a

crime would be found [in the place to be searched]."  *Gates*, 462 U.S. at 238

(emphasis added); *United States v. Ramos*, 923 F.2d 1346, 1355 (9th Cir. 1991),

*overruled on other grounds by United States v. Ruiz*, 257 F.3d 1030 (9th Cir. 2001)

("while the affidavit supporting the search warrant may not have been the model of

thoroughness, it cannot be said that he document did not link this location to the

defendant") (internal citations omitted); *Crews*, 502 F.3d at 1136-37; *United States v.*

*Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002), *cert. denied*, 537 U.S. 1217

(2003) ("the affidavit also established sufficient reason to search the [residence]

because a reasonable inference from the affidavit's facts suggested that incriminating

evidence or contraband related to the crimes under investigation would likely be

located there"); *United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004) ("for

probable cause to exist, a magistrate need not determine that the evidence sought is *in*

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS - 8

*fact* on the premises to be searched, or that the evidence is more likely than not to be found where the search takes place.  The issuing judge need only conclude that it would be *reasonable* to seek the evidence in the place listed in the affidavit" (emphasis added and in original)); *United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir.1991) ("only a reasonable nexus between the activities supporting probable cause and the locations to be searched" is required).

When assessing the validity of a search warrant, the essential question is whether the issuing judge had a substantial basis to conclude that the affidavit in support of the warrant established probable cause – and the inquiry is "less probing than *de novo* review and shows deference to the issuing [Judge's] determination." *United States v. Angulo-Lopez*, 791 F.2d 1394, 1396 (9th Cir. 1986) (citing *United States v. Seybold*, 726 F.2d 502, 503 (9th Cir. 1984)).  "Direct evidence linking criminal objects to a particular site is not required for the issuance of a search warrant."  *United States v. Jackson*, 756 F.2d 703, 705 (9th Cir. 1985) (citing *United States v. Poland*, 659 F.2d 884, 897 (9th Cir.), *cert. denied*, 454 U.S. 1059 (1981)).  Rather, again, a court "need only determine that a fair probability exists of finding evidence," considering the "type of crime, the nature of items sought, the suspect's opportunity for concealment," and normal inferences about where evidence may be located.  *Jackson*, 756 F.2d at 705 (citing *Seybold*, 726 F.2d at 504); *United States v. Pheaster*, 544 F.2d 353, 373 (9th Cir. 1976), *cert. denied sub nom Inciso v. United States*, 429 U.S. 1099 (1977)); *Angulo-Lopez*, 791 F.2d at 1399 ("[i]n the case of drug

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS - 9

dealers, evidence is likely to be found where the dealers live" (citing *United States v. Valenzuela*, 596 F.2d 824, 829 (9th Cir. 1979), *cert. denied*, 441 U.S. 965 (1979)). Further, "under the totality of the circumstances ..., otherwise innocent behavior may be indicative of criminality when viewed in context." *Chavez-Miranda*, 306 F.3d at 978. "Judges may rely on the training and experience of affiant police officers" in making the determination. *Id.*

Affidavits in support of a warrant "should be tested in a commonsense and realistic fashion" and "need only recite sufficient underlying circumstances to enable the magistrate to perform his [or her] detached function and not serve as a mere rubber stamp." *United States v. Dubrofsky*, 581 F.2d 208, 212-123 (9th Cir. 1978) (citing *United States v. Ventresca*, 380 U.S. 102, 108-109 (1965)). In cases involving information from a witness, such as a victim or informant, the reviewing court looks at the "totality of the circumstances" to make a probable cause determination. *See Gates*, 462 U.S. at 238-39 (more flexible "totality of the circumstances test," allows for a search warrant to still be valid, despite a potential weakness in the "veracity" or "basis of knowledge" of an informant's information, so long as the issuing judge has a "substantial basis" for the finding that probable cause exists to issue a search warrant).

