JOSEPH HARRINGTON
United States Attorney
Eastern District of Washington
Stephanie Van Marter
Caitlin Baunsgard
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | 2:15-CR-6049-EFS-19 |
| vs. | ) | United States' Response to Defendants Motion to Suppress Evidence (ECF 621) |
| JUAN BRAVO ZAMBRANO, | ) | |
| Defendant. | ) | |

_____

Plaintiff, United States of America, by and through Joseph H. Harrington, United States Attorney, for the Eastern District of Washington, Stephanie Van Marter and Caitlin Baunsgard, Assistant United States Attorneys for the Eastern District of Washington, submits the following Response to Defendant's Motion in Suppress evidence obtained from the search of his residence. *See*, ECF 621.

1  Defense seeks to suppress the evidence obtained from the search of a vehicle

2  and hotel rooms that took place in Grand Forks British Columbia Canada by the Royal

3  Canadian Mounted Police (RCMP).  The United States responds as follows.

4
5  **I.    BACKGROUND**

6  On August 23, 2015, Ivan Calvillo arranged for a cash drop in Vancouver B.C.

7  as well as the delivery of one kilogram of heroin.  This time Javier Camillo Gomez

8  Calvillo, a.k.a. Angel was sent to make the money drop.  The meet was audio/video

9  recorded.  Angel was driving a blue Mercedes registered to a residence associated

10 with Sobieda Reynosa (previously identified by the RCMP as a girlfriend/associate of

11
12 an identified leader/organizer in the Vancouver area).  Angel delivered $74,029 in

13 Canadian currency to the Canadian Under Cover (CUC) and a kilogram of heroin to

14 the CUC.  After the DEA Under Cover (UC) withdrew the percentage charged for

15
16 laundering the money, Calvillo directed the DEA UC to wire the remaining funds to

17 accounts in Mexico.

18
19 Based upon the identification of the blue Mercedes and Gomez Calvillo, the

20 RCMP followed the activities of Gomez Calvillo.  They identified a residence where

21
22 the blue Mercedes traveled to.  While conducting surveillance, the blue Mercedes was

23 seen departing the residence where it was followed up to the Grand Forks B.C. area,

24
25 an identified location associated with this organization and backpacking narcotics

26 across the border. The RCMP followed the Mercedes to the Ramada Inn and identified

27
28

United States' Response to Defendants Motion to Suppress Evidence - 2
Response 621.docx

that Reynosa registered for a room at the hotel.  On August 26, 2015, the RCMP was conducting surveillance at the hotel and observed the aforementioned Mercedes leave the hotel at approximately 5:00am occupied by Reynosa and Gomez Calvillo.  *See,* Attachments A and B (filed under seal).

Surveillance confirmed its travel toward the border but then lost sight of the vehicle for approximately 15-20 minutes. When the vehicle was located again, it was coming back toward the hotel, this time with 5 occupants. The RCMP could then seize the Mercedes and occupants at any time because they violated the Immigration & Refuge Protection Act by concealing individuals into the country without going through the proper immigration channels. *Id.*  The Mercedes returned to the hotel where the five occupants entered room 203.  A short time later, the vehicle departed the hotel again, this time with four occupants.  A traffic stop was initiated and all occupants were arrested for aiding and abetting anyone to enter Canada illegally and being an illegal foreign national in Canada under the Immigration and Refugee Protection Act (IRPA).  The driver was identified as Sobieda Reynosa the passengers were identified as Co-Defendants Juan Bravo Zambrano, Marciel Zambrano and Javier Camilo Gomez Calvillo.  *Id.*

Search warrants were obtained by the RCMP for the vehicle and the hotel rooms at the Ramada Inn[1]. *See,* Attachment A (filed under seal).  On August 27, 2015, the Canadian search warrant was executed on the vehicle.  Upon execution of the Canadian search warrant, inside a secret compartment in the vehicle, RCMP located approximately 18 kilograms of methamphetamine, 4 kilograms of cocaine, 171 grams of heroin, $50,000 in U.S. currency, two loaded firearms, ammunition, several backpacks, walkie talkies, jackets and one cellular phone.  A search warrant was also obtained for the two hotel rooms identified as utilized by these individuals at the Ramada Inn. Located inside the room was Defendant Miguel Reyes Garcia who was confirmed to be the fifth person seen earlier in the car.

It was further confirmed that the general location where the Mercedes traveled to at 5:00 a.m., returning with three additional passengers, correlates directly with a trail head location utilized by the Calvillo Drug Trafficking Organization (DTO). Inside the motel room agents seized the Defendant's wallet, a receipt and multiple cellular telephones.

---

[1] The Information in support of the search warrant, what we call an affidavit, was sealed by the Canadian judicial authority and remains sealed at this time.  However, for purposes of this response, the RCMP obtained permission to disclose and has provided the affidavit attached hereto.

The controlled substances were tested in Canada and later by the DEA laboratory and returned with the following results: (1) 16,606 grams of actual methamphetamine; (2) 2,005 kilograms of cocaine and (3) 99.3 grams of heroin. Subsequent fingerprint testing of the packages of controlled substances revealed many fingerprints to include several belonging to the Reyes Garcia.

The cash drop that took place on August 23, 2015, was observed and recorded by the RCMP.  All actions that took place after that cash drop were wholly directed and conducted by the RCMP with no United States agency involvement.

