JOSEPH H. HARRINGTON
United States Attorney
Eastern District of Washington
Stephanie Van Marter
Caitlin Baunsgard
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) 2:15-CR-6049-EFS |
| Plaintiff, | ) |
| vs. | ) UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE ( ECF Nos. 617, 619, 620, 623) |
| EDGAR OMAR HERRERA FARIAS, MIGUEL REYES GARCIA, JUAN BRAVO ZAMBRANO | ) |
| Defendants. | ) |

Plaintiff, United States of America, by and through, Joseph H. Harrington, United States Attorney for the Eastern District of Washington, and Stephanie Van Marter and Caitlin Baunsgard, Assistant United States Attorneys for the Eastern District of Washington, submits the following consolidated response to the Defendants' Motions in *Limine* (ECF. 617, 618, 623) and Motion for Bill of Particulars (ECF. 620).

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE - 1

The Defendants have filed several different motions in *limine*, which other Defendants have joined.  The United States is filing this consolidated response in an effort to address all the Defendants assertions in the most efficient manner.

## A.    ADMISSIBILITY OF EXPERT TESTIMONY (ECF. 617)

Defendant HERRERA-FARIAS[1] has submitted a Motion in *Limine* concerning the United States' Notice of Experts.  ECF. 617.  The United States has already responded to a similar objection as raised by Defendant Casillas. *See,* ECF 596. Defendant Farias argues that all such testimony should be excluded because it is both improper expert and lay witness testimony.  To the contrary, the testimony sought to be admitted by the United States, depending on the witness, can be admitted as both lay witness and expert testimony.

As the United States indicated in its previous response, often times the testimony of those who are former members of this Drug Trafficking Organization and therefore, have first-hand knowledge as to the methodologies utilized by the organization, can alleviate the need to present further expert testimony on the issue. The United States anticipates that there will be multiple cooperating defendants who will testify as to their role in this organization, the roles they knew other co-conspirators played and the general functions of the drug trafficking organization. Such testimony, contrary to Defendant's assertions, is not making a lay witness serve

---

[1] Other Defendants have joined in this motion.

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE - 2

as an expert.  Rather, it is proper lay witness testimony based upon their personal involvement; they are not drawing expert opinions but rather restating the facts based upon their personal observations and involvement.

The United States also anticipates calling multiple law enforcement officers who participated in some aspect of this investigation.  They too can properly present lay witness testimony as to the things they observed.  They are also permitted to draw certain conclusions based upon their training and experience that does not rise to the level of expert testimony.

Under Federal Rule of Evidence 701, a lay witness may testify "in the form of an opinion" if it is "(a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." Fed.R.Evid. 701. "Rule 701(a) contains a personal knowledge requirement." *United States v. Lopez*, 762 F.3d 852, 864 (9th Cir.2014). "In presenting lay opinions, the personal knowledge requirement may be met if the witness can demonstrate firsthand knowledge or observation." *Id*. "A lay witness's opinion testimony necessarily draws on the witness's own understanding, including a wealth of personal information, experience, and education, that cannot be placed before the jury." *United States v. Gadson*, 763 F.3d 1189, 1208 (9th Cir. 2014). But a lay opinion witness "may not testify based on speculation, rely on hearsay or interpret unambiguous, clear statements." *United States v. Vera*, 770 F.3d 1232, 1242 (9th Cir.2014).

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE - 3

See also, *United States v. Lloyd*, 807 F.3d 1128, 1154 (C.A.9 (Cal.),2015); *United States v. Freeman*, 498 F.3d 893, 904 (9th Cir.2007)(A law enforcement officer testifying as an expert in drug jargon may also testify as a lay witness if he was involved in the investigation); *United States v. El–Mezain*, 664 F.3d 467, 513–14 (5th Cir.2011) (allowing lay opinion testimony interpreting telephone calls when "the agents' opinions were limited to their personal perceptions from their investigation of this case"); *United States v. Rollins*, 544 F.3d 820, 830–33 (7th Cir.2008) (finding no error in the district court's decision to allow the agent's testimony regarding his "impressions" of recorded conversations when the testimony was "based on the agent's perceptions derived from the investigation of this particular conspiracy"). *United States v. Jayyousi*, 657 F.3d 1085, 1102 (11th Cir.2011) (holding that a lay witness's testimony was admissible even though "he did not personally observe or participate in the defendants' conversations"); *United States v. Garcia*, 994 F.2d 1499, 1507 (10th Cir.1993) (admitting an officer's opinion based only "on listening to the conversations between coconspirators").

