JOSEPH H. HARRINGTON
United States Attorney
Eastern District of Washington
Stephanie Van Marter
Caitlin Baunsgard
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) 2:15-CR-6049-EFS-19 |
| | ) |
| vs. | ) United States' Response to |
| | ) Defendants Motion to |
| JUAN BRAVO ZAMBRANO, | ) Suppress Evidence (ECF 622 |
| | ) and 624) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

_____

       Plaintiff, United States of America, by and through Joseph Harrington, United

States Attorney, for the Eastern District of Washington, Stephanie Van Marter and

Caitlin Baunsgard, Assistant United States Attorneys for the Eastern District of

Washington, submits the following Response to Defendant's Motion in Suppress

evidence obtained from the search of his residence.  *See*, ECF 622 and 624.

       Defense seeks to suppress the evidence obtained from the search of his

residence arguing *first*¸ law enforcement entered the residence unlawfully to effectuate

the arrest of the Defendant pursuant to federal arrest warrant and *second,* the affiant committed a *Franks v. Delaware* violation in the affidavit by failing to include that the Defendant had a medical marijuana license.  The United States responds as follows.

## I.    BACKGROUND

As noted in Defendant's Attachment B, ECF 624, on December 6, 2016, a federal arrest warrant was issued for Juan Bravo Zambrano.  In an effort to effectuate that arrest warrant, agents responded to his last known address in Benton City.  As was reported in the affidavit, although the officers identified themselves as law enforcement, they utilized a ruse as basis for wanting to locate Mr. Zambrano rather than disclosing the nature of the arrest warrant.  Law enforcement made contact at the first residence they knew to be utilized by the Defendant.  A subject there advised that the Defendant had moved to a neighboring residence.

Law enforcement responded to that neighboring residence.  Prior to making contact, TFO Stanley observed a vehicle parked ta the location that he knew to be utilized by the Defendant.  In fact, TFO Stanley had applied for and obtained a tracking warrant for that same vehicle based upon belief it was being utilized to facilitate drug trafficking.  *See*, 4:16-mj-07029-MKD.   As noted in the affidavit, upon approach to the residence, TFO Stanley and TFO Gilbert made contact with the Defendant's girlfriend.  As soon as she opened the door, TFO Stanley smelled the strong odor of marijuana coming from the residence.  TFO Stanley, using the same ruse, inquired if the Defendant was home.  Ms. Sanchez affirmed he was inside the residence and pointed down the hallway toward the bedroom.  Contrary to Defendant's motion, Ms. Sanchez did not shut the door.  *See*, ECF 622 at 3.  As the officers would testify, the door remained open as she pointed down the hallway gesturing to the agents where the Defendant was located.  It was only then that TFO Stanley entered into the house.  No breach of the door occurred.

1  Once TFO Stanley confirmed the Defendant was inside, he stepped inside the
2  doorway when he observed the Defendant exiting a bedroom. TFO Stanley
3  approached the Defendant and placed him under arrest. Two other officers made a
4  quick safety sweep of immediate area of the arrest for officer safety. *See*, ECF 624-2
5  at 29 or Discovery Page 00001013.

6  During this cursory sweep, officers observed a 10 plant marijuana grow
7  operation which was located in a grow room completely covered in foil; easily
8  observable from the hallway of the small residence. Agents also observed
9  approximately 1 pound of processed marijuana and multiple firearms. *See*,
10  Attachment A. The house was then secured in anticipation of seeking a warrant.

11  Once the warrant was obtained, agents effectuated the search of the residence.
12  The marijuana grow was processed for evidence and in addition to the one pound of
13  processed marijuana, agents located what was believed to be an additional 8 pounds of
14  processed marijuana, multiple firearms, a baggie of methamphetamine, 9 cellular
15  telephones, multiple walkie talkies and indicia belonging to the Defendant some of
16  which included information pertaining to his Canadian deportation. The issue of a
17  medical marijuana license was not raised to the agents at the time nor was any license
18  provided.[1]

## II.  ARGUMENT

### A.  LAW ENFORCEMENT LAWFULLY EFFECTUATED THE ARREST OF THE DEFENDANT AND IN DOING SO WERE JUSTIFIED TO CONDUCT A CURSORY SEARCH OF THE AREA OF HIS ARREST FOR OFFICER SAFETY.

