JOSEPH H. HARRINGTON
United States Attorney
Eastern District of Washington
Stephanie Van Marter
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 06 2018

SEAN F. McAVOY, CLERK
_____DEPUTY
RICHLAND, WASHINGTON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>GABRIELA MENDOZA VASQUEZ, )<br>)<br>)<br>Defendant. )<br>) | 4:15-CR-6049-EFS-7<br><br>Plea Agreement |

Plaintiff, United States of America, by and through Joseph H. Harrington, United States Attorney for the Eastern District of Washington, and Stephanie Van Marter, Assistant United States Attorney for the Eastern District of Washington, and Defendant GABRIELA MENDOZA VASQUEZ, and the Defendant's counsel, Ricardo Hernandez, agree to the following Plea Agreement:

1. <u>Guilty Plea and Maximum Statutory Penalties</u>:

The Defendant, GABRIELA MENDOZA VASQUEZ, agrees to enter a plea of guilty to Count 2 of the Second Superseding Indictment filed on December 6, 2016, charging the Defendant with Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956 (a)(1), (a)(2) and (h).

Plea Agreement - 1
Plea 2.docx

The Defendant, GABRIELA MENDOZA VASQUEZ, understands that the charge contained in the Second Superseding Indictment is a Class B felony charge. The Defendant, GABRIELA MENDOZA VASQUEZ, also understands that the maximum statutory penalty for Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956 (a)(1), (a)(2) and (h), is a term of imprisonment of not more than 20 years imprisonment; a fine up to $500,000 or two times the amount of money laundered, whichever is greater; a term of supervised release of not more than 3 years; and a $100 special penalty assessment.

The Defendant, GABRIELA MENDOZA VASQUEZ, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2.      The Court is Not a Party to the Agreement:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable

Plea Agreement - 2
Plea 2.docx

sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing her plea of guilty.

3.     <u>Waiver of Constitutional Rights</u>:

The Defendant, GABRIELA MENDOZA VASQUEZ, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

   (a).   The right to a jury trial;
   (b).   The right to see, hear and question the witnesses;
   (c).   The right to remain silent at trial;
   (d).   The right to testify at trial; and
   (e).   The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4.     <u>Elements of the Offense</u>:

The United States and the Defendant agree that in order to convict the Defendant of Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956 (a)(1), (a)(2) and (h), the United States would have to prove beyond a reasonable doubt the following elements:

Plea Agreement - 3
Plea 2.docx

*First*, beginning on a date unknown but by on or about January 2010 and continuing until March 2017, in the Eastern District of Washington and elsewhere, the Defendant, GABRIELA MENDOZA VASQUEZ, entered into an agreement with one or more persons to commit the crime of Money Laundering in violation of 18 U.S.C. § 1956(a)(1)and (a)(2), as charged in the Second Superseding Indictment; and

*Second*, the Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

The elements of Money Laundering, in violation of 18 U.S.C. 1956(a)(1)(B) are as follows:

*First*, the Defendant conducted a financial transaction involving property that represented proceeds of the Conspiracy to and Distribution of Controlled Substances;

*Second*, the Defendant knew that the property represented proceeds of some form of unlawful activity;

*Third*, the Defendant knew that the transaction was designed in whole or in part to disguise the nature, location, source, ownership or control of the proceeds with the intent to promote the specified unlawful activity.

The elements of International Money Laundering, in violation of 18 U.S.C. 1956(a)(2) are as follows:

*First,* the Defendant knowingly transferred or caused to be transferred money from a place outside the United States to a place inside the United States;  and

Plea Agreement - 4
Plea 2.docx

*Second,* the Defendant acted with the intent to promote the conspiracy to and distribution of controlled substances.

