FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 28, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JESE DAVID CASILLAS CARRILLO (2);<br>BRITTNEY LEE ZARAGOZA (10);<br>SALVADOR GUDINO CHAVEZ (11);<br>EDGAR OMAR HERRERA FARIAS(16);<br>ALFREDO MAGANA GARIBAY (18); JUAN<br>BRAVO ZAMBRANO (19); MIGUEL REYES<br>GARCIA (21); AND JOSE ADRIAN<br>MENDOZA (23),<br><br>　　　　　　Defendants. | No.　4:15-CR-06049-EFS-2<br>　　　4:15-CR-06049-EFS-10<br>　　　4:15-CR-06049-EFS-11<br>　　　4:15-CR-06049-EFS-16<br>　　　4:15-CR-06049-EFS-18<br>　　　4:15-CR-06049-EFS-19<br>　　　4:15-CR-06049-EFS-21<br>　　　4:15-CR-06049-EFS-23<br><br>**ORDER MEMORIALIZING RULINGS MADE AT MARCH 6, 2018 PRETRIAL CONFERENCE** |

A pretrial conference was held in this matter on March 6, 2018. At the hearing, the Court heard argument on a number of pretrial motions and testimony from Sergeant Robert Tucker, Special Agent William Leahy (Ret.), and Task Force Officer Doug Stanley. *See* ECF No. 702. The Court issued oral rulings at the hearing, which this Order memorializes and further develops.

**A. Defendant Farias' Motion to Suppress, ECF No. 614**

A day before the March 6, 2018 pretrial conference, counsel for Defendant Omar Herrera Farias (16) , Peter Schweda, moved to continue hearing on this Motion, citing additional, relevant discovery he received from the Government on March 1, 2018. See ECF No. 688 & 689.

ORDER - 1

At the pretrial conference, Assistant United States Attorney Stephanie Van Marter explained that the March 1, 2018 discovery was collected by the Government for the purpose of responding to Mr. Farias' Motion to Suppress and that the Government produced it on March 1, 2018 as a precaution. Ms. Van Marter also stated that all of the information included in the March 1, 2018 discovery had been produced more than one year prior and had been available for review by Defendant Farias since then. Accordingly, the Court denied Mr. Farias' motion to continue hearing on his Motion to Suppress, ECF No. 614.

In the motion, Mr. Farias moves the Court to suppress evidence seized from his residence during the execution of a search warrant on March 22, 2012, at 4873 East Edison Rd. in Sunnyside, Washington. ECF No. 614. Items sought to be suppressed include four firearms (two pistols and two shotguns), suspected methamphetamine, two digital scales, cutting agents, a smoking device, a metal spoon, cellular phones, and other dominion and control documents. *See* ECF No. 614. Mr. Farias argues that the evidence should be suppressed for two reasons.

1. Particularity

First, Mr. Farias argues that the warrant failed to describe the firearms, cellular phones, and backpacks seized at his residence. The Government responds that it does not intend to admit the cellular phones or backpacks into evidence and that the warrant expressly provides for seizure of the firearms. ECF No. 647 at 13–14.

///

//

/

ORDER - 2

A warrant must set out the scope of the authorized search with particularity.[1] The Court of Appeals for the Ninth Circuit has identified certain factors a court should consider when evaluating if a warrant if sufficiently particular:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.[2]

Here, the warrant authorized the executing officers to seize items relating to "methamphetamine trafficking and manufacturing," including "methamphetamine packaging," "documents indicating ownership and/or dominion and control of the premises," "papers, phone bills," and "firearms and ammunition."[3] ECF No. 614-1 at 3.[4]

As to the first factor, Mr. Farias does not appear to challenge the existence of probable cause to seize the items. However, the Court notes that Detective Tucker's affidavit contains sufficient facts to establish probable cause. As to the second factor and third factors, the warrant expressly authorizes officers to seize "firearms and

---

[1] U.S. Const. amend. IV ("No Warrants shall issue but upon probable cause . . . particularly describing the place to be searched, and the persons or things to be seized"); *Massachusetts v. Sheppard*, 468 U.S. 981, 988, n.5 (1984) ("[A] warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional.").
[2] *United States v. Adjani*, 452 F.3d 1140, 1148 (9th Cir. 2006) (citing *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986)).
[3] Mr. Farias argues that "The firearms seized were not described in the Warrant and therefore, were not particularly described and should be suppressed." However, the record clearly indicates that the warrant did indeed authorize the officers to seize "firearms and ammunition" found in the residence.
[4] All record citations will refer to the page number as it appears in the ECF label at the top of the electronic document.

