Joseph H. Harrington
United States Attorney
Eastern District of Washington
Stephanie Van Marter
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767



FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

AUG 24 2018

SEAN F. McAVOY, CLERK
_____DEPUTY
RICHLAND, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

JOSE ADRIAN MENDOZA,

        Defendant.

4:15-CR-6049-EFS-23

Plea Agreement

Plaintiff, United States of America, by and through Joseph Harrington, United States Attorney for the Eastern District of Washington, and Stephanie Van Marter, Assistant United States Attorney for the Eastern District of Washington, and Defendant JOSE ADRIAN MENDOZA, and the Defendant's counsel, Scott W. Johnson, agree to the following Plea Agreement:

1.    <u>Guilty Plea and Maximum Statutory Penalties</u>:

The Defendant, JOSE ADRIAN MENDOZA, agrees to enter a plea of guilty to Count 1 of the Second Superseding Indictment filed on December 6, 2016, charging the Defendant with Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of

Plea Agreement - 1
Plea 2.docx

Heroin and 400 grams or More of N-phenyl-N Propanamide (hereafter Fentanyl), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846.

The Defendant, JOSE ADRIAN MENDOZA, understands that the charge contained in the Superseding Indictment is a Class A felony charge. The Defendant, JOSE ADRIAN MENDOZA, also understands that the maximum statutory penalty for Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846, is not less than 10 years imprisonment, which is non-suspendable and non-parolable, and a maximum possible penalty of life imprisonment; a fine not to exceed $10,000,000; a term of supervised release of not less than 5 years up to a life term; denial of certain federal benefits; and a $100 special penalty assessment.

The Defendant, JOSE ADRIAN MENDOZA, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2. Denial of Federal Benefits:

The Defendant understands that by entering this plea of guilty the Defendant is no longer eligible for assistance under any state program funded under part A of title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Further, the Court may deny the Defendant's eligibility to any grant, contract, loan,

Plea Agreement - 2
Plea 2.docx

professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

3. <u>The Court is Not a Party to the Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing his plea of guilty.

4. <u>Waiver of Constitutional Rights</u>:

The Defendant, JOSE ADRIAN MENDOZA, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

    (a).    The right to a jury trial;

    (b).    The right to see, hear and question the witnesses;

Plea Agreement - 3
Plea 2.docx

    (c).    The right to remain silent at trial;

    (d).    The right to testify at trial; and

    (e).    The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

5.    Elements of the Offense:

The United States and the Defendant agree that in order to convict the Defendant of Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846, the United States would have to prove beyond a reasonable doubt the following elements:

> *First*, on a date unknown but by on or about January 2010 continuing until on or about December 6, 2016, in the Eastern District of Washington, the Defendant, entered into an agreement with one or more persons to commit the crime of Distribution of 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin or 400 grams or More of Fentanyl, as charged in the Second Superseding Indictment;

Plea Agreement - 4
Plea 2.docx

- *Second*, the Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

*Third*, the agreement was to distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of Fentanyl, which would be reasonably foreseeable to him as a member of the conspiracy.

7. Factual Basis and Statement of Facts:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for JOSE ADRIAN MENDOZA's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

Members of the FBI Eastern Washington Safe Streets Violent Gang Task Force- Tri-Cities (EWVGSSTF) have been investigating a transnational drug trafficking organization operating herein the Eastern District of Washington and elsewhere since at least 2011 identified as the Ivan Hernandez Calvillo Drug Trafficking Organization (DTO). During that investigation, Ivan Hernandez Calvillo (hereinafter Ivan) and Jese David Carillo Casillas (hereafter Casillas) were identified as a high-ranking members of the DTO. Members of the Task Force, through the interviews of multiple cooperating Defendants and drug seizures, learned the DTO was utilizing backpackers to physically carry quantities of cocaine and methamphetamine from the Eastern District of Washington through a trail system into Canada for distribution.

During this same time-frame, members of the Boston DEA were conducting a parallel investigation into the money laundering activities of the Ivan Hernandez Calvillo DTO. The DTO was moving bulk cash out of Canada that it had gained through the sale of cocaine, heroin, and methamphetamine. The DEA successfully placed an undercover operator (DEA UC) into the money-laundering network. The basic need the DEA UC filled for the organization was his ability to accept Canadian cash, deposit it, wash it electronically through his business, and then wire US currency out in smaller deposits in Mexico and the United States. The DEA UC would then charge a commission or percentage for the washed cash, keep that percentage and report to Ivan and later Jese Casillas as to the remaining amount available for wire transfer. This relationship ultimately cultivated into Ivan and the organization seeking the DEA UC's assistance in developing a new drug distribution group in Vancouver BC with ties to China.

