**NICOLAS V. VIETH**
Nos. de ID del Colegio de Abogados: 8166 / WA 34196
Vieth Law Offices, Chtd.
912 East Sherman Avenue
Coeur d' Alene ID 83814

Teléfono: 208.664.9494
Fax: 208.664.9448
Correo electrónico: nick@viethlaw.com

Abogado del acusado - Jese David Carillo Casillas



FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AUG 24 2018
SEAN F. McAVOY, CLERK
_____ DEPUTY
RICHLAND, WASHINGTON

### TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
### PARA EL DISTRITO ESTE DEL ESTADO DE WASHINGTON
(El Honorable Edward F. Shea)

| | |
|---|---|
| ESTADOS UNIDOS DE AMÉRICA, <br><br> Demandante, <br><br> vs. <br><br> JESE DAVID CARILLO CASILLAS, <br><br> Acusado. | CASO NO. CR-15-06049-EFS-2 <br><br> NOTIFICACIÓN DE INTENCIÓN DE DECLARACIÓN DE CULPABILIDAD <br><br> *Con argumento verbal* <br> *Martes, 10 de abril de 2018 a las 8:30 a.m.* |

SE PRESENTA AHORA, el acusado, Jese David Carillo Casillas, por medio de su abogado defensor, Nicolas V. Vieth del despacho Vieth Law Offices, Chtd., quien por este conducto presenta esta notificación de que tiene la intención de

NOTIFICACIÓN DE INTENCIÓN DE DECLARACIÓN DE CULPABILIDAD    1

declararse culpable de los cargos 1 y 2 de la Segunda acusación sustitutiva de fecha 6 de diciembre de 2016, acusándolo de conspiración para distribuir 500 gramos o más de una mezcla o sustancia que contiene una cantidad detectable de metanfetamina, 5 kilogramos o más de cocaína, 1 kilogramo o más de heroína y 400 gramos o más de N-fenilo-N Propanamida, en violación de los códigos 21 USC § 841 (a)(1), (b)(1)(A)(i), (ii)(I) y (vi); todo en violación del código 21 USC § 846, Cargo 1; y Conspiración para Cometer Lavado de Dinero, en violación del código 18 USC § 1956 (a) (1), (a)(2) y (h), Cargo 2. *Consultar* ECF 108.

El Sr. Casillas tiene la intención de declararse sin un acuerdo de culpabilidad. El Sr. Casillas también presenta el siguiente resumen de su comprensión de los cargos, sanciones, exenciones, elementos ofensivos y hechos.

## I. Admisión de Culpabilidad y Sanciones Legales Máximas

El acusado entiende que la acusación contenida en el Primer Cargo es un cargo de felonía de Clase A en el que la pena máxima legal no es inferior a 10 años de prisión, que no es suspendible y no es susceptible de libertad condicional, y una pena máxima posible de cadena perpetua; una multa que no exceda $10,000,000; un plazo de libertad supervisada no menor de 5 años hasta un término de por vida; denegación de ciertos beneficios federales; y la consideración de una evaluación de sanciones de $100.

El Acusado comprende que el cargo contenido en el Cargo Dos es un

cargo de felonía Clase B en el cual la pena máxima legal es un período de encarcelamiento de no más de 20 años de prisión; una multa de hasta $500,000 o dos veces la cantidad de dinero involucrado en la operación de lavado; un término de libertad supevisada de no más de 3 años; y una evaluación especial de sanciones de $100.

El Acusado comprende además que una violación de una condición de libertad supevisada conlleva una pena adicional de reencarcelamiento por todo o parte del plazo de la libertad supevisada sin recibir crédito por el tiempo que anteriormente se sirvió en la supervisión posterior a la liberación.

## II. Negativa de Beneficios Federales

El Acusado entiende que al presentar estas admisiones de culpabilidad, el Acusado ya no es elegible para recibir asistencia bajo ningún programa estatal financiado bajo la parte A del título IV de la Ley de Seguridad Social (sobre Asistencia Temporal para Familias Necesitadas) o beneficios bajo el programa de cupones para alimentos o cualquier programa estatal operado bajo la Ley de Cupones para Alimentos. 21 U.S.C. § 862a. Además, el Tribunal puede negar la elegibilidad del Acusado a cualquier subvención, contrato, préstamo, licencia profesional o licencia comercial otorgada por una agencia de los Estados Unidos o por fondos asignados de los Estados Unidos. 21 U.S.C. § 862.

