1

1                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF WASHINGTON
2

UNITED STATES OF AMERICA,        ) Case No.
3                                 ) 4:15-CR-6049-EFS-21
                    Plaintiff,    )
4                                 ) August 24, 2018
v.                                )
5                                 ) Richland, Washington
MIGUEL REYES GARCIA,             )
6                                 ) In-Court Hearing
                    Defendant.    ) Pages 1 to 31
7   _____

8

              BEFORE THE HONORABLE EDWARD F. SHEA
9         SENIOR UNITED STATES DISTRICT COURT JUDGE

10

                         APPEARANCES:
11

For the Plaintiff (via           Stephanie A. Van Marter (a.m.)
12  video conference):           Stephanie.Van Marter@usdoj.gov
                                 James Goeke (p.m.)
13                               US Attorney's Office-SPO
                                 920 W Riverside, Suite 300
14                               P.O. Box 1494
                                 Spokane, WA 99210
15                               509-353-2767

16  For the Defendant:           Kenneth D. Therrien
                                 Kentherrien@msn.com
17                               Kenneth Therrien Law Office
                                 413 North Second Street
18                               Yakima, WA 98901
                                 509-457-5991
19

20  Official Court Reporter:     Kimberly J. Allen, CCR #2758
                                 United States District Courthouse
21                               P.O. Box 685
                                 Richland, Washington 99352
22                               (509) 943-8175

23  Proceedings reported by mechanical stenography; transcript
    produced by computer-aided transcription.
24

25

2

1                              **INDEX**

2

3                         **WITNESS INDEX**

4   **Plaintiff Witness:**                              **Page**

5

6      None

7                              *****

8   **Defense Witnesses:**                              **Page**

9

10     None

11

12                      **EXHIBITS ADMITTED**

13  **Plaintiff**
14   **Number**        **Description**                  **Page**

15               None

16
    **Defense**
17   **Number**        **Description**                  **Page**

18               None

19                      **GENERAL INDEX**

20

21                                                      **Page**

22     Reporter's Certificate............................31

23

24

25

1  (August 24, 2018; 10:40 a.m.)

2       THE COURT:  Ms. Van Marter, it looks like we can go

3  ahead, so what do you have?

4       MS. VAN MARTER:  Yes, Your Honor.  I have received the

10:39:21  5  notice of intent to plead guilty that was filed this morning, I

6  believe.

7       THE COURT:  Thank you.

8     (The Court and courtroom deputy conferring.)

9     (Discussion off the record.)

10:39:44  10       THE COURT:  Mr. Therrien apparently has -- we're going

11  to wait for the interpreter, unless she's --

12       U.S. MARSHAL:  They're both sitting out in the hallway.

13       THE COURT:  Are you folks ready to go?

14       MR. THERRIEN:  Judge, are you speaking to me?

10:39:58  15       THE COURT:  I am speaking to you, Mr. Therrien.  You're

16  up next.

17       Are you prepared to go ahead at this time?

18       MR. THERRIEN:  We are.

19       THE COURT:  Okay.  And the interpreter is here.

10:40:05  20       Ms. Van Marter, it looks like we have -- everything is

21  moving right along, so we're set to go.

22       Why don't you check out the headset.  Have you checked

23  the headset, Ms. Vargas?

24     (The Court and courtroom deputy conferring.)

10:40:25  25       THE COURT:  We're off the record, Kim.

1          (Discussion held off the record.)

2          THE COURT:  On the record.

3          MR. THERRIEN:  Mr. Reyes Garcia, it's my understanding,

4    is going to ask for time to hire a new attorney and --

10:40:52  5          THE COURT:  Is this going to be an ex parte hearing?

6          MR. THERRIEN:  Probably.

7          THE COURT:  Well, Ms. Van Marter, it sounds like we're

8    going to have an ex parte hearing.

9          MR. THERRIEN:  That's why I wanted to tell you now, if

10:41:04 10   you wanted to take somebody else first.  I didn't know how you

11   wanted to do it, Judge.

12         THE COURT:  No, we'll take care of this now.

13         MR. THERRIEN:  Okay.

14         THE COURT:  Yeah.

10:41:13 15        MS. VAN MARTER:  I think it's probably wise to keep the

16   VTC connection going, so I'll step out of this courtroom, Your

17   Honor, and get confirmation from the clerk that she'll report

18   that I've left the courtroom.

19         THE COURT:  Thank you.

10:41:26 20        So no members of the U.S. Attorney's Office or staff

21   will be in the courtroom in Spokane.

22         MS. VAN MARTER:  That is correct, Your Honor.

23         THE COURT:  Thank you.

24         And the clerk in Spokane, who's monitoring the

10:41:44 25   proceedings, I want you to verify for the record that there are

1    no U.S. Attorney's Office personnel in the courtroom when you're

2    sure of that.

3            THE COURTROOM DEPUTY:  That is correct.  Nobody is in

4    the courtroom.

10:41:56  5            THE COURT:  Okay.  So it's been confirmed.

