JOSEPH HARRINGTON
Acting United States Attorney
Eastern District of Washington
Stephanie Van Marter
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SEP 18 2018

SEAN F. McAVOY, CLERK
_____ DEPUTY
RICHLAND, WASHINGTON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ALFREDO MAGANA GARIBAY,

    Defendant.

4:15-CR-6049-EFS-18

Plea Agreement

Plaintiff, United States of America, by and through Joseph Harrington, Acting United States Attorney for the Eastern District of Washington, and Stephanie Van Marter, Assistant United States Attorney for the Eastern District of Washington, and Defendant ALFREDO MAGANA GARIBAY, and the Defendant's counsel, Nicholas Marchi, agree to the following Plea Agreement:

1.    <u>Guilty Plea and Maximum Statutory Penalties</u>:

The Defendant, ALFREDO MAGANA GARIBAY, agrees to enter a plea of guilty to Count 1 of the Second Superseding Indictment filed on December 6, 2016, charging the Defendant with Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of

Plea Agreement - 1
Plea 2.docx

Heroin and 400 grams or More of N-phenyl-N Propanamide, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846.

The Defendant, ALFREDO MAGANA GARIBAY, understands that the charge contained in the Superseding Indictment is a Class A felony charge. The Defendant, ALFREDO MAGANA GARIBAY, also understands that the maximum statutory penalty for Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of N-phenyl-N Procainamide (hereafter Fentanyl), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846, is not less than 10 years imprisonment, which is non-suspendable and non-parolable, and a maximum possible penalty of life imprisonment; a fine not to exceed $10,000,000; a term of supervised release of not less than 5 years up to a life term; denial of certain federal benefits; and a $100 special penalty assessment.

The Defendant, ALFREDO MAGANA GARIBAY, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2. <u>Denial of Federal Benefits</u>:

The Defendant understands that by entering this plea of guilty the Defendant is no longer eligible for assistance under any state program funded under part A of title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Further,

Plea Agreement - 2
Plea 2.docx

the Court may deny the Defendant's eligibility to any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

3. <u>The Court is Not a Party to the Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing his plea of guilty.

4. <u>Effect on Immigration Status</u>:

The Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the Defendant is pleading guilty. Indeed, because the Defendant

Plea Agreement - 3
Plea 2.docx

is pleading guilty to Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of N-phenyl-N Propanamide, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that while deportation and/or removal appears to be a virtual certainty, no one, including her attorney or the district court, can predict with absolute certainty the effect of her conviction on his immigration status. The Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if automatic removal from the United States is a virtual certainty.

     5.    <u>Waiver of Constitutional Rights</u>:

The Defendant, ALFREDO MAGANA GARIBAY, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

    (a).    The right to a jury trial;
    (b).    The right to see, hear and question the witnesses;
    (c).    The right to remain silent at trial;
    (d).    The right to testify at trial; and
    (e).    The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The

Plea Agreement - 4
Plea 2.docx

Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

6.   <u>Elements of the Offense:</u>

The United States and the Defendant agree that in order to convict the Defendant of Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846, the United States would have to prove beyond a reasonable doubt the following elements:

*First*, on a date unknown but by on or about January 2010 continuing until on or about December 6, 2016, in the Eastern District of Washington, the Defendant, entered into an agreement with one or more persons to commit the crime of Distribution of 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin or 400 grams or More of Fentanyl, as charged in the Second Superseding Indictment;

*Second*, the Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

*Third*, the agreement was to distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram *or* More of Heroin and 400 grams or More of Fentanyl, which would be reasonably foreseeable to her as a member of the conspiracy.

//

Plea Agreement - 5
Plea 2.docx

7. <u>Factual Basis and Statement of Facts</u>:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for ALFREDO MAGANA GARIBAY's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

Members of the FBI Eastern Washington Safe Streets Violent Gang Task Force- Tri-Cities (EWVGSSTF) have been investigating a transnational drug trafficking organization operating herein the Eastern District of Washington and elsewhere since at least 2011 identified as the Ivan Hernandez Calvillo Drug Trafficking Organization (DTO). During that investigation, Ivan Hernandez Calvillo (hereinafter Ivan) and Jese David Carillo Casillas (hereafter Casillas) were identified as a high-ranking members of the DTO. Members of the Task Force, through the interviews of multiple cooperating Defendants and drug seizures, learned the DTO was utilizing backpackers to physically carry quantities of cocaine and methamphetamine from the Eastern District of Washington through a trail system into Canada for distribution.

