FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 21, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>JESE DAVID CASILLAS-CARILLO,[1]<br>                Defendant. | No.   4:15-CR-6049-EFS-2<br><br>**ORDER MEMORIALIZING RULINGS ON DEFENDANT'S OBJECTIONS TO PSIR** |

Defendant Jese David Casillas-Carillo pled guilty to Count 1: Conspiracy to Distribute 500 Grams or More of a Mixture Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin, and 400 Grams or More of Fentanyl, and Count 2: Conspiracy to Commit Money Laundering. ECF No. 107. Mr. Casillas-Carillo appeared for sentencing on December 11 and 12, 2018. *See* ECF Nos. 1071 & 1073. Prior to sentencing, Defense Counsel Nicholas Vieth filed Defendant's Objections to the Presentence Investigation Report. ECF No. 1037. Counsel for the Government, Stephanie Van Marter, filed the United States' Response to Defendant's Objections to the PSIR and

---

[1] The Court was informed that Defendant's name is Jese David Casillas-Carillo, not Jese David Carillo-Casillas as he has been previously referred to by the Court.

Order Memorializing Rulings on Objections— Page **1** of 15

Sentencing Recommendation. ECF No. 1045. Mr. Casillas-Carillo filed a Reply to Government's Sentencing Recommendation. ECF No. 1062.

At sentencing, the Court made factual findings and then ruled on each objection, which are supplemented and corrected where necessary by this Order. The Court also accepted the Presentence Investigation Report, ECF No. 1053, and directed the U.S. Probation Office to amend paragraphs 110, 112, 116, and 180. The U.S. Probation Office filed a finalized Presentence Investigation Report, ECF No. 1074.

## I.   STANDARD

The Court applies the preponderance of the evidence standard to all factual findings in Mr. Casillas-Carillo's sentencing. Both parties also agreed at sentencing that the preponderance of the evidence standard applies. "Ordinarily, a district court uses a preponderance of the evidence standard of proof when finding facts at sentencing." *United States v. Treadwell*, 593 F.3d 990, 1000 (9th Cir. 2010). *See also* U.S.S.G. § 6A1.3, cmnt. However, when the combined impact of contested sentencing enhancements is disproportionate relative to the offense of the conviction, the Court applies the clear and convincing evidence standard of proof. *United States v. Riley*, 335 F.3d 919, 925 (9th Cir. 2003). There is no bright-line rule and the Court considers the totality of the circumstances. *Id.*

The clear and convincing evidence standard is inapplicable here because it does not apply to enhancements that are "based on the extent of the conspiracy to

1  which a defendant pled guilty."[2] *Id.* Mr. Casillas-Carillo challenges the base offense

2  level (BOL), leader/organizer enhancement under § 3B1.1(a), and drug premises

3  enhancement under § 2D1.1(b)(12) in the presentence investigation report (PSIR).

4  *See* ECF No. 1037. The BOL and the enhancements under § 3B1.1(a) and

5  § 2D1.1(b)(12) are based on the extent of the conspiracy to which Mr. Casillas-

6  Carillo pled guilty to. *See, e.g.*, *United States v. Armstead*, 552 F.3d 769, 777 (9th

7  Cir. 2008) (concluding that a four level increase for a defendant's role in the offense

8  under § 3B1.1 was appropriately decided using the preponderance of the evidence

9  standard because it is based on the extent of the conspiracy that the defendant pled

10 guilty to).

## II. OBJECTIONS

**A.    Objection 1: Overruled.**

Mr. Casillas-Carillo objects to paragraph 32 of the PSIR because it is based on informant reporting, rather than any instance where law enforcement recovered or received cocaine from Mr. Casillas-Carillo. ECF No. 1037 at 2. Paragraph 32 merely contains background information about the DTO and does not attribute the 20–40 kilograms of narcotic distribution to Mr. Casillas-Carillo. *See* ECF No. 1035

---

[2] This is the fourth of six factors that the Ninth Circuit has held should be utilized to determine whether the preponderance of the evidence or clear and convincing evidence standard should apply. These six factors include: (1) whether the enhanced sentence falls within the maximum sentence for the crime alleged; (2) whether the enhanced sentence negates the presumption of innocence for the crime alleged in the indictment; (3) whether the facts offered in support of the enhancement create new offenses requiring separate punishment; (4) whether the increase in sentence is based on the extent of a conspiracy; (5) whether the increase in the number of offense levels is four or less; and (6) whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range where the defendant would otherwise have received a relatively short sentence. *United States v. Riley*, 335 F.3d 919, 925 (9th Cir. 2003).

at ¶ 32. Mr. Casillas-Carillo agrees that the 20–40 kilograms of cocaine, heroin, and methamphetamine moved across the border into Canada via backpackers is "generally attributable to the drug trafficking organization (DTO), not Defendant." *See* ECF No. 1037 at 2. The Court addresses Mr. Casillas-Carillo's arguments about informant reporting and what drugs are attributable to Mr. Casillas-Carillo in response to Objection #7. The Court declines to amend paragraph 32.