In this case, the affidavit speaks for itself. Based on the totality of the circumstances, to include appropriate inferences that could be drawn from the investigation and the type of crime being investigated, and the nature of location to be searched, there was ample evidence for the issuing judge to conclude it was

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS - 10

reasonable to look for evidence related to drug trafficking at 4873 East Edison Road, as it was the source of supply's house, or at the very least a stash house.  Opinions and conclusions of an experienced agent are properly considered in determining probable cause.  *See United States v. Motz*, 936 F.2d. 1021 (9th Cir. 1991).  Accordingly, the affidavit demonstrated a fair probability that contraband or evidence of drug trafficking activities would be found at 4873 East Edison Road.  That is all that is required under the law.  The Defendant's motion on this basis should be denied.

## B.  **EVEN IF THE COURT DISAGRESS, THE *LEON* GOOD FAITH EXCEPTION APPLIES.**

Even if the Court were to disagree, and concludes probable cause was not shown in the affidavit, it is firmly established in federal law that "suppression of the evidence found in a search pursuant to that warrant is not justified if the officer's reliance on the [judge's] determination of probable cause was objectively reasonable.'"  *United States v. Needham*, 718 F.3d 1190, 1194 (9th Cir. 2013) (quoting *United States v. Leon*, 468 U.S. 897, 926 (1984)).  As the Supreme Court noted, "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, deterrence rationale loses much of its force, and exclusion cannot pay its way."  *Davis v. United States*, 564 U.S. 229, 237 (2011) (internal quotations and citations omitted); *see also Crews*, 502 F.3d 1130 (reviewing court has discretion to skip directly to consideration of good faith exception) (citations omitted).

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS - 11

Here, the warrant was executed in good faith reliance on a federal magistrate judge's probable cause finding.  There is no indication the issuing judge abandoned his neutral arbiter role in reaching his conclusion.  The officers executing the warrant were objectively reasonable in relying on the issuing judge's conclusion as to the existence of probable cause to justify a search of the residence.  Accordingly, the Defendant's motion should be denied.

## C.  THE WARRANT WAS SUFFICIENTLY PARTICULARIZED AS TO ITEMS TO BE SEIZED.

The Defendant asserts the search warrant is deficient because it was not sufficiently "particularized".  ECF. 614 at p. 6-8.  The Defendant asserts that the warrant does not provide officers with direction as to the "things to be seized", noting specifically "firearms, cell phones, and backpacks" were not included in the warrant.  ECF. 614 at p. 8.  The Defendant asserts that because items seized were not described in the warrant, they were not described with particularly and must be suppressed.

At the outset, it is not entirely clear if the Defendant is asserting *all* the items seized during the execution of the search warrant must be suppressed because of the officers' seizure of items he perceives to be outside the scope of the warrant, or if he is limiting his request for suppression to those items seized he perceives to be outside the scope of the warrant – specifically the firearms, cell phones, and backpacks.   If the request is the former, the Defendant does not cite to any case law or other authority standing for the proposition that the seizure by officers of items outside the

scope of the warrant nullifies the validity of the search warrant itself and requires the suppression of all evidence seized during the execution of the warrant. *See contra United States v. Sedaghaty*, 728 F.3d 885, 915 (9th Cir. 2013) (seizure of evidence outside the scope of the warrant does *not* require suppression of *all* the evidence seized during the execution of the warrant); *United States v. Tamura*, 694 F.2d 591, 597 (9th Cir. 1982) (seizure of items outside scope of warrant does not warrant suppression of *all* the evidence seized within the scope of the warrant).

In an effort to simplify the matter, the United States does not intend to enter into evidence the cellular telephones seized from the Defendant's bedroom or the backpacks seized from the residence[2]. As to the firearms, the Defendant's contention

---

[2] The United States is not conceding these items should *not* have been seized during the search warrant. Cell phones are discussed and provided for in the warrant itself, *see* ECF. 614 at Exhibit "1" at p. 20, and the backpacks were located in plain view during the execution of the search warrant and officers immediately recognized their significance in and evidentiary value in drug trafficking endeavors. *See Roe v. Sherry*, 91 F.3d 1270, 1272 (9th Cir. 1996); *United States v. Vaughn*, 974 F.2d 1344 (9th Cir. 1992) (an officer need not know that an item is contraband or evidence of a crime; all that is required is a reasonable belief that the items may be incriminating, *citing Texas v. Brown*, 460 U.S. 730, 741-42 (1983) (plurality opinion)). The United States is simply submitting this is a moot issue and as such, the Court does not need to address it further.

is wholly without merit as the search warrant specifically provides for the seizure of firearms: "search the above described residence … and seize the items relating to the methamphetamine trafficking and or manufacturing to wit: … firearms and ammunition and other weapons commonly utilized by drug traffickers to protect their investment and ill-gotten gains …".  ECF. 614 at Exhibit "1" at p. 20.