## II.    ARGUMENT

A.    <u>Defendant does not have standing to challenge the stop of the vehicle or search of the vehicle or the hotel rooms.</u>

The Fourth Amendment does not apply to acts of foreign officials when Federal agents are not involved. In *Stonehill v. United States*, the Court observed that "neither the Fourth Amendment to the United States Constitution nor the exclusionary rule of evidence, designed to deter Federal officers from violating the Fourth Amendment, is applicable to the acts of foreign officials." 405 F.2d 738, 743 (9th Cir. 1968); *United States v. Verdugo-Urquidez*, 856 F.2d 1214, 1224-25 (9th Cir. 1988), rev'd on other grounds, 494 U.S. 259 (1990). "Because the Fourth Amendment does not itself require exclusion of unlawfully obtained evidence, and because excluding reliable evidence will not force foreign officers to abide by the norms of the Fourth

Amendment, the exclusionary rule has no application to searches conducted solely by a foreign government. *Verdugo-Urquidez*, 856 F.2d at 1224-25.

As has been provided through discovery from the RCMP, the entirety of this stop, the investigation and the seeking authorization to search was done by the RCMP without any involvement from United States Agents.  Even when the target of the search is American, "Fourth Amendment principles do not apply to searches by foreign authorities in their own countries, even if the targets of the search are American." *United States v. Rose*, 570 F.2d 1358, 1361 (9th Cir. 1978).

The Defendant has failed to articulate any United States government influence or presence in the follow-up investigation that occurred in Grand Forks.  Although it is true that the RCMP was assisting in the cash money drops and the money laundering aspect of the investigation, all the follow up investigations that occurred in Canada were solely done by the RCMP.  The Defendant therefore has no basis to challenge the search warrant or seek its suppression.

Even if Defendant makes a successful assertion that Federal agents were involved, which he has not, Defendant's arguments fail on a fourth amendment analysis.  Even if this Court were to apply fourth amendment standards to the actions of the RCMP, the stop of the vehicle and subsequent search warrants were supported by probable cause.  *See,* Attachments A and B (filed under seal).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

First, the Defendant alleges no possessory or ownership of the blue Mercedes or hotel rooms which eviscerates his standing to challenge their search. *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1150 (9th Cir. 2007) (citing *Rakas v. Illinois*, 439 U.S. 128 (1978)). Fourth Amendment rights are personal, and cannot be asserted vicariously. *Rakas*, 439 U.S. at 128. As noted earlier, RCMP observed a cash money drop of almost $75,000 and a kilogram of heroin to their CUC using the blue Mercedes. Then, RCMP observed the Mercedes commit a violation of the Immigration & Refuge Protection Act, giving RCMP two different fronts to stop the vehicle. This is unavailing to Defendant, because after the initial cash drop by Angel, RCMP was following him in the Mercedes, and the subsequent action resulting in the discovery of contraband were directed at Angel, not the Defendant. Defendant can only challenge the stop and even if the analysis rested on U.S. law (which the United States asserts it does not because it was an act done solely by foreign officials, *see supra*), the RCMP had reasonable suspicion to stop the Mercedes.

The Defendant challenges the stop of his vehicle and subsequent arrest yet fails to articulate his basis other than to somehow argue the basis of the stop was unclear. To the contrary, as noted in Attachments A and B (filed under seal), the traffic stop was based upon the totality of the circumstances of the investigation, the same information with which the search warrants were sought. It appears that at the time of the traffic stop, the RCMP had made the determination to go ahead and apply for

search warrants, thus the stop was made to preserve the vehicle and any evidence

therein in anticipation of the search warrant. Upon further confirmation that the

occupants were not Canadian citizens, they were arrested as articulated in Attachment

B (filed under seal).  Even if those decisions had not been made to seek warrant at the

time, the stop would have been supported as a *Terry* stop.

A brief investigatory stop may be conducted when an officer has a reasonable,

articulable suspicion that criminal activity is afoot. *Illinois v. Wardlow*, 528 U.S. 119,

123 (2000). The *Terry* stop is a brief, minimal intrusion, and simply allows the officer

to investigate further. *Id.* at 126. Reasonable suspicion is a less demanding standard

than probable cause and requires a showing that is considerably less than

preponderance of the evidence. *Id.* at 123. The Court in *Terry v. Ohio* "recognized that

a law enforcement officer's reasonable suspicion that a person may be involved in

criminal activity permits the officers to stop the person for a brief time to take

additional steps to investigate further." *Hiibel v. Nevada*, 524 U.S. 177, 185 (2004).

"A *Terry* stop involves no more than a brief stop, interrogation and, under proper

circumstances, a brief check for weapons." *United States v. Miles*, 247 F.3d 1009,

1012-13 (9th Cir. 2001). The point of the stop is to allow the police to investigate.

*Gallegos v. City of Los Angeles*, 308 F.3d 987, 991 (9th Cir. 2002).  Here, the RCMP

conducted a stop on the vehicle based upon well-grounded suspicion it was involved

in criminal activity which included he aiding and abetting of illegal entry into Canada.

Given the circumstances as a whole and as laid put in the affidavit, there was more than sufficient probable cause to ultimately search the vehicle and the hotel rooms.

## CONCLUSION

The United States respectfully submits the Defendant motions to suppress the evidence be denied.

Dated:  February 20, 2018.


JOSEPH H. HARRINGTON
United States Attorney

*s/ Stephanie Van Marter*
Stephanie Van Marter
Assistant United States Attorney


## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Richard A. Smith, rasmith@house314.com

*s/ Stephanie Van Marter*
Stephanie Van Marter
Assistant United States Attorney