Thus, proper law witness testimony derived from their own observations and involvement is appropriate so long as the Court is satisfied as to its relevance and foundation. The next layer of testimony, the proposed expert modus operandi testimony, is based upon the generalities of drug trafficking organizations rather than on anything specific as to this organization as a lay witness would testify. The United States is therefore mindful of any issues where a witness would offer fact testimony

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE - 4

and then propose modus operandi testimony. That is predominantly the reasoning why the United States may elect to not seek expert testimony from all of the witnesses in its notice.  However, whereas here proper notice has been filed, the United States may present such modus operandi testimony to assist the jury in understanding the complexity of international drug trafficking organizations such as this.  The United States would not seek to present testimony as to an ultimate conclusion or fact in this testimony.

Moreover, just because evidence or testimony is damaging to the defendant's case does not make it unduly prejudicial.  Expert testimony may only become unduly prejudicial if the information to which the expert testifies is outside the scope to which the defendant is charged, see *United Sates v. Vallejo*, 237 F.3d 1008 (2001), but the probative value of the testimony must be considered on a case by case basis as required by Fed. R. Evid. 403. *United States v. Sepulveda-Barraza*, 645 F.3d 1066, 1070-1071 (2011) (where the particular finding in Vallejo did not create a per se rule).

The United States understands this will further be weighed during trial but respectfully submits the law allows such testimony as long as the Court is satisfied the underlying bases have been met and the sum and substance remains more probative than prejudicial.

//

//

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE - 5

**B.** **TESTIMONY SOUGHT TO BE EXCLUDED (ECF. 618 & ECF. 623)**

Defendant VASQUEZ-MENDOZA[2] submits the United States should be excluded from presenting various forms of testimony.  ECF. 618.  Defendant BRAVO ZAMBRANO filed a similar request in terms of seeking, in essence, to prohibit the United States from not complying with the Federal Rules of Evidence or the Federal Rules of Criminal Procedure.  ECF. 623.  While the authority the Defendant relies on appears to be mixed federal and state, the United States has no intention of introducing or soliciting the types of testimony referenced in this motion.  The United States is familiar with the Federal Rules of Evidence, and intends to follow them.  The United States respectfully submits a Court Order memorializing such is not necessary.

Paragraph 9 seeks to prevent the United States from "eliciting any testimony concerning criminal profiles of narcotics traffickers."  ECF. 618 at p. 4.  The paragraph appears to detail testimony based on racial or ethnic characteristics.  The United States does not intend to base any testimony on characterizations about anyone based on their race or ethnicity.  The United States *does* however, intend to illicit testimony about the general organization structure of drug trafficking organizations and the various roles its participants play in such organization, as noted in the United

---

[2] Other Defendants have joined in this motion.

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE - 6

States' Notices of Expert.  The United States will also seek to solicit testimony (in a non-cumulative fashion) from cooperating defendants who will be testifying at trial.

Defendant also seeks to exclude any and all booking photographs.  The United States intends on utilizing photographs in presenting an outline to the jury in its opening and closing statements as well through witness testimony. It would be the same photographs utilized in its summary PowerPoint which are not booking photographs.

In a case such as this where there will be testimony as to a number of different coconspirators and evidence that spans a large time period, the use of photographs to aid the jury and witnesses is important.  These photographs are not objectionable.

As previously addressed before the Court, the United States is not aware of any Bruton issues.

## C.    MOTION TO EXCLUDE CO-CONSPIRATOR STATEMENTS.

Defendant REYES-GARCIA and BRAVO ZAMBRANO have moved to exclude all "alleged co-conspirator statements." ECF. 619, 623.  Without addressing any proposed statement with specificity, Defendants have further argued the United States has failed to establish their client's connection to the Conspiracy and must be required to review all proposed testimony at the pre-trial conference in order to determine its admissibility.

First, it is difficult to respond to such an overly broad motion.  The United States has provided to counsel in discovery copies of all the reports to include redacted free

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE - 7

talk reports.  *See*, Attachment A.  Although the identity of the persons in the free talk is redacted at this time, the substance of their proposed testimony as to each Defendant is clear.  Each Cooperating Defendant is also given a number, i.e. CD4 for ease of counsel to review the potential testimony.  Counsel has also been provided the summary PowerPoint utilized for grand jury and an invitation to review the potential evidence against each defendant with assigned counsel.  Yet, counsel has filed this motion without any specificity in order to address which co-conspirator statements are somehow violative of the Rules of Evidence other than to broadly argue all should be excluded.  The United States responds as follows.