---

[1] TFO Stanley is out on leave and not available so may supplement these facts at the time of hearing. TFO Gilbert would testify he does not recall any discussion about a medical marijuana license from any party present to include the girlfriend. TFO Gilbert is fluent in Spanish and did provide translation to TFO Stanley.

Although there is a presumption of invalidity attaching to warrantless entry of a residence, "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *United States v. Gooch,* 506 F.3d 1156, 1158 (9th Cir. 2007), citing *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). See also *Steagald v. United States,* 451 U.S. 204, 214 n. 7, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) ("Because an arrest warrant authorizes the police to deprive a person of liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home.").  In order to enter a residence to execute an arrest warrant, the police must still have probable cause to believe the suspect is within the residence. *United States v. Gorman*, 314 F.3d 1105, 1110–11 (9th Cir.2002).

As further noted buy the Ninth Circuit in *Gooch*,

> We hold that a valid arrest warrant issued by a neutral magistrate judge, including a properly issued bench warrant for failure to appear, carries with it the limited authority to enter a residence in order to effectuate the arrest as provided for under *Payton*. The Fourth Amendment presumption against warrantless entries into the home is designed to protect privacy interests against uncabined police discretion. *Payton*, 445 U.S. at 586, 100 S.Ct. 1371 ("[W]e have long adhered to the view that the warrant procedure minimizes the danger of needless intrusions [into the home]."). Those interests are sufficiently safeguarded when an entry is premised on the execution of a valid arrest warrant issued by a judge or magistrate, regardless of whether that warrant is for a felony, a misdemeanor, or simply a bench warrant for failure to appear.

*Gooch*, 506 F.3d  at 1159.

Once lawfully inside the residence to effectuate the arrest of the Defendant, Officers are justified to make a brief and cursory protective sweep for officer safety. *Maryland v. Buie*, 110 S.Ct. 1093, 1099, 494 U.S. 325, 335–36 (U.S. 1990).  As the Supreme Court noted in *Buie*, "We should emphasize that such a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is

nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises."

As further analyzed in *United States v. Lemus,* 582 F.3d 958, 962–64 (9th Cir. 2009*),* the Ninth Circuit following the reasoning of *Buie,* noted the following:

> Because the record clearly demonstrates that Lemus was arrested in an area "immediately adjoining" the living room, a limited search of that room was proper without either reasonable suspicion or probable cause as a protective search incident to the arrest. (Citing *Brui,* 494 U.S. at 1093.)

> According to *Buie,* a "protective search 'incident to the arrest' "to protect the arresting officers from the danger of a surprise attack can be completed without reasonable suspicion or probable cause if two conditions are present. First, the area searched must "immediately adjoin [ ]" the area of arrest. *Id.* Second, the area searched must be one "from which an attack could be immediately launched," and thus in any event must be capable of concealing at least one person. *Id.* Both of these conditions are satisfied here.

See also, *Cf. Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 628 (7th Cir.2008) (holding that it was not a constitutional violation, under Buie, for a police officer to enter the plaintiff's house after the plaintiff's arrest in the attached garage); *United States v. Charles*, 469 F.3d 402, 405-06 (5th Cir.2006) (holding that *Buie* permitted a search of an open storage unit when the suspect was arrested immediately outside); *United States v. Thomas*, 368 U.S.App.D.C. 285, 290-91, 429 F.3d 282, 288 (D.C.Cir.2005) (holding that *Buie* permitted the search of a bedroom fifteen feet down a hallway in which the suspect was *964 arrested); In re Sealed Case, 153 F.3d 759, 763, 770 (D.C.Cir.1998) (holding that *Buie* permitted a search of a small bedroom a few feet down the hallway from the bedroom in which the suspect was arrested); *United States v. Lauter*, 57 F.3d 212, 216-17 (2d Cir.1995) (holding that, under *Buie,* the second room in a two-room apartment immediately adjoined the first room in which the suspect was arrested).