5. Factual Basis and Statement of Facts:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis GABRIELA MENDOZA VASQUEZ's guilty plea. The parties acknowledge there are global facts pertaining to the overall conspiracy included within this factual statement to which the Defendant does not have personal knowledge. However, the Defendant agrees and stipulates that the facts as they pertain directly to her involvement are accurate. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

Members of the FBI Eastern Washington Safe Streets Violent Gang Task Force- Tri-Cities (EWVGSSTF) have been investigating a transnational drug trafficking organization operating herein the Eastern District of Washington and elsewhere since at least 2011 identified as the Ivan Hernandez Calvillo Drug Trafficking Organization (DTO). During that investigation, Ivan Hernandez Calvillo ((hereinafter Ivan) and Jese David Carillo Casillas (hereafter Casillas) were identified as a high-ranking members of the DTO. Members of the Task Force, through the interviews of multiple cooperating Defendants and drug seizures, learned the DTO was utilizing backpackers to physically carry quantities of cocaine and methamphetamine from the Eastern District of Washington through a trail system into Canada for distribution.

Plea Agreement - 5
Plea 2.docx

During this same time-frame, members of the Boston DEA were conducting a parallel investigation into the money laundering activities of the Ivan Hernandez Calvillo DTO. The DTO was moving bulk cash out of Canada that it had gained through the sale of cocaine, heroin, and methamphetamine. The DEA successfully placed an undercover operator (DEA UC) into the money-laundering network. The basic need the DEA UC filled for the organization was his ability to accept Canadian cash, deposit it, wash it electronically through his business, and then wire US currency out in smaller deposits in Mexico and the United States. The DEA UC would then charge a commission or percentage for the washed cash, keep that percentage and report to Ivan and later Jese Casillas as to the remaining amount available for wire transfer. This relationship ultimately cultivated into Ivan and the organization seeking the DEA UC's assistance in developing a new drug distribution group in Vancouver BC with ties to China.

In October 2014, an undercover money laundering operation was initiated by Royal Canadian Mounted Police Federal Serious Organized Crime Unit (RCMP FSOC) members to collect bulk money in the area of Vancouver, British Columbia from the DTO and to deliver it to the DEA investigators. Between October 2014 and July 2016, Ivan, and later Casillas, were in direct communication with the DEA UC via recorded What's App messenger and arranged for approximately 15 cash money drops to be laundered by the DEA UC. The way the code worked was that Ivan or Casillas provided the DEA UC a serial number of a piece of currency. The DEA UC would communicate that serial number so that when the two associates would meet, they would compare serial numbers. Once that was confirmed, the money was handed off. The amount laundered during these money drops totaled over $1.6 million Canadian Dollars.

Plea Agreement - 6
Plea 2.docx

The Defendant, GABRIELA MENDOZA VASQUEZ was identified during the course of the investigation as Calvillo's wife. During the early part of the investigation, the Defendant was identified as sharing multiple residences with Calvillo and one who originally assisted Calvillo by driving loads of narcotics from California to the EDWA. The Defendant was later identified as primarily receiving drug proceeds in the money laundering investigation.

On October 27, 2014, Ivan was in direct communication with the DEA UC via recorded What's App messenger. The purpose of the contact was to arrange another money laundering transaction. Calvillo arranged for a money drop to occur in Surrey, Canada. The conversation surrounding this money drop was clear that it was all cash drug proceeds from the sale of controlled substances originating from Mexico, passing through this district for its transportation into the Vancouver, Canada area. On October 27, 2014, Ivan arranged for an unindicted associate in the Vancouver Canada area to meet with the alleged associate of the DEA UC. With the assistance of the RCMP, a Canadian undercover agent (CUC) was provided to assist. Once the meet location was determined by Calvillo, the CUC and Calvillo's associate met where the CUC was provided $326,470 dollars in Canadian currency and $70.00 in US currency. Calvillo's associate and the CUC followed the aforementioned described coding system. Once the CUC confirmed the serial number of currency, the money was handed off.