ORDER - 3

ammunition," "methamphetamine packaging," and other items "relating to the methamphetamine trafficking and/or manufacturing." ECF No. 641-1 at 3. These statements satisfy the second factor's "clear objective standards" requirement. They are so specific, in fact, it seems difficult to conceive how the Government could have described the items more particularly. For these reasons, the Court holds that the warrant was sufficiently particularly to support the seizure of the firearms, backpacks, and cellular telephones from Mr. Farias' residence.

### 2. Supplemental Warrant for Bedroom

Second, Mr. Farias argues that once the executing officers determined "there was not one 'John Doe' but, rather three individuals that resided in [separate] living quarters," they should have halted the search and obtained a supplemental search warrant. ECF No. 614 at 8. The Government responds that the officers had no obligation to obtain a supplemental warrant to search an unlocked bedroom in a single-family residence. ECF No. 615.

Mr. Farias relies on *Maryland v. Garrison* in support of his argument. In *Maryland*, officers obtained a warrant to search the third floor of an apartment building. 480 U.S. 79, 80 (1987). While executing the search warrant, the officers realized that the third floor contained not one but two apartments, each with their own entrance. *Id*. at 81. There, the Supreme Court stated that the officers "were required to discontinue the search of respondent's apartment as soon as they discovered there were two separate units on the third floor . . . ." *Id*. at 87.

/

ORDER - 4

The Court of Appeals for the Ninth Circuit dealt with a similar issue in *United States v. Ayers*, 924 F.2d 1468 (9th Cir. 1991). In that case, pursuant to a lawfully obtained warrant, police officers searched a single-family home for narcotics. *Id*. at 1480. There, the defendant also relied on *Maryland v. Garrison* and alleged that the executing officers exceeded the scope of the warrant by searching his private bedroom, which was an area under the defendant's exclusive control. The panel rejected this argument, explaining that "[a] search warrant for the entire premises of a single family residence is valid, notwithstanding the fact that it was issued based on information regarding the alleged illegal activities of one of several occupants of a residence." *Id*. The panel further noted that "[t]he most obvious place for the police to search" for drug paraphernalia "would be the drug dealer's bedroom." Thus, the search of the entire home was not overbroad or unreasonable. *Id*.

Here, just like in *Ayers*, the officers obtained a warrant for a single-family residence upon suspicion of drug trafficking. Just like in *Ayers*, Mr. Farias seeks to suppress the search of his bedroom, which opened directly to a common area of the home through an unlocked door. And, just like in *Ayers*, the officers did not need a supplemental warrant for Mr. Farias' bedroom; that space was properly included in the scope of the warrant for the "entire premises of [the] single family residence." *See Ayers*, 924 F.2d at 1480. Accordingly, Defendant Farias' Motion to Suppress, is denied.

//

/

ORDER - 5

**B. Defendant Zambrano's Motions to Suppress, ECF Nos. 621, 622, & 624**

Defendant Juan Bravo Zambrano (19) filed three Motions to Suppress, ECF Nos. 621, 622, and 624. For the following reasons, the motions are denied.

1. Canadian Traffic Stop, ECF No. 621

In his first Motion, Mr. Zambrano seeks to suppress evidence seized "by virtue of the unlawful stop, search and seizure" effectuated by the Royal Canadian Mounted Police (RCMP) on August 26, 2015, in British Columbia, Canada. ECF No. 621 at 1. The Government responds that Mr. Zambrano lacks standing to challenge the actions of Canadian law enforcement and that even if the Fourth Amendment governed the RCMP's conduct, the stop, search, and seizure were permissible. ECF No. 648 at 5–8.

It is well-established that the "Fourth Amendment exclusionary rule does not apply to foreign searches by foreign officials in enforcement of foreign law, even if those from whom evidence is seized are American citizens." *United States v. Rose*, 570 F.2d 1358, 1361 (9th Cir. 1978). There are two exceptions to this general rule. The evidence should be excluded if either (1) the circumstances of the foreign search and seizure "are so extreme that they shock the judicial conscience" or (2) American law enforcement officials had such substantial involvement in the foreign activity that it is best characterized as a "joint venture." *Id* at 1362 (internal quotation omitted). *See also United States v. Verdugo-Urquidez*, 856 F.2d 1214, 1224–25 (9th Cir. 1988), *rev'd on other grounds,* 494 U.S. 259 (1990).