In October 2014, an undercover money laundering operation was initiated by Royal Canadian Mounted Police Federal Serious Organized Crime Unit (RCMP FSOC) members to collect bulk money in the area of Vancouver, British Columbia from the DTO and to deliver it to the DEA investigators. Between October 2014 and July 2016, Ivan, and later Casillas, were in direct communication with the DEA UC via recorded What's App messenger and arranged for approximately 15 cash money drops to be laundered by the DEA UC. The way the code worked was that Ivan or Casillas provided the DEA UC a serial number of a piece of currency. The DEA UC would communicate that serial number so that when the two associates would meet, they would compare serial numbers. Once that was confirmed, the money was handed off. The amount laundered during these money drops totaled over $1.6 million Canadian Dollars.

Plea Agreement - 6
Plea 2.docx

On December 13, 2015, Ivan was killed in Mexico. The United States would present evidence that Casillas was identified as taking over operations for the DTO within the Eastern District of Washington, to include the continued money laundering operations in Canada.

The Defendant was first identified in 2015 as a new possible transporter or driver for the Calvillo DTO, specifically driving backpackers to the northern border to assist in their ability to backpack narcotics across the Canadian border.

CHS1 was also able to direct members of the EWVGSSTF to another active member of the Calvillo DTO organization identified as "Jese" and later confirmed to be Jese David Carillo Casillas (Casillas), a coconspirator in this matter. In April 2015, Casillas met with CHS1 and took possession of a vehicle title to a Mini Cooper.[1] The Mini Cooper had a hidden compartment and was utilized by the Calvillo DTO to transport loads of narcotics for the organization primarily from California to Washington and near Canada. When CHS1 delivered the title of the Mini Cooper to Casillas, he also advised Casillas how to access the hidden compartment. Members of the EWVGSSTF conducted surveillance during this meeting and Casillas was positively identified. Casillas confirmed he was working for Calvillo.

In May 2015, Casillas contacted CHS1 and asked about how to access the secret compartment in a Chrysler Sebring Convertible, another load vehicle utilized by the Calvillo DTO. The aforementioned Mini Cooper was reported to

---

[1] The Mini Cooper was in the custody of EWVGSSTF due to another case pending before U.S. District Court Judge Shea when Calvillo contacted CHS1 and requested that the CHS1 deliver the vehicle title to Casillas. EWVGSSTF was able to document a secret compartment in the vehicle and install a hard wired tracking into the vehicle authorized on March 27, 2015 by Honorable United States Magistrate Judge James P. Hutton (4:15-MJ-07031-JPH).

Plea Agreement - 7
Plea 2.docx

be broken down and as a result Calvillo sent Casillas another load vehicle to utilize. Members of the EWVGSSTF observed and confirmed a gray Chrysler Sebring behind Casillas' residence. The Sebring was described to have a hidden compartment behind the front dash of the vehicle on the driver's side. During that second contact, Casillas advised CHS1 that he was asked by Calvillo to transport cocaine from California to Washington so needed to access the compartment.

On May 28, 2015, a title history from the Washington Department of Licensing of the 2006 Chrysler Sebring Convertible was obtained. One of the listed previous registered owners of the vehicle was Anna Daisy Gonzalez. Gonzalez listed 1320 Midvale Road as her address on the vehicle report of sale for the 2006 Chrysler Sebring Convertible. 1320 Midvale Rd again, has been confirmed on multiple occasions as a location owned/associated with the Calvillo DTO.

A GPS tracker warrant (4:15-mj-07073-JPH) was authorized on June 3, 2015 by the Honorable United States Magistrate Judge James P. Hutton and a tracking device was placed on the Sebring. This tracking warrant was subsequently extended four times.