## III.     Renuncia de Derechos

El Acusado, Jesé David Carillo Casillas, entiende que al declararse

culpable de los delitos imputados en la Segunda acusación sustitutiva, renuncia consciente y voluntariamente a ciertos derechos constitucionales, que incluyen:

(1) el derecho a un juicio ante un jurado;

(2) el derecho a confrontar a los testigos que testificarían contra él en el juicio;

(3) el derecho a permanecer en silencio;

(4) el derecho a testificar en el juicio; y

(5) el derecho de obligar a los testigos a testificar en su nombre durante un juicio.

Aun cuando el Acusado renuncia a ciertos derechos constitucionales, el Acusado entiende que el Acusado conserva el derecho a ser asistido durante el proceso de sentencia y cualquier apelación directa de la condena y sentencia por un abogado, quien será nombrado sin costo alguno si el Acusado no puede pagar los servicios de un abogado. El Acusado también reconoce que renuncia a cualquier moción previa al juicio actualmente pendiente ante el Tribunal.

///

### IV.     Elementos del Delito

(a) Cargo 1:

El Acusado acepta que, para condenar al Acusado de conspiración para distribuir 500 gramos o más de una mezcla o sustancia que contenga una cantidad detectable de metanfetamina, 5 kilogramos o más de cocaína, 1 kilogramo o más de heroína y 400 gramos o más de N- fenil-N-Propanamida, en violación del código 21 USC § 841 (a)(1), (b)(1)(A)(I), (ii)(I), (vi) y (viii); todo en violación del 21 USC § 846, los Estados Unidos tendrían que probar los siguientes elementos más allá de una duda razonable:

*Primero*, a partir de una fecha desconocida, pero en o alrededor de enero de 2010 hasta aproximadamente el 6 de diciembre de 2016, el Acusado, JESE DAVID CARILLO CASILLAS, en el Distrito Este de Washington, llegó a un acuerdo con una o más personas para cometer el delito de distribución de metanfetamina y/o cocaína y / o heroína y / o N-fenil-N-Propanamida (Fentanilo) según el cargo en la Segunda acusación sustitutiva;

*Segundo*, el acusado se *convirtió* en miembro de la conspiración sabiendo al menos uno de sus objetos y con la intención de ayudar a lograrlo; y

*En tercer lugar*, el acuerdo de distribución involucró más de 500 gramos de una mezcla o sustancia que *contiene* una cantidad detectable de metanfetamina, 5 kilogramos o más de cocaína, 1 kilogramo o más de heroína y 400 gramos o más de N-fenil-N-propanamida y sería razonablemente previsible para un miembro de la conspiración.

(b) Cargo 2:

El Acusado acepta que para condenar *al* Acusado de Conspiración para Cometer Lavado de Dinero, en violación del código 18 USC § 1956 (a) (1), (a) (2) y (h), los Estados Unidos tendrían que probar más allá de una duda razonable los siguientes elementos:

*En primer lugar*, a partir de una fecha desconocida y hasta enero de 2010 y continuando hasta marzo de 2017, en el Distrito Este de Washington y en otros lugares, el Acusado, JESE DAVID CARILLO CASILLAS, llegó a un acuerdo con una o más personas para cometer el delito de Lavado de Dinero en violación del código 18 USC § 1956 (a) (1) y (a)(2), como se acusa en la Segunda acusación sustitutiva; y

*Segundo*, el Acusado se convirtió en *miembro* de la conspiración sabiendo al menos uno de sus objetos y con la intención de ayudar a lograrlo.

Los elementos de lavado de dinero, en violación del código 18 USC § 1956 (a)(1)(B) son los siguientes:

*En primer lugar*, el Acusado condujo o hizo que se realizara una transacción financiera que involucraba propiedad que representaba el producto de la Conspiración y Distribución de Sustancias Controladas;

*Segundo*, el Acusado *sabía* que la propiedad descrita procede de alguna forma de actividad ilícita; y

*En tercer lugar*, el Acusado sabía que la transacción se diseñó, en todo o en parte, para ocultar la naturaleza, ubicación, fuente, propiedad o control de los ingresos con la intención de promover la actividad ilícita especificada.

Los elementos del Lavado Internacional de Dinero, en violación del código 18 USC § 1956 (a)(2) son los siguientes:

*Primero*, el Acusado, a sabiendas transfirió o hizo que se transfiriera dinero de un lugar fuera de los Estados Unidos a un lugar dentro de los Estados Unidos; y

*Segundo*, el Acusado actuó con la intención de promover la conspiración y la distribución de sustancias controladas.

///

## V. Base Objetiva

El Acusado, JESE DAVID CARILLO CASILLAS, acepta que los siguientes hechos son veraces y que los Estados Unidos podrían probar estos hechos más allá de toda duda razonable durante el juicio.

En abril de 2015, el Buró Federal de Investigaciones (FBI) estaba investigando a la organización de tráfico de drogas de Ivan Hernández Calvillo. El Acusado primero se identificó como trabajando con esta organización de tráfico de drogas en ese momento.