6    (Additional ex parte proceedings were reported but not requested

7    to be transcribed.)

8

9    (August 24, 2018; 2:23 p.m.)

10           THE COURTROOM DEPUTY:  Please rise.

11         (Call to Order of the Court.)

12           THE COURTROOM DEPUTY:  Court is reconvened in the matter

13    of *United States of America v. Miguel Reyes Garcia*, Cause

14    No. 15-CR-6049-EFS, Defendant No. 21.

02:23:38  15           THE COURT:  Good afternoon to counsel and the defendant.

16    Please be seated.

17            Do I have the original plea agreement?

18            Thank you.

19            Mr. Goeke, you're present, standing in for

02:23:53  20    Ms. Van Marter; is that right?

21            MR. GOEKE:  That is correct, Your Honor.

22            THE COURT:  All right.  Are you ready to proceed?

23            MR. GOEKE:  Yes, Your Honor.

24            THE COURT:  Go ahead.  Thank you.

02:24:01  25            Mr. Therrien, we're ready?

1          MR. THERRIEN:  Yes, we are, Your Honor.

2          THE COURT:  Okay.  Please swear in the defendant.

3          THE COURTROOM DEPUTY:  Will you please raise your right

4     hand.

02:24:11  5

6                    MIGUEL REYES GARCIA,

7     having first sworn or affirmed, testified under oath as follows:

8          THE DEFENDANT (through the interpreter):  I do.

9          THE COURT:  Mr. Reyes Garcia, we're about to discuss

02:24:28  10    your possible plea in this case.  And if I ask you any questions

11    that are confusing, just raise your hand and tell me that they

12    are, and I'll say them in a different way.

13          Will you do that?

14          THE DEFENDANT (through the interpreter):  Yes.

02:24:42  15          THE COURT:  And if you need time to talk with your

16    attorney privately, please ask me for that, and I'll be happy to

17    give it to you.

18          Will you do that as well?

19          THE DEFENDANT (through the interpreter):  Yes.

02:24:52  20          THE COURT:  Is your true name Miguel Reyes Garcia?

21          THE DEFENDANT (through the interpreter):  Yes.

22          THE COURT:  What's the highest grade in school that you

23    completed?

24          THE DEFENDANT (through the interpreter):  Middle school.

02:25:08  25          THE COURT:  And where was that?

1        THE DEFENDANT (through the interpreter):  Mexico.

2        THE COURT:  So you're a citizen of Mexico?

3        THE DEFENDANT (through the interpreter):  Yes.

4        THE COURT:  Are you under the care of a doctor for any

02:25:22  5   condition?

6        THE DEFENDANT (through the interpreter):  No.

7        THE COURT:  Are you taking medication prescribed for you

8   by a doctor?

9        THE DEFENDANT (through the interpreter):  No.  No.

02:25:31  10      THE COURT:  Are you under the influence of drugs or

11   alcohol right now?

12       THE DEFENDANT (through the interpreter):  No.

13       THE COURT:  Has anybody threatened you, any member of

14   your family to force you to sign a plea agreement?

02:25:43  15      THE DEFENDANT (through the interpreter):  No.

16       THE COURT:  Before signing it, was it translated into

17   Spanish that you understood?

18       THE DEFENDANT (through the interpreter):  Yes.

19       THE COURT:  And who was the translator?

02:25:56  20      MR. THERRIEN:  He doesn't --

21       THE DEFENDANT (through the interpreter):  The lady who

22   was sitting here.

23       THE COURT:  Okay.  And you understood the Spanish that

24   she used?

02:26:04  25      THE DEFENDANT (through the interpreter):  Perfectly.

1      Yes.

2              THE COURT:  And were you able to ask all the questions

3      of Mr. Therrien that you wanted during that translation?

4              THE DEFENDANT (through the interpreter):  Yes.

02:26:16   5          THE COURT:  Before she translated it for you, have you

6      been talking with Mr. Therrien using the services of another

7      interpreter?

8              THE DEFENDANT (through the interpreter):  Yes.

9              THE COURT:  Who was that, Mr. Therrien?

02:26:27  10          MR. THERRIEN:  That was Estela Castro and Dulce

11     Bustamante yesterday as well.

12             THE COURT:  Okay.  And do you recognize that you were

13     talking to Mr. Therrien through those two interpreters?

14             THE DEFENDANT (through the interpreter):  Yes.

02:26:42  15          THE COURT:  And did you understand the Spanish that they

16     used?

17             THE DEFENDANT (through the interpreter):  Yes.

18             THE COURT:  Has Mr. Therrien answered all of your

19     questions about this 11(c)(1)(C) plea agreement?

02:26:53  20          THE DEFENDANT (through the interpreter):  Yes.

21             THE COURT:  And has he explained what it means and what

22     will happen?

23             THE DEFENDANT (through the interpreter):  Yes.

24             THE COURT:  Are you satisfied with his services as your

02:27:04  25     attorney?