In 2012, several Defendants were identified as members of this organization to include the Defendant. Multiple cooperating Defendants and confidential sources identified the Defendant as a distributor for Calvillo's DTO. One of those Cooperators, hereafter referred to as CD4 identified the Defendant as working directly with Calvillo in his organization. CD4 identified Calvillo as the then leader organizer of this organization that had an entire cell operating in the EDWA. CD4 stated that he/she met Calvillo when he was still living in the

Plea Agreement - 6
Plea 2.docx

EDWA in 2010 at his Sunnyside WA residence and started working for Ivan as a driver, taking 10-pound loads of methamphetamine to Missouri and Minnesota. During the summer of 2010, CD4 stated Calvillo became "big" due to his ability to smuggle cocaine into Canada. CD4 stated at that time, Calvillo was receiving 50-pound shipments of meth and cocaine every week. CD4 was arrested and deported back to Mexico. Calvillo requested CD4 return to work for him and as a result paid for CD4's coyote. CD4 returned in January 2012.

When CD4 returned, she/he was asked to backpack approximately 45 kilograms of cocaine across the border for Calvillo with two other individuals. CD4 made a number of additional trips after that, meeting several of the backpackers utilized by Calvillo. CD4 advised that Calvillo was transporting at least 45 kilograms of cocaine across the border every week at that time.

CD4 identified a number of individuals working for Ivan during that time period to include the Defendant. CD4 identified the Defendant as a member of the organization who assisted CD4 and Calvillo with obtaining stash house locations and identified two separate residences the Defendant helped to obtain. One of the residences was confirmed to be 37 Eastlake Rd in Oroville WA. It was later confirmed that Co-Defendant Veronica Cortez was asked to "live" at this location so it appeared to be a normal residence. Instead, the residence was utilized specifically to assist the backpackers who were transporting narcotics through his DTO's trail system into Canada.

CD4 also identified that during this 2012 time frame, the Defendant distributed quantities of methamphetamine and cocaine for this DTO. CD4 reported that CD4 witnessed the Defendant obtain and distribute up to 20 pounds of methamphetamine to customers throughout the Yakima valley. CD4 further

Plea Agreement - 7
Plea 2.docx

advised the Defendant distributed to customers within the district as well as into the Western District of Washington.

During this time, EWVGSSTF was able to also develop a confidential source (CHS) (referred to as CD1 in discovery) who was arrested while working for Calvillo's organization. This CHS agreed to cooperate in consideration of those charges. The CHS would testify that he/she has known Calvillo his/her entire life and that Calvillo has been involved in drug trafficking for as long as the CHS can remember. The CHS moved to the tri-cities in 2009 and knew that Calvillo was heavily involved in drug trafficking. The CHS began to make trips for Calvillo on and off during that time period. Ultimately, the CHS stopped driving loads but instead, helped by paying rent on properties, paying drivers and assisting with load cars for Calvillo. As a result, the CHS met and paid a number of employees working for Calvillo.

The CHS testified that Calvillo in 2012, was sending approximately 30 kilograms of meth and 30 kilograms of cocaine per shipment to the EDWA every 15 days for distribution to various locations to include EDWA, Canada, Minnesota, North Dakota and Chicago. The cash proceeds were mostly laundered out of Canada however; large sums came back into the EDWA for payment of overhead costs. The CHS further identified and confirmed the Defendant's role in the organization. Specifically, that he was a distributor for Calvillo. The CHS was present on 5-6 occasions where the Defendant picked up 2-5 pounds of methamphetamine from members of this DTO and delivered it to customers in the local area as identified by CD4.

In 2016, another cooperating Defendant was arrested while working for this organization, hereafter referred to as CD6. CD6 also identified the Defendant and confirmed he had found the stash house located in Oroville noted above.

Plea Agreement - 8
Plea 2.docx

CD6 also confirmed that CD6 was a trusted member of the DTO and was responsible for accepting the load cars when they traveled with drug supply from California. CD6 identified the Defendant as one of the individuals who would meet CD6 in order to pick up the load cars and remove the drug shipment for distribution. CD6 identified that most load cars carried an average 10 to 25 pounds or more of methamphetamine and cocaine during that time.

Based upon the above information members of the EWVGSSTF were able to not only confirm the multiple residences utilized by the Defendant during the investigation, but also a number of vehicles to include a Subaru Impresa that had a secret compartment consistent with the information provided by CD4, CHS and CD6. After Calvillo's murder, the Defendant's involvement in this organization lessened and the United States has no evidence this Defendant was involved in the money laundering or Fentanyl aspect of this investigation.

8. <u>The United States Agrees Not to File Additional Charges</u>:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Indictment, unless the Defendant breaches this Plea Agreement any time before or after sentencing. This includes charges stemming from an additional DEA investigation noted in cause number 1:16-CR-2006-EFS.