**B.    Objection 2: Overruled.**

Mr. Casillas-Carillo objects to being referred to as a "high ranking organizer for the DTO" in paragraph 34. *Id.* at 2. Mr. Casillas-Carillo points out that he only received around $14,000 for his involvement in the DTO, but that the narcotic sales totaled over $1.6 million. *See id.* at 2–3. The Court finds that aproximately $80,000 went to benefit Mr. Casillas-Carillo when considering the financial benefits received by his relatives and friends. *See* Gov't Exhibit 1 (detailing financial transactions made to Defendant's wife Daisy Camacho and her parents' restaurant). The Court also finds that Mr. Casillas-Carillo was in charge of this region subsequent to the death of Ivan Calvillo. The testimony of Undercover Agent Jaime Cepero demonstrated that Mr. Casillas-Carillo managed numerous people and was in charge of making many of the usual decisions that are critical to the success of a DTO. For example, Mr. Casillas-Carillo made statements to Agent Cepero about his ability to deliver specific quantities of drugs. Therefore, the Court finds it appropriate to refer to Mr. Casillas-Carillo as a high ranking organizer for the DTO.

### C. Objection 3: Overruled.

Mr. Casillas-Carillo objects to PSIR paragraphs 36–39 and 41. *Id.* at 3. He states he became involved in the DTO in 2015 and is not responsible for acts done before he joined the conspiracy. *Id.* However, neither the PSIR nor the Government asserts that Mr. Casillas-Carillo should be charged with conduct committed by the DTO prior to 2015.

### D. Objection 4: Overruled as moot.

Mr. Casillas-Carillo objects to paragraph 77 of the PSIR and states that his fingerprints were found on a shopping bag used by another codefendant to carry two pounds of methamphetamine, but not the package itself. *Id.* at 3. The U.S. Probation Office updated the PSIR to clarify this point. *See* ECF No. 1054 at 2.

### E. Objection 5: Overruled.

The Court finds that a base offense level is 38 is appropriate based on the following findings of facts, analysis, and calculations. Mr. Casillas-Carillo agrees that he is culpable for the distribution of "Ice" and Fentanyl. *See* ECF No. 1037 at 3–4. The Second Addendum to the PSIR indicates that Ice and Fentanyl are equivalent to 39,356 kilograms of marijuana. ECF No. 1065. Mr. Casillas-Carillo also agrees that this quantity would result in a BOL of 36. *See* §2D1.1(c).

Mr. Casillas-Carillo objects to paragraph 110 of the PSIR, which calculates his BOL. ECF No. 1037 at 2–4. In addition to the Ice and Fentanyl, the U.S. Probation Office used 40 kilograms of methamphetamine, 40 kilograms of cocaine,

and 40 kilograms of heroin to calculate the BOL. *See* ECF No. 1053 & 1065. He does not challenge the actual drug calculations,[3] but argues that he is not culpable for the 40 kilograms of methamphetamine, cocaine, or heroin because: (1) those drugs are only attributable to the DTO at large; and (2) any information attributing the drugs to Mr. Casillas-Carillo are based on conversations reported by confidential sources and cooperating codefendants. *See id.* The Court rejects Defendant's arguments for the following reasons.

1. <u>Mr. Casillas-Carillo is culpable for distributions by DTO members.</u>

Although Mr. Casillas-Carillo did not personally distribute the 40 kilograms of methamphetamine, heroin, or cocaine, the Court holds that the distributions by other members of the DTO were attributable to Mr. Casillas-Carillo once he became involved in 2015. Pursuant to USSG § 1B1.3(a)(1)(B), the BOL shall be determined, in the case of a jointly undertaken criminal activity, by "all acts and omissions of others that were—(i) within the scope of the jointly undertaken criminal activity, and (ii) in furtherance of the criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." The Court need not "proceed item-by-item through a complete list of all losses attributable to a criminal conspiracy." *United*