Even if the firearms were not specifically listed in the warrant, it is permissible for officers to seize those weapons during the execution of a drug search warrant even if firearms are not specifically listed as an item to be seized.  *See e.g. United States v. Vaughn*, 974 F.2d 1344 (9th Cir. 1992) (unpublished but collecting cases - *United States v. Matthews*, 942 F.2d 779, 783 (10th Cir.1991); *United States v. Smith*, 918 F.2d 1501, 1509 (11th Cir.1990), *cert. denied sub nom. Hicks v. United States*, 112 S.Ct. 151 (1991); *United States v. Caggiano*, 899 F.2d 99, 103-04 (1st Cir.1990); *United States v. Reed*, 726 F.2d 339, 344 (7th Cir.1986).  This is permissible because of the recognized close relationship between drugs and firearms such to allow for the admission of guns and firearms as evidence of involvement in the narcotics trade as well as evidence of narcotics trafficking is relevant to establishing possession of a weapon.  *Vaughn*, 974 F.2d 1344 (unpublished but collecting cases).  Therefore, even

---

The United States *does* intend to introduce photographs of the residence taken during this search of the residence, to likely include a photograph of the backpacks and cellular phones and question the officers present about the items they observed.

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS - 14

if firearms were *not* included on the warrant, the officers' seizure of the Defendant's 4 firearms is permissible.

**D.    THE OFFICERS DID NOT NEED TO OBTAIN A SUPPLEMENTAL WARRANT TO ADDRESS THE FACT THERE WERE SEVERAL OCCUPANTS OF THE RESIDENCE.**

The Defendant next contends the detectives needed to obtain a supplemental warrant once they entered the residence at 4873 Edison Road and saw evidence that multiple individuals resided there. ECF. 614 at p. 8.  The Defendant likens this to the situation in *Maryland v. Garrison*, where officers had a warrant to search the 3rd floor of an apartment building.  480 U.S. 79 (1987).  When the officers reached the 3rd floor, the officers discovered there were actually two separate and distinct apartment units, not just one.  480 U.S. at 81.  Instead of getting a more particularized warrant, the officers searched both apartments. *Id.*  The Supreme Court found that was a violation of the Fourth Amendment, and in that scenario, a supplemental or amended warrant was necessary. *Id.*

The situation presented in this case is unlike the situation before the Supreme Court in *Garrison*.  Here, the residence searched is a "single story family dwelling" with "only one known point of entry", which is off the singular driveway to the residence. ECF. 614 at p. 19.  There is only one known address for the unit (i.e. no break out addresses such as "A" or "1/2").  There are no separate and distinct living quarters to would warrant the legal conclusion that it was a multi-unit dwelling.  There was one kitchen shared by all three individuals.  There was one living room shared by

all three individuals.  These were not self-contained units, like what was present in the *Garrison* case.  These are important distinguishing factors according to the Ninth and its sister Circuits.

"A search warrant for the entire premises of a single family residence is valid, notwithstanding the fact that it was issued based on information regarding the alleged illegal activities of one of several occupants of a residence." *United States v. Ayers*, 924 F.2d 1468, 1480 (9th Cir. 1991).  In *Ayers*, the police obtained a warrant to search a residence for evidence relating to drug trafficking stemming from an investigation into the activities of one of the residents of the house, Eric Ayers.  *Ayers*, 924 F.2d at 1472.  When the police executed the search warrant, Eric's mother, Ella Ayers, advised he (Eric) no longer lived at the residence.  *Id.*  Law enforcement executed the warrant on the entirety of the residence, to include a bedroom occupied by Eddie Ayers.  *Id.*  Approximately $400,000 in cash was located in the bedroom and Eddie Ayers was ultimately convicted of income tax evasion.  *Id.*