  1.  <u>Factual Background as to Zambrano and Reyes</u>:

  ZAMBRANO and REYES, first challenge their connection to the conspiracy. As is outlined in multiple affidavits, summaries and reports, members of the FBI Eastern Washington Safe Streets Violent Gang Task Force- Tri-Cities (EWVGSSTF) have been investigating a transnational drug trafficking organization operating herein the Eastern District of Washington and elsewhere since approximately 2011 identified as the Ivan Hernandez Calvillo Drug Trafficking Organization (DTO). During that investigation, Ivan Hernandez Calvillo (hereinafter Calvillo) and later, Co-Defendant Casillas, were identified as a high-ranking members of the DTO.  Members of the Task Force, through the interviews of multiple cooperating Defendants and drug seizures, learned the DTO was utilizing various methods of distribution to include the use of backpackers to physically carry quantities of cocaine, methamphetamine and

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE - 8

heroin from the Eastern District of Washington through a trail system into Canada. The United States anticipates testimony at trial from various cooperating defendants, noted in the free talk reports already disclosed, about how this trail system worked.

Defendant Reyes Garcia was first identified as working with this DTO in approximately 2011.  Several cooperating Defendants and informants have positively identified the Defendant and his brother, Baltazar Reyes Garcia (not indicted here) as trafficking in large quantities of cocaine and that they worked with the Calvillo DTO. For instance, as noted on Discovery Page CD4_30, one cooperating defendant provided information that Ivan Calvillo, during the time of the conspiracy, told CD4 that the Defendant Reyes and his brother Baltazar owed Ivan $70-80,000.  As a result, when CD4 was in charge of operations for Ivan (2012 into 2013) CD4 stated that Defendant Reyes provided CD4 with 20 pounds of methamphetamine in payment for that debt.

Defendant Reyes, like Defendant Zambrano was also identified as backpacking quantities of narcotics from the EDWA into Canada for this organization. The United States anticipates that there will be source testimony that Defendant Zambrano along with his brother, predominantly were utilized to backpack quantities of narcotics across the border for this organization while Defendant Reyes Garcia as noted above, had been involved more extensively over the years until his arrest noted below.  See, Discovery Pages (to include but not limited to), 10001509, 1000159-

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE - 9

1520, 10002110-2111, 10001035, 10001594, 10001847-1848, 400000011, 37, 670, 717, 722, 741.

During this same time-frame, members of the Boston DEA were conducting a parallel investigation into the money laundering activities of the Calvillo DTO. The DTO was moving bulk cash out of Canada that it had gained through the sale of cocaine, heroin, and methamphetamine. The DEA successfully placed an undercover operator (DEA UC) into the money-laundering network. The basic need the DEA UC filled for the organization was his ability to accept Canadian cash, deposit it, wash it electronically through his business, and then wire US currency out in smaller deposits to Mexico and the United States.  The DEA UC would charge a commission or percentage for the washed cash, keep that percentage and report to Calvillo, and later the Defendant, as to the remaining amount available for wire transfer.  This relationship ultimately cultivated into Calvillo and the organization seeking the DEA UC's assistance in developing a new drug distribution group in Vancouver BC with ties to China.

In October 2014, an undercover money laundering operation was formally initiated by Royal Canadian Mounted Police Federal Serious Organized Crime Unit (RCMP FSOC) members to collect bulk money in the area of Vancouver, British Columbia from the DTO and to deliver it to DEA investigators. RCMP utilized several undercover agents to play the role of the business associates in Vancouver, hereafter referred to as RCMP UC1, 2 and 3.   Between October 2014 and July 2016,

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE - 10

Calvillo, and later the Defendant, were in direct communication with the DEA UC via recorded What's App messenger and arranged for approximately 15 cash money drops to be laundered by the DEA UC.  A code was utilized between the CEA UC, Calvillo and later the Defendant wherein Calvillo or the Defendant provided the DEA UC a serial number of a piece of currency.  The DEA UC would communicate that serial number so that when the two associates would meet, they would compare serial numbers.  Once that was confirmed, the money was handed off.  The amount laundered during these money drops totaled over $1.6 million Canadian Dollars.