Contrary to the Defendant's memorandum, this is not a "knock and announce" analysis.  Rather, as affirmed by Supreme Court precedent, once the agents confirmed the Defendants presence inside the residence, they were authorized to enter to effectuate the arrest.  The agents were also authorized to conduct a cursory protective sweep for officer safety and in doing so, the agents observed evidence which warranted the further application for a federal search warrant.   On these grounds, the Defendants request to suppress all evidence should be denied.

### B. DEFENDANT HAS NOT MADE REQUISITE SHOWING FOR A *FRANKS* EVIDENTIARY HEARING.

Defendant's next argument to suppress the evidence obtained from the search of his residence, is to allege the affiant intentionally omitted material information in the affidavit for search warrant. The Defendant alleges the affiant's failure to include information that Defendant had a medical marijuana license was an intentional omission material to the determination of probable cause and has therefore requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  Although it is true that the affiant did not include information in the affidavit pertaining to a medical marijuana license, a license produced after the effectuation of the search warrant, that information was neither intentionally withheld nor was it material to the finding of probable cause here.

In order to obtain a *Franks* hearing, the Defendant bears the burden of making a substantial preliminary showing that both the state of mind and materiality elements are met proving that 1) the affiant intentionally or recklessly omitted information from the affidavit, and 2) the omitted information was material to a finding of probable cause.  *See e.g. United States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002). Here, the Defendant does not satisfy either requirement.  The alleged omissions cited by Defendant involved information that is not material because the inclusion of the omitted statements would not have affected the probable cause determination.  No

*Franks* hearing is required because, even if all the statements cited by the Defendant was incorporated into the affidavit, there would still be an adequate factual basis to establish probable cause. It is the movant's burden to make a substantial showing to support both elements, and there is an assumption of validity underlying a supporting affidavit. *Chavez-Miranda,* 306 F.3d at 979. Accordingly, this Court should deny the Defendant's request for a *Franks* hearing.

1. <u>The Defendant has not established that the affiant made a falsity in reckless disregard for the truth.</u>

The first element of the *Franks* test addresses the affiant's state of mind concerning each omission. The Defendant bears the burden of establishing that the affiant intentionally or recklessly disregarded the truth. *United States v. Hernandez*, 80 F.3d 1253, 1260 (9th Cir. 1996). This "state of mind" test must be satisfied with respect to every alleged omission on which the defendant intends to rely. *See e.g. United States v. Meling*, 47 F.3d 1546, 1553-1556 (9th Cir. 1995) (omissions that are intentional or reckless must be corrected, but other omissions should not be corrected). The key issue is whether the affiant was trying to "manipulate the inferences a magistrate will draw" from the facts in the affidavit. *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985), *as amended*, 767 F.2d 1410 (1986).

Allegations of negligence, poor judgment, or innocent mistake by the affiant are not sufficient. *Franks*, 438 U.S. at 171 (a misstatement in an affidavit that is merely the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, will not render invalid the warrant that is based on it). Further, making bare assertions that an affiant knew the truth and failed to include it in an affidavit does not, without more, establish that the omission was a result of anything other than negligence or innocent mistake. *See United States v. Collins*, 61 F.3d 1379, 1384 (9th Cir.), *cert. denied*, 516 U.S. 1000 (1995) ("bare assertion that the omission of the June date was deliberate "because the [ATF] agents knew the truth and failed to

include it in the warrant application," does not establish that the omission was the result of anything other than negligence or innocent mistake); *United States v. Miller*, 753 F.2d 1475, 1478 (9th Cir. 1995) (same).

In *Chavez-Miranda*, the Ninth Circuit noted that the defendant did not offer any evidence to support the claim that the omissions were reckless or intentionally misleading, noting the "bare assertion" fell short of the showing necessary to obtain a *Franks* hearing. 306 F.3d 973. (citing *United States v. Dozier*, 844 F.2d 701, 705-06 (9th Cir.), *cert. denied*, 488 U.S. 927 (1988) (denying a *Franks* hearing when defendant failed to prove that omissions and false statements were intentional)).

While it is difficult for the Defendant to make the showing of the requisite nefarious state of mind, it is still required to prevail:

> Here, there is no evidence in the record directly illuminating the state of mind of the affiant . . . for [the defendant] proved little more than that these omissions were made. Doubtless it will often be difficult for an accused to prove that an omission was made intentionally or with reckless disregard rather than negligently unless he has somehow gained independent evidence that the affiant had acted from bad motive or recklessly in conducting his investigation . . . .