The CUC transported the money and it was deposited pursuant to the standard procedure for this operation. Based upon the percentages, the DEA UC and Calvillo agreed the amount of US currency returned to the organization and Calvillo was $273, 563.09. Calvillo provided specific instructions to the DEA UC to wire the cash to various accounts in the United States and Mexico; one of

Plea Agreement - 7
Plea 2.docx

those accounts was to the Defendant in the amount of *$5000* US currency to a bank account in her name in Los Angeles, CA. At that time, Los Angeles was the organization's half way point for drug and money shipments. The DEA UC wired the money as instructed which was deposited and withdrawn October 30, 2014 by the Defendant. The account was opened briefly for the money to be deposited and withdrawn with little to no additional activity. The Defendant's sister also received *$5000* in US currency at a bank in Pasco, WA. Over $200,000 of the funds were directed by Calvillo to be deposited in a bank in Mexico.

On November 24, 2015[1], Calvillo arranged for one of the aforementioned cash money drops, however, this time Calvillo arranged for an unindicted associate to deliver $80,000 in US currency to an alleged associate of DEA UC in Overland Park, Kansas. An agent out of the DEA office in Kansas City acted as the UC who was to pick up the funds. During the meet, Calvillo's associate handed the UC a bag with a shoe box and stated it was a size 8, referring to $80,000 US currency. The UC confirmed the amount through the bank and deposited the $80,000 US currency in the undercover account. Based upon the percentage the DEA UC agreed to charge to launder the money, the organization received $76,800 back. The DEA UC was given instructions by Calvillo to wire *$2400* to the Defendant at a Bank of America account. The remaining $74,400 in funds was transferred to various accounts in Mexico, however, several of the wire transfers to Mexico were rejected. As a result, Calvillo sent new instructions to

---

[1] Just prior to this money drop, on October 22, 2015, there was a $200,000 cash drop arranged by Ivan in Atlanta with the DEA UC. The Defendant received only *$800* of the funds via wire transfer at the direction of Calvillo. The remainder was sent to various accounts in Mexico.

Plea Agreement - 8
Plea 2.docx

wire the US currency to additional accounts here in the US which included $5000 to a Wells Fargo account in Casillas' name in Kennewick, WA and $4900 to an account in LA for Co-Defendant Saucedo.

On December 2, 2015, another money drop was arranged by Calvillo. The United States would present evidence that Calvillo arranged for and orchestrated the money drop utilizing the person known to the investigation as the Vancouver leader/organizer (fugitive) who in turn arranged for Co-Defendant Adam Goldring to assist. Text messages were exchanged between RCMP UC1 and the Vancouver leader/organizer. The meet location was agreed to be the parking lot of IGA Foods in Langley, British Columbia. Surveillance units observed Goldring arrive. Goldring gave RCMP UC1 a white cloth bag. When asked by RCMP UC1 if he had a count, Goldring said that he did not, as he was only told by "Senor 500" to deliver the package. "500" is a nickname previously known to be used by Calvillo. The bulk currency in the bag was later counted and confirmed to be $25,000 Canadian. Calvillo directed that *$6000* of the funds to be wired to the Defendant at the same Bank of America account located in Pasco WA on December 4, 2015. On December 8, 2015, Casillas received approximately $1689.00 in money wire transactions from this money drop.

Calvillo was murdered in Mexico on December 13, 2015. The United States would present evidence that after Calvillo was murdered, Casillas stepped in and took over all communications with the DEA UC on the money laundering aspect as well as additional drug transaction negotiations.

On January 29, 2016, Casillas arranged for and met with the DEA UC in Seattle, WA for the purpose of discussing how the business would operate in the absence of Calvillo. This meeting was audio and video recorded. Casillas arrived with the Defendant and one of their children. The context of the

Plea Agreement - 9
Plea 2.docx

conversation revolved around the drug and money laundering business. When the DEA UC questioned as to whether it was appropriate for the Defendant to be there listening, Casillas stated it was his job now to take care of her financially. The meeting went on for over two hours where the details of the drug trafficking and money laundering operation were discussed to include naming the associates in Canada who assisted with the drug sales and money drops. This all occurred in the Defendant's presence.