ORDER - 6

In *United States v. Emery*, the Ninth Circuit panel found a joint venture existed where Drug Enforcement Agency (DEA) officials cooperated with Mexican police to interdict marijuana being transported by private plane in Mexico. 591 F.2d 1266 (9th Cir. 1978). The panel held that the DEA "substantially participated" in the arrest of the defendant, explaining that "DEA agents alerted the Mexican police of the possible activity, coordinated the surveillance at the Guayamas airport, supplied the [undercover] pilot for the plane and gave the signal that instigated the arrest . . . ." *Id*. at 1268. Accordingly, the cooperation created a "joint venture" that imputed Fourth Amendment restrictions onto Mexican police.

This case is very different than *Emery*. Here, Mr. Zambrano was stopped only by Canadian officials; no American law enforcement officials were present. It is true that American law enforcement officials did cooperate with the RCMP in the investigation of the Calvillo drug trafficking organization (DTO). For example, a DEA report of the Calvillo DTO investigation states that undercover agents from the DEA, FBI, and RCMP "have been negotiating for the delivery of a large shipment of heroin to the Seattle, WA area." ECF No. 674 at 2. And indeed, the DEA cooperated with the RCMP to conduct an exchange of money on August 23, 2015 — only a few days before Mr. Zambrano was arrested.

However, the evidence is clear that the RCMP arrested Mr. Zambrano independent of any cooperation with American law enforcement officials. Mr. Zambrano was and arrested for violating Canadian immigration law, not because of suspected participation in the Calvillo DTO. *See* ECF No.

674 at 7. In fact, FBI Special Agent William Leahy (Ret.), former lead investigator on the Casillas DTO investigation, testified that the FBI had no knowledge that Mr. Zambrano was involved in the DTO nor that he had been arrested in British Columbia until the day after his arrest. ECF No. 718 at 29–30. In other words, American law enforcement officials had no involvement in the investigation or arrest of Mr. Zambrano – it was solely a Canadian operation. That being the case, American officials did not "substantially participate" in the stop, search, or seizure of Mr. Zambrano so as to create a "joint venture" that would impute Fourth Amendment restrictions onto Canadian law enforcement. *Cf. Emery*, 591 F.2d at 1268.

Even if a joint venture did exist in this instance, meaning the Fourth Amendment did govern the RCMP's conduct, there was sufficient probable cause to support the stop, search, and seizure of Mr. Zambrano. The facts supporting probable cause are outlined in a sworn information-to-obtain, which was made by an RCMP officer.[5] *See* ECF No. 667. That information-to-obtain details the RCMP investigation of the Calvillo DTO and provides adequate support for the stop of the Mercedes GL450 in which Mr. Zambrano was a passenger. Once the vehicle was stopped, the RCMP officer conducting the stop discovered that Mr. Zambrano was a United States citizen and was unlawfully present in Canada. ECF No. 667 at 15. The officer then arrested Mr. Zambrano pursuant to the Canadian Immigration and Refugee Protection Act. *Id*. Accordingly, Mr. Zambrano's first Motion to Suppress, ECF No. 621, is denied.

---

[5] An information-to-obtain is a sworn statement given in support of a request for a search warrant, similar to an affidavit.

ORDER - 8

2. <u>Execution of Arrest Warrant, ECF Nos. 622 & 624</u>

Mr. Zambrano's second Motion challenges the execution of an arrest warrant at his residence, arguing that the executing officers (1) violated the knock-and-announce rule and (2) improperly conducted a protective sweep. ECF No. 622.[6] The Government responds that the knock-and-announce rule is not applicable to the execution of arrest warrants and that the officers were justified in making a cursory sweep of the home for officer safety. ECF No. 652.

The federal knock-and-announce statute, 18 U.S.C. § 3109, reads as follows:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

Although the statute expressly mentions a search warrant, the same rule governs the execution of an arrest warrant.[7] Particularly relevant for this matter is the requirement that the officer "seeking to enter a house to execute a warrant must give notice of his purpose and authority, and must be refused entry before entering the house." *Id*. at 1417; *see also Sabbath v. United States*, 391 U.S. 585, 590 (1968). However, where there is no use of force to enter a home, an officer

---

[6] Because Mr. Zambrano does not challenge the validity of the arrest warrant, the Court declines to address that issue in depth. However, upon review, the Court nonetheless finds the arrest warrant was supported by probable cause.
[7] Indeed, this principle predates the United States itself. *See Semayne's Case*, 5 Coke Rep. 91a, 77 Eng. Rep. 194, 195 (1603); *Miller v. United States*, 357 U.S. 301, 306 (1958); *see also, e.g.*, *United States v. Hudson*, 100 F.3d 1409 (1996) (analyzing exigent circumstances exception to knock-and announce-rule in the context of a state arrest warrant).