On June 9, 2015, the GPS tracking device indicated the Chrysler Sebring was travelling to the area of Bellingham, Washington from the Tri-Cities, Washington. Homeland Security Investigations conducted physical surveillance and identified Cristal Elizabeth Alva Mora and Cesar Eduardo Gamino as the occupants of the Chrysler Sebring. Gamino and Mora travelled to the area of Blaine, Washington near the Canadian border. Gamino and Alva Mora travelled on streets as close as a half mile from the Canadian Border and were observed making a U-Turn and slowing down near wooded areas and areas known to be

Plea Agreement - 8
Plea 2.docx

utilized by smugglers and backpackers. On June 11th, the Sebring returned to the Tri-Cities with the same occupants. Telephone analysis indicated communication between the occupants of the Sebring and Casillas during the duration of the trip.

On August 21, 2015, electronic and physical surveillance was conducted on the Chrysler Sebring as it traveled from the Tri-Cities area to the border town areas of Tonasket and Omak, Washington. The Sebring stayed the night in Omak, Washington and then returned to the Tri-Cities on the next day. Physical surveillance was conducted in the Tri-Cities and photos were taken of the occupants inside the vehicle. The photos of the occupants were shown to CHS1. CHS 1 identified the Defendant as the driver of the Sebring. CHS1 stated that the Defendant was recently pointed out to him as a new driver for the organization. Specifically, CHS1 reported that on or around August 18, 2015, Casillas was with CHS1 shopping in the Tri-Cities and pointed out a tall Hispanic male with a beard that Casillas stated was a driver for the organization. Casillas told CHS1 the new driver was transporting cocaine and methamphetamine for the organization and was moving 20 plus kilos per trip near Canada. Casillas told CHS1 that an individual near the Canadian border would receive the transported cocaine and then arrange to have the cocaine and methamphetamine backpacked into Canada. CHS1 confirmed that new driver to be the Defendant.

On August 22, 2015, a white Acura bearing Washington license AQM 2251 was observed by Task Force Officer Aaron Clem in the area of Casillas identified residence after the Sebring returned from a trip near the border. The white Acura showed registered to the Defendant at 115 N. Wehe in Pasco, Washington. On August 27, 2015, Task Force Officers Alice Rogers and Eric Hanson traveled to Omak, Washington to conduct follow up on the August 21st and 22nd trip of the Sebring. Electronic monitoring placed the Sebring near the

Plea Agreement - 9
Plea 2.docx

Omak Inn located at 912 Koala Dr. Omak, Washington. Suzanne Carpenter an employee at the Omak Inn provided information that the Defendant of 115 N. Wehe Avenue, Pasco, Washington rented a room on August 21st for two adults. The Defendant provided phone number (509) 412-4063 for his contact.

On October 9, 2015, an additional trip was made by the Defendant near the Canadian Border. During this trip the EWVGSSTF arranged for an investigative stop of the vehicle and confirmed the occupants to be the Defendant and Alejandro Martinez. Both parties were interviewed and provided differing stories concerning the events and purpose of their travel to the area. Signed consent was given to search the vehicle and a K-9 was deployed by a Border Patrol agent. The K-9 alerted on an open empty duffel bag and blanket inside the trunk of the vehicle. Telephone analysis continued to indicate contact between the Defendant and Casillas during the trip. A Washington State Title History shows the registered owner to now be the Defendant.

After a complete analysis of the tracker place don the Sebring while in the Defendant's possession, there appeared to be multiple trips to the border during this time period in addition to those specifically noted above.

Kalyn Karlberg an analyst with the FBI, has reviewed numerous phone tolls on phone identified for Casillas (509) 820-1407. Phone tolls confirmed over 200 contacts between August 1st and October 8th, 2015 between Casillas and (509) 412-4603, the phone number associated with the Defendant. At the same time, (509) 820-1407, Casillas' number, was also in contact with two additional Mexican phone numbers utilized by Calvillo.

After Casillas' arrest and during a search of his cellular telephone, there are a number of text messages between Casillas and the Defendant consistent with his role as a driver. There are also a number of telephone contacts between

Plea Agreement - 10
Plea 2.docx

the Defendant and other Co-defendants. The Defendant as further identified as a cousin of Casillas.

8. **The United States Agrees Not to File Additional Charges:**

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Second Superseding Indictment, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

9. **United States Sentencing Guideline Calculations:**

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

(a). **Base Offense Level and Application of U.S.S.G. §1B1.3:**

The Government and Defendant agree and stipulate that more than 4.5 kilograms of actual methamphetamine[2] was distributed in furtherance of the criminal activity jointly undertaken by the Defendant and his co-conspirators; this amount was within the scope of the Defendant's agreement; this amount was reasonably foreseeable to this Defendant in connection with the conspiracy; and this Defendant's relevant conduct for sentencing purposes should be calculated based upon this amount, pursuant to U.S.S.G. §1B1.3.