Durante este mismo período de tiempo, los miembros de la Agencia Antidrogas (DEA) de Boston estaban llevando a cabo una investigación paralela sobre las actividades de lavado de dinero de la organización de tráfico de drogas de Calvillo. La DEA colocó con éxito a un agente encubierto dentro de la actividad de lavado de dinero. El propósito básico que el agente encubierto de la DEA (en lo sucesivo "UC") desempeñó para la organización fue su capacidad para aceptar efectivo canadiense, depositarlo, lavarlo electrónicamente a través de su negocio y luego transferir la divisa estadounidense en depósitos más pequeños hacia México y Estados Unidos. El agente encubierto de la DEA cobraría una comisión o porcentaje por el efectivo lavado.

///

Luego informaría a Calvillo, y luego al Acusado, sobre el monto restante disponible para transferencia bancaria.

Aproximadamente en agosto de 2015, el Acusado comenzó a comunicarse con un agente encubierto de la DEA a través de varias reuniones cara a cara y comunicaciones por vía Whats App. El Acusado fue presentado al agente encubierto de la DEA como asociado de Calvillo.

El 2 de diciembre de 2015, Calvillo arregló una entrega de dinero con el agente encubierto de la DEA. Los arreglos para la entrega de dinero dieron como resultado que un agente encubierto de la Real Policía Montada de Canadá (RCMP) recibiera $ 25,000.00 en moneda canadiense de un coacusado en Langley, Columbia Británica. El 8 y 9 de diciembre de 2015, el Acusado recibió dos transferencias electrónicas de estos fondos por un total de $6689.14 en su cuenta de cheques del banco Wells Fargo.

Calvillo fue asesinado en México el 13 de diciembre de 2015. Después de la muerte de Calvillo, el Acusado comenzó a comunicarse con el agente encubierto de la DEA sobre transacciones adicionales de lavado de dinero y de drogas.

El 6 de enero de 2016, los investigadores observaron la cámara de un poste colocada en la residencia del Acusado en Kennewick, Washington. Los investigadores observaron al coacusado Juvenal Landa en la residencia.

Lo observaron cargar una bolsa grande en un Jeep. Los oficiales marcaron el alto al Jeep. Un perro de la policía alertó positivo por presencia de narcóticos en el vehículo. Después de obtener una orden estatal de cateo, la bolsa observada por los investigadores se extrajo del interior del vehículo. La bolsa incautada a Landa contenía 904 gramos de metanfetamina que en al probarse mostró una pureza del 100%. Las huellas dactilares de Landa y Casillas se identificaron en el material de empaque de metanfetamina.

El 1 de marzo de 2016, el Acusado organizó una entrega de dinero en Canadá con el agente encubierto de la DEA. La transacción de entrega de dinero resultó en que un agente encubierto de la RCMP recibiera $46,950.00 en moneda canadiense y $7,000.00 en moneda estadounidense de un coacusado. El Acusado le indicó posteriormente al agente encubierto de la DEA a dónde enviar el dinero limpio. Los fondos fueron transferidos a los coacusados Julio Cesar Rosales y Salvador Gudino Chavez.

En abril de 2016, el Acusado hizo los arreglos con el agente encubierto de la DEA para obtener una gran cantidad de dinero en efectivo en Nueva York. El Acusado hizo los arreglos para que la mayoría del efectivo sea entregado personalmente, no por cable, al coacusado Julio Cesar Rosales. Por instrucciones del Acusado, un hombre desconocido entregó en efectivo al agente encubierto en Nueva York el monto de $264,990.00 en moneda estadounidense el 8 de abril de 2016.

En ausencia de la comisión acordada por el lavado de dinero, $244,240.00 fueron entregados personalmente por un agente encubierto al coacusado Rosales en Los Angeles el 13 de abril de 2016. Poco después de ello, el vehículo fue detenido y la policía confiscó el dinero de Rosales. El saldo restante de esa entrega en efectivo ($7,759.00) fue transferido a varias cuentas bancarias según las instrucciones del Acusado antes de la entrega y confiscación de los fondos.

El 17 de mayo de 2016, el Acusado entregó 975.5 gramos de metanfetamina al agente encubierto de la DEA en una ubicación predeterminada cerca de Seattle, Washington. Al someterse a prueba, la metanfetamina tuvo una pureza del 99%.

El 18 de mayo de 2016, por instrucciones del Acusado, el agente encubierto de la DEA transfirió electrónicamente $3,000.00 a Brittney Zaragoza en Kennewick, Washington como pago parcial por la metanfetamina entregada el día anterior.