1      THE DEFENDANT (through the interpreter):  Yes.

2      THE COURT:  Count 1 of the second superseding indictment

3  charges you with conspiracy to distribute 500 grams or more of a

4  mixture or substance containing a detectable amount of

02:27:21  5  methamphetamine, 5 kilograms or more of cocaine, 1 kilogram or

6  more of heroin, and 400 grams or more of N-phenyl-N propanamide,

7  referred to as fentanyl, in violation of specific statutes that

8  are set out in your indictment.

9      Is that the count that you intend to plead guilty to?

02:27:56  10      THE DEFENDANT (through the interpreter):  Yes.

11      THE COURT:  Okay.  That's a Class A felony.  It has

12  these maximum penalties by statute or by law:  Not less than ten

13  years in prison, which cannot be suspended or paroled; a maximum

14  possible penalty of life in prison; a fine not to exceed

02:28:28  15  $10 million; supervised release of not less than five years, up

16  to life; denial of certain federal benefits; and a $100 special

17  penalty assessment that you must pay.

18      Do you understand those are the maximum penalties that

19  the law provides?

02:28:51  20      THE DEFENDANT (through the interpreter):  Yes.

21      THE COURT:  Supervised release or release on supervision

22  means that after you serve prison, you have to follow conditions

23  that I impose.  You have to do it, because if at a hearing I

24  find you violated one or more conditions, I can put you back in

02:29:13  25  prison for all or part of your term of supervised release,

*USA v. Reyes Garcia/4:15-CR-6049-EFS-21*                      10
*In-Court Hearing/August 24, 2018*

1    without giving you any credit for time you previously served on

2    post-release supervision.

3        Do you understand why it's so important to follow those

4    terms and conditions?

02:29:35    5        THE DEFENDANT (through the interpreter):  Yes.

6        THE COURT:  Because of the kind of crime that you intend

7    to plead guilty to in Count 1 of your second superseding

8    indictment, you're no longer eligible for benefits under Part A,

9    Title IV of the Social Security Act.  That's called Temporary

02:30:02    10   Assistance For Needy Families.  You're no longer eligible for

11   any food stamp program or state program carried out under the

12   Food Stamp Act.

13        Do you understand?

14        THE DEFENDANT (through the interpreter):  Yes.

02:30:14    15       THE COURT:  At sentencing, I'll decide whether to

16   declare you eligible or ineligible -- strike that.  I'll begin

17   again.

18        At sentencing, I'll decide whether to grant you

19   eligibility -- strike that.

02:30:32    20       I'll decide whether to deny you eligibility for any

21   grants, contracts, loans, or other sort of federal benefits.

22        Do you understand?

23        THE DEFENDANT (through the interpreter):  Yes.

24        THE COURT:  This is called a Rule 11(c)(1)(C) plea.

02:30:47    25   That means it's -- the Government and you are telling me that

1    you've agreed that there are certain conditions in the plea

2    agreement that have to be met or you folks -- or one or the

3    other of you can say the deal is off.

4         Is that your understanding?

02:31:09    5         THE DEFENDANT (through the interpreter):  Yes.

6         THE COURT:  And here the deal is the parties are saying

7    that you will recommend 120 months of incarceration as a

8    reasonable sentence.

9         Is that your position?

02:31:31    10        THE DEFENDANT (through the interpreter):  Yes.

11        THE COURT:  Here's what it says:  Pursuant to the

12   Federal Rule of Criminal Procedure 11(c)(1)(C), the parties

13   agree to recommend to the Court that a 120-month term of

14   incarceration is a reasonable and appropriate resolution for

02:31:57    15   this case, end of quote.

16        Is that correct?

17        THE DEFENDANT (through the interpreter):  Yes.

18        THE COURT:  So that means you're saying, "Judge, put me

19   in prison for ten years."

02:32:08    20        THE DEFENDANT (through the interpreter):  Yes.

21        THE COURT:  Okay.  You have a number of rights under the

22   United States Constitution.  Please listen carefully, because if

23   I accept your plea, there won't be a trial, and you will have

24   given up these valuable rights.

02:32:29    25        You have a right to plead not guilty and to continue

1    pleading not guilty.  By doing so, you're presumed to be

2    innocent.  The Government then must prove your guilt beyond a

3    reasonable doubt at trial.

4              At all stages of the proceedings you're entitled to have

02:32:52   5    a lawyer help you.  If you cannot afford one, we will appoint

6    one to help you.  Even if there's no trial because I accept your

7    plea of guilty, you still have the right to those free legal

8    services to help you with sentencing and appeal.

9              At trial, you and the attorney can subpoena people to

02:33:21   10   require them to come to court and testify under oath.  You and

11   the attorney can ask all the witnesses questions while they're

12   under oath.  You can decide whether you will testify, whether

13   you will call any witnesses, whether you will put on any

14   evidence.  If you decided you were not going to testify, then I

02:33:49   15   would tell the jury that they could not consider that in

16   determining your guilt.