9. <u>United States Sentencing Guideline Calculations</u>:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

Plea Agreement - 9
Plea 2.docx

(a).  **Base Offense Level and Application of U.S.S.G. §1B1.3:**

The Government and Defendant agree and stipulate that more than 4.5 kilograms of actual methamphetamine[1] was distributed in furtherance of the criminal activity jointly undertaken by the Defendant and her co-conspirators; this amount was within the scope of the Defendant's agreement; this amount was reasonably foreseeable to this Defendant in connection with the conspiracy; and this Defendant's relevant conduct for sentencing purposes should be calculated based upon this amount, pursuant to U.S.S.G. §1B1.3.

Thus, the Government and Defendant agree that the base offense level for Count 1, is 38. *See* U.S.S.G. §2D1.1(c)(1) and Commentary 8(b).

(b).  **Role in the Offense:**

The United States and the Defendant agree that the Defendant was "substantially less culpable than the average participant" in the conspiracy. *See* U.S.S.G. §3B1.2, Application Note 3(A). The United States and the Defendant agree to recommend that the Court grant a downward adjustment of an additional four levels based upon the Defendant's role in the offense, as a minimal participant. *See* U.S.S.G. §3B1.2(a). This role adjustment creates new base offense level of 32 (*See,* U.S.S.G. (a)(5)), minus four levels for his role in the offense resulting in an offense level 28 before acceptance of responsibility.

(c).  **Acceptance of Responsibility:**

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does

---

[1] The Defendant also had involvement and knowledge in regard to cocaine shipments in this conspiracy. However, the calculation of those amounts would lead to the same applicable offense level.

Plea Agreement - 10
Plea 2.docx

not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than the next Pre-Trial Conference, the United States will move for a three (3) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

Furthermore, the Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

(d).   Criminal History:

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report. The United States and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

10.   Safety Valve:

The United States and the Defendant agree that the Defendant may be eligible for the safety valve provisions of 18 U.S.C. § 3553(f) and U.S.S.G.

Plea Agreement - 11
Plea 2.docx

§5C1.2. At the time of this change of plea, the parties acknowledge that the Defendant has not satisfied the fifth requirement of the safety valve. If the Court finds that the Defendant meets the criteria set forth at 18 U.S.C. § 3553(f)(1)-(5), the Court shall impose a sentence in accordance with the applicable sentencing guidelines without regard to any statutory minimum sentence.

11. <u>Departures</u>:

The Defendant intends to request downward departures and variances from the sentencing guidelines. The United States reserves its right to oppose any downward departure.

12. <u>Length of Incarceration</u>:

The United States will recommend that the Court impose a sentence at the low end of the applicable advisory sentencing guideline range. The Defendant is free to argue his sentence.

13. <u>Criminal Fine</u>:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

14. <u>Supervised Release</u>:

Should the Defendant be allowed to remain in the United States or lawfully return, the parties agree to recommend that the Court impose a 5-year term of supervised release, to include the following special conditions, in addition to the standard conditions of supervised release:

(1) that the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Office; and

(2) that the Defendant have no contact with any witnesses or Co-

Plea Agreement - 12
Plea 2.docx

defendants in this cause number.

15. <u>Mandatory Special Penalty Assessment</u>:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

16. <u>Payments While Incarcerated</u>:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

18. <u>Appeal Rights</u>:

In return for the concessions that the United States has made in this Plea Agreement, the Defendant agrees to waive his right to appeal the conviction and sentence if the Court imposes a prison term no higher than the applicable guideline range as determined by the Court and imposes no more than 5 years supervised release. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the

Plea Agreement - 13
Plea 2.docx

exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence. Should the Defendant successfully move to withdraw from this Plea Agreement or should the Defendant's conviction on Count 1 of the Second Superseding Indictment be dismissed, set aside, vacated, or reversed, the Plea Agreement shall become null and void; the United States may move to reinstate all counts of Second Superseding Indictment No. 4:15-CR-6049-EFS-18; and the United States may prosecute the Defendant on all available charges involving or arising out of the Second Superseding Indictment No. 4:15-CR-6049-EFS-18. Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack of the conviction or sentence, including, but not limited to, proceedings pursuant to 28 U.S.C. § 2255 (writ of habeas corpus).

19. <u>Integration Clause</u>:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

<u>Approvals and Signature</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Plea Agreement - 14
Plea 2.docx

JOSEPH H. HARRINGTON
Acting United States Attorney

_____        9/18/18
Stephanie Van Marter                   Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. My attorney has advised me that by pleading guilty to the charge relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____        9/10/2018
ALFREDO MAGANA GARIBAY                 Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. I have further advised my client by pleading guilty to the charge relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

Plea Agreement - 15
Plea 2.docx

_____  /4982        9/10/2018
Nicholas Marchi                         Date
Attorney for the Defendant

Plea Agreement - 16
Plea 2.docx