---

[3] Mr. Casillas-Carillo acknowledged that 20–40 kilograms of methamphetamine, cocaine, and heroin were regularly transported to Canada by the DTO. *See* ECF No. 1037 at 2 (Defendant aknowledges that these distributions were "generally attributable" to the DTO). The record also supports this contention by a preponderance of the evidence. *See, e.g.*, ECF No. 624-2 (FBI Agent Douglas Stanley reported that 20–40 kilograms of cocaine were regularly transported over the border); Attach. C to the United States Sentencing Memorandum, ECF No. 1045 (FBI agent Whitbey stated that agents believed that narcotics were trafficked into Canada in August of 2015 because of surveillance of codefendants driving suspected load vehicles near the Canadian border and the backpacking trails); Gov't Exhibit 1 (diagram linking Mr. Casillas-Carillo to an August 27, 2015 seizure of 18 kilograms of methamphetamine, 4 kilograms of cocaine, and a small amount of heroin during the arrest of codefendants Miguel Reyes Garcia and Juan Zambrano).

1  *States v. Lloyd*, 807 F.3d 1128, 1142 (9th Cir. 2015). Instead, the Court must make
2  particularized findings about "the scope of the criminal activity the particular
3  defendant agreed to jointly undertake." *Id.*

4  Mr. Casillas-Carillo entered into the joint criminal activity of distribution of
5  narcotics from the Eastern District of Washington to Canada in April of 2015.
6  Mr. Casillas-Carillo pled guilty to conspiring to distribute controlled substances on
7  August 24, 2018. ECF No. 866. Further, as stated, Mr. Casillas-Carillo
8  acknowledged that between 20–40 kilograms of methamphetamine, cocaine, and
9  heroin were regularly transported over the border by the DTO. ECF No. 1037 at 2.

10 The Court also finds that the distribution of 40 kilograms of
11 methamphetamine, heroin, and cocaine were within the scope of the jointly
12 undertaken criminal activity. Mr. Casillas-Carillo was an active participant in
13 furthering the distribution of drugs over the border. This is supported by
14 Mr. Casillas-Carillo's statements to Agent Cepero, which included facilitating drug
15 price negotiations between Agent Cepero and his boss, Ivan Calvillo. Mr. Casillas-
16 Carillo represented that he could move up to 100 kilograms of heroin. They also
17 discussed delivery of a sample of 20 kilograms of methamphetamine—implying that
18 a full delivery was more than 20 kilograms.

19  2.  <u>Confidential source reporting was supported by indicia of reliability.</u>

20 Further, a confidential source testified as to Mr. Casillas-Carillo's direct
21 involvement in the distribution of drugs. *See* Attach. J to the United States
22 Sentencing Memorandum, ECF No. 1045 (stating that Mr. Casillas-Carillo had "two

girls that work for him that transport drugs near the Canadian Border."). Although hearsay statements are generally admissible in sentencing proceedings, due process requires that they be supported by "some minimal indicia of reliability." *United States v. Garcia-Sanchez*, 189 F.3d 1143, 1149 (9th Cir. 1999). This requirement demands that the hearsay statement be supported by extrinsic corroborating evidence. *United States v. Egge*, 223 F.3d 1128, 1132 (9th Cir. 2000). The confidential source statement was supported by Agent Cepero's testimony that Mr. Casillas-Carillo was in charge of this region and maintained the backpacking trails to Canada, which were used for distributing drugs. Therefore, the distribution of drugs by other members of the DTO was certainly done in furtherance of the criminal activity and reasonably foreseeable: it was goal and purpose of the criminal activity.

3. <u>Mr. Casillas-Carillo admitted he was directly involved in distributing heroin.</u>

Finally, Mr. Casillas-Carillo was at least directly involved in the delivery of 10 kilograms of heroin in August of 2016. Mr. Casillas-Carillo admitted this when he pled guilty on August 24, 2018, stating that he arranged for the delivery. *See generally* ECF No. 866. Further, Mr. Casillas-Carillo stated that although he did not deliver the drugs himself, he rode in the car behind codefendant Francisco Duarte Figueroa and directed him to deliver the drugs. Mr. Casillas-Carillo also admits in his sentencing memoranda that he is responsible for the 656 grams of Fentanyl, *see* ECF No. 1037 at 3–4, which were delivered on August 15, 2016 with the 10 kilograms of heroin. PSIR at ¶ 90–93.