During the case, Eddie Ayers moved to suppress the evidence seized from his bedroom alleging that law enforcement did not have the right to search his bedroom because Eric (the subject of the investigation) "clearly did not have common control" over it, and there was no evidence to connect him to Eric's criminal activities.  *Id.*  Eddie Ayers supported this assertion based on the theory that this was a situation like a multi-tenant building, relying on *Maryland v. Garrison*, 480 U.S. 79 (1987).  *Id.*  In rejecting his argument, the Ninth Circuit noted "a search warrant for the entire

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS - 16

premises of a single family residence is valid, notwithstanding the fact that it was issued based on information regarding the alleged illegal activities of one of several occupants of a residence." *Id.* (citing W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 4.5(b) at 219–20 (2nd ed. 1987) and the cases cited therein). In its analysis, the Ninth Circuit called out a state case, *People v. Gorg*, 321 P.2d 143 (Cal. 1958), which the Court found instructive and ultimately persuasive:

> a search of an entire apartment shared by three persons, including their separate bedrooms, was proper pursuant to a warrant naming only one of the tenants. *Id.* at 522–23, 321 P.2d 143. The bedroom of each tenant opened onto the common areas and was not locked. *Id.* at 523, 321 P.2d 143. The court found the apartment to be 'one distinct living unit occupied by three persons' instead of 'distinct living quarters occupied by different persons.' *Id. See also Hemler v. Superior Court*, 44 Cal.App.3d 430, 118 Cal.Rptr. 564 (1975) (search of bedroom of person not named in the search warrant appropriate where bedroom opened onto common hallway and was not locked).

*Ayers*, 924 F.2d at 1480.  The Ninth Circuit continued, "contraband can be hidden in any portion of the residence.  The most obvious place for the police to search would be the drug dealer's bedroom.  Therefore, any other portion of the house would be a more secure hiding place." *Id.* (citing *United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir. 1987)).  The Ninth Circuit concluded that "the search of the entire premises [ ] was not overbroad or unreasonable." *Id.* (citing *United States v. Alexander*, 761 F.2d 1294, 1301 (9th Cir.1985) ("[A] warrant is valid when it authorizes the search of a street address with several dwellings if the defendants are in control of the whole

premises, if the dwellings are occupied in common, or if the entire property is suspect")). *See also e.g. United States v. Ruiz*, 2015 WL 12850545 (C.D. Cal. 2015) (slip opinion) (search of entire residence permitted even when individual rooms rented out).

The Fifth Circuit has also squarely addressed this issue, citing to the Ninth Circuit's *Ayers* case. *See United States v. McLellan*, 792 F.3d 200, 212 (1st Cir.), *cert. denied*, 136 S.Ct. 494 (2015). In *McLellan*, the FBI obtained a search warrant for the residence at 180 High Street for evidence relating to child pornography charges. *McLellan*, 792 F.3d at 205. The FBI had determined through their investigation child pornography was being downloaded utilizing an IP address associated to that residential address. *Id.* The FBI linked one individual Darryl St. Yves to the address, and wrote and received a search warrant for the residence, asserting that "Darryl J. St. Yves and/or other residents, as yet unknown" committed these child pornography crimes. *Id.* When the FBI executed the warrant, they interviewed the two individuals present, who articulated that a third individual, McLellan, was "renting" a third bedroom in the residence. *Id.* at 206. The FBI proceeded to search the entirety of the home, to include McLellan's bedroom, seizing all computers. *Id.* Child pornography was located on McLellan's computer. *Id.*

McLellan moved to suppress the evidence located in McLellan's bedroom relying on *Maryland v. Garrison*, asserting the residence was a "multi-unit dwelling" and thus the search of his bedroom was unconstitutional as a supplemental warrant

needed to be obtained in order to satisfy the particularity requirement. *Id.* at 212-13. In addressing this issue, the First Circuit took time to collect cases, and considered several cases, to include the Ninth Circuit's *Ayers* case. *Id.* (citing *Ayers*, 924 F.2d at 1480 ("A search warrant for the entire premises of a single family residence is valid, notwithstanding the fact that it was issued based on information regarding the alleged illegal activities of one of several occupants of a residence")); *United States v. Canestri*, 518 F.2d 269, 273–74 (2d Cir.1975) (holding that a warrant directing the entire house be searched included a locked storeroom allegedly not belonging to the target of the search because "a locked storeroom is a natural and logical place to hide stolen guns" and "there was no evidence presented at the suppression hearing which showed that [the target of the search] did not have access to the storeroom").