In approximately August 2015, Co-Defendant Casillas was introduced to the DEA UC as a partner of Calvillo's.  Several face-to-face meetings, as well as What's App communications, began to occur between the DEA UC and the Defendant.

On August 23, 2015, Calvillo arranged for a cash drop in Vancouver BC as well as the delivery of one kilogram of heroin.  This time Javier Camillo Gomez Calvillo, a.k.a. Angel was sent to make the money drop.  The meet was audio/video recorded.  Angel was driving a blue Mercedes registered to a residence associated with Sobieda Reynosa (previously identified by the RCMP as a girlfriend/associate of an identified leader/organizer in the Vancouver area).  Angel delivered $74,029 in Canadian currency to the Canadian Under Cover (CUC) and a kilogram of heroin to the CUC.  After the DEA UC withdrew the percentage charged for laundering the money, Calvillo directed the DEA UC to wire the remaining funds to accounts in Mexico.

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE - 11

Based upon the identification of the blue Mercedes and Gomez Calvillo, the RCMP followed the activities of Gomez Calvillo.  This surveillance led them to the Grand Forks area, an identified location associated with this organization and backpacking narcotics across the border. The RCMP followed the Mercedes to the Ramada Inn and identified that Reynosa registered for a room at the hotel.  On August 26, 2015, the RCMP was conducting surveillance at the hotel and observed the aforementioned Mercedes leave the hotel at approximately 5:00am occupied by Reynosa and Gomez Calvillo.  Surveillance confirmed its travel toward the border but then lost sight of the vehicle for approximately 15-20 minutes.  When the vehicle was located again, it was coming back toward the hotel, this time with 5 occupants.   The Mercedes returned to the hotel where the five occupants were seen entering into room 203.  A short time later, the vehicle departed the hotel again, this time with four occupants.  A traffic stop was initiated and all occupants were arrested.  The driver was identified as Sobieda Reynosa the passengers were identified Defendants Juan Bravo Zambrano, Marciel Zambrano and fugitive Javier Camilo Gomez Calvillo.

A search warrant was obtained and on August 27, 2015, the search warrant was executed on the vehicle.  Inside a secret compartment in the vehicle, RCMP located approximately 18 kilograms of methamphetamine, 4 kilograms of cocaine, 171 grams of heroin, $50,000 in UC currency, two loaded firearms, ammunition, several backpacks, walkie talkies, jackets and one cellular phone.  A search warrant was also obtained for two rooms identified as utilized by these individuals at the

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE - 12

Ramada Inn. Located inside the room was the Defendant, Miguel Reyes Garcia confirmed to be the fifth person seen earlier in the car.  It was further confirmed that the general location where the Mercedes traveled to at 5:00 a.m., returning with three additional passengers, correlates directly with a trail head location utilized by the Calvillo DTO.  Inside the motel room agents seized the Defendant's wallet, a receipt and multiple cellular telephones.

The controlled substances were tested in Canada as well as by the DEA laboratory and returned with the following results:  (1) 16,606 grams of actual methamphetamine; (2) 2005 kilograms of cocaine  and (3) 99.3 grams of heroin.

Subsequent fingerprint testing of the packages of controlled substances revealed a number of fingerprints to include several belonging to the Defendant.

After his arrest, Defendant Reyes Garcia was deported back to Mexico from Canada and was identified as unlawfully returning to the EDWA in 2016 and again working for the DTO as well as his brother, Baltazar Reyes Garcia.  Defendant Zambrano was deported back to the United States where he was not seen in the area again until just prior to his arrest in 2016.

2.  Conspiracy Law

The United States and the Defendants agree that in order to convict the Defendant of Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of Fentanyl, in

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE - 13

violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation

of 21 U.S.C. § 846, the United States would have to prove beyond a reasonable doubt

the following elements:

> First, beginning on a date unknown but by on or about January 2010 continuing until on or about December 6, 2016, the Defendant, in the Eastern District of Washington, entered into an agreement with one or more persons to commit the crime of distribution of methamphetamine and/or Cocaine and/or Heroin and/or Fentanyl as charged in the Second Superseding Indictment;

> *Second*, the Defendant became a member of the conspiracy knowing of at least

one of its objects and intending to help accomplish it and;

> *Third,* the agreement to distribute involved more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of Fentanyl and would be reasonably foreseeable to a member of the conspiracy.