*United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980).

Here, Defendant has made no more than a bare assertion that the affiant omitted facts with deliberate or reckless disregard. Defendant asserts that the affiant omitted facts that Defendant's marijuana grow was a legal one, arguing that the affiant was somehow placed on notice by what he observed, that this grow was authorized under a medical marijuana license. First, the agents were arresting the Defendant for a mandatory minimum drug trafficking warrant. Upon the arrest, they made the observations as to firearms present and an active marijuana grow. Contrary to the assertions of counsel, the occupants did not make it clear nor did they present a medical marijuana license. Moreover, under federal law, agents are still authorized to

investigate and pursue marijuana violations especially in light of what was observed when they entered the residence.  None of which was consistent with a lawful marijuana grow.

On December 16, 2014, the United States Congress passed an appropriations rider, commonly known as § 538. Pub. L. No. 113-235, 128 Stat. 2130. This rider was reenacted as Section 542 in the Consolidated Appropriations Act of 2016. Pub. L. No. 114-13, 129 Stat. 2242, 2332-33, § 542. The rider was again included in the Continuing Appropriations Act of Fiscal Year 2017, which extended funding of the Government from December 28, 2015 through April 28, 2017. The Ninth Circuit Court of Appeals addressed the application of Section 542. *See United States v. McIntosh,* 833 F.3d 1163, 1178 (9th Cir. 2016). The Ninth Circuit held that the Department of Justice may use appropriated funds to prosecute individuals who did not strictly comply with every condition imposed by state law.

In *State v. Reis*, the Supreme Court of Washington held that because portions of the 2011 engrossed bill were vetoed by then Governor Christine Gregoire, it became legally impossible for an individual to comply with the requirements of R.C.W. § 69.51A.040. *State v. Reis,* 183 Wash. 2d 197, 214 (2015). In particular, the Court looked to the portion of .040 that required registering with the Department of Health and noted that Section 901 of the engrossed bill was vetoed by Governor Christine Gregoire and therefore no registry was ever established. The Defendant in *Reis* urged the Court to simply disregard that portion of the statute. However, the Court held that "[s]tatutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous." *Reis,* 183 Wash. 2d at 210 (quoting *State v. J.P.,* 149 Wash. 2d 444, 450 (2003)).

As the Court noted in *McIntosh,* where the conduct is not in full compliance with the requirements of the statute, the conduct of Defendant is unauthorized by law. Because it is legally impossible for Defendant to have strictly complied with all the

conditions required by Washington law, Section 42's restrictions on appropriated funds and therefore the agents ability to further investigate marijuana violations, does not apply in this case.

When affiant served the valid arrest warrant and arrested Defendant, affiant observed 10 marijuana plants, which on its face without more information at the time, is more than R.C.W. § 69.51A.210 allows without proof of a designated provider[2]. The affiant was more than justified in seeking a search warrant to further investigate. The failure to include the possibility of a medical marijuana license that was not known to the affiant was not an intentional omission.   Defendant's attempt to assert an affirmative defense is not only lacking in evidence, but it has no effect in undermining the probable cause for a search warrant. *See Reis,* 183 Wash. 2d at 218; *State v. Fry,* 168 Wash. 2d 1, 6, 228 P.3d 1 (2010).

2. The alleged omission was not material to finding probable cause.

---

[2] "As part of authorizing a qualifying patient or designated provider, the health care professional may include recommendations on the amount of marijuana that is likely needed by the qualifying patient for his or her medical needs and in accordance with this section.

(1) If the health care professional does not include recommendations on the qualifying patient's or designated provider's authorization, the marijuana retailer with a medical marijuana endorsement, when adding the qualifying patient or designated provider to the medical marijuana authorization database, shall enter into the database that the qualifying patient or designated provider may purchase or obtain at a retail outlet holding a medical marijuana endorsement a combination of the following: Forty-eight ounces of marijuana-infused product in solid form; three ounces of useable marijuana; two hundred sixteen ounces of marijuana-infused product in liquid form; or twenty-one grams of marijuana concentrates. The qualifying patient or designated provider may also grow, in his or her domicile, up to six plants for the personal medical use of the qualifying patient and possess up to eight ounces of useable marijuana produced from his or her plants. These amounts shall be specified on the recognition card that is issued to the qualifying patient or designated provider."