Between May and July 2016, the DEA UC advised he had several conversations with Casillas about the delivery of 12 kilograms of heroin. They discussed that the heroin would first be brought into Los Angeles, CA and then transported to Washington. The DEA UC ultimately confirmed the transaction was to take place on August 15th, 2016, near Seattle, WA.

During the morning of August 15, 2016, members of the EWVGSSTF were surveilling Casillas' Palouse residence in anticipation of the delivery later that day. At approximately 12:21 a.m., a vehicle entered the parking area behind Casillas' residence and parked in an obstructed view of the electronic surveillance. Through electronic monitoring the vehicle was identified as a silver 2014 Nissan Altima, bearing WA plate AXM8029. At approximately 7:08 a.m., a male wearing a red t-shirt, later positively identified as the Co-Defendant Figueroa, and a male wearing a white hat and gray and white striped shirt, later positively identified as Casillas, exited the residence. Figueroa was carrying a large black duffle style bag. Ultimately, Casillas and Figueroa departed the residence utilizing different vehicles.

Casillas contacted the DEA UC and advised he was on his way with the supply and further requested directions on how to contact the individual taking delivery in Seattle, WA. At approximately 1:00 pm, the silver Nissan Altima

Plea Agreement - 10
Plea 2.docx

arrived at the meet location near Seattle in tandem with a red Nissan Altima. Prior to the delivery, the DEA UC provided Casillas a serial number of a $1 dollar bill that the parties could exchange, consistent with the code system utilized in the money drops. Figueroa pulled up next to the UC vehicle and requested the aforementioned dollar bill. The UC provided the dollar bill to Figueroa, who looked at the bill, tore it up and told the UC it was in the trunk. The UC and Figueroa went to the trunk area where Figueroa retrieved a black Adidas athletic bag and gave it to the DEA undercover. Casillas was observed by surveillance watching from a distance in the Red Nissan Altima. After the exchange occurred, Casillas and Figueroa were followed for a period to time until they headed back toward the EDWA.

  The black Adidas bag contained 12 blocks that weighed approximately 1 kilogram apiece. One of the blocks was opened and field tested presumptive positive for heroin. An urgent lab request was sent to DEA based upon the appearance of the heroin seized as it had a coloring unknown to law enforcement. The DEA lab confirmed that two of the kilograms contained bunk, or the waste from the manufacture of heroin and Fentanyl. However, the remaining 10 kilograms contained over 650 grams of the substance Fentanyl. Heroin was also present in small quantities.

  The packaging was likewise processed for the presence of identifiable fingerprints. Saucedo and Casillas' fingerprints were both confirmed to be present on the packaging.

  A number of search warrants were obtained for several identified members of this organization to include Casillas' known residence. Search warrants were also obtained for numerous electronic devices seized. The search of these phones

Plea Agreement - 11
Plea 2.docx

revealed a number of pertinent text messages, saved images and other confirmed connectivity between co-defendants.

The Defendant therefore agrees that she conspired with one or more persons to launder money that she knew or had reason to know was obtained from unlawful activity, in this case the conspiracy to and distribution of controlled substances.

8.  The United States Agrees:

(a).  Dismissals:

At the time of sentencing, the United States agrees to move to dismiss Counts 1 and 6 of the Second Superseding Indictment, charging the Defendant with Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of N-phenyl-N Propanamide, in violation of 21 U.S.C. §841 (a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846 and Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

(b).  Not to File Additional Charges:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Second Superseding Indictment, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

9.  United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that

Plea Agreement - 12
Plea 2.docx

the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

    (a).    <u>Base Offense Level and Application of U.S.S.G. §1B1.3</u>:

The Government and Defendant agree and stipulate that this Defendant would not be accountable under the provisions of Relevant Conduct for the overall conduct attributed to the underlying offense. As a result, her base offense level should be 8. *See* U.S.S.G. §2S1.1(a)(2).