ORDER - 9

does not violate the purpose and authority requirement by employing "mere deception" or a ruse.[8] For example, in *United States v. Contreras-Ceballos*, the executing officers deceptively represented that they were FedEx employees. 999 F.2d 432, 433 (1993). Once the defendant partially opened the door, an officer forced it open with his shoulder and detained the defendant. Citing *Leahy* and *Dickey*, the panel recognized that the FedEx ruse did not constitute a "breaking" that would implicate the knock-and-announce rule. *Id*. at 435. And, although the officers used force to open the door, they did only did so after the door was partially opened. Accordingly, the panel held that the execution of the warrant did not violate the knock-and-announce rule. *Id*.

Here, the officer executing the arrest warrant, Officer Stanley, similarly employed a ruse to gain access to Mr. Zambrano's residence and to promote officer safety. According to his testimony at the hearing, Officer Stanley and another officer knocked on the rear door of the residence, and Mr. Zambrano's girlfriend, Socorro Sanchez, opened the door. Mr. Stanley identified himself as a police officer, stated that he had mail for Mr. Zambrano, and asked if he was available; in response, Ms. Sanchez pointed towards a hallway five or six feet from the doorway. At the same time, the officers heard noises suggesting that someone was moving down that hallway. The officers then entered the home, saw Mr. Zambrano in the residence, and arrested him. *See also* ECF No. 651 at 1.

---

[8] *Leahy v. United States*, 272 F.2d 487, 490 (9th Cir. 1959), *cert. granted*, 363 U.S. 810 (1960), *and cert. dismissed*, 364 U.S. 945 (1961); *Dickey v. United States*, 332 F.2d 773, 777 (9th Cir. 1964) ("[T]he employment of a ruse to obtain the full opening of the Dickeys' door unassociated with force, was not a 'breaking.'")

ORDER - 10

Although Officer Stanley employed a ruse — falsely stating that he had Mr. Zambrano's mail — that ruse did not constitute a "breaking." *Leahy*, 272 F.2d at 490; *Dickey*, 322 F.2d at 777. Nor did Officer Stanley use force to enter the residence. Therefore, Officer Stanley's entrance into the residence did not implicate — or violate — the knock-and-announce rule. *See Contreras-Ceballos*, 999 F.2d at 435.[9]

Turning to the protective sweep, an executing officer is permitted to conduct a brief and cursory sweep of an area if there are articulable facts from which a reasonably prudent officer would believe "that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 334 (1990). Such a search must be limited in scope to spaces where a person may be found and must last no longer than necessary to dispel the reasonable suspicion of danger. *Id*. at 335–336.

Here, the executing officers encountered Mr. Zambrano in a hallway inside of his home. When he was arrested, Mr. Zambrano was standing within two or three feet of two closed doors leading to separate rooms. Knowing that other members of the DTO had been arrested while possessing firearms, and because of the confined space, the officers conducted cursory sweeps of both rooms and discovered multiple marijuana plants and several visible firearms. *See* ECF No. 624-2 at 17–19. The proffered reasons are sufficiently articulable and legitimate to support the cursory sweep conducted by the officers. *See Buie*, 494 U.S. at 334.

---

[9] Even if Officer Stanley's ruse did violate the knock and announce rule, or if it was violated in some other way, the issue is moot. Violations of the knock-and-announce rule do not merit application of the exclusionary rule. *Hudson v. Michigan*, 547 U.S. 586, 599 (2006).

ORDER - 11

1  Accordingly, because the executing officers did not violate the
2 knock and announce rule and had valid reasons for conducting a
3 protective sweep, Mr. Zambrano's Second Motion to Suppress, ECF No. 622,
4 is denied.