---

[2] The Defendant also had involvement and knowledge in regard to cocaine shipments in this conspiracy. However, the calculation of those amounts would lead to the same applicable offense level.

Plea Agreement - 11
Plea 2.docx

Thus, the Government and Defendant agree that the base offense level for Count 1, is 38. *See* U.S.S.G. §2D1.1(c)(1) and Commentary 8(b).

(b). <u>Role in the Offense</u>:

The United States and the Defendant agree that the Defendant was "substantially less culpable than the average participant" in the conspiracy. *See* U.S.S.G. §3B1.2, Application Note 3(A). The United States and the Defendant agree to recommend that the Court grant a downward adjustment of an additional four levels based upon the Defendant's role in the offense, as a minimal participant. *See* U.S.S.G. §3B1.2(a). This role adjustment creates new base offense level of 32 (*See*, U.S.S.G. (a)(5)), minus four levels for his role in the offense resulting in an offense level 28 before acceptance of responsibility.

(c). <u>Acceptance of Responsibility</u>:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than the next Pre-Trial Conference, the United States will move for a three (3) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

Plea Agreement - 12
Plea 2.docx

Furthermore, the Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

(d).  Criminal History:

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report. The United States and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

10.  Safety Valve:

The United States and the Defendant agree that the Defendant may be eligible for the safety valve provisions of 18 U.S.C. § 3553(f) and U.S.S.G. §5C1.2. At the time of this change of plea, the parties acknowledge that the Defendant has not satisfied the fifth requirement of the safety valve. If the Court finds that the Defendant meets the criteria set forth at 18 U.S.C. § 3553(f)(1)-(5), the Court shall impose a sentence in accordance with the applicable sentencing guidelines without regard to any statutory minimum sentence.

11.  Departures:

The Defendant intends to request downward departures and variances from the sentencing guidelines. The United States reserves its right to oppose any downward departure.

//

Plea Agreement - 13
Plea 2.docx

12. Length of Incarceration:

The United States will recommend that the Court impose a sentence at the low end of the applicable advisory sentencing guideline range. The Defendant understands that unless he qualifies for the safety valve provision, he cannot be sentenced to less than the applicable ten year mandatory minimum.

13. Criminal Fine:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

14. Supervised Release:

The parties agree to recommend that the Court impose a 5-year term of supervised release, to include the following special conditions, in addition to the standard conditions of supervised release:

(1) that the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Office; and

(2) that the Defendant have no contact with any witnesses or Co-defendants in this cause number.

15. Mandatory Special Penalty Assessment:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

16. Payments While Incarcerated:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay

Plea Agreement - 14
Plea 2.docx

toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

18. <u>Appeal Rights</u>:

In return for the concessions that the United States has made in this Plea Agreement, the Defendant agrees to waive his right to appeal the conviction and sentence if the Court imposes a prison term no higher than the applicable guideline range and imposes no more than 5 years supervised release. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence. Should the Defendant successfully move to withdraw from this Plea Agreement or should the Defendant's conviction on Count 1 of the Second Superseding Indictment be dismissed, set aside, vacated, or reversed, the Plea Agreement shall become null and void; the United States may move to reinstate all counts of Indictment No. 4:15-CR-6049-EFS-23; and the United States may prosecute the Defendant on all available charges involving or arising out of Indictment No. 4:15-CR-6049-EFS-23. Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack

Plea Agreement - 15
Plea 2.docx

of the conviction or sentence, including, but not limited to, proceedings pursuant to 28 U.S.C. § 2255 (writ of habeas corpus).

19.  Integration Clause:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

### Approvals and Signature

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Joseph H. Harrington
United States Attorney

_Stephanie Van Marter_ (signature)   8/24/18
Stephanie Van Marter                 Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to

Plea Agreement - 16
Plea 2.docx

me; other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____     8/24/18
JOSE ADRIAN MENDOZA                Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____     8/24/18
Scott Johnson                      Date
Attorney for the Defendant

Plea Agreement - 17
Plea 2.docx