El 26 de mayo de 2016, el Acusado organizó una entrega de dinero en Canadá con el agente encubierto de la DEA. Como resultado de ello, $225,070.00 en moneda canadiense fueron entregados a un agente encubierto de la RCMP. El Acusado ordenó luego al agente encubierto de la DEA entregar personalmente $129,735.00 a un co-conspirador sin cargos en Los Ángeles. El Acusado también ordenó una transferencia electrónica de $3,000.00 para Brittney Zaragoza.

En 28 de junio de 2016, el Acusado hizo los arreglos con el agente encubierto de la DEA para una entrega de dinero en efectivo en Canadá.

Como resultado de estos arreglos, un coacusado entregó $143,145.00 en moneda canadiense a un agente encubierto de la RCMP. Luego, el Acusado ordenó al agente encubierto de la DEA que se transfiriera electrónicamente una parte de los fondos a varias cuentas en Pasco, Washington.

Entre mayo y julio de 2016, el Acusado y el agente encubierto de la DEA discutieron sobre la compra y entrega de 12 kilogramos de heroína. El 15 de agosto de 2016, el Acusado organizó y participó en la entrega de los 12 kilogramos de heroína al agente encubierto de la DEA, cerca de Seattle, Washington. En esa fecha, el Acusado y el coacusado Figueroa viajaron desde la residencia del Acusado a un lugar cerca de Seattle, Washington. El Acusado informó al agente encubierto de la DEA que estaba en camino y le preguntó cómo ponerse en contacto con la persona que recibiría la entrega. El Acusado y Figueroa se dirigieron a la ubicación designada. Figueroa se reunió con el agente encubierto y le entregó al agente encubierto una bolsa negra de lona. Los agentes que realizaban la vigilancia observaron al Acusado observando la transacción en un vehículo separado.

La bolsa de lona negra contenía 12 bloques que pesaban aproximadamente 1 kilogramo cada uno. El laboratorio de DEA confirmó más tarde que 2 de los kilogramos contenían residuos de la fabricación de heroína y fentanilo. Los 10 kilogramos restantes contenían más de 650 gramos de fentanilo. También había presente heroína en pequeñas cantidades.

El 17 de agosto de 2016, los investigadores aplicaron una orden de cateo a la residencia del Acusado, en Kennewick Washington. Dentro de la recámara del Acusado, los agentes encontraron una pistola Colt calibre .45 cargada debajo de la almohada del Acusado, teléfonos celulares y una computadora. En el área de la cocina, los agentes localizaron dos teléfonos celulares adicionales, aproximadamente $2,000.00 en moneda estadounidense, algo en moneda canadiense y una camisa que el Acusado fue visto usando durante la reciente transacción de heroína.

Se realizaron búsquedas en los teléfonos del Acusado de conformidad con las órdenes de cateo. Los teléfonos contenían mensajes de texto pertinentes, imágenes guardadas relevantes y conectividad confirmada entre el Acusado y varios coacusados.

De acuerdo con los registros bancarios, de las siete (7) transacciones de lavado de dinero que totalizaron $955,763.00, el Acusado recibió una cantidad total de $14,689.00.

### VI.  Rango de Pautas y Puntaje de Historial Criminal

El Acusado comprende y reconoce que las Pautas de Sentencias de los Estados Unidos (en adelante, "USSG") son aplicables a este caso y que el Tribunal determinará el rango de las pautas aplicables de condena del Acusado al momento de emitir la sentencia. El Acusado también entiende de conformidad con el caso de lo *Estados Unidos v. Booker*, 543 US 220 (2005),

que este Tribunal debe considerar los factores establecidos en el código 18 USC § 3553(a), e imponer una sentencia suficiente, pero no mayor a la necesaria.

(a) Aceptación de la responsabilidad:

Bajo el código §3E1.1 y debido a que el Acusado ha demostrado aceptación de responsabilidad por este delito y ha notificado oportunamente al Gobierno, se debe aplicar una reducción de tres (3) niveles.

(b) Antecedentes penales:

El Acusado entiende que el cálculo del historial criminal del Acusado será determinado por el Tribunal después de la revisión del Informe de Investigación previo a la sentencia.

///

///

///

///

///

///

## VII.  Conclusión y Firmas

Por todo lo anterior, se solicita que este Tribunal acepte la petición del Acusado y, a sabiendas y voluntariamente, ordene la redacción de un Informe previo a la sentencia y establezca una fecha para una audiencia de sentencia.

FECHADO este día 16 de ~~julio~~ agosto de 2018.

VIETH LAW OFFICES, CHTD.

/s/ Nicolas V. Vieth

NICOLAS V. VIETH                                  JESE D. CARILLO CASILLAS

Abogado del Acusado Casillas                      Acusado