17             Do you understand you have these rights?

18             THE DEFENDANT (through the interpreter):  Yes.

19             THE COURT:  You're not a citizen of the United States.

02:34:23   20   Because of the crime that you're going to admit and plead guilty

21   to, you're almost certainly going to be removed from the United

22   States and deported, and will never be able to return.  I can't

23   tell you that with certainty because I'm not an immigration

24   judge, but based on what we all know, it is virtually certain

02:34:50   25   that you will be removed or deported from the United States and

1    will certainly not be able to return.

2          Knowing that, do you still wish to continue with your

3    plea of guilty?

4          THE DEFENDANT (through the interpreter):  Yes.

02:35:07   5          THE COURT:  You have a plea deal with the United States.

6    If you are charged or convicted of any offense whatsoever, or if

7    you test positive for controlled substances, between now and

8    sentencing, then the Government can call off this plea deal.

9          Do you understand?

02:35:51   10          THE DEFENDANT (through the interpreter):  Yes.

11          THE COURT:  And then you'd have to go to trial on the

12    indictment charges against you.

13          Do you understand?

14          THE DEFENDANT (through the interpreter):  Yes.

02:36:01   15          THE COURT:  To convict you of the offense charged in the

16    indictment -- second superseding indictment in Count 1, and

17    that's the conspiracy to distribute drugs that I've already

18    outlined for you pursuant to the statute, 18, United States

19    Code -- sorry, 21, United States Code, Section

02:36:29   20    841(a)(1),(b)(1)(A)(i), (ii)(I),(vi), and (viii), all in

21    violation of Title 21, United States Code, Section 846.

22          Here are the elements of that crime that must be proved

23    at trial by the United States beyond a reasonable doubt:  First,

24    beginning on a date unknown but by on or about January 20th --

02:37:00   25    I'm sorry, January 2010, continuing until on or about

1    December 6th, 2016, the defendant, Miguel Reyes Garcia, in the

2    Eastern District of Washington, entered into an agreement with

3    one or more persons to commit the crime of distribution of

4    methamphetamine and/or cocaine and/or heroin and/or fentanyl, as

02:37:34   5    charged in the second superseding indictment; second, you became

6    a member of the conspiracy knowing of at least one of its

7    objects and intending to help accomplish it; and, third, the

8    agreement to distribute involved more than 500 grams of a

9    mixture or substance containing a detectable amount of

02:38:07   10    methamphetamine, 5 kilograms or more of cocaine, 1 kilogram or

11    more of heroin, and 400 grams or more of fentanyl, and would be

12    reasonably foreseeable to a member of the conspiracy.

13            Do you understand what I've explained to you?

14            THE DEFENDANT (through the interpreter):  Yes.

02:38:30   15            THE COURT:  On Page 5 there's a Paragraph 7 entitled

16    "Factual Basis and Statement of Facts," and that really tells me

17    what was going -- what you did in this case.

18            Is it true that you stipulate with the United States

19    that the facts in that paragraph on those pages are accurate?

02:38:59   20            THE DEFENDANT (through the interpreter):  Yes.

21            THE COURT:  And is it true that those facts, the United

22    States could prove those facts beyond a reasonable doubt at

23    trial?

24            THE DEFENDANT (through the interpreter):  Yes.

02:39:14   25            THE COURT:  And, finally, do they give me a basis to

1    accept your guilty plea?

2            THE DEFENDANT (through the interpreter):  Yes.

3            THE COURT:  In return for your plea of guilty to

4    Count 1, has the Government agreed that it will not bring any

02:39:34    5    other charges against you based on the information it now has

6    about your illegal activity as charged in the second superseding

7    indictment, unless you breach the plea agreement before or after

8    sentencing?  Is that true?

9            THE DEFENDANT (through the interpreter):  Yes.

02:39:58    10            THE COURT:  I have to do what's called a calculation of

11    the sentencing guidelines.  The law requires me to do it.  I

12    don't have to follow it, but I have to do it.

13            Here the parties have done what they think is a correct

14    calculation, and they say because of the facts of this case,

02:40:50    15    Your Honor, you start with the number 38, and from that you may

16    add or subtract some numbers.  And the parties disagree about

17    whether two levels should be added for possession of a firearm;

18    you say no, and the Government says yes.

19            Is that correct?

02:41:20    20            THE DEFENDANT (through the interpreter):  Yes.

21            THE COURT:  So I have to decide it when we're sentencing

22    you.

23            Correct?

24            THE DEFENDANT (through the interpreter):  Yes.

02:41:27    25            THE COURT:  And, then, from the 38, you also want me to

1   take off three levels, taking you down to 35, because you're

2   saying, "I timely accepted my responsibility, and under the

3   guidelines I can get three levels off for doing that."

4          Is that correct?

02:41:48   5          THE DEFENDANT (through the interpreter):  Yes.

6          THE COURT:  The other important factor in the

7   calculation is your Criminal History Category, and that means

8   that you'll be in a Category I through VI, and that's determined

9   by whether you have any criminal history points because of past

02:42:09   10   convictions.  No one can tell you that because we haven't seen

11   the presentence investigation report, so that will have to wait

12   until sentencing.