4. <u>The record supports a finding that Mr. Casillas-Carillo is culpable for distribution of cocaine.</u>

Mr. Casillas-Carillo argues that no amount of cocaine can be attributed to him. *See* ECF No. 1037 at 2. However, Mr. Casillas-Carillo did not object to the statement in paragraph 45 of the PSIR that in May of 2015 Mr. Casillas-Carillo discussed with a confidential source that Ivan Calvillo, his boss, wanted him to travel to California to assist in transporting 7 kilograms of cocaine from California to Washington. ECF No. 1053 at ¶ 45. Mr. Casillas-Carillo also did not object to paragraph 48 of the PSIR, which states that a confidential source advised agents that Mr. Casillas-Carillo had stated that codefendant Jose Mendoza was transporting cocaine and methamphetamine for the DTO and moving at least 20 kilograms per trip near Canada. *Id.* at ¶ 48. The Court may accept as fact any undisputed portions of the PSIR. Fed. Rule Crim. App. 32(i)(3)(A). The confidential source statement regarding Jose Mendoza is supported by extrinsic evidence: in early October of 2015 Mr. Mendoza was pulled over near the Canadian border and questioned. Agents believed that he had already disposed of the narcotics and noted that he and his passenger gave inconsistent stories. Attach. C to United States' Sentencing Memorandum, ECF No. 1045, at ¶59–62.

5. <u>Alternatively, the BOL may be determined by the money attributable to drug activity and price obtained for the controlled substance.</u>

Further, the Government argued that the Sentencing Guidelines also state that when the amount of drugs seized does not reflect the scale of the offense, the court "shall approximate the quantity of the controlled substance," and may rely on:

price generally obtained for the controlled substances, financial records, and similar transactions in controlled substances by a defendant. *See* U.S.S.G. § 2D1.1 cmnt 5. Other Courts have previously approved the conversion of seized funds into an equivalent amount of drugs, as long as the government proves by a preponderance of the evidence both the amount of money attributable to drug activity and the conversion ratio, that is, the price per unit of drugs. *See, e.g.*, *United States v. Salas*, 455 F.3d 637, 641 (6th Cir. 2006) (citations omitted).

The Court finds that Mr. Casillas-Carillo was responsible for $850,000 in money drops, which were attributable to drug trafficking activities. *See* ECF No. 1045; PSIR ¶ 72–79. Mr. Casillas-Carillo did not object to this at sentencing. The Court therefore finds that the $850,000 laundered by Mr. Casillas-Carillo were attributable to drug activity. In light of the $850,000 in drug proceeds, the Court finds that the relatively small amount of drugs seized in this case does not reflect the scale of the offense. The Court also finds, based on Agent Cepero's testimony, that the price negotiated for a kilogram of methamphetamine was $9,000. If the $850,000 was solely based on the proceeds of methamphetamine sales, the DTO sold approximately 94 kilograms of methamphetamine. 94 kilograms of methamphetamine equates to 188,000 kilograms of marijuana, which in and of itself would equal a BOL of 38. *See* U.S.S.G. § 2D1.1.

**F.    Objection 6: Granted.**

Mr. Casillas-Carillo objects to the statement in paragraph 112 that his residence was being maintained for the distribution or manufacturing of controlled

substances, and the two level increase pursuant to § 2D1.1(b)(12). ECF No. 1037 at 4. The Court found by a preponderance of the evidence that Mr. Casillas-Carillo lived in the home with his wife and children. The Court also found that a minimal amount of drug transactions occurred in the two-year period that Mr. Casillas-Carillo lived in the home.

Among the factors the court should consider in determining whether the defendant 'maintained' the premises are (1) whether the defendant held a possessory interest in the premises; and (2) the extent to which the defendant controlled access to, or activities at, the premises. U.S.S.G § 2D1.1, cmnt 17. The Court finds that Mr. Casillas-Carillo lived in the home with his wife and children, and controlled access to the premises. Parties agree that Mr. Casillas-Carillo occupied the premises for approximately two years and used it as a family home.

However, the Government did not demonstrate that distribution of controlled substances was one of Mr. Casillas-Carillo's primary or principal uses of the premises. Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained but must be one of the defendant's principal uses for the premises, and not merely an incidental or collateral use. U.S.S.G. § 2D1.1, cmnt. 17. In making this determination, the Court considers how frequently the defendant used the premises for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes. *Id. See, e.g.*, *United States v. Jones*, 583 F. App'x 694, 696–97 (9th Cir. 2014) (concluding that a house was "primarily used for distributing drugs"

where there were: three documented sales of drugs by the defendant at his home, large amounts of cash found in the defendant's house, drug manufacturing residue found in the kitchen drain, and defendant had no other gainful employment). Because the Mr. Casillas-Carillo infrequently used the premises for manufacturing or distributing drugs and instead used it primarily as his family home, the Court finds that manufacturing or distributing controlled substances was not a principal use for the premises. A two level increase under § 2D1.1(b)(12) is not warranted and the objection is granted.