In dismissing the defendant's argument, the First Circuit stated:

> [the defendant's] argument is in deep trouble before it even begins, however, because the district court made a factual determination that 180 High Street was a single-family residence. Specifically, the district court found that McLellan's room 'was not equipped for independent living' because there was no separate entrance to the street and the occupants had joint access to the common areas such as the kitchen and living rooms.

*McLellan*, 792 F.3d at 213.

Here, there is more than sufficient evidence for the Court to conclude this is a single-family dwelling akin to that in cases such as *Ayers* and *McLellan*. There was only one defined entrance to the residence. There was a common driveway. While

there were several bedrooms apparently occupied by different individuals, there is no indication the bedrooms were locked[3] or in any way inaccessible to others.  There is no evidence the units were self-sufficient units – the Defendant's bedroom linked to the common areas of the home for necessary services such a bathroom, kitchen, and living room.  This is not akin to separate apartments like in *Garrison*.

As the affidavit and warrant make clear, this was a drug investigation and the officers were searching for evidence of drug crimes.  It is reasonable for the officers to believe that evidence covered by the search warrant would be located throughout the residence, to include the Defendant's bedroom.

## **CONCLUSION**

The Defendant's motion should be denied.  The search warrant signed by the issuing judge was supported by probable cause.  The Defendant also appears to focus his critique of the asserted probable cause on what was known about the *Defendant himself* and not the location or the evidence presented about the drug trafficking investigation and its member's relevant overt acts.  The issue of the sufficiency of the probable cause is focused on the location searched and whether it is reasonable to look

---

[3] Even if one of the bedrooms was locked, that does "not necessarily mean or imply that the home is a multi-unit dwelling." *Yanez-Marquez v. Lynch*, 789 F.3d 434, 465 (4th Cir. 2015) (citing *United States v. Ayers*, 924 F.2d 1468, 1480 (9th Cir. 1991) and *United States v. Kyles*, 40 F.3d 519, 523-24 (2d Cir. 1994) (permitting the search of a locked bedroom inside a single-family home that does not objectively appear to be a separate unit)).

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS - 20

at that location for evidence of the particular crime.  While certainly who is living at or associated with a residence is an important factor in the inquiry, it is not the be all, end all of the analysis.

Looking at the totality of what was presented in the affidavit, to include the appropriate considerations and inferences afforded to the reviewing judicial officer, the affidavit did demonstrate probable cause.  Accordingly, the United States submits the Defendant's contentions are not persuasive.  Even if this Court were to disagree, and determine there was not sufficient probable cause to justify the search of the residence, the *Leon* good-faith doctrine should apply.

Further, the warrant satisfies the particularity requirements.  Even if the Court were to agree with the Defendant that the detectives seized items outside the scope of the warrant, such actions do not justify the suppression of *all* the evidence seized from the residence.  Additionally, the facts before this Court show this situation was more akin to the single-family dwelling scenario in *Ayers* and *McLellan* such that *Garrison* is easily distinguishable.  There is no particularity issue with the execution of the warrant.

DATED this 20th day of February 2018.

Joseph H. Harrington
United States Attorney

*s/ Caitlin Baunsgard*
Caitlin Baunsgard
Assistant United States Attorney

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS - 21

1

*s/ Stephanie Van Marter*
Stephanie Van Marter
Assistant United States Attorney

2

3

4

5

## CERTIFICATE OF SERVICE

6

I hereby certify that on February 20, 2018, I electronically filed the foregoing

7

8

with the Clerk of the Court using the CM/ECF system which will send notification of

9

such filing to the following:

10

Peter S. Schweda, pschweda@wsmattorneys.com

11

12

*s/ Caitlin Baunsgard*
Caitlin Baunsgard
Assistant United States Attorney

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS - 22