Conspiracy in its broadest sense is a "partnership in criminal purposes."

*United States v. Kissel*, 218 U.S. 601, 608 (1910); see also *United States v. Inryco,*

*Inc.*, 642 F.2d 290, n.6 (9th Cir.), cert. dismissed 454 U.S. 1167 (1982); *Marino v.*

*United States*, 91 F.2d 691, 694 (9th Cir. 1937).  Direct evidence of the agreement is

not required; a conspiracy may be proven by circumstantial evidence that the

defendants acted together with a common goal.  *United States v. Iriate-Ortega*, 113

F.3d 1022 (9th Cir.), cert. denied, 523 U.S. 1012 (1998); *United States v. Disla*, 805

F.2d 1340, 1348 (9th Cir. 1986); *United States v. Bibbero*, 749 F.2d 581, 587 (9th Cir.

1986).  The agreement may be inferred from the circumstances and the defendants'

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE - 14

acts pursuant to the scheme. *Disla*, 805 F.2d at 1348; *Bibbero*, 749 F.2d at 587.

Coordination between conspirators is strong circumstantial proof of agreement; as the degree of coordination between conspirators rises, the likelihood that their actions were driven by an agreement increases. *Iriate-Ortega*, 113 F.3d at 1024.

The government need not prove that each conspirator participated in every overt act within the conspiracy. *United States v. Burreson*, 643 F.2d 1344, 1348 (9th Cir.), cert. denied, 454 U.S. 830 (1981). Further, the Government need not show that a particular defendant committed an overt act within the district in which he is charged, or that the defendant even entered the district, as long as one of his co-conspirators did. *United States v. Meyers*, 847 F.2d 1408 (9th Cir. 1988).

Once the existence of a conspiracy is established, evidence of only a "slight connection" to it by a defendant is sufficient to convict him or her with knowing participation in the conspiracy. *United States v. Buena-Lopez*, 987 F.2d 657, 659 (9th Cir. 1993); *Meyers*, 847 F.2d at 1413; *United States v. Taylor*, 802 F.2d 1108, 1116 (9th Cir.) cert. denied, 479 U.S. 1094 (1987). The term 'slight connection' means that a defendant need not have known all the conspirators, participated in the conspiracy from its beginning, participated in all its enterprises, or known all its details. *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir.2001). However, the connection to the conspiracy must be shown to be "knowledgeable". *Meyers,* 847 F.2d at 1413. This is provided for when the Government proves beyond a reasonable doubt that the defendant knew of his connection to the charged conspiracy. United

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE - 15

*States v. Johnson*, 297 F.3d 845, 868 (9th Cir. 2002). The Court must not just look to the characteristics of individual transactions but to "the 'entire course of dealing' " between alleged co-conspirators. *United States v. Moe*, 781 F.3d 1120, 1125 (9th Cir.) cert. denied, 136 S. Ct. 342, 193 L. Ed. 2d 246 (2015), quoting, *United States v. Mincoff*, 574 F.3d 1186, 1194 (9th Cir.2009) (affirming conspiracy conviction where seller's fronting of drugs "demonstrated mutual trust" and showed shared stake in buyer's successful retail sales); See also, *United States v. Webster*, 623 F.3d 901, 907 (9th Cir.2010) (affirming conspiracy conviction where defendant received kickbacks from buyer and fronted drugs on credit, showing shared stake in profits); *United States v. Dinardo*, 527 F. App'x 621, 623 (9th Cir. 2013).

A single conspiracy can be demonstrated by evidence showing that "each defendant knew, or had reason to know, ... that his benefits were probably dependent upon the success of the entire operation." *United States v. Duran*, 189 F.3d 1071, 1080 (9th Cir.1999). "Typically, the inference of an overall agreement is drawn from proof of a single objective ... or from proof that the key participants and the method of operation remained constant throughout the conspiracy." *Id.*

Here, as the United States noticed in its notice of expert, there are multiple roles played by multiple members of this overall conspiracy; many of them not knowing necessarily all of the parts and players. Such is not required under the law. The Defendants roles were identified as that of transporters, responsible for backpacking quantities of various narcotics across the border. This role played out

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE - 16

when these Defendants, along with two others, were stopped by the RCMP after

illegally packing across the border.  As charged in the conspiracy, there were

substantial quantities of methamphetamine, cocaine and heroin seized along with all

of the physical evidence needed to support the argument as to this role.  Defendant

Reyes' fingerprints were also located on all of the packaging.  The Defendants and

their fellow backpackers, were picked up at the border by an individual's who had just

completed a money delivery in Canada at the direction of Ivan Calvillo the day before.