1

2

3

4

5

6

7

8

9

The second element of the *Franks* test addresses the materiality of the omission to the determination of probable cause. In determining materiality, "the pivotal question is whether an affidavit containing the omitted material would have provided a basis for a finding of probable cause." *Chavez-Miranda,* 306 F.3d at 979 (quoting *United States v. Garcia-Cruz,* 978 F.2d 537, 541 (9th Cir. 1992)). Even if this Court finds that the affiant deliberately or recklessly omitted Defendant's alleged legal medical marijuana grow, it was not material to the finding of probable cause to issue a search warrant for Defendant's residence. Affiant's affidavit details sufficient facts to support the search warrant.

10

11

12

13

14

15

16

17

18

The affidavit first reviewed the long investigation into a transnational drug trafficking organization operating in the Eastern District of Washington since at least 2011. *See* ECF No. 624-2.   The Defendant was predominantly identified as a backpacker who transported large quantities of narcotics across the border from the United States to Canada[3]. The affidavit then detailed the Defendants arrest in Canada consistent with his role as the identified backpacker. *Id.*  During the search of the vehicle that picked up the Defendant and the other backpackers, agents found 18 kilograms of methamphetamine, 4 kilograms of cocaine, 171 grams of heroin, $50,000 in U.S. currency, two loaded firearms, empty backpacks and walkie talkies.

19

20

21

22

23

24

25

26

27

---

[3] The United States in preparation for this response noted an error in paragraph 15 of the affidavit.  Although the information is correct as to the Defendant being identified along with his brother as a backpacker by multiple sources, the information was not testified to before a federal grand jury.  The United States would pose that the clause "who testified before the grand jury" be stricken.  In fact the entire paragraph could be stricken and it would not impact probable cause. The United States further submits this was an un-intentional error in the review process and has no bearing on the overall probable cause in the warrant.  The United States recognizes this was not raised by the Defendant however, submits it is appropriate to address here.

28

It was at this point that Defendant was indicted for drug trafficking and an arrest warrant issued. Defendant's marijuana grow did not become an issue until Defendant's arrest. Even after that, Defendant is not being prosecuted for marijuana possession or distribution, even though marijuana is still illegal under federal law.

Affiant's alleged omission that Defendant had a medical marijuana grow would have been immaterial to the search warrant; Affiant and other agents put forward much more than enough information to issue the warrant. Even if Defendant wanted to use the medical marijuana grow as a shield, the affirmative defense does not undermine a search warrant. *See Reis,* 183 Wash. 2d at 218; *State v. Fry,* 168 Wash. 2d 1, 6, 228 P.3d 1 (2010).

### C. SHOULD THE COURT DENY THE DEFENDANTS TWO BASIS FOR SUPPRESSION, DEFENDANT SEEKS TO SUPPRESS THE EVIDENCE BY WAY OF MOTION IN LIMINE

The Defendant next argues by way of motion in limine the evidence is excludable at trial as it is not proper Federal Rules of Evidence, Rule 404(b) evidence and is unduly prejudicial. Although it is true the Defendant has not been charged with manufacturing marijuana or the distribution of marijuana, it is not just the marijuana evidence that is relevant and admissible.

1. Evidence of "other acts" which are inextricably intertwined with the offense is not subject to the requirements of Fed. R. Evid. 404(b).

"Other act" evidence that is "inextricably intertwined" with a charged offense is independently admissible and is exempt from the requirements of Rule 404(b). *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir.2012); accord Fed.R.Evid. 404(b) advisory committee's notes (stating that Rule 404(b)'s requirements do "not extend to evidence of acts which are 'intrinsic' to the charged offense"). See also, *United States v. Matthews*, 240 F.3d 806, 817 (9th Cir. 2001) (quoting *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987)); *United States v. Lillard*, 354 F.3d 850, 854 (9th

Cir.2003).  Specifically, "[t]here must be a sufficient contextual or substantive connection between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b)." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). There are two situations in which "other acts" will be deemed "too closely related to the charged crime to require 404(b) treatment." *Matthews,* 240 F.3d 80, 817.