    (b).    <u>Specific Offense Characteristics</u>:

The parties agree that based upon the money directly laundered by the Defendant, an additional 4 levels should be added based upon the total amount of funds laundered by the Defendant. *See,* U.S.S.G. § 2S1.1 (1)(b) and 2B1.1(b)(1)(C).

The parties further agree and stipulate that an additional 6 levels is properly added because the Defendant knew the funds were drug proceeds. *See* U.S.S.G. §2S1.1(b)(1).

The parties further agree and stipulate that an additional 2 levels is properly added based upon the offense of conviction. *See* U.S.S.G. §2S1.1(b)(2)(B).

    (c)    <u>Role in the Offense</u>:

The Defendant intends to recommend to the Court that Defendant is entitled to a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2. The United States reserves its right to oppose any mitigating role adjustment.

    (d).    <u>Acceptance of Responsibility</u>:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does

Plea Agreement - 13
Plea 2.docx

not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than the next Pre-Trial Conference, the United States will move for a two (2) or three (3) level downward adjustment in the offense level depending upon whether it is above or below 19, for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a two (2) or three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

Furthermore, the Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

(c). <u>Criminal History</u>:

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report. The United States and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

//
//

Plea Agreement - 14
Plea 2.docx

10. <u>Safety Valve</u>:

The United States and the Defendant agree that the provisions of the safety valve do not apply to this offense. However, should the defendant otherwise meet all of its requirements, the United States will recommend that the Court depart two levels pursuant to application of the 18 U.S.C. § 3553(a) factors.

11. <u>Departures</u>:

The Defendant intends to request downward departures and variances from the sentencing guidelines. The United States reserves its right to oppose any downward departure, except as detailed in ¶ 10, supra.

12. <u>Length of Incarceration</u>:

The parties are free to argue any appropriate sentence.

13. <u>Criminal Fine</u>:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

14. <u>Supervised Release</u>:

The parties agree to recommend that the Court impose a 3-year term of supervised release, to include the following special conditions, in addition to the standard conditions of supervised release:

(1) that the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Office; and

(2) that the Defendant have no contact with any witnesses or Co-defendants in this cause number.

//

//

Plea Agreement - 15
Plea 2.docx

15. <u>Mandatory Special Penalty Assessment</u>:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

16. <u>Payments While Incarcerated</u>:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

18. <u>Appeal Rights</u>:

In return for the concessions that the United States has made in this Plea Agreement, the Defendant agrees to waive her right to appeal the conviction and sentence if the Court imposes a prison term no higher than the applicable guideline range and imposes no more than 3 years supervised release. Defendant further expressly waives her right to file any post-conviction motion attacking her conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence. Should the

Plea Agreement - 16
Plea 2.docx

Defendant successfully move to withdraw from this Plea Agreement or should the Defendant's conviction on Count 2 of the Second Superseding Indictment be dismissed, set aside, vacated, or reversed, the Plea Agreement shall become null and void; the United States may move to reinstate all counts of the Second Superseding Indictment No. 4:15-CR-6049-EFS; and the United States may prosecute the Defendant on all available charges involving or arising out of Indictment No. 4:15-CR-6049-EFS. Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack of the conviction or sentence, including, but not limited to, proceedings pursuant to 28 U.S.C. § 2255 (writ of habeas corpus).

19. <u>Integration Clause</u>:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

//

//

//

Plea Agreement - 17
Plea 2.docx

Approvals and Signature

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

JOSEPH H. HARRINGTON
United States Attorney

_____          3/6/18
Stephanie Van Marter                    Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. My attorney has advised me that by pleading guilty to the charge relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____          3/6/18
GABRIELA MENDOZA VASQUEZ                Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets

Plea Agreement - 18
Plea 2.docx

forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. I have further advised my client by pleading guilty to the charge relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____     3/6/18
Ricardo Hernandez                  Date
Attorney for the Defendant

Plea Agreement - 19
Plea 2.docx