5  3. Post-Arrest Search Warrant, ECF No. 624

6  In his third Motion to Suppress, Mr. Zambrano challenges the search
7 warrant obtained by officers after their cursory sweep revealed that
8 marijuana plants and firearms were present in the home. Mr. Zambrano
9 argues that he possessed the marijuana plants pursuant to a medical
10 marijuana manufacturing license and thus that the search warrant was
11 unsupported by probable cause. ECF No. 624 at 4–5. Further, Mr. Zambrano
12 alleges that Officer Stanley, by failing to disclose that the marijuana
13 plants were part of a legal growing operation, made false statements in
14 the supporting affidavit. *Id*. at 5. The Government responds that Mr.
15 Zambrano's allegations of false statements are conclusory in nature and
16 the marijuana plants were illegally possessed under both state and
17 federal law. ECF No. 652 at 8–10.

18  A search warrant may not be issued unless probable cause is
19 properly established. *Kentucky v. King*, 563 U.S. 452, 459 (2011). The
20 Fourth Amendment entitles a defendant to an evidentiary hearing if he
21 or she makes a substantial, preliminary showing that (1) a false
22 statement — whether made knowingly or recklessly — was included in the
23 warrant affidavit, and that (2) the statement was necessary to the
24 finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 156 (1978).

25  Here, Mr. Zambrano has not made any showing, other than naked
26 allegations, that Officer Stanley made any false statements — knowingly

ORDER - 12

or recklessly — in the affidavit underlying the search warrant. Defense counsel stated in his motion that Ms. Sanchez informed the officers that Mr. Zambrano possessed the marijuana plants pursuant to a state medical marijuana manufacturing license and attached a copy of the license to his motion. *See* ECF No. 624-1. However, other than a naked assertion in his motion, Mr. Zambrano offered no affirmative evidence — such as a declaration or an affidavit from Ms. Sanchez — that would satisfy his burden to make a preliminary showing. *See Franks*, 438 U.S. at 156. Accordingly, at the March 6, 2018 pretrial conference, the Court denied Mr. Zambrano's request for a *Franks* hearing and denied the motion.

Moreover, the possession and manufacturing of marijuana remains illegal under federal law. *See generally* 21 U.S.C. 841. And, aside from this fact, ten marijuana plants is above the number permitted without a license in Washington state. *See* Wash. Rev. Code. § 69.51A.210. Without affirmative evidence that Officer Stanley knew of Mr. Zambrano's license, he had no reason to believe anything other than that Mr. Zambrano possessed the marijuana illegally. Thus, probable cause properly supported the search warrant of Mr. Zambrano's residence, and his third Motion to Suppress, ECF No. 624, is denied.

**C. Defendant Reyes Garcia's Motion for Bill of Particulars, ECF No. 620**

Finally, Defendant Miguel Reyes Garcia (21) moves for a bill of particulars, alleging that he is "unable to ascertain from the facts of the Indictment the nature of the case against him because of the lack of specificity and is thus unable to prepare his defense. ECF No. 620 at 1.

Federal Rule of Criminal Procedure 7(f) provides that a "defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." The district court has broad discretion to grant or deny such a motion. *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979). Full discovery obviates the need for a bill of particulars. *Id*. (citing *United States v. Clay*, 476 F.2d 1211, 1215 (9th Cir. 1979)). In conspiracy cases, the Government need not disclose all of the overt acts committed in furtherance of the conspiracy. *Id*. Nor is a defendant entitled to the "when, where, and how" of every act in furtherance of the conspiracy. *Id*. at 1181.

Here, Mr. Reyes Garcia was arraigned on January 17, 2017. *See* ECF No. 303. Mr. Reyes Garcia filed his Motion for a Bill of Particulars, ECF No. 620, on February 6, 2018, more than a year after his arraignment and well after he had received ample discovery. The Motion is inexplicably untimely. As such, it is denied.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant Edgar Omar Herrera Farias' Motion to Expedite, **ECF No. 689**, is **GRANTED**.
2. Defendant Farias' Motion to Continue Motion to Suppress, **ECF No. 688,** is **DENIED**.
3. Defendant Edgar Omar Herrera Farias' Motion to Suppress, **ECF No. 614,** is **DENIED.**
4. Defendant Juan Bravo Zambrano's Motions to Suppress, **ECF Nos. 621, 622, & 624**, are **DENIED.**

//

/

ORDER - 14

**5.** Defendant Miguel Reyes Garcia's Motion for a Bill of Particulars, **ECF No. 620**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this __27th__ day of March 2018.

                        s/Edward F. Shea
                        EDWARD F. SHEA
        Senior United States District Judge