13          Do you understand?

14          THE DEFENDANT (through the interpreter):  Yes.

02:42:23   15          THE COURT:  So right now I can't tell you what the

16   guideline calculation is.  I can only tell you that I have to do

17   one.  It doesn't bind me.  And in your plea you're saying,

18   "Whatever that calculation is, sentence me to ten years."

19          Is that right?

02:42:44   20          THE DEFENDANT (through the interpreter):  Yes.

21          THE COURT:  There's a provision that might help you, and

22   that's called a safety valve provision.  If you qualify by

23   meeting all the conditions, then it's possible that I wouldn't

24   have to send you -- it's possible I'd have to consider what to

02:43:12   25   do by way of sentencing you.

1          This is an 11(c)(1)(C).

2          Is it intended by the parties that safety valve will

3   nevertheless apply or may apply?

4          MR. THERRIEN:  My understanding, it applies down to ten

02:43:32  5   years.

6          THE COURT:  What does that mean?

7          MR. THERRIEN:  That if the Court -- it's my

8   understanding if the Court finds safety valve and goes under ten

9   years, that gives the Government an opportunity to pull --

02:43:47 10   withdraw the guilty plea.

11          THE COURT:  To do what?

12          MR. THERRIEN:  I mean, to pull out -- pull out of the

13   guilty plea.

14          THE COURT:  Okay.  So even if he qualifies for safety

02:44:00 15   valve, the Government is saying, "We still want ten years."

16          MR. THERRIEN:  That's what the Government --

17          THE COURT:  And you've agreed to that.

18          MR. THERRIEN:  That's what we have.

19          THE COURT:  Okay.  So the fact that there might be a way

02:44:15 20   for him to get under the mandatory minimum means this:  The

21   parties are telling me, "Sentence me to ten years."  That's what

22   you're telling me.

23          And Mr. Therrien is saying, "Oh, if he gets that break

24   under the law, and you can sentence him to less than ten years,

02:44:33 25   well, even though we've agreed to the ten-year sentence, you

1    have to do what you have to do."

2         That's what you're telling me?

3         MR. THERRIEN:  That's what the Government is telling me,

4    and we've agreed to.

02:44:48  5         THE COURT:  Okay.  So what this means from your

6    viewpoint, Mr. Reyes Garcia, is you're saying, "Sentence me to

7    ten years."  But if I find you get the benefit of that special

8    condition, and if -- and I'm not saying I will, but if I

9    sentence you to less than ten years, then the Government can

02:45:13  10   walk away from this deal.

11        Do you understand that?

12        THE DEFENDANT (through the interpreter):  Yes.

13        THE COURT:  And then you go back to trial on Count 1.

14        Is that clear?

02:45:20  15        THE DEFENDANT (through the interpreter):  Yes.

16        THE COURT:  Okay.  As to length -- we've already covered

17   incarceration.

18        I must impose a fine, unless I find you and your family

19   cannot pay it.

02:45:36  20        Do you understand?

21        THE DEFENDANT (through the interpreter):  Yes.

22        THE COURT:  For the period of supervision, are you

23   asking for five years?

24        You're asking to be supervised for five years after you

02:45:51  25   finish prison:  Paragraph 14, Page 13.

1          THE DEFENDANT (through the interpreter):  Yes.

2          THE COURT:  Let's be sure we're all on the same page.

3          In Paragraph 14 on Page 13 it talks about the term of

4     supervised release.

02:46:16    5          Now, the way that paragraph is stated, it seems to me to

6     be -- needs some additional language.  That only says that if

7     you're allowed to remain in the United States or if you can

8     lawfully return, then I should make you serve a five-year term

9     of supervision.

02:46:39   10          Well, whether or not you are allowed to stay in the

11    United States or whether or not you can lawfully return, I'm

12    going to sentence you to five years of supervised release.

13          Why?  Because if you are deported to Mexico, and you

14    come back to the United States illegally, first, you're

02:47:05   15    committing another crime; but you're also, second, violating the

16    terms that I imposed on you, and I can put you in prison for

17    that supervised release period; just say, "You came back

18    illegally.  I told you not to.  That was a condition of release.

19    Now I'm putting you back in prison because you came back."

02:47:27   20          Do you understand what I'm telling you?

21          THE DEFENDANT (through the interpreter):  Yes.

22          THE COURT:  Okay.  The other condition -- the conditions

23    are search of your residence or vehicle, home, or belongings or

24    office; and no contact with other witnesses or co-defendants.

02:47:45   25          And you're agreeing to those conditions; is that

1    correct?

2         THE DEFENDANT (through the interpreter):  Yes.

3         THE COURT:  There's $100 you have to pay.

4         Will you pay it while you're in prison?

02:47:56  5         THE DEFENDANT (through the interpreter):  Yes.

6         THE COURT:  Okay.  Every defendant has a right to appeal

7    their judgment of conviction and sentence.