## G.   Objection 7: Overruled.

Mr. Casillas-Carillo objects to the four level aggravating role increase in paragraph 114 for being a leader/organizer under § 3B1.1(a). ECF No. 1037 at 5. Mr. Casillas-Carillo argues that he only received $14,000 for his work with the DTO, but that narcotics sales totaled $1.6 million. *See id.*

In order to impose an enhancement under § 3B1.1(a), the Court must determine that "the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime." *United States v. Berry*, 258 F.3d 971, 977 (9th Cir. 2001). In determining whether a defendant controlled or organized others, the Court considers the following factors: (1) the exercise of the defendant's decision making authority, (2) the nature of participation by the defendant in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the

offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others. *Id. See* U.S.S.G. § 3B1.1(a), cmt. 4.

The Court finds that Mr. Casillas-Carillo exercised decision-making authority regarding the amount of drugs that could be distributed and how they could be distributed, particularly after the death of Ivan Calvillo. Mr. Casillas-Carillo was also in charge of others and recruited new accomplices. Although the DTO drug proceeds may have totaled $1.6 million, Mr. Casillas-Carillo and his family and friends still received a substantial benefit of $80,000. Mr. Casillas-Carillo also had a significant degree of involvement in the planning and organizing of multiple money drops and drug transactions. *Cf. United States v. Morales*, 680 Fed. Appx. 548, 552 (9th Cir. 2017) (concluding that a defendant landlord was "at least an organizer, and perhaps a leader, of the criminal conspiracy" where he organized and planned marijuana grow operations by assigned pots to tenants for grows and managed access to centralized locations for processing marijuana). In light of these factual findings as they apply to the *Berry* factors, the Court finds that Mr. Casillas-Carillo is properly considered a leader/organizer under § 3B1.1(a). *See Berry*, 258 F.3d at 977.

**H.     Objection 8: Overruled.**

Mr. Casillas-Carillo objects to paragraph 116 and believes the adjusted offense level subtotal should be 40, not 46 for the reasons stated. ECF No. 1037 at 5. Based on the above findings, the Court holds that the adjusted offense level is 44.

**I.     Objection 9: Overruled.**

1  Mr. Casillas-Carillo objects to paragraph 120 and believes the total offense
2  level should be 37, not 43, for the reasons stated above. *Id*. at 5. Based on the above
3  findings, the Court holds that the total offense level is 41.

**J.  Objection 10: Overruled as moot.**

Mr. Casillas-Carillo objects to paragraph 140 and clarified he married on December 29, 2010. *Id*. at 5. This was corrected in the PSIR. *See* ECF No. 1054.

**K.  Objection 11: Overruled.**

Mr. Casillas-Carillo objects to paragraph 160 and believes the total offense level should be 37 and the guideline range set to 210–262 months for the reasons stated. ECF No. 1037 at 5. Based on the findings above, the Court holds that the range for both Counts 1 and 2 is 324–405. However, under Count 2 only a maximum of 240 months is authorized by statute. 18 U.S.C. § 1956(h).

**L.  Objection 12: Overruled.**

Mr. Casillas-Carillo believes there are several factors that warrant departure from the applicable sentencing guideline range, including: death threats, deportation, and unnecessary cost of incarceration due to inevitable deportation. ECF No. 1037 at 6–7. The Court does not doubt that Mr. Casillas-Carillo has received death threats but finds no reason to depart on that basis. The Court also finds no reason to depart on the basis that Mr. Casillas-Carillo will be deported nor because the cost of incarcerating him is significant.

**M.  Objection 13: Overruled.**

Mr. Casillas-Carillo objects to paragraph 180 and believes that his total offense level should be 43 and criminal history score should be zero, resulting in a sentencing guideline range of 210–262 months. *Id.* at 7. Mr. Casillas-Carillo has zero countable criminal history points, which results in a criminal history score of I—there is no criminal history score of zero.

**IT IS HEREBY ORDERED:**

**1.** The Court **GRANTS** objection #6, and finds that the two level increase pursuant to § 2D1.1(b)(12) for maintaining a premises for the purpose of distributing or manufacturing controlled substances is inapplicable.

**2.** All other objections are **OVERRULED** for the aforementioned reasons.

**3.** The Court accepts the factual findings in the U.S. Probation Office's Presentence Investigation Report, ECF No. 1053.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide a copy to counsel for Mr. Casillas-Carillo and the Government, and the U.S. Probation Office.

**DATED** this __20th__ day of December 2018.

                    s/Edward F. Shea
                    EDWARD F. SHEA
            Senior United States District Judge