Without the Defendant and others willing to backpack these large quantities across the

border, the success of the entire venture would be in jeopardy.  The United States

submits the connection to this conspiracy for both defendants has been established

therefore, statements made by coconspirators in furtherance of that conspiracy would

be admissible.

      3.  <u>Admission of Statement of a Coconspirator</u>

      A statement by a co-conspirator, during the course and in furtherance of the

conspiracy, is not hearsay and is admissible against other members of the conspiracy,

pursuant to Fed. R. Evid. 801(d)(2)(E).  "[Preliminary facts relevant to co-conspirator

hearsay need only be shown by a preponderance of the evidence when the preliminary

facts relevant to Rule 801(d)(2)(E) are disputed, the offering party must prove them by

a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171 (1987); see

also *United States v. Liera*, 585 F.3d 1237 (9th Cir. 2009).  Before an alleged co-

conspirator's statement can be admitted into evidence under Rule 801(d)(2)(E), the

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE - 17

government must establish that the declarant knowingly participated in a conspiracy. See *United States v. Castaneda*, 16 F.3d 1504, 1507 (9th Cir.1994) ("[A]n accused's knowledge of and participation in an alleged conspiracy with the putative co-conspirator are preliminary facts that must be established, by a preponderance of the evidence, before the co-conspirator's out of court statements can be introduced into evidence.").

The government bears the burden of proving the existence of a conspiracy involving the defendant and the alleged co-conspirator at the time the statement in question was made before the co-conspirator's statements can be admitted as evidence. *Bourjaily*, 483 U.S. at 175. A primary issue with regard to establishing this element is the amount of independent evidence the government must present to prove the existence of a conspiracy. *Id.* In *Bourjaily*, the Supreme Court held that the declarant's statement in question may itself be considered in deciding the threshold question of whether a conspiracy existed. *Id.* at 178. This decision eliminated the prior requirement that the Government provide sufficient independent evidence of a conspiracy. *Id.*

This holding in *Bourjaily* was codified in the 1997 amendment to Rule 801(d)(2)(E) when it was stated expressly that the court shall consider the contents of a co-conspirator's statement in determining "the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered." Fed. R. Evid. 801(d)(2) advisory committee's note. The 1997 amendment

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE - 18

however, also settled an issue that was undecided by the Court in *Bourjaily* in that it provides that the co-conspirator's statement by itself does not suffice to establish the existence of a conspiracy; the court must also consider the circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement was made, or independent evidence corroborating or contradicting the statement. *Id.* This addition to the Rule is consistent with the holding of every courts of appeals that haves considered this issue. See, *United States v. Silverman*, 861 F.2d 571, 577 (9th Cir. 1988). See, e.g., *United States v. Tamez*, 941 F.2d 770, 775 (9th Cir. 1991) (citing *United States v. Gordon*, 844 F.2d 1397, 1402 (9th Cir. 1988)); *United States v. Bowman*, 215 F.3d 951, 960–61 (9th Cir.2000).

Thus, when the proponent of a co-conspirator's statement offers no additional proof of defendant's knowledge of and participation in the conspiracy, the statement must be excluded from evidence. Where, on the other hand, some additional proof is offered, the court must determine whether such proof, viewed in the light of the co-conspirator's statement itself, demonstrates by a preponderance of the evidence that defendant knew of and participated in the conspiracy." *United States v. Diaz*, 2014 WL 1668600, at *8 (9th Cir. 2014), citing *Silverman*, 861 F.2d at 578.

Lastly, in order for the statement to be admissible the government must also establish that the statement was made in furtherance of the conspiracy. *United States v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir. 1988). The Ninth Circuit has strictly construed the "in furtherance of the conspiracy requirement." See *United States v.*

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE - 19

*Foster*, 711 F.2d 871 (9th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984); *United States v. Fielding*, 645 F.2d 719, 726 (9th Cir.1981) (holding that the "in furtherance requirement" has remained viable).