First, when the other act evidence "constitutes a part of the transaction that serves as the basis for the criminal charge," the evidence is admissible.  *United States v. Vizcarra-Martinez,* 66 F.3d 1006, 1012 (9th Cir. 1995) (as amended on denial of rehearing and suggestion for rehearing en banc).  Notably, this Circuit has stated that "[t]he policies underlying rule 404(b) are inapplicable when offenses committed as part of a 'single criminal episode' become other acts evidence simply because the defendant 'is indicted for less than all of his actions.'" *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993) (quoting Soliman, 813 F.2d at 279)).

Second, "other acts" evidence is exempted from Rule 404(b) treatment "when [admission] [i]s necessary . . . to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Vizcarra-Martinez*, 66 F.3d at 1012-13.

Here, the Defendant was deported from Canada after being caught backpacking from the United States into Canada large quantities of methamphetamine, cocaine and heroin, as well as loaded firearms in August 2015.  He returned to the same area where he was last seen in the district.  As noted above, it was approximately one year between his deportation from the event in Canada and from when law enforcement effectuated his arrest.  However, at the time of his arrest, the evidence from the search warrant tells a consistent story of the Defendants continued involvement in illegal activity.  The "grow" was not compliant with state law.  Aside from having too many plants, the Defendant had approximately 8 pounds of processed marijuana some

packages in pound quantities for sale. *See,* Attachment B. More importantly, the
Defendant was again in possession of multiple firearms, quantities of
methamphetamine, documentation from his Canadian arrest and walkie talke radios
consistent with those utilized at the time of his arrest in Canada. The United States
respectfully submits it should be able to present this evidence as it a part of the
ongoing offense to which the Defendant was charged.

> 2. Underline If the Court were to apply Fed. R. Evid. 404(b) analysis, the evidence is also admissible as the acts establish the Defendant's knowledge and intent.

Federal Rule of Evidence 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial.

The Ninth Circuit has described Rule 404(b) as "a rule of inclusion–not
exclusion. . . ." *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc).
"Rule 404(b) covers not just other crimes or wrongs, but also explicitly other acts-if
the other acts are relevant to the purposes specified in the rule such as intent, motive,
preparation, knowledge, etc." *Curtin*, 489 F.3d 935, 943 n.3.

The Ninth Circuit employs a four-part test to determine admissibility of prior
"bad act" evidence:

> (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.

*United States v. Ramos-Atondo*, 732 F.3d 1113, 1123 (9th Cir. 2013) (quoting *United
States v. Bailey*, 696 F.3d 794, 799 (9th Cir.2012). See also, *United States v. Johnson*,
132 F.3d 1279, 1282 (9th Cir. 1997); *United States v. Arambula-Ruiz*, 987 F.2d 599,
602 (9th Cir. 1993); and *United States v. Spillone*, 879 F.2d 514, 518-520 (9th Cir.
1989), cert. denied, 498 U.S. 878 (1990)). Additionally, the probative value of the

evidence must be examined under the balancing test of Fed. R. Evid. 403. *Arambula-Ruiz*, 987 F.2d at 602. Thus, the United States may introduce evidence of prior acts provided that such acts "tend[] to make the existence of [the Defendant's] knowledge or intent more probable than it would be without the evidence." *Id.*

In *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the Supreme Court provided guidance in the application of 404(b). There the Supreme Court stated that "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Id* at 685, 1499. See also, *United States v. Jones*, 982 F.2d 380, 382 (9th Cir. 1993)(finding evidence of a defendant's prior act is admissible if that evidence is probative of a material issue in the case); *United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1325 (9th Cir. 1992).