8         Here you're saying, "Judge, if you sentence me to no

9    more than 120 months and no more than five years of supervised

02:48:18  10   release, then I give up that right."

11        Am I saying that correctly?

12        THE DEFENDANT (through the interpreter):  Yes.

13        THE COURT:  You also have rights to attack your judgment

14   after you're sentenced, especially one that says let me free;

02:48:36  15   I'm being held unconstitutionally.  And you're giving up that

16   right with one exception:  If your lawyer did not effectively

17   assist you, and you did not and could not have known about it by

18   the time I sentence you, then you would still have that right.

19        Do you understand?

02:49:01  20        THE DEFENDANT (through the interpreter):  Yes.

21        THE COURT:  Does the agreement that you signed, after it

22   was translated into Spanish you understood, and after

23   Mr. Therrien had answered all of your questions through the

24   interpreter about what it meant, does that agreement contain all

02:49:23  25   of the agreements between you and the United States Government?

1          THE DEFENDANT (through the interpreter):  Yes.

2          THE COURT:  Have you gone over Count 1 of the agreement

3     with your client, Count 1 of the second superseding indictment?

4          MR. THERRIEN:  Yes.

02:50:04   5          THE COURT:  Have you actually read it to him or had it

6     read to him in Spanish?

7          MR. THERRIEN:  For the purposes of this plea?

8          THE COURT:  Yeah.

9          MR. THERRIEN:  Yeah.  Well, I had it read out of the

02:50:15  10     plea agreement.  I hadn't read off of the document, though.

11          THE COURT:  Okay.  Did the interpreter read him Count 1

12     of the indictment in Spanish?

13          MR. THERRIEN:  Yes, as it was set forth in the plea

14     agreement.

02:50:34  15          THE COURT:  Did you?

16          THE INTERPRETER:  Not this interpreter, Your Honor.

17          THE COURT:  Not this interpreter.

18          Who did?  Okay.

19          THE INTERPRETER:  This interpreter read what is in the

02:50:45  20     plea agreement, not the --

21          THE COURT:  Yes.

22          THE INTERPRETER:  -- indictment, yes.

23          THE COURT:  Okay.  I'm going to read the entire thing,

24     then.

02:50:52  25          Beginning on a date unknown but by on or about

1    January 20th -- January 2010 continuing until on or about

2    December 6th, 2016, in the Eastern District of Washington and

3    elsewhere, the defendants, Jese David Carillo Casillas, Rosa

4    Araceli Granados (a.k.a. La China), Alexis Joel Garcia Palomino,

02:51:22   5    ███████████████████, Francisco Duarte Figueroa, Gabriela

6    Mendoza Vasquez, ████████████████, Julio Cesar

7    Rosales Saucedo, Salvador Gudino Chavez, Adam Benjamin Goldring,

8    Juvenal Landa, Erica Maria Solis, Edgar Omar Herrera Farias

9    (a.k.a. Burro), ██████████████████████),

02:52:01   10   Alfredo Magana Garibay (also known as Freddy), Juan Bravo

11   Zambrano, Marcial Bravo Zambrano, Miguel Reyes Garcia, ████████

12   ████████████, Jose Adrian Mendoza, and Veronica Elvira

13   Cortez, did knowingly and intentionally combine, conspire,

14   confederate, and agree together with each other and other

02:52:36   15   persons, both known and unknown to the grand jury, to commit the

16   following offense against the United States, to wit:

17   distribution of 500 grams or more of a mixture or substance

18   containing a detectable amount of methamphetamine, 5 kilograms

19   or more of a mixture or substance containing a detectable amount

02:53:03   20   of cocaine, 1 kilogram or more of a mixture or substance

21   containing a detectable amount of heroin, and 400 grams or more

22   of a mixture or substance containing a detectable amount of

23   N-phenyl-N propanamide, all Schedule II controlled substances,

24   in violation of 21, United States Code, 841(a)(1),

02:53:42   25   (b)(1)(A)(i),(ii)(I),(vi), (viii), all in violation of 21,

KIMBERLY J. ALLEN, RMR, CRR, RPR, CCR
OFFICIAL COURT REPORTER

1    United States Code, Section 846.

2         To that count of the indictment -- of the second

3    superseding indictment, how do you plead, guilty or not guilty?

4         THE DEFENDANT (through the interpreter):  Guilty.

02:54:02    5    THE COURT:  Mr. Reyes Garcia, are you pleading guilty

6    because you truly are guilty?

7         THE DEFENDANT (through the interpreter):  Yes.

8         THE COURT:  Okay.  Let's take a look at it.

9         Between January 2010 and December 6th, 2016, were you

02:54:25    10   here in the state of Washington from time to time?

11        THE DEFENDANT (through the interpreter):  Yes.

12        THE COURT:  Okay.  You were part of a group that was

13   distributing drugs; is that right?

14        THE DEFENDANT (through the interpreter):  Yes.

02:55:21    15   THE COURT:  And you distributed kilogram quantities of

16   cocaine and backpacked quantities of such drugs into Eastern

17   Washington -- or from Eastern Washington into Canada; is that

18   true?  Did you help people do that?