Mere conversations between co-conspirators, or merely narrative declarations among them, are not made "in furtherance" of a conspiracy. *United States v. Layton*, 720 F.2d 548, 556–57 (9th Cir.1983), cert. denied, 465 U.S. 1069, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984) (narrations of past events inadmissible while expressions of future intent are admissible); *United States v. Eubanks*, 591 F.2d 513, 521 (9th Cir.1979). To be "in furtherance," the statements must further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy. *Yarbrough*, 852 F.2d at 1535; *Layton,* 720 F.2d at 556. Statements made to induce enlistment or further participation in the group's activities are also considered to be "in furtherance" of the conspiracy. *United States v. Dorn*, 561 F.2d 1252, 1256–57 (7th Cir.1977) (per curiam), overruled on other grounds, *United States v. Read*, 658 F.2d 1225, 1236 n. 6 (7th Cir.1981). Likewise, statements made to prompt further action on the part of conspirators are admissible under 801(d)(2)(E), *United States v. Kendall*, 665 F.2d 126, 133 (7th Cir.1981), *cert. denied*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982), as are those made to "reassure" members of a conspiracy's continued existence.  *United States v. Mason*, 658 F.2d 1263, 1270 (9th Cir.1981). Statements made to allay a coconspirator's fears are likewise admissible. *Eubanks*, 591 F.2d at 521 n. 7. Most importantly, statements made to keep coconspirators abreast of

an ongoing conspiracy's activities satisfy the "in furtherance" of requirement. *United States v. Eaglin*, 571 F.2d 1069, 1083 (9th Cir.1977), *cert. denied*, 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978); *Moody*, 778 F.2d at 1382 (statements made to "higher ups" of the group are "in furtherance").

When inquiring whether a statement was made "in furtherance of" a conspiracy, the court does do not focus on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement. *United States v. Zavala–Serra*, 853 F.2d 1512, 1516 (9th Cir.1988); See, *United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991); See also *United States v. Williams*, 989 F.2d 1061 (9th Cir. 1993) (holding that co-conspirator's statement meant to keep another co-conspirator abreast of conspiracy's activities was in furtherance of conspiracy, while co-conspirator's statement of anger toward defendant was not in furtherance of conspiracy);  See also, *United States v. Anderson*, 813 F.2d 1450 (9th Cir. 1987); United States v. *Crespo de Llano*, 838 F.2d 1006 (9th Cir. 1988).

In sum, really all that is required of the Government in order to prove this element is a showing that the statement in some way helped the conspirators achieve their intended objectives. *Id.*  See also *United States v. Smith*, 893 F.2d 1573 (9th Cir. 1990) (holding that a calendar/drug ledger was admissible as co-conspirator's statement where prosecution established that ledger furthered the conspiracy to distribute cocaine).

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE - 21

1
2
3
4
5
6
7
8
9

Here the Defendants have failed to articulate what statements should be excluded.  There are a number of witnesses who will identify the Defendants as a playing a role in this organization in part based upon conversations directly with the Defendants or with other identified conspirators to include Calvillo that were made during and furtherance of the conspiracy.  The United States would submit that the motion at this time is too broad and likely premature.  The United States is aware of its foundational requirements to admits such statements.

10

**D.      <u>MOTION FOR A BILL OF PARTICULARS</u>**

11
12
13
14
15
16
17
18
19
20
21
22
23
24

Defendant REYES-GARCIA has moved the Court for a bill of particulars. <u>ECF.</u> 620.  As the Defendant notes, Rule 7(f) provides that a Defendant can move for a Bill of Particulars "before or within 14 days after arraignment or at a later time if the court permits."  Fed. R. Crim. P. 7(f).  The Defendant now, after this case has been pending for approximately 2 years, seeks relief from the Court for a bill of particulars contending that he is unable to prepare his defense because he is unable to ascertain the nature of the case against him.  <u>ECF.</u> 620.  Such a statement is concerning given the amount of discovery and the amount of time counsel has had to review it.  Rather, this appears to be more of an attempt to identify sources of information and cooperating defendant's identities prior to the Court's Ordered disclosure.

25
26
27
28

Federal Rule of Criminal Procedure 7(c)(1) directs that an indictment must "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." It must contain the elements of the offense, and include a statement

of facts and circumstances " 'that will inform the accused of the elements of the specific offense.'" *United States v. Martin*, 783 F.2d 1449, 1452 (9th Cir. 1986), abrogated on other grounds by *Schmuck v. United States*, 489 U.S. 705 (1989) (quoting *United States v. Christopher*, 700 F.2d 1253, 1257 (9th Cir. 1982)). An indictment should be read in its entirety, be construed according to common sense, and be interpreted to include facts which are necessarily implied. *United States v. Sialofi,* 2014 WL 12689872, at *2 (D.Alaska, 2014).