The evidence from the search of his residence meets a 404(b) analysis as follows:

a. *Material Element- Knowledge and Intent*

The fact that the Defendant was in possession of narcotics, smaller quantities or not, firearms does go directly to his knowledge and intent. Moreover, his possession of documentation from the Canadian seizure and other evidence consistent with items found during that seizure again goes to establish his knowledge and intent, certainly his absence of mistake or accident.

b. *Remoteness*

The Ninth Circuit has held that remote acts may be admissible if they are extremely probative and relevant. See, *United State v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997) (prior act evidence from thirteen or more years ago was sufficiently similar to the charged conduct to render it probative despite the passage of time)

(quoting *United States v. Spillone*, 879 F.2d 514, 519 (9th Cir. 1989). Relying upon *United States v. Hadley*, 918 F.2d 848, 851 (9th Cir. 1990), the Ninth Circuit has noted that it has not "identified a particular number of years after which past conduct becomes too remote." *Johnson*, 132 F.3d. at 1283. See also, *United States v. Estrada*, 453 F.3d 1208, 1213 (9th Cir.2006) (stating the legal standard and noting that we have affirmed admissions "where ten years or longer periods of time have passed"); *United States v. Herrera-Osornio*, 521 Fed. Appx. 582, at 3 (9th Cir. 2013)(finding that evidence as to Defendant's involvement in a marijuana grow in 2005, 8 years prior to the current charge, was not to remote).

Here, the activity is not "prior" but rather just after his Indictment. However, the analysis remains the same. It is certainly not too remote to bar its consideration. .

c. *Similarity*

When offered to prove knowledge, however, the prior act need not be similar to the charged act as long as "the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." *Arambula-Ruiz*, 987 F.2d at 603 (quoting, *Ramirez-Jiminez*, 967 F.2d at 1326). As argued, there are factual similarities between the Defendants overall conduct and the evidence located at his residence.

d. *Sufficient Proof*

This prior bad act testimony is supported by sufficient evidence. "[S]imilar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the Defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 689 (1988). "This reliability threshold is not a high one, and the testimony of a single witness can be sufficient." *Johnson*, 132 F.3d at 1283 (citing, *United States v. Hinton*, 31 F.3d 817, 823 (9th Cir. 1994)). Here, the evidence was located inside the defendants residence at the time of his arrest. Thus, the United States has more than sufficient evidence to satisfy the low threshold required by this part of the test.

e. *Probative Value/Prejudicial Effect*

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.   Moreover, the probative value of the other acts evidence must also outweigh its prejudicial effect. *See,* Fed. R. Evid. 403.  In considering the Rule 403 question, the court should distinguish between "prejudice" and "unfair prejudice" because, "evidence of [other] bad acts will always be prejudicial, and it is the trial court's job to evaluate whether the guaranteed risk of prejudice outweighs the legitimate contribution of the evidence." *United States v. Shumway*, 112 F.3d 1413, 1422 (10th Cir. 1997) (quoting *United States v. Patterson*, 20 F.3d 809, 814 (10th Cir. 1994)).

Moreover, the Ninth Circuit has routinely found a District Court does not abuse its discretion so long as it engages in a Rule 403 balancing inquiry and also provides a limiting instruction, which is generally sufficient to cure any prejudicial impact caused by prior bad act evidence. *United States v. Bailey*, 696 F.3d 794, 809 (9th Cir.2012) (citing *Dubria v. Smith*, 224 F.3d 995, 1002 (9th Cir.2000)). See also, *United States v. Arambula-Ruiz*, 987 F.2d 599, 604 (9th Cir. 1993); *United States v. Rubio-Villareal*, 927 F.2d 1495, 1503 (holding probative value or prior drug conviction outweighed any prejudice because of high need for evidence coupled with judge's careful limiting instruction weighed in favor of admission).

As stated, the probative value of this evidence far outweighs any prejudicial impact as it goes directly to prove the Defendant's knowledge and intent.  A limiting instruction can be fashioned so as to address any concern as to its prejudicial impact.

//

//

United States' Response to Motions to Suppress- 17
Response 622 and 624.docx

## CONCLUSION

The United States respectfully submits the Defendant motions to suppress the evidence be denied.

Dated:  February 20, 2018.

JOSEPH HARRINGTON
United States Attorney

*s/ Stephanie Van Marter*
Stephanie Van Marter
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Richard Smith, rasmith@house314.com

*s/ Stephanie Van Marter*
Stephanie Van Marter
Assistant United States Attorney