19        THE DEFENDANT (through the interpreter):  Yes.

02:55:48    20   THE COURT:  Okay.  Tell me what you did that you know

21   was wrong.

22        THE DEFENDANT (through the interpreter):  Just being in

23   the hotel in Canada.  That's all.

24        THE COURT:  Oh, gosh, there's nothing -- there's no

02:56:07    25   crime about staying in a hotel.

1          Were there drugs in the hotel?

2          THE DEFENDANT (through the interpreter):  No.

3          THE COURT:  Did you help get drugs into Canada from

4    Washington?

02:56:30  5          THE DEFENDANT (through the interpreter):  Yes.

6          THE COURT:  And you knew there were drugs; is that

7    correct?

8          THE DEFENDANT (through the interpreter):  Yes.

9          THE COURT:  And you have a brother, don't you?

02:56:46  10         THE DEFENDANT (through the interpreter):  Uh, I have

11   six in my -- well, there's ten of us.

12         THE COURT:  Was one --

13         THE DEFENDANT (through the interpreter):  Four females

14   and --

02:56:55  15         THE COURT:  Was your brother involved in this as well,

16   working with you?

17         THE DEFENDANT (through the interpreter):  No.

18         THE COURT:  Okay.  Did you work with an individual to

19   arrange for money to be transported from one place to another?

02:58:10  20         THE DEFENDANT (through the interpreter):  No.

21         THE COURT:  The plea agreement says you did.  The one

22   you signed and said was true says:  Between October 2014 and

23   July 2016, Calvillo and, later, the defendant, you, were in

24   direct communication with the Drug Enforcement Administration

02:58:37  25   undercover contact via a recorded WhatsApp messenger and

1    arranged for approximately 15 cash money drops to be handled --

2    laundered by that person.

3         Yes or no?

4    (No answer.)

02:59:05    5         THE COURT:  That's what it says.  You told me it was

6    accurate.

7         Look, Mr. Reyes Garcia, you're here and charged because

8    the Government believes it can prove beyond a reasonable doubt

9    that you committed the crime charged in Count 1.  You told me

02:59:22    10   that was true, that you are guilty of that crime, and now I want

11   you to tell me some of the details.  So, tell me.

12        (Defendant speaking with interpreter.)

13        THE COURT:  Stop.

14        Go ahead.  What's he saying?

03:00:04    15   THE DEFENDANT (through the interpreter):  Well, the only

16   thing I know is that we're in a car, we're going to Canada, we

17   see this hill, there are two people with backpacks, and I'm

18   behind them, but I'm not carrying anything.

19        Then the following day, I get arrested.  I was at the

03:00:33    20   hotel over there.  Those people, they left in the car, and I

21   think that they were arrested before I was.

22        THE COURT:  Why did they arrest you?

23        THE DEFENDANT (through the interpreter):  Because they

24   saw me with them at the hotel.

03:00:54    25        THE COURT:  What did they find in the hotel room?

1    THE DEFENDANT (through the interpreter):  Nothing.  I

2  just had a small cell phone.  That's all I had there.

3    THE COURT:  So let me get this straight:  You were

4  taking a walk, and you were following some guys, and they had

03:01:14  5  some backpacks, and you kind of just followed them all the way

6  into Canada?  Is that what you're telling me?

7    THE DEFENDANT (through the interpreter):  Yes.  I was

8  behind them, following them.

9    THE COURT:  Just because you wanted to take a walk?

03:01:32  10    THE DEFENDANT (through the interpreter):  No.  Uh,

11  because I was going to Vancouver.

12    THE COURT:  Oh.  You were going to walk all the way to

13  Vancouver?

14    THE DEFENDANT (through the interpreter):  No.

03:01:46  15    THE COURT:  Don't get me wrong; you know, a long walk

16  like that is probably good for your health.  But is that what

17  you were out for, just to get some exercise?  Is that what

18  you're telling me?  Because if you are, we're going to call this

19  plea deal off, and we're going to go to trial on October 10th.

03:02:02  20  So, hey, I get it.

21    If you're out for a walk and you didn't do anything

22  wrong, no problem.  We'll see you on October 10th, and you can

23  tell the jury that story.  You don't have to tell the jury

24  anything, actually.  The Government has to prove what you did.

03:02:13  25    So it's up to you.  You can either tell me what you did

1    that you know is a crime, or I'm not going to accept this deal,

2    and you're going to trial.  It's that simple.

3            THE DEFENDANT (through the interpreter):  I accepted the

4    ten years, and that's why I am here, but there were some things

03:02:40    5    that I hadn't heard before, and that's why we're having some

6    contradictions now.

7            THE COURT:  That's not enough.  You have to give me

8    details.

9            THE DEFENDANT (through the interpreter):  There was a

03:03:26   10    person in Canada and this person was owed money in Arizona, and

11    I was told, "You have to go see if what they are saying is

12    true."  The person was saying that they didn't have the money

13    because the drugs that were in Canada hadn't been sold yet, and

14    this other person wasn't thinking that that was the truth.  And

03:04:12   15    my task was to go over there and see, make sure whether that

16    person was telling the truth or not.