As the noted in *Sialofi*, "When evaluating a bill of particulars request, the court must consider whether the indictment, together with the other disclosures made by the government, adequately advise the defendant of the charges against him. *Id,* Citing, *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983) The rule is not intended to serve as a vehicle to obtain discovery from the government.  A request for a bill of particulars cannot be used to "force [the] Government to spread its entire case before [the] accused." *Id.*

A bill of particulars should not be expanded into a device to circumvent the restrictions on pre-trial discovery contained in FED. R. CRIM. P. 16.  *Cooper v. United States*, 282 F.2d 527, 532 (9th Cir. 1960) ("it is not the function of bill of particulars to force [the] Government to spread its entire case before the accused. . . ."). "A defendant 'is not entitled to know all the evidence the government intends to produce but only the theory of the government's case.'" *United States v. Gutierrez*,

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE - 23

1991 U.S. App. LEXIS 4735, at *2 (9th Cir. 1991) (quoting *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986)).

A "request for the when, where, and how of every act in furtherance of [a] conspiracy, [is] equivalent to a request for complete discovery of the government's evidence, which is not a purpose of the bill of particulars." *United States v. Giese*, 597 F.2d 1170, 1181 (9th Cir. 1979) (denying bill of particulars requesting how each of the overt acts contributed to the charged scheme, how certain alleged co-conspirator's statements were made in furtherance of the scheme, and a list of acts performed by each participant in furtherance of the conspiracy).

The only legitimate purpose served by a bill of particulars is to give defendants sufficient information about the nature of the pending charges so that they may: (1) prepare for trial; (2) avoid prejudicial surprise at trial; and (3) plead acquittal or conviction as a bar to another prosecution for the same offense. *Giese*, 597 F.2d at 1180. "These purposes are served if the indictment itself provides sufficient details of the charges and if the Government provides full discovery to the defense." *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984); see also *Giese,* 597 F.2d at 1180; United States v. Long, 706 F.2d 1044, 1054 (9th Cir. 1983); *United States v. Federbush*, 625 F.2d 246, 252 (9th Cir. 1980). See *United States v. Robertson*, 15 F.3d 862, 873–74 (9th Cir.1994) (a court may properly deny a motion for a Bill of Particulars in a drug conspiracy case where there is no risk of prejudice or surprise to

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE - 24

1   defendants), rev'd on other grounds, 514 U.S. 669, 115 S.Ct. 1732, 131 L.Ed.2d 714

2   (1995) (per curiam).

3       The United States has provided extensive discovery in this matter, discovery

4   which has been handled through a discovery coordinator on behalf of the Defendant.

5   *See*, Attachment A.  In addition to the extensive discovery, the United States has

6   provided to counsel a summary of the grand jury testimony, a proposed plea

7   agreement which contains summarized facts pertaining to the Defendant's

8   involvement  and has met with counsel several times to discuss the nature of the

9   evidence against Defendant Reyes Garcia.  This information has also included

10  discussion as to the proposed expert testimony pertaining to the Defendants

11  fingerprints on the above referenced backpacked narcotics.

12      The United States submits this request for Bill of particulars, which is clearly

13  an attempt to glean the specifics of the Government's case in chief be denied.

14  //

15  //

16  //

17  //

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE - 25

**E.**     **TESTIFYING WITNESSES EXCLUDED FROM THE COURTROOM**

Defendant BRAVO-ZAMBRANO requests that all witnesses be excluded

from the courtroom in advance of their testimony pursuant to Fed. R. Evid. 615.  ECF.

623 a p. 8.  The United States has no objection to this request.

DATED this 20th day of February 2018.


Joseph H. Harrington
United States Attorney


*s/ Stephanie Van Marter*
Stephanie Van Marter
Assistant United States Attorney


*s/ Caitlin Baunsgard*
Caitlin Baunsgard
Assistant United States Attorney

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE - 26

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2018, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following:

Richard A. Smith, rasmith@house314.com
Kenneth Therrien, kentherrien@msn.com
Peter Schweda, pschweda@wsmattorneys.com


_s/ Stephanie Van Marter_____
Stephanie Van Marter
Assistant United States Attorney

UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS IN LIMINE - 27