17            THE COURT:  Did you walk into Canada from the state of

18    Washington?

19            THE DEFENDANT (through the interpreter):  Yes.

03:04:24   20            THE COURT:  And were you picked up by a car on the

21    Canadian side of the border?

22            THE DEFENDANT (through the interpreter):  Yes.  We were

23    picked up, yes.

24            THE COURT:  Who was with you?

03:04:39   25            THE DEFENDANT (through the interpreter):  There was the

1    two backpackers, the Zambrano brothers; and a woman and a guy

2    that was there with her.

3         THE COURT:  So somebody picked you up and the Zambrano

4    brothers, right?

03:05:02   5         THE DEFENDANT (through the interpreter):  Yes.  The

6    couple picked us up and took us to the hotel.

7         THE COURT:  Right.  And the vehicle itself was seized;

8    is that correct?

9         THE DEFENDANT (through the interpreter):  Yes.  Yes,

03:05:25  10    yes.  It was at night, I think, is when they got arrested, and

11    then they arrested me.

12         THE COURT:  And they found the drugs in the vehicle that

13    are described on Page 9 in Paragraph 7; is that correct?

14         THE DEFENDANT (through the interpreter):  Yes.

03:05:39  15         THE COURT:  And there was a secret compartment in the

16    vehicle, right?

17         THE DEFENDANT (through the interpreter):  Yes, I think

18    so.

19         THE COURT:  And in there they found 18 kilograms of

03:05:49  20    methamphetamine, yes or no?

21         THE DEFENDANT (through the interpreter):  Yes.

22         THE COURT:  4 kilograms of cocaine?

23         THE DEFENDANT (through the interpreter):  Yes.

24         THE COURT:  171 grams of heroin?

03:06:12  25         THE DEFENDANT (through the interpreter):  I guess so.  I

1    didn't realize that.

2         THE COURT:  $50,000 in currency?

3         THE DEFENDANT (through the interpreter):  The truth is I

4    didn't know the amounts of whatever it was that they had in

03:06:34  5    there.

6         THE COURT:  What did you believe was in there?

7         THE DEFENDANT (through the interpreter):  I didn't know

8    the amounts.  I know that there were bags, and they were taking

9    these packages out of the backpacks, and at some point somebody

03:07:09  10   was telling me, "Help us, help us, help us so we can move faster

11   because we're on the road."

12        THE COURT:  And what they were doing was -- in the

13   packages was drugs, correct?

14        THE DEFENDANT (through the interpreter):  Well, it

03:07:23  15   looked like it was drugs.  It was wrapped in paper.

16        THE COURT:  Well, I'm not going to go through this with

17   you, Mr. Reyes Garcia, unless you're prepared to plead guilty

18   and tell me what you did.  And all you're telling me now is that

19   you were following some guys, and they were walking into Canada,

03:07:39  20   and that you didn't know anything.  Some guy owed money, but you

21   weren't sure what that was about, and that, really, you didn't

22   do anything wrong; you just wanted to talk to this guy and

23   figure out if there was money owed.  And you didn't know

24   anything about these drugs or the Zambrano brothers carrying the

03:07:59  25   backpacks full of drugs or money; you didn't know anything about

1    that.

2            Is that what you're telling me?

3            THE DEFENDANT (through the interpreter):  Well, that is

4    the truth.  I'm here to plead guilty anyway.  I don't have the

03:08:20  5    resources to keep fighting this in court, or I can't pay for my

6    own attorney.  I just want this to be over with.  I don't

7    want -- I don't want this anymore.

8            THE COURT:  I'm not going to accept the guilty plea.

9    Mr. Reyes Garcia has refused to acknowledge that he did anything

03:08:38 10    wrong.  He's scheduled to go to trial on October 10th, and he

11    will go to trial on October 10th because he simply will not give

12    me a factual basis to accept his guilty plea.

13            Court's adjourned.  See you on October 10th.

14            THE COURTROOM DEPUTY:  Please rise.

03:09:22 15            Court is adjourned.

16        (Hearing concluded at 3:09 p.m.)

17

18

19

20

21

22

23

24

25

31

C E R T I F I C A T E

I, KIMBERLY J. ALLEN, do hereby certify:

That I am an Official Court Reporter for the United States District Court for the Eastern District of Washington in Richland, Washington;

That the foregoing proceedings were taken on the date and at the time and place as shown on the first page hereto; and

That the foregoing proceedings are a full, true and accurate transcription of the requested proceedings, duly transcribed by me or under my direction.

I do further certify that I am not a relative of, employee of, or counsel for any of said parties, or otherwise interested in the event of said proceedings.

DATED this 11th day of September, 2018.


_____
Kimberly J. Allen, CRR, RMR, RPR, CCR(WA)
Washington CCR No. 2758
Official Court Reporter
Richland, Washington