1

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF WASHINGTON
2

3   UNITED STATES OF AMERICA,      ) Case No.
                                   ) 4:15-CR-6049-EFS-2, 4, 10,
                        Plaintiff, ) 16, 18, 19, 20, 21, 23
4                                  )
    v.                             ) May 29, 2018
5                                  )
    JESE DAVID CARILLO             ) Richland, Washington
6   CASILLAS (2), ALEXIS JOEL      )
    GARCIA PALOMINO (4), BRITTNEY   ) Pretrial Conference/Motion
7   LEE ZARAGOZA (10), EDGAR OMAR   ) Hearing
    HERRERA FARIAS (16), ALFREDO    )
8   MAGANA GARIBAY (18), JUAN BRAVO )
    ZAMBRANO (19), MARCIAL BRAVO    ) Pages 1 to 75
9   ZAMBRANO (20), MIGUEL REYES     )
    GARCIA (21), JOSE ADRIAN        )
10  MENDOZA (23),                   )
                                    )
11  _____Defendants. )

12

13              BEFORE THE HONORABLE EDWARD F. SHEA
            SENIOR UNITED STATES DISTRICT COURT JUDGE
14

15                         APPEARANCES:

16  For the Plaintiff:           Stephanie A. Van Marter
                                 Stephanie.Van Marter@usdoj.gov
17                               Caitlin Baunsgard
                                 US Attorney's Office-SPO
18                               920 W Riverside, Suite 300
                                 P.O. Box 1494
19                               Spokane, WA 99210
                                 509-353-2767
20
    For the Defendant Carillo    Nicolas V. Vieth
21  Casillas (2):                Nick@viethlaw.com
                                 Vieth Law Offices
22                               505 West Riverside
                                 Suite 200
23                               Spokane, WA 99201
                                 208-664-9448
24

25

                KIMBERLY J. ALLEN, RMR, CRR, RPR, CCR
                     OFFICIAL COURT REPORTER

```
1

2     For the Defendant  Alexis        Jeffrey Scott Niesen
      Joel Garcia Palomino (4):        Jsniesen1@yahoo.com
3                                      Jeffrey S. Niesen Law Office
                                       1411 W. Pinehill Road
4                                      Spokane, WA  99218
                                       509-822-7140
5
      For the Defendant Zaragoza       Victor H. Lara
6     (10):                            Vh_lara@hotmail.com
                                       Hurley Lara & Hehir
7                                      411 North Second Street
                                       Yakima, WA  98901
8                                      509-248-4282

9
      For the Defendant Herrera        Peter Steven Schweda
10    Farias (16):                     Pschweda@wsmattorneys.com
                                       Waldo & Schweda, PS
11                                     2206 N Pines Road
                                       Spokane, WA   99206
12                                     509-924-3686

13    For the Defendant Magana         Nicholas Wright Marchi
      Garibay (18):                    Nmarchi@carmarlaw.com
14                                     Carney & Marchi, PS
                                       7502 W Deschutes Place
15                                     Kennewick, WA  99336
                                       509-545-1055
16
17    For the Defendant Bravo          Richard A. Smith
      Zambrano (19):                   Rasmith@house314.com
18                                     Smith Law Firm
                                       314 North Second Street
19                                     Yakima, WA 98901
                                       509-457-5108
20

21
      For the Defendant Marcial        Walter Lynn Ayers
22    Bravo Zambrano (20)-             Walter@ayerslawfirm.net
      DEFENDANT NOT PRESENT:           Zachary Lynn Ayers
23                                     Zach@ayerslawfirm.net
                                       1312 N. Monroe Street, Ste. 133
24                                     Spokane, WA  99201
                                       509-252-6005
25
```

3

| | |
|---|---|
| 1 | For the Defendant Reyes          Kenneth D. Therrien |
| | Garcia (21):                    Kentherrien@msn.com |
| 2 | Kenneth Therrien Law Office |
| | 413 North Second Street |
| 3 | Yakima, WA  98901 |
| | 509-457-5991 |
| 4 | |

1    For the Defendant Reyes          Kenneth D. Therrien
     Garcia (21):                     Kentherrien@msn.com
2                                     Kenneth Therrien Law Office
                                      413 North Second Street
3                                     Yakima, WA  98901
                                      509-457-5991
4

5    For the Defendant Adrian         Scott W. Johnson
     Mendoza (23):                    Scott@johnsonorr.com
6                                     Johnson & Orr PS
                                      1038 Jadwin Avenue
7                                     Richland, WA  99352
                                      509-579-0080
8

     Court-Certified Interpreters: Carolina Hickey, Cristina
9                                   Perez-Lopez

10   Official Court Reporter:         Kimberly J. Allen, CCR #2758
                                      United States District Courthouse
11                                    P.O. Box 685
                                      Richland, Washington 99352
12                                    (509) 943-8175

13   Proceedings reported by mechanical stenography; transcript
     produced by computer-aided transcription.
14

15

16

17

18

19

20

21

22

23

24

25

4

1                                **INDEX**

2    **Proceedings:**                                        **Page**

3                Colloquy Re: ECF 617                          15
                 Colloquy Re: ECF 757                          29
4                Colloquy Re: ECF 619                          34
                 Colloquy Re: ECF 623                          39
5

6                            **WITNESS INDEX**

7    **Plaintiff Witness:**                                   **Page**

8

9        None

10                                *****

11
     **Defense Witnesses:**                                   **Page**
12

13
         None
14

15

16                         **EXHIBITS ADMITTED**

17   **Plaintiff**
       **Number**        **Description**                      **Page**
18                    None

19

20   **Defense**
       **Number**        **Description**                      **Page**
21                    None

22

23

24

25

5

# GENERAL INDEX

**Page**

Reporter's Certificate..............................

*USA vs. Carillo Casillas, et al./4:15-CR-6049-EFS*                        6
*Pretrial Conference-Motion Hearing/May 29, 2018*

1   (May 29, 2018; 9:18 a.m.)

2          THE COURTROOM DEPUTY:  All rise.

3       (Call to Order of the Court.)

4          THE COURT:  Good morning to you all.  Please be seated.

09:18:34   5          THE COURTROOM DEPUTY:  Matter before the Court is United

6   States of America v. Jese David Carillo Casillas, et al., Cause

7   No. 4:15-CR-6049-EFS, Defendant Nos. 2, 4, 10, 16, 18, 19, 21,

8   and 23.  And the attorneys for Defendant No. 20, Marcial Bravo

9   Zambrano, are also present, but the defendant is not present.

09:19:04   10          Counsel, please state your presence for the record.

11   We'll start with the Government first, and then we'll move to

12   the top row in the box and then over to counsel at counsel

13   table.

14          MS. VAN MARTER:  Good morning, Your Honor.  Stephanie

09:19:14   15   Van Marter and Caitlin Baunsgard, along with case agent Joe

16   Brazeau, present for the United States.

17          THE COURT:  Thank you.

18          MR. SCHWEDA:  Your Honor, Pete Schweda with Mr. Herrera

19   Farias.

09:19:25   20          MR. NIESEN:  Good morning, Your Honor.  Jeffrey Niesen

21   with Mr. Palomino.

22          MR. VIETH:  Good morning, Judge.  Nick Vieth for

23   Mr. Casillas.

24          MR. MARCHI:  Good morning, Your Honor.  Nicholas Marchi

09:19:36   25   on behalf of Mr. Garibay.

KIMBERLY J. ALLEN, RMR, CRR, RPR, CCR
OFFICIAL COURT REPORTER

1    MR. THERRIEN:  Good morning, Your Honor.  Ken Therrien

2  for Miguel Reyes Garcia.

3    MR. SMITH:  Rick Smith on behalf of Juan Zambrano, Your

4  Honor.

09:19:45  5    MR. JOHNSON:  Scott Johnson on behalf of Jose Mendoza.

6    MR. LARA:  Victor Lara for Brittany Zaragoza.

7    MR. ZACHARY AYERS:  Zachary Ayers and Walter Ayers on

8  behalf of Mr. Zambrano.

9    THE COURT:  Mr. Zambrano was arraigned sometime on

09:20:00  10  Friday --

11    MR. ZACHARY AYERS:  Correct.

12    THE COURT:  -- and an order to that effect was entered

13  at about 4:45 on Friday, and as a result of that entry at that

14  time, on this weekend there was a lack of communication about

09:20:12  15  providing transportation for him to be here today.

16    MR. ZACHARY AYERS:  I believe so.

17    THE COURT:  And as a result, he's not here in court.

18  But I invite you to make any motions or request any hearings you

19  want on anything that goes on, including your case.

09:20:27  20    Okay?

21    MR. ZACHARY AYERS:  Understood, Your Honor.

22    THE COURT:  We can bring him back -- so nothing that

23  occurs today will prejudice him.  We will take up the issue

24  right now of trial dates in your client's case and in the case

09:20:40  25  that we heard this morning, Mr. Palomino.

KIMBERLY J. ALLEN, RMR, CRR, RPR, CCR
OFFICIAL COURT REPORTER

1    Okay.  Have a seat.  Thanks.

2    MR. ZACHARY AYERS:  Thank you, Your Honor.

3    THE COURT:  Ms. Van Marter, let's talk about that right

4    at the outset.

09:20:53  5    And consistent with that, one of the attorneys is

6    telling me there's rolling discovery, a pejorative term in my

7    court, especially when the indictment is December 16th of 2015,

8    with a second superseding indictment 12-6 of '16.

9    Please tell me that that's not so; that that is

09:21:16 10    inaccurate; that there is no rolling discovery.

11    MS. VAN MARTER:  There is no rolling discovery, Your

12    Honor.  What was last disclosed to counsel of -- new counsel of

13    record is the majority of the discovery.  That's the most recent

14    disclosure.  So that's for the Ayerses -- obviously they didn't

09:21:30 15    have it previously -- as well as Mr. Niesen on behalf of

16    Mr. Palomino.

17    THE COURT:  So that's discovery already provided --

18    MS. VAN MARTER:  Yes.

19    THE COURT:  -- to all the other counsel?

09:21:40 20    MS. VAN MARTER:  Correct.

21    THE COURT:  So it should be in their files.

22    MS. VAN MARTER:  Correct.

23    THE COURT:  Did anybody call you and tell you that there

24    was new discovery?

09:21:46 25    MS. VAN MARTER:  No.

1              THE COURT:  Okay.

2              MS. VAN MARTER:  Nobody contacted the United States to

3       that effect at all.

4              THE COURT:  Okay.

09:21:51   5        MS. VAN MARTER:  As to new counsel, we've had

6       conversations about the discovery that they've received.  I've

7       only had one conversation with Mr. Vieth about any questions

8       that he may have or any additional information that he may like,

9       and I believe we've worked that through.

09:22:06  10             The only other discovery that was produced was pursuant

11      to the hearing that this Court was already -- we already

12      presided over; that had to do with Mr. Schweda's requests, and

13      we already went over that issue.  And the only outstanding thing

14      is the CI disclosures that I have a court date -- or a date set

09:22:26  15      by this Court in August for those disclosures, which we've

16      already discussed in front of this Court a number of times.

17             THE COURT:  Okay.  Well, Mr. Niesen, I don't know

18      what -- Mr. -- the Ayerses, what is your position on going to

19      trial in October, given your client's charges?  What charge is

09:22:40  20      your client charged with?  You can speak from there.

21             MR. ZACHARY AYERS:  Your Honor, he is charged with a

22      conspiracy in Count 1.

23             THE COURT:  So Count 1.

24             MR. ZACHARY AYERS:  We would agree to the continuance

09:22:51  25      that the other counsel is moving for as well today.

1    THE COURT:  This is not a continuance.

2    MR. ZACHARY AYERS:  Or I mean --

3    THE COURT:  This is a separate trial date.  Nobody is

4  getting a continuance at this point.

09:23:00  5    MR. ZACHARY AYERS:  Okay.

6    THE COURT:  You can have a -- because the amended case

7  management order in Palomino set his trial for October.  There's

8  been no amended case management order dealing with your client.

9  So as I put in a footnote, flagging it to the people who

09:23:15  10  received all of that, all of the counsel, anybody arrested

11  recently is going to trial in March of 2019.

12    MR. ZACHARY AYERS:  Understood, Your Honor.

13    THE COURT:  Okay.

14    MR. ZACHARY AYERS:  That was the date we were

09:23:25  15  anticipating.

16    THE COURT:  Thank you.

17    MR. ZACHARY AYERS:  Thank you.

18    THE COURT:  But if something arises -- let me know if

19  your client has different views.

09:23:32  20    Have you been able to talk with your client yet?

21    MR. ZACHARY AYERS:  Only since last Friday, Your Honor.

22  We hadn't had a chance to talk with him about the dates yet.

23    THE COURT:  Okay.  Well, then if that develops, set a

24  hearing, and we'll deal with the issues --

09:23:43  25    MR. ZACHARY AYERS:  Okay.

1          THE COURT:  -- at your convenience.

2          Okay.  So that takes care of those two individuals.

3     They'll go to trial in March of next year, which gives them more

4     than adequate -- gives them adequate time to prepare, given the

09:23:57  5     amount of time every other attorney has had.

6          Mr. Vieth, you suggested that there was a need for more

7     Behind the Gavel analysis, and I'm perplexed because I don't get

8     why that is so.

9          MR. VIETH:  Your Honor, do you want me to go to --

09:24:14  10          THE COURT:  No, you're fine.

11          MR. VIETH:  All right.  In speaking with Behind the

12     Gavel -- and I did put a call in, I believe it was on Thursday

13     or Friday, my office, to Behind the Gavel to have them available

14     by phone if the Court has any questions.  But the need, as I

09:24:34  15     understand it, was to continue to give counsel, not only myself

16     but everybody else, because I am now the lead attorney on

17     getting all of their budgets in order, making sure that they

18     have the proper funds, to give not only my office the ability to

19     call them, pinpoint potential discovery that is valuable to

09:24:59  20     me --

21          THE COURT:  Sorry, Counsel.  You're going to have to

22     repeat that again.  Why is there additional work needed from

23     Behind the Gavel?  I think I approved something over $40,000 for

24     that.

09:25:09  25          MR. VIETH:  I believe so, Judge.

1        THE COURTROOM DEPUTY:  I'm sorry, Judge.  The

2   interpreter needs the microphone -- can you speak into the

3   microphone, please, so she can pick it up in the headset?

4        THE COURT:  Okay.

09:25:20  5        MR. VIETH:  Oh.  Sorry about that.

6        Do I need to start over, Ms. Interpreter?

7        Okay.  And so, Your Honor, as I understand it and the

8   request from Behind the Gavel was to continue to provide the

9   same expertise that they have provided, to other counsel,

09:25:38  10   previous counsel to the more recent appointed counsels.

11        THE COURT:  Define most -- "more recent appointed

12   counsel."

13        MR. VIETH:  Well, Mr. Ayers, I believe, was just

14   appointed.  I believe there was one or two --

09:25:51  15        THE COURT:  Mr. Niesen.

16        MR. VIETH:  Mr. Jeff Niesen as well.

17        Sorry, Jeff.

18        And so it's my understanding that it's their request

19   that they be able to provide the same assistance that they have

09:26:03  20   given my office and other offices in the past with their same

21   expertise in pinpointing certain discovery and helping those

22   members of the defense with the same opportunities that we've

23   received.

24        THE COURT:  Well, why would that motion come through you

09:26:23  25   rather than through Mr. Niesen or Mr. Ayers?

1    MR. VIETH:  It's my understanding, Your Honor, that when

2    I received the case, that the lead counsel that ended up having

3    to withdraw and I took over, I was the point for the Ninth

4    Circuit budgeting coordinator Blair Pearlman, and then it was my

09:26:46  5    responsibility to put together the budget for Behind the Gavel.

6    THE COURT:  Okay.  That makes more sense to me.  Thanks

7    for that clarification.

8    MR. VIETH:  Thank you, Judge.

9    THE COURT:  Okay.  All right.  Let's talk about what

09:27:00  10   motions we have.

11   What are we doing today?

12   For the record, the same rulings I've made in the past

13   regarding shackling remain in place, given the number of

14   defendants, the stakes, and the public interest in safety for

09:27:27  15   the defendants, counsel, and the courtroom staff; six in custody

16   defendants will be permitted to be shackled by the United States

17   for this hearing.

18   Okay.  What's next?

19   MS. VAN MARTER:  Are you asking me?  I'm sorry, Your

09:27:44  20   Honor.  I'm aware of only one pending motion thus far before the

21   Court, and that is on behalf of Mr. Herrera Farias in regard to

22   his motion in limine to exclude reference to his prior 2012 drug

23   conviction that was --

24   THE COURT:  Okay.  Let's argue that.  Stay at the

09:28:02  25   podium.

1       Mr. Schweda.

2       MR. SCHWEDA:  I have another motion that's pending as

3  well, Your Honor.

4       THE COURT:  Why don't you tell us which ECF it is so

09:28:27  5  that we can --

6       MR. SCHWEDA:  Sure.

7       THE COURT:  -- work with you to make sure that we cover

8  each and every motion that you filed and each and every motion

9  that any defense lawyer has filed so that progress is made

09:28:38 10  during today's hearing.

11       MR. SCHWEDA:  It deals with the -- ECF 617, which deals

12  with the --

13       THE COURT:  ECF 617?

14       MR. SCHWEDA:  Correct.

09:28:59 15       THE COURT:  Motions in limine?

16       MR. SCHWEDA:  Yes.

17       THE COURT:  Okay.  And then --

18       MR. SCHWEDA:  And then --

19       THE COURT:  What's -- 617.  So what else?

09:29:11 20       MR. SCHWEDA:  And then I have, I believe it's ECF 757,

21  which is the 609, 403 motion.

22       THE COURT:  Okay.  What's next?

23       MR. SCHWEDA:  Those are the only pending motions I have.

24  I believe that Mr. Therrien -- is it -- I believe he had some

09:29:37 25  motions.  Somebody had some other motions in limine that are

1    pending as well, Your Honor.

2            THE COURT:  Let's start with yours.

3            MR. SCHWEDA:  Okay.  Which one would you like?

4            THE COURT:  So let's start with 617.

09:29:49  5            MR. SCHWEDA:  Your Honor, we're moving the Court to

6    limit the Government's use of modus operandi witnesses.  The

7    Government has disclosed that they're going to be calling a

8    number of co-conspirators as fact witnesses, and based on that,

9    it would be unfair to allow the Government to present modus

09:30:21 10   operandi expert witnesses, which would dovetail with the facts

11   that were testified to, if they are testified to, by cooperating

12   co-conspirators.

13           It also would be based on --

14           THE COURT:  When you say they're going to --

09:30:39 15   co-conspirators are going to testify --

16           MR. SCHWEDA:  Pardon?

17           THE COURT:  -- to what effect or to what point?

18           MR. SCHWEDA:  Well, Your Honor, that's hard for us to

19   tell at this time for the simple fact that the discovery is

09:30:52 20   highly redacted.  We have not -- we have not learned of the true

21   identities of cooperating witnesses.  We can guess at some of

22   them because of the fact that they're not present in court -- in

23   court today, but as to what they would say, we haven't, in many

24   instances, received the discovery of what those people will say.

09:31:20 25   There's some bits and pieces, I believe, but it's not

1    comprehensive by any means.

2         The -- by allowing the Government to present their agent

3    M and O witnesses -- or MO witnesses, it would allow the

4    Government to impermissibly have witnesses testify as to the

09:31:49  5    ultimate facts, because they would basically be validating what

6    the cooperating co-conspirators had said.

7         THE COURT:  Well, that said, that must be a fairly

8    common complaint, and I'm sure there must be Ninth Circuit

9    precedent that I should be reading.

09:32:08  10        What are the cases that support your position?

11        MR. SCHWEDA:  Well, I think the --

12        THE COURT:  I just want a specific reference to a

13   specific case.

14        MR. SCHWEDA:  There's no -- well, I can't give you a --

09:32:19  15   there's no bright-line rule, Your Honor.  The Court --

16        THE COURT:  Well, let's take -- let's take a

17   hypothetical.  Suppose there are co-conspirators that are going

18   to testify about the money laundering and the movement of drugs.

19        Are there cases in the Ninth Circuit that talk about the

09:32:37  20   co-conspirators' testimony eliminating the need for a modus

21   operandi expert?

22        MR. SCHWEDA:  I -- well, they direct -- they direct the

23   Court's attention to Rule 403 and determining --

24        THE COURT:  So you're telling me there is no case,

09:32:53  25   because you haven't cited one.  But if there is, I want to look

1    at it.

2          MR. SCHWEDA:  Well, yes, I have, Your Honor.  I've cited

3    it in the materials I've presented to the Court, so --

4          THE COURT:  Okay.  Then let's look at those.  Let's get

09:33:04   5    those up, and I'll take a look at them with you.

6          And that's 617.  Okay?

7          MR. SCHWEDA:  Correct, Your Honor.

8          THE COURT:  Okay.  We're talking about 617; is that

9    correct?

09:33:24   10          MR. SCHWEDA:  Correct, Your Honor.

11          THE COURT:  Okay.  So in 617, you cite several of the

12    rules.  You cite *Daubert*; *Kumho Tire;* and then you say for 702,

13    *United States v. Hankey*, which sets out a number of

14    considerations.  You recite *Daubert*, and I'm on Page 6, and I

09:33:52   15    don't see any citation to any case that says that if

16    co-conspirators testify about the facts, that the modus operandi

17    expert is therefore unnecessary and should not be allowed to

18    testify.  That's a very specific question, Mr. Schweda.

19          MR. SCHWEDA:  Okay.

09:34:08   20          THE COURT:  When I looked at 617, I didn't see any case

21    that said that.

22          Now, maybe I've overlooked something and I just whipped

23    through it.

24          But is there a page I should look at that shows me that

09:34:19   25    case?

1     MR. SCHWEDA:  Well, Your Honor, I didn't come prepared

2  to cite you cases.  I prepared argument on the basis of what I

3  wanted -- I didn't want to repeat what was in my briefing.  So I

4  think in the motion on 757, I probably do a better job of

09:34:41  5  directing the Court's attention to --

6     THE COURT:  Well, correct me if I'm wrong, but 757 is a

7  609.

8     MR. SCHWEDA:  Correct, but it deals with the same -- it

9  deals with the same issue.  The issue under 609 and 403 are the

09:34:59  10  same.  They are whether the probative value outweighs the

11  prejudicial effect on --

12     THE COURT:  Okay.  So you're relying on general

13  principles of 403.

14     MR. SCHWEDA:  Correct, Your Honor.  And --

09:35:12  15     THE COURT:  Okay.

16     MR. SCHWEDA:  -- just the whole analysis of what --

17  whether unfair probative value outweighs the prejudicial effect.

18  And I think that the -- for example, in the Government's

19  disclosure, which is ECF 474, at Page 5 they identify -- they

09:35:36  20  don't identify, they state that an undercover agent will be

21  testifying as to money laundering, and he's going to be a fact

22  witness because he -- the testimony will show that he contacted

23  one or more co-conspirators about laundering money.  He's not

24  identified, but they go on to say that based upon his

09:36:02  25  experience -- they're not calling him as an expert, but they're

1   going to have him give testimony on the significance of his role

2   and testimony as to the meaning and significance of various

3   events in the conspiracy.  And it's --

4           THE COURT:  Excuse me.  You're sliding from one to the

09:36:19   5   other, and I'd rather not do that.  So let's confine ourselves

6   to 617.

7           MR. SCHWEDA:  I --

8           THE COURT:  So in 617, I've read your materials in 617,

9   and I know exactly what they say.  So you've said your piece,

09:36:32   10   and I'm going to hear from Ms. Van Marter, and you can reply.

11           Ms. Van Marter?

12           MS. VAN MARTER:  Thank you, Your Honor.

13           I think that the concern that the Ninth Circuit has

14   raised recently has to do with the interplay between a fact

09:36:42   15   witness who is also going to be called as a modus operandi

16   witness.  That is why in our notice we have separated out the

17   undercover agent who will be providing factual testimony.  He

18   can still provide testimony based upon his training and

19   experience and based upon his involvement in the investigation.

09:36:58   20   That is a separate issue than the United States' notice of

21   intent to present modus operandi expert testimony through law

22   enforcement.

23           In our response, and is my experience a lot during these

24   trials, is that many times the co-defendant witness testimony

09:37:13   25   does address a lot of the manners and operations within that

1    drug trafficking organization.  That may alleviate the need for

2    the United States to follow that up with additional law

3    enforcement modus operandi expert testimony.

4         However, we have kept the notice because this is a

09:37:31    5    sophisticated organization that has a money laundering aspect to

6    it as well as the transportation of substantial quantities of

7    narcotics.  There are certain things that are not necessarily

8    common knowledge to jurors about how those organizations may

9    work.  So we have noticed Special Agent Bill Leahy, who is now

09:37:50    10    retired.  We also have an RCMP officer who is not a fact witness

11    but exclusively would be offered as a modus operandi witness for

12    the perspective of the Canadian authorities because --

13         THE COURT:  On what issue?

14         MS. VAN MARTER:  Specifically on the transportation of

09:38:04    15    narcotics up into the Canadian jurisdiction, as well as the --

16    this concept of money drops, this concept of use of individuals

17    up in Canada to drop Canadian currency for the purpose of being

18    laundered into American currency.  So having their commentary

19    and expertise as to why that is done in these organizations.

09:38:24    20         Again, it may not be necessary after we get through some

21    of the cooperating witness testimony, but I think it certainly

22    is something that the United States, under case law -- and the

23    Court is correct; there is no case law that defense can point to

24    that excludes such proposed testimony just because we have

09:38:40    25    co-defendants who may also be able to testify about the

1    structure of an organization.  It doesn't exclude it.  It

2    certainly gives this Court a gatekeeping function as to whether

3    there's a necessity to get into those matters with an additional

4    witness.  And I think sometimes that's hard to tell until we get

09:38:56   5    into trial as to what other remaining issues might be open to

6    explain to the jury about how these organizations work.

7          So in an abundance of caution, we have noticed that to

8    the Court, that we do have these potential witnesses if there

9    are gaps in the presentation of that evidence, so that the jury

09:39:10   10    can understand how an operation like this would work, especially

11    if we're talking from Mexico all the way up into Canada and out

12    back East with both the drug flow and the money flow.

13          THE COURT:  Well, your position makes sense to me if

14    you, in fact, have one single or two individuals, let's say, who

09:39:28   15    are key players in the conspiracy and have, by virtue of their

16    position, a clear understanding of how it all works; if that

17    were so, so be it.

18          On the other hand, if you have pieces of the puzzle, and

19    someone needs to say, from your perspective, that this is the

09:39:51   20    modus operandi and this is how they work, given all of these

21    pieces, then that makes sense to me as well.

22          So, Mr. Schweda, anything else?

23          MR. SCHWEDA:  Yes, Your Honor.

24          I guess, you know, the whole idea of allowing MO experts

09:40:06   25    that are agents is so -- to help the jury understand things

1    that, innocuous events that make them -- that are inculpa --

2    that are really inculpatory events.  And that is not what is

3    going to happen here.  The fact that --

4         THE COURT:  How do you know?

5         MR. SCHWEDA:  Well, if they present co-conspirators that

6    say, "This defendant transported drugs over the border.  I -- I

7    was there.  I gave him the drugs.  He came back with the money,"

8    for example, there's no need to have somebody come in and say,

9    based -- "My expert opinion is that this is how they do it."  It

10   just basically reinforces the facts.  It isn't something that

11   needs to be testified to to -- for the jury to understand that

12   this is evidence -- evidence --

13        THE COURT:  I disagree with you.  What I know now --

14   and, admittedly, it's far less than all of you know, but what I

15   do know from what I've read is that this was a sophisticated,

16   far-reaching, multi-person operation that involved money

17   laundering and transport of drugs.  And it seems to me that

18   under a conspiracy, MO testimony is appropriate, and I'm going

19   to deny your motion.

20        If at trial it turns out that you think it's not

21   necessary by virtue of what's occurred, well, then you could

22   make that motion, and you're free to do so.  But right now I'm

23   going to permit the modus operandi because my belief is, given

24   what I know of the case, that it's necessary, and that it's

25   relevant, and that it would be helpful to the jury on matters

1    that they know nothing about, such as money laundering or money

2    drops, especially on an international level.  And so I'm going

3    to permit the modus operandi, and you can renew your motion at

4    trial if you think there is a basis to do so.

5                MR. SCHWEDA:  May I ask the Court to clarify a couple of

6    things?

7                The first one is if the -- I -- I would ask the Court to

8    not allow MO testimony until all of the cooperators have

9    testified so that we don't get into a situation where they are

10   really -- they're coming in and saying, "My expert opinion is

11   this is what the organization -- a typical organization looks

12   like," and then we've had the co-conspirators coming in saying

13   that, because that's exactly the kind of issue that -- and I

14   don't have the cite of it.  It's *United States v. Wells*.  It's a

15   recent case.  I didn't copy the front page.  It was something I

16   copied when it came out recently.

17               THE COURT:  Do you know the case?  Do you know the case?

18               MS. VAN MARTER:  Not off the top of my head, Your Honor.

19               THE COURT:  Is this a Ninth Circuit case?

20               MR. SCHWEDA:  Yes, Your Honor.

21               THE COURT:  Okay.  When did it come out?

22               MR. SCHWEDA:  This year, I believe.  I didn't copy the

23   front page.  I mean, the case is --

24               THE COURT:  I'll take a look at it, but right now,

25   that's my ruling.

1      MR. SCHWEDA:  Okay.  And --

2      THE COURT:  So let's take up 757.

3      MR. SCHWEDA:  And one other matter, Your Honor, that is

4  not enveloped in what the Court's ruled so far is the issue --

09:43:22  5      THE COURT:  Are you talking about 617?

6      MR. SCHWEDA:  Yes, Your Honor, and it's brought up by

7  617.

8      One of the -- one of our objections to their expert --

9  or they're saying it's nonexpert testimony.  They're saying that

09:43:34 10  officers can get on the witness stand and, based upon their

11  training and experience, testify as to the meaning and

12  significance of various events in the conspiracy.

13      And our position is that if they are truly 701

14  witnesses, percipient witnesses with direct knowledge, they are

09:43:56 15  not allowed to give opinions based upon their training and

16  experience as law enforcement officers.  That's not what 7 --

17  701 allows lay testimony, but it would be like, well, the car

18  was speeding; how fast do you think it was going?  Well, I

19  thought it was going 40 miles an hour; or, I put my hand on his

09:44:20 20  forehead, and he felt like he had a fever.  Those are the types

21  of opinions that are allowed to be given under 701.

22      Under 702, you have to have -- is the typical expert,

23  where they -- they can testify as an expert based upon their

24  training and experience.

09:44:38 25      And I think that the Government is trying to mix -- mix

1    those rules and have it both ways.  For example, they're wanting

2    to have this money laundering expert come in and testify as to

3    the facts that he was involved in, but then also take the next

4    step and give an opinion based upon his training and experience

09:45:01  5    as to what certain things mean.  And they haven't disclosed the

6    identity of the person, nor do we know exactly what the opinions

7    are going to be.  They haven't disclosed any of that at all.

8          THE COURT:  So I'm a bit stunned that you've failed in

9    your Rule 16 responsibilities.

09:45:20  10         Are you asking that all these witnesses be barred

11   because the Government's failed in their Rule 16 summaries?  Is

12   that what you're asking?

13         MR. SCHWEDA:  I'm asking --

14         THE COURT:  Because they haven't provided you with the

09:45:32  15   Rule 16 summaries; is that right?

16         MR. SCHWEDA:  Correct, Your Honor.  I'm asking --

17         THE COURT:  Okay.  So it's correct.  So --

18         MR. SCHWEDA:  I'm asking --

19         THE COURT:  No, no.  You said it was correct.  I asked

09:45:39  20   you a question --

21         MR. SCHWEDA:  I'm trying to explain, Your Honor, if I'd

22   be given an opportunity.

23         THE COURT:  Well, I'm going to hear from Ms. Van Marter

24   now.

09:45:47  25         MS. VAN MARTER:  Your Honor, we did not notice those

1    individuals as experts.  As I specifically noticed in detail in

2    some of our responses, as is also noted in the discovery, for

3    instance, the undercover agent, because he is a fact witness, is

4    not being noticed as an expert witness.  He's going to be

09:46:03   5    testifying about his role in the investigation, his

6    communications regarding the money laundering.  And there are a

7    series of cases that we cited in our materials that allows that

8    witness -- for us to ask questions like, why is that significant

9    to you?  Why was this piece of communication?  Those are all

09:46:21   10    authorized based upon his role in the investigation, similar to

11    that of many of the other law enforcement witnesses if they did

12    a search warrant, if they seized amounts of drugs and currency,

13    why would they seize --

14              THE COURT:  So you're not asking for an expert opinion.

09:46:35   15              MS. VAN MARTER:  Those are not expert opinions.

16              MR. SCHWEDA:  I would disagree, Your Honor.  I mean, if

17    they're going to testify to the meaning and significance of

18    various events based upon their training and experience, then

19    they become 702 expert witnesses.  They are no longer 701 fact

09:46:51   20    witnesses.

21              THE COURT:  Well, that may be, but you keep saying

22    they're not a 701 fact witness.  So it's standard.  Why did you

23    do what you did; that's a standard question.  Why was that

24    meaningful to you?  A police officer on the scene says it was

09:47:12   25    meaningful to me because, and then he explains, or she explains,

1    why in that neighborhood at that time, given what's gone on

2    there, this is of significance; or because they were wearing

3    certain colors and in that neighborhood, those colors mean this

4    and that, and that is based on my experience, and so that is why

09:47:30    5    it was significant; that's why I stopped the young guy.  That is

6    just straight-up police investigation testimony.

7          If you have -- if *Wells* says something else, then I'll

8    certainly read it for that.  And if you have a case that says

9    you cannot ask an investigating officer or an officer that's

09:47:50    10    undercover why he did what he did, I'd be happy to read that

11    one, because that would be surprising to me.

12          MR. SCHWEDA:  Well, Your Honor, I guess the -- it's --

13    we're treading a fine line here between what is fact and what is

14    an expert opinion --

09:48:09    15          THE COURT:  Well, you know, Mr. Schweda, you're going to

16    be able to do that at trial.  And so it seems to me that I'm

17    going to permit the testimony as it's currently characterized,

18    but if at trial you think that somehow it's sliding into expert

19    testimony, then, by all means, renew your objection, and I'll

09:48:26    20    hear you out at that time, based on what I see and hear in the

21    testimony, the context.

22          MR. SCHWEDA:  All right.

23          THE COURT:  Sometimes it's just contextual, and you have

24    to make a decision based on context at the time of trial.

09:48:39    25          Now, remind me what you think *U.S. v. Wells* stands for

1    and how it applies to your motions.

2         MR. SCHWEDA:  Well, it talks about the balance

3    between -- between probative value and prejudicial effect.  And

4    what happened in *Wells* was a Dr. Reid Meloy was tendered as an

09:49:18   5    expert witnesses for targeted abuse in the workplace in a

6    multiple homicide case.  The testimony invited the jury to find,

7    quote, fit, unquote, between Dr. Meloy's criminal profile and

8    the lay witness' testimony concerning Wells' own

9    characteristics.

09:49:40   10         And so the Ninth Circuit reversed because -- what

11   happened was that they allowed the doctor to say this person fit

12   the profile, based upon the lay testimony of other witnesses,

13   and basically allowed him to testify as to the ultimate issue in

14   the case.

09:50:12   15         THE COURT:  It seems like it's a lengthy opinion, from

16   the number of pages you're turning.

17         MR. SCHWEDA:  It is, Your Honor, and I didn't copy it

18   all, so that's why --

19         THE COURT:  Okay.

09:50:24   20         MR. SCHWEDA:  When it came out, I thought this is

21   something that I --

22         THE COURT:  I'll take a look at it.

23         All right.  On 757 -- we've taken care of 617.  Let's

24   take a look at 757.

09:50:35   25         Are you ready for that?

1    MR. SCHWEDA:  Yes, Your Honor.

2    THE COURT:  Okay.  Then let's look at it.

3    MR. SCHWEDA:  The -- so Mr. Herrera Farias in 2012 was

4    charged in Yakima County Superior Court with possession -- or

09:50:55    5    pleaded guilty to possession with intent to distribute some

6    methamphetamine.

7        The Government -- this was a subject in our last hearing

8    of a motion to suppress that Your Honor denied.  The Government

9    will present that testimony during the course of the trial as

09:51:13    10    evidence of my client's involvement in the conspiracy in this

11    case, and they have given -- they gave notice shortly before

12    that last hearing that they intend to use his prior conviction

13    as impeachment, if he should take the witness stand.

14        The problem that I have is Rule -- both Rule 609 and

09:51:36    15    403, again, direct the Court to consider the probative value

16    versus the prejudicial effect.  And in this case, the

17    prejudicial effect would be that they're going -- they're going

18    to attempt to elicit that he was found guilty of this crime

19    during the course of the conspiracy, during the dates of the

09:51:56    20    conspiracy.  And that we believe it would be inevitable that the

21    jury is going to put this together, and that they're going to

22    convict my client not based upon the -- whether he's a

23    conspirator or not, but based upon the fact that he pleaded

24    guilty to possession with intent to distribute.  Not conspiracy,

09:52:19    25    but to possession with intent to distribute.

*USA vs. Carillo Casillas, et al./4:15-CR-6049-EFS*
*Pretrial Conference-Motion Hearing/May 29, 2018*
*Colloquy Re: ECF 757*

30

1    The -- so the -- this would pose -- first of all, the

2    Government has the burden of showing that the probative value

3    outweighs the prejudicial effect --

4    THE COURT:  When you say "probative value," what are you

09:52:39  5    referring to?

6    MR. SCHWEDA:  Well, they --

7    THE COURT:  I just -- are you talking about a 609?

8    MR. SCHWEDA:  Yes.  And 403, for that matter as well,

9    Your Honor.  They're both --

09:52:48  10    THE COURT:  See, here is what I understand the

11    Government is going to do:  I understand that the Government is

12    going to establish factually what happened in 2012, the facts of

13    the drug activity.  It's also my understanding, subject to your

14    correcting me now, that the Government is not going to elicit

09:53:09  15    that he was convicted in 2012 of a particular -- of that which

16    would tie the dates together, but that if he testified, they

17    would simply impeach him on the basis that he had a prior

18    conviction for the prior conviction he has.

19    Your position is that if they do both, that a jury would

09:53:34  20    be able to tie those together and say if he -- if he did it in

21    '12 -- they're going to prove what he did in '12 was part of the

22    conspiracy.  They're not going to prove the conviction was part

23    of the conspiracy.  They're going to prove his activity is part

24    of the conspiracy.  That's what I understand.

09:53:52  25    Now, do you understand something different?

1    MR. SCHWEDA:  Well, I'm not sure that I'm following --

2    THE COURT:  Okay.  Well, let me try to make it as simple

3    as I can, given my understanding.  I understand the Government

4    is going to elicit fact witnesses that say he did this in this

09:54:08    5    year.  That's what they're going to elicit, and that was part of

6    the ongoing conspiracy.

7    Do you understand they're going to do that?

8    MR. SCHWEDA:  Correct, the 2012 search of his home, yes.

9    THE COURT:  Right.  So they're going to say this is what

09:54:19   10   happened, and this is what we found, and it was in his dominion

11   and control.  And then that's their case, and then they rest,

12   after a bunch of other witnesses.

13   And then you decide whether or not your client is going

14   to take the stand, and he does, too.  And if he decides he's

09:54:40   15   going to take the stand, then they're going to impeach him with

16   a prior conviction for -- is it distribution of drugs or

17   possession?

18   MS. VAN MARTER:  Possession with intent to distribute.

19   THE COURT:  Possession with intent to distribute.

09:54:52   20   I assume -- now, typically, we wouldn't get into the details at

21   all of that in any case because it's -- in fact, people would

22   oftentimes stipulate, yeah, my client has a prior felony

23   conviction for an offense punishable by imprisonment for more

24   than one year.

09:55:14   25   Now, I don't know whether you will do that or won't do

1    that, but that's not uncommon.  And so the question is how do

2    you want to diffuse that in the way you handle your case.

3         But if he takes the stand and he testifies, then they're

4    going to be able to elicit a prior conviction for a felony

5    exceeding one year -- or a term exceeding one year.

6         MR. SCHWEDA:  Okay.  And will they be able to establish

7    the date of that conviction?

8         THE COURT:  The what?

9         MR. SCHWEDA:  The date.

10        THE COURT:  Well, if you contest the fact of it -- I --

11   I don't know what you're going to do, Mr. Schweda.  But

12   depending on the context, depends on how you approach it, that

13   may require them to prove certain things.  But if you open the

14   door, and you take a position that requires them to prove the

15   date, that's your problem.  But typically what's going to

16   happen -- and correct me if I'm wrong, but typically they'd

17   simply elicit he has a prior felony conviction which he was

18   convicted for a crime punishable by imprisonment for a term

19   exceeding one year, period.

20        MR. SCHWEDA:  And if that were the case, Your Honor,

21   that would, as the Government said, sanitize it, and if that's

22   the limits of what the Government can get -- get into, I can

23   deal with that.  But right now what I'm concerned about is, is

24   that somehow it blows up into, well, it happened in 2012, it

25   happened in Yakima County Superior Court, and it just all of

09:55:28
09:55:41
09:55:56
09:56:16
09:56:38

1    a --

2              THE COURT:  I've presiding over a bunch of trials in 20

3    years, and I've never heard that.  I've never seen an AUSA

4    elicit those kinds of details of a prior conviction used for 609

09:56:53  5    purposes.  Never, ever.

6              Have you?  Because I haven't.  And none of my colleagues

7    have ever told me they have.  Nor could I imagine any -- any

8    efficacy, any reason to do that.

9              Now, have I articulated the way you're going to go about

09:57:16  10   this?

11             MS. VAN MARTER:  Yes, Your Honor.

12             THE COURT:  Okay.  What else?

13             MR. SCHWEDA:  That's all I have, Your Honor.

14             THE COURT:  Okay.  My ruling is it's denied, given the

09:57:24  15   representations here.  If it changes at trial, then make your

16   objections in the context of trial.  So ...

17             Somebody else had a piece of the action on these

18   motions.  Do you want to be heard?

19             MR. THERRIEN:  Judge, I had a motion to --

09:57:38  20            THE COURT:  No, no.  On these two motions.

21             MR. THERRIEN:  No.

22             THE COURT:  Did you join?  Did anybody join these

23   motions, and if so, do they want to be heard?  That's 617 and

24   757.  They were joined in by one defendant.

09:57:58  25            Okay.  Hearing none, Mr. Therrien, you're up.

*USA vs. Carillo Casillas, et al./4:15-CR-6049-EFS*
*Pretrial Conference-Motion Hearing/May 29, 2018*
*Colloquy Re: ECF 619*

34

1      MR. THERRIEN:  Judge, the only motion in limine that I

2  have left or have filed was my motion regarding exclusion of

3  co-conspirator statements until the --

4      THE COURT:  Give me one second.  I just wanted to do --

09:58:33  5  Mr. Lara, you joined in that 617 motion.  You didn't --

6  according to my records, you joined that motion.

7      MR. LARA:  I did, Your Honor, but I have nothing to add.

8      THE COURT:  Okay.  And then, let's see -- okay.

9      You're up.

09:58:53  10      MR. THERRIEN:  All right.  Judge --

11      THE COURT:  And so we're talking about which motion?

12      MR. THERRIEN:  It's motion 619.

13      THE COURT:  Okay.  And that's been joined in again by

14  Mr. Lara and, I think, Mr. Schweda.

09:59:10  15      Okay.  Go ahead.

16      MR. THERRIEN:  Your Honor, the motion that I filed is --

17  it's a pretty consistent, or something that I use a lot of times

18  in conspiracies to prevent the Government from introducing

19  co-conspirator statements that they -- until they've proved a

09:59:29  20  conspiracy exists and my client is part of that conspiracy.

21      Throughout this case, as we've been reviewing discovery,

22  information has come to us as -- with controlled informants and

23  cooperating sources about Mr. Reyes Garcia.  If you talk to one

24  controlled source, Mr. Reyes Garcia is -- was indebted to

10:00:00  25  Mr. Calvillo for -- in the amount of $70,000 and him and

1  Baltazar (phonetic) Reyes Garcia, his brother, were attempting

2  to pay them back.

3         If you talk to someone else, Mr. Reyes Garcia is an

4  independent drug dealer; he transports drugs into the United

5  States, him and his brother on their own; they have their own

6  organization.

7         If you talk to some other source, if you read a report

8  from some other source -- a lot of it is historical -- that

9  Mr. Reyes Garcia makes a lot of money by, you know, fighting

10 roosters, and he owns a ranch in Pasco, and other -- other

11 things about Mr. Garcia that are really kind of historical in

12 nature as to what he did in the past.

13        The Government alleges that he -- he's been part of the

14 Calvillo drug trafficking organization since 2011.  However, the

15 incident where he shows up and -- basically is the August 2015

16 transaction that took place in Grand Forks, Canada.

17        As a defense attorney, you have these various

18 statements, and you have the case coming up, you have -- we

19 don't have the disclosures, the grand jury transcripts, or the

20 *Giglio* disclosures or the identities of cooperating defendants

21 yet.  We won't have those until August 31st.  We won't have the

22 Government's witness list until September 27th, which is

23 something that is the usual course of business.

24        But what I was looking for here was to reserve this

25 argument, at least try to make an argument today and reserve

1    this argument for the time of trial, and wait to see what the

2    Government presents as evidence against Mr. Reyes Garcia in

3    terms of their witnesses and cooperating co-defendants.

4           What -- what I'm looking at is the last time we -- you

10:02:16   5    know, I recall the last time we talked on my motion for a bill

6    of particulars, the Government said his part in the drug

7    trafficking organization, of the Calvillo drug trafficking

8    organization was a transporter.  So I have -- I have the -- I

9    can understand what they might be saying on the August 2015

10:02:41  10    transaction, but all the other evidence regarding -- or the

11    other allegations -- let me say allegations regarding those,

12    regarding his prior drug dealings, his owing Calvillo money, I

13    don't think -- make the connection that he's part of that

14    conspiracy.  Being indebted to someone -- and I don't know how

10:03:04  15    he was indebted, and maybe I'll find out later what the

16    transaction was, but I don't have any evidence of that now,

17    other than an allegation made by a controlled human source that

18    he --

19           THE COURT:  Have you made a presentation for various

10:03:19  20    defendants on why you think you can convict them?

21           MS. VAN MARTER:  Your Honor, we actually provided the

22    grand jury a PowerPoint that summarizes the information as to

23    each defendant.  That was provided months ago.  And, also, in

24    our response I cited to a number of discovery page numbers in

10:03:36  25    response to --

1   THE COURT:  You think would help them evaluate the

2   prospects of going to trial --

3   MS. VAN MARTER:  Correct.

4   THE COURT:  -- from your perspective.

10:03:43   5   MS. VAN MARTER:  Correct, Your Honor.  And --

6   THE COURT:  Did you get that?

7   MR. THERRIEN:  I'm not saying that I don't have an idea

8   of what they're going to say.  I'm saying that --

9   THE COURT:  Well, it seems to me, it's not a question of

10:03:52   10   an idea.  That's a little limited.  You mean they told you

11   exactly what they think they're going to prove.

12   MR. THERRIEN:  Well --

13   THE COURT:  They said:  Here's what we're going to do;

14   here's the grand jury testimony.

10:04:01   15   MR. THERRIEN:  Well, and I guess from -- my standpoint

16   is I'm not going to concede that unless -- you know, telling me

17   what they're going to prove and proving it at trial are two

18   different things --

19   THE COURT:  Of course.

10:04:13   20   MR. THERRIEN:  -- and I'm reserving that argument for

21   that time.

22   THE COURT:  Well, sure.  You're going to argue your

23   client is not guilty.  But that's not the point here.  The point

24   is was there a conspiracy established that would permit

10:04:24   25   co-conspirator statements.  That's a decision I have to make at

1    trial.  I can't make a decision now.  They charged a conspiracy.

2    If they prove it to my satisfaction by the standards that the

3    Ninth Circuit stated, then, then -- and you can argue they

4    haven't -- then they can start introducing statements --

10:04:41   5         MR. THERRIEN:  Right.  Well --

6         THE COURT:  -- of co-conspirators.  But that's the

7    typical process.  I can't make a decision about whether they

8    have a conspiracy just because they've charged it until I get to

9    trial and hear testimony.

10:04:51   10         MR. THERRIEN:  I agree, Your Honor.

11         THE COURT:  Okay.

12         MR. THERRIEN:  I agree with that.

13         THE COURT:  Okay.

14         MR. THERRIEN:  What I'm saying is I don't want it to be

10:04:58   15    said that, well, why did you not file a previous motion in

16    limine regarding this before trial.

17         THE COURT:  Sure.  Okay.

18         MR. THERRIEN:  And I've done that.

19         THE COURT:  Okay.  Great.  You've filed your motion, and

10:05:07   20    right now the answer is that I deny it, and you can renew it if

21    there's a basis for doing so at trial.

22         MR. THERRIEN:  Thank you.

23         THE COURT:  All right.  Other people joined in on that

24    motion.

10:05:16   25         Do you want to be heard?

1    MR. SMITH:  Your Honor, on behalf of Juan Bravo

2    Zambrano, I had filed a separate motion in limine --

3         THE COURT:  Excuse me.  That's a different question.

4         Both the attorney for Brittany Lee Zaragoza and Edgar

10:05:46  5   Omar Herrera Farias, do you want to be heard on these motions?

6         MR. LARA:  No, Your Honor.

7         MR. SCHWEDA:  No, Your Honor.

8         THE COURT:  Okay.  Now Mr. Smith.  That's ECF -- ECF

9    623.

10:05:59 10   MR. SMITH:  My -- right.  That's -- that is my motion.

11   But in the Government's response to that motion, they filed

12   their consolidated response to my motion, No. 623, and that

13   motion --

14        THE COURT:  Yeah, they did.

10:06:14 15   MR. SMITH:  And with regard to -- my -- my understanding

16   was that if -- and maybe I'm wrong on this, because different

17   courts handle it differently, but that we're all joined in

18   unless we specifically opt out.  I thought that was the rule in

19   this courtroom, but perhaps I'm mistaken.

10:06:29 20        THE COURT:  Does my case management order say that?  If

21   it does, then that's what it says.

22        MR. SMITH:  The -- the only issue that I want to deal

23   with with regard to the Government's consolidated response, ECF

24   No. 650, and this is specific to Mr. Juan Zambrano, is that the

10:06:46 25   Government says (reading):  There are a number of witnesses who

1    will identify the defendants as playing a role in this

2    organization, in part based upon conversations directly with the

3    defendants or other identified conspirators, to include

4    Calvillo, that were made during and in furtherance of the

10:07:05  5    conspiracy.  All right.  This is on Page 22 of theirs.

6           And with regard to the information that the Government

7    identified, that -- they said, well, we have -- we have

8    witnesses, we have cooperators or source information that would

9    provide this testimony.  I went through a process of discovery

10:07:24  10    with the Government, and they ultimately provided me, on

11    October 5th of 2017, with a statement, a report that was

12    prepared by Doug Stanley.  And in it they identified two -- two

13    informants, one who was an anonymous tipster, and that person

14    said -- according to the report said only that they could say

10:07:51  15    that -- where Mr. Zambrano lived, who he was having a

16    relationship with, and what kind of car he drove, but nothing

17    connecting him to any conspiracy or any statement that any

18    person identified as a co-conspirator said about him or any

19    statement that he said.

10:08:13  20           Then the second person was an informant who had -- it

21    was a cooperating witness who had said that he or she had

22    information regarding Mr. Zambrano.  The information as provided

23    was that the informant had personal contact with Mr. Bravo

24    Zambrano, knows him to be a multiple-pound meth dealer, who

10:08:38  25    transports narcotics into Canada, and that was the extent of the

1   information.  No statements, no -- no -- no basis as to the

2   foundation for that particular view of Mr. Bravo Zambrano.

3           So when -- when the Government says in their response --

4   their consolidated response with regard to the statements,

10:09:04   5   co-conspirator statements that there are a number of witnesses

6   who will identify the defendants as playing a role in this

7   organization based in part on conversations directly with the

8   defendants or others, none of that has been identified as to

9   Mr. Bravo Zambrano.

10:09:24   10          And it seems to me that at this point in time -- we're

11  not asking for the identities of these people.  We're not asking

12  for the information.  All we're asking for is if there is a

13  statement out there that the Government says is made in the

14  course of and in furtherance of this conspiracy, that we be

10:09:42   15  provided that statement and --

16          THE COURT:  That's -- that's the heart of their case,

17  that there are any number of statements made by any number of

18  witnesses that are in furtherance of.  That's what I would

19  understand, given the sheer number of people in this case and

10:09:57   20  the breadth and scope of these conspiracies charged, that you'd

21  anticipate that there would be several individuals who,

22  including -- that are going to testify about the conspiracy and

23  what was said.

24          MR. SMITH:  None of those statements as

10:10:18   25  identified have -- have anything to do with Juan Bravo Zambrano.

1    If they -- they said, "We'll give you the statements identifying

2    your client, we'll give you the statements of other individuals

3    who will testify, or potentially testify, with regard to your

4    client," and they have, and what we have is just what I've read

10:10:41   5    to the Court.  And I just want to -- if that's -- if that's what

6    we have to deal with, I can deal with it.  I am.

7         But in this response they said there's a number of

8    witnesses who will identify the defendants, talking specifically

9    about -- I think the three people named in this particular

10:10:59   10    response is Mr. Schweda's client, Mr. Therrien's client, and my

11    client.  And so I'm trying to be a little bit more specific if

12    there's anything more out there than what the Government has

13    given us -- given me so far.

14         THE COURT:  Ms. Van Marter?

10:11:18   15         MS. VAN MARTER:  Your Honor, there's many responses.

16    Yes, what counsel is doing is taking out of context our

17    response, which was, in part, objecting to the broad nature of

18    their motion.  It was very hard to respond to the motion with

19    respect to co-conspirator statements in the way it was filed,

10:11:33   20    and so we tried to respond to it as best we could by giving a

21    factual assertation at the beginning of our response into what

22    Mr. Smith is referring to as a conclusory paragraph, that

23    applied to all defendants.

24         There are two types of witness testimony that is

10:11:50   25    relevant that are going to come in.  Those are types of

1    witnesses who not only personally observed and participated in

2    events, so it may not be a specific statement of a

3    co-conspirator, but "I was present.  I saw that person backpack

4    before on so many occasions."  That is not a co-conspirator

10:12:04    5    statement.  That is what they witnessed and saw as a part of the

6    conspiracy.  And then there are some witnesses who actually had

7    direct conversation with certain defendants about what their

8    role was or specific statements.

9           So a lot of some specific statements in this regard had

10:12:17    10    specifically to do with Miguel Reyes Garcia.  Mr. Zambrano, with

11    respect to Mr. Smith's previous discovery requests, he asked for

12    a clarifying report as to the number of potential witnesses that

13    we had, so we provided a clarifying report as to the number of

14    witnesses that we expected to present outside of just the

10:12:36    15    additional physical testimony and witness testimony as to his

16    involvement that would provide testimony as to his overall

17    involvement in drug transportation.  We did not go into

18    specifics as to all of the potential statements because most of

19    them are observational witnesses; people who knew Mr. Zambrano

10:12:53    20    to be a transporter or a backpacker, and knew him to be involved

21    based upon their own involvement.

22           So with respect to specific statements, we addressed

23    Mr. Smith's question by trying to narrow down the number of

24    potential witnesses specifically who would testify against that

10:13:08    25    particular defendant.

1       And each of these witnesses, as well, they cannot be

2  seen in a vacuum.  They're seen in conjunction with the other

3  physical evidence that was done on the case.  So, for instance,

4  with that particular -- one of the witnesses that Mr. Smith

10:13:21  5  referenced, as this Court is aware, based on Agent Stanley's

6  testimony, there was an ongoing investigation into Mr. Zambrano

7  where they had received a GPS order on that same vehicle that

8  was previously identified.  So there's certain --

9       THE COURT:  Is that the Canadian?  Are you talking about

10:13:37  10  the Canadian stop?

11       MS. VAN MARTER:  This is prior to the Canadian stop.

12  Prior to the Canadian stop.

13       THE COURT:  Okay.

14       MS. VAN MARTER:  And so some of those pieces corroborate

10:13:45  15  each other in terms of when they were here and what those

16  involvements were.

17       So I guess I'm -- I'm still not really sure if this is

18  becoming a more specific discovery request or if we're talking

19  about the co-conspirator motion.  It's obviously the United

10:13:59  20  States' burden to establish he was a part of this conspiracy,

21  but there's a difference between observational witnesses and

22  witnesses who may have specific statements that they obtained

23  from a defendant.

24       THE COURT:  Well, in the course of your discovery, and

10:14:10  25  you've provided them with grand jury summaries, were

1    statements -- were there statements that were specific to

2    Mr. Zambrano that you recall?

3            MS. VAN MARTER:  Not specific statements that I recall.

4    What I -- if I am hearing Mr. Smith's request, we can go back to

10:14:26  5    that witness and make sure that we are not missing a specific

6    co-conspirator statement of the defendant.  But it's -- my

7    understanding of these witnesses, it's based on their personal

8    knowledge and observations, not on --

9            THE COURT:  Not on something that Zambrano said to them?

10:14:41  10            MS. VAN MARTER:  Not on something directly said to -- by

11    Mr. Zambrano.

12            MR. SMITH:  I don't want to have something like that

13    happen just prior to trial, Your Honor.  We're preparing, and

14    I've asked --

10:14:53  15            THE COURT:  Well, nobody ever wants anything like this

16    to happen, but we all know that in preparation for trial, things

17    occur, and you can seek such relief and remedies that you think

18    are fair and guarantee you due process at that time if it

19    occurs.

10:15:06  20            Right now I'm hearing that it's -- we were there

21    together, he picked up his backpack, I picked up mine, we

22    crossed the border, he was in the car, we all -- you know, that

23    was what was going on, so ...

24            MR. SMITH:  There's no statement like that.  There's no

10:15:20  25    witness like that.

1    THE COURT:  Of course -- well, then I guess you're

2  moving that I just simply dismiss the case because of a lack of

3  evidence at this time; is that right?

4    MR. SMITH:  I'm not, Your Honor.  I'm just saying that

10:15:32  5  when she talks about observational witnesses, that's exactly

6  what we --

7    THE COURT:  Well, you know, it sounds to me like you've

8  got a blueprint for your final argument -- your opening

9  statement, Mr. Smith.  But right now I'm not sure that I can

10:15:43 10  give you what relief you seek; that is, she is saying she

11  doesn't -- as I understand it, she doesn't know of any

12  statements, and she doesn't intend to use any statements by

13  Mr. Zambrano to prove his -- that he -- his knowledge or his

14  participation, but, rather, as I understand it, that other

10:16:02 15  witnesses are going to say we were there together, and this is

16  what we did, and this is what he did.

17    MR. SMITH:  No, but the second part, Your Honor, that's

18  the only part that I have any --

19    THE COURT:  Because a percipient witness is going to

10:16:13 20  say, "I was there, and I saw Mr. Zambrano put the drugs in his

21  backpack and go across and get paid for it"?

22    MR. SMITH:  We've asked for that information.  If

23  there's any cooperating witness -- not identified -- if there's

24  any cooperating witness, any informant, any source that has any

10:16:29 25  percipient witness testimony, that we be provided that.  Because

1    the court ordered that, and -- and, actually, Ms. Van Marter

2    said that she would provide it, and she gave us two people, one

3    of them --

4            THE COURT:  Well, then she gave you those people.

5            What is your problem?

6            MR. SMITH:  Here's the -- the only difficulty with that

7    is -- what we received is that -- it is stated this way:  The CI

8    had personal contact with Zambrano and knows Bravo Zambrano to

9    be a multiple-pound meth dealer who transports narcotics into

10   Canada.  That's it.  No that he was -- observed anything, that

11   he was told anything.  There's nothing to support that bare

12   statement.

13           And so we're saying if they made the statement, they

14   must have something.  Give it to us now.

15           THE COURT:  You say "something."  What are you asking

16   for?

17           They said there's a person who is going to testify that

18   he knows, based on his observation, that this is so.

19           MR. SMITH:  Didn't say based upon his observation.  Just

20   said he --

21           THE COURT:  They said what they said.  So, Mr. Smith --

22   tell me what you think you said, Ms. Van Marter, so we can all

23   have a clear understanding of what you said and what you meant.

24           MS. VAN MARTER:  During a debrief, the CW provided

25   information pertaining to Zambrano.  The CW had personal contact

1    with Zambrano and relayed information pertaining to Zambrano's

2    drug trafficking and backpacking of controlled substances into

3    Canada.

4          I don't know what else -- I think it's just a way that

10:17:57  5    Mr. Smith is trying to get the identification of the individual.

6          MR. SMITH:  Not at all.  That's --

7          THE COURT:  I'm satisfied she's given you what she can,

8    and you can make other objections as you wish.

9          Now, your motion is for what?  Let's make sure we

10:18:09  10   carefully characterize your motion.

11         MR. SMITH:  Well, our motion -- our specific motion is

12   No. 623.  That's our motion in limine to prohibit them from

13   introducing the information, the evidence that they obtained

14   pursuant to the search warrant on December 15th, 2016, to --

10:18:29  15   what the Government says is to prove knowledge that Mr. Zambrano

16   knew that there were drugs in a vehicle and guns in a vehicle --

17         THE COURT:  No, excuse me.  I'm having a bit of a

18   difficulty following you.  I thought we were talking about

19   statements.

10:18:49  20         MR. SMITH:  We were.

21         THE COURT:  Okay.  Then what part of your motion is

22   that?  There are several parts to your motion, aren't there?

23         MR. SMITH:  There's -- well, there's several parts to

24   the Government's consolidated response.  The motion --

10:19:05  25         THE COURT:  So your motion should be -- why don't you

1   just tell me what your motion is.  Because I thought I knew it,

2   but apparently I don't.  So go ahead and tell me.

3        MR. SMITH:  Are you asking for the motion in limine or

4   with regards to the statements?

10:19:16  5        THE COURT:  I'm asking for 623.  What is in 623?

6        MR. SMITH:  623 is the motion in limine to prohibit them

7   from introducing the fact of a marijuana grow, the fact that

8   there was a handgun and a shotgun and approximately 7 grams of

9   methamphetamine --

10:19:34  10       THE COURT:  Okay.  Let's stop there.

11       What about that?

12       MS. VAN MARTER:  Your Honor -- and I apologize.  I

13  thought the Court addressed that at the previous hearing.

14       THE COURT:  That's not on my list of things to be

10:19:44  15  discussed today.

16       MS. VAN MARTER:  I believe the Court already addressed

17  it, because there was also walkie-talkies present; things that

18  were consistent with what his identified role --

19       THE COURT:  I don't see that as up today, Mr. Smith.

10:19:54  20       MR. SMITH:  Your Honor had indicated --

21       THE COURT:  Let me tell you -- let me do it differently.

22  Here's what I think we're doing.

23       MR. SMITH:  All right.

24       THE COURT:  So my understanding is that you objected to

10:20:03  25  testimony by a person who's not been previously identified as an

*USA vs. Carillo Casillas, et al./4:15-CR-6049-EFS*
*Pretrial Conference-Motion Hearing/May 29, 2018*
*Colloquy Re: ECF 623*

50

1  expert, and the Government has failed to provide discovery

2  pursuant to Rule 16.

3           Did you make such a motion under 623?

4           MR. SMITH:  No.

10:20:17  5           THE COURT:  Okay.  Let me just go to 623 and cross-check

6  myself to make sure that I'm with you on this, so that we're all

7  on the same page.

8           Okay.

9           MR. SMITH:  That was the motion --

10:20:38  10           THE COURT:  Excuse me, Counsel.  No, no.  Not yet,

11  Counsel.

12           MR. SMITH:  All right.

13           THE COURT:  Not yet.

14           This is 623.  Do you have your motion there?

10:20:46  15           MR. SMITH:  I do.

16           THE COURT:  Okay.  Why don't you turn to Page 1.

17           How about Page 2, Line 3?  What does it say?

18           MR. SMITH:  Are we -- I'm sorry, Your Honor.

19           THE COURT:  What does it say?

10:20:57  20           MR. SMITH:  It says that -- that -- that the Government

21  should be prohibited from producing at the time of trial any

22  testimony, information, or evidence alleging Mr. Zambrano

23  manufactured marijuana or possessed methamphetamine on

24  December 15th, 2016.  That's No. 3.

10:21:13  25           Any statement --

KIMBERLY J. ALLEN, RMR, CRR, RPR, CCR
OFFICIAL COURT REPORTER

1    THE COURT:  Excuse me, Counsel.  I think you really have

2  trouble following.

3    MR. SMITH:  I --

4    THE COURT:  What I asked you for, Counsel, is what is

10:21:24  5  the first thing on Page 2 --

6    MR. SMITH:  Opinion testimony.

7    THE COURT:  Okay.  Then what opinion testimony are you

8  referring to?  And let's deal with that motion.

9    MR. SMITH:  That one, I think the Court dealt with it

10:21:32  10  with Mr. Schweda.

11    THE COURT:  Never can be sure.  It's your motion, so you

12  tell me.

13    MR. SMITH:  Just -- listen, Your Honor, the -- what we

14  wanted was that the Government be prohibited from providing

10:21:47  15  opinion testimony by any person who has not previously been

16  identified as an expert.

17    THE COURT:  Any problems in that regard?

18    MS. VAN MARTER:  No.

19    THE COURT:  Okay.  Granted.  What's next?

10:22:03  20    MR. SMITH:  Any statement from law enforcement regarding

21  evidence or statements alleged to be made by cooperating --

22    THE COURT:  You need to talk a little bit more slowly.

23    MR. SMITH:  -- regarding evidence or statements alleged

24  to be made by cooperating witnesses or confidential informants.

10:22:21  25    THE COURT:  Ms. Van Marter?

1          MS. VAN MARTER:  I -- I don't even know -- it's so

2     broad.  I think he's just seeking to exclude all --

3          THE COURT:  Well, I'm not sure -- that's the heading,

4     and headings are worth what headings are worth.  What it says

10:22:35  5     is, in the body of his motion, all three lines of it (reading):

6     Under the Sixth Amendment to the Constitution, the defendant has

7     the right to confront all witnesses against him.  All

8     out-of-court statements by nontestifying individuals should

9     therefore be excluded.

10:22:54  10          What's the Government's position?

11          MS. VAN MARTER:  He will have the right to cross-examine

12     witnesses that we call and present.  I don't know how that

13     relates to the heading of the confidential informant and

14     cooperating witnesses.  I'm not really sure how to respond --

10:23:09  15          THE COURT:  Nontestifying individuals, that's, I think,

16     the key to what he's talking about.

17          MS. VAN MARTER:  Yeah, if they're not testifying, then

18     I'm not sure what --

19          THE COURT:  He doesn't want you to say -- to talk

10:23:20  20     about -- elicit quotes from people who are not going to be

21     witnesses in the case.  So that the agent doesn't get to say

22     that, "I talked to an undercover agent who's no longer available

23     and he told me this."

24          MS. VAN MARTER:  I believe that would be a hearsay

10:23:36  25     problem.  Unless it's admissible under some exception or a

1    co-conspirator statement, we would not be seeking to violate the

2    rules of hearsay.

3         THE COURT:  Is there some clarification we need here,

4    Mr. Smith, that you think is important?

10:23:49  5         MR. SMITH:  Your Honor, these have to do with any

6    statement that -- what I've just addressed with regard to the

7    two people that have been identified and no statements have been

8    identified that -- by these cooperating witnesses or source

9    information that identify Mr. Zambrano or have anything to do

10:24:10  10    with Mr. Zambrano.

11         THE COURT:  No, I don't think -- that's just way too

12    broad.  I can't anticipate whether someone is going to say, for

13    purposes of explaining their state of mind or why they did what

14    they did, certain things.  So in that sense, your motion is

10:24:29  15    denied.

16         If it's a question of whether it's hearsay, then hearsay

17    statements should not be permitted, and aren't under the rule,

18    unless there's some exception.  And that's -- and one of the

19    exceptions may be a co-conspirator statement that's produced

10:24:46  20    after a conspiracy is proved that may implicate your client in

21    some fashion or another, but I don't know.  That's the rule, and

22    that's what I'll follow.

23         MR. SMITH:  Well, I know that, Your Honor.

24         THE COURT:  So I've done the best I can for you under

10:24:59  25    this, unless you want something else, and if so, what is it?

1        MR. SMITH:  Well, I have -- this motion is broken down

2   into several parts.

3        THE COURT:  No, it's not.  No.  Excuse me.  This

4   particular motion is very straightforward.  It's No. 2.

10:25:14   5        MR. SMITH:  Right.

6        THE COURT:  Okay.  And so it says very specifically,

7   "all out-of-court statements by nontestifying individuals should

8   therefore be excluded."  That is the nature of this subpart.

9   And we've just elicited that no hearsay will come in unless

10:25:29  10   there's an exception, and unless it's in furtherance of the

11   conspiracy, and so that's -- I'll enforce the conspiracy rule on

12   evidence, and I'll enforce the federal rules of evidence on

13   hearsay.  That's your ruling.

14        MR. SMITH:  I know you will, Your Honor.  What I'm

10:25:47  15   saying is that with regard to that particular heading and then

16   No. 5 and No. 6 --

17        THE COURT:  Counsel, headings aren't motions.  Headings

18   are just headings.  I just read you the body of the motion.

19   That's my ruling, and we're moving on to No. 3:  The Government

10:26:03  20   should be prohibited from producing, et cetera.  Now, talk to me

21   about that.

22        MR. SMITH:  Well, this is the -- this is the motion to

23   prohibit them from introducing evidence of a marijuana grow, a

24   legal marijuana grow, 7 grams of methamphetamine, a pellet gun,

10:26:20  25   Remington shotgun, a Colt pistol, and ammunition that was

1    discovered during their search of December 15th, 2016, that they

2    say goes to his knowledge of methamphetamine and other drugs

3    being secreted in the -- the Mercedes Benz that was searched in

4    Canada approximately August 25th of -- or August 26th of 2015.

10:26:50   5    Guns and drugs were secreted in that vehicle.  They say that in

6    December their -- the marijuana grow, 7 grams of

7    methamphetamine, and the firearms go to show his knowledge.

8    They also indicate -- the Government also indicates that in -- I

9    think they say that the documentation -- in their response they

10:27:14   10    say that there's documents that were obtained during their

11    search and that goes to show knowledge, the documents that

12    were -- relate to the -- their arrest in Canada.  Apparently,

13    they found some documents in the house that showed that

14    Mr. Zambrano had been deported from Canada back to the United

10:27:38   15    States, and so those documents and physical evidence should be

16    admitted, and we disagree with that.

17              THE COURT:  Okay.

18              MS. VAN MARTER:  Your Honor -- and I apologize; I

19    thought the Court had handled this --

10:27:52   20              THE COURT:  I thought I had handled all of that.

21              MS. VAN MARTER:  I believe the Court has, so I would

22    refer to the Court's previous order in this regard.  But to

23    reiterate, the United States believes that the evidence that

24    came out of the course of that search warrant is relevant.  It

10:28:03   25    does not just include the documentation.  It includes additional

1    possession of walkie-talkies or two-way radios, similar to what

2    was seized on the defendant --

3              THE COURT:  Didn't you move to suppress that evidence?

4              MS. VAN MARTER:  Yes.

5              THE COURT:  You did move --

6              MR. SMITH:  I moved to suppress it.

7              THE COURT:  And I denied it.

8              MR. SMITH:  Right.

9              THE COURT:  So it's not suppressed, so they can use it.

10             MR. SMITH:  Well, that was based upon the stop in

11   Canada, Your Honor, and based upon the search itself, not based

12   on a motion in limine under 401 and 403.

13             THE COURT:  Okay.  So --

14             MR. SMITH:  This is 404(b) evidence.  It's outside of

15   the period of the conspiracy.  And so they would have to show --

16   they would have to articulate the evidential hypothesis that

17   they relied on.  And their -- apparently, their hypothesis is

18   that it should be admitted to show Mr. Zambrano Bravo's

19   knowledge.

20             THE COURT:  You say it's -- so let me hear from you.

21   You said a number of things, but one was outside of the scope of

22   the conspiracy, and because this is a very broad-ranging

23   discussion, I think we need to be specific and particular about

24   the aspects of Mr. Smith's motion.

25             MR. SMITH:  The conspiracy --

1          THE COURT:  Let me just try to make a record, if I can,

2     Mr. Smith.  I want to make sure that we don't miss anything that

3     you're really interested in and that is important to you.

4          So go ahead, Ms. Van Marter.

10:29:21  5          MS. VAN MARTER:  Your Honor, so if his argument is that

6     this is outside the scope of the conspiracy, this is --

7     obviously, as the Court knows, this has been a long-going and

8     ongoing conspiracy, and the facts and circumstances surrounding

9     his arrest, whether or not it's outside of the actual charged

10:29:34 10     date, can still be admissible as relevant for the scope of the

11     defendant's knowledge and continued activities.

12          Here we have specific evidence establishing what the

13     United States submits is continued knowledge and continued

14     activity.  We've got drug-related evidence, firearms again,

10:29:48 15     again the presence of the walkie-talkies, the documentation

16     associated back with his contact and arrest.  All of that,

17     whether or not it's outside the actual charged date of the

18     conspiracy, can still be admissible based upon those factors.

19          THE COURT:  Hmm.

10:30:03 20          MR. SMITH:  Well, the date of the indictment charges the

21     conspiracy from January of 2010 to December 6th of 2016.  This

22     search took place on December 15th, 2016.  There -- the argument

23     in their response was that this -- that the 7 grams of

24     methamphetamine and the firearms goes to prove his knowledge of

10:30:25 25     these same items being located in the vehicle.

1    THE COURT:  Yeah, I'll have to take a closer look at

2    whether or not this material outside of the charged date of

3    conspiracy is admissible.

4         And did you address this in your omnibus?

10:30:42  5    MS. VAN MARTER:  I believe I did, Your Honor.  And I

6    would also note that with respect to the jury instruction, it's

7    on or about with respect to the conspiracy.  I know that this is

8    a week after that actual time period.  The Government could

9    always change that end date, but I think that the case law is

10:30:58 10  relatively clear, and we did cite that to the Court, as to the

11   things that can be admitted even if it's generally outside

12   because of that on or about instruction that the jury would get.

13        THE COURT:  Yeah, I will have to take a closer look

14   because I'm not familiar with the law on that.  So let me look.

10:31:11 15  The on or about or -- or even, as you suggest, you could change

16   the end date, all of those things would be true.  But as it

17   currently stands, you haven't.

18        So let me look at the case law on that, and I'll get

19   back to you on that aspect of it.

10:31:26 20        Okay.  What's next?

21        MR. SMITH:  What's next, Your Honor, is the -- well, we

22   argue that, and we argue 401, and that even if -- even if it was

23   admissible, that it's more prejudicial than probative, so as

24   part of that argument --

10:31:41 25        THE COURT:  It's -- and with regard to any 401 aspects,

1    it clearly is relevant.  I only pause here because I want to

2    make sure what the law says about outside the charged date, and

3    the fact of his possession of these various items.  So that's

4    what I'll investigate.

10:32:03    5         But it's certainly relevant and not prejudicial in the

6    objectionable sense.  It may be actual prejudice because it may

7    convict him, but it's not -- the relevance certainly outweighs

8    any prejudice.

9         So what's next?

10:32:25   10         MR. SMITH:  The -- our No. 5 and No. 6:  The Court -- 5:

11   The Court should prohibit introduction by the Government of

12   statements made by co-defendant to law enforcement.

13         THE COURT:  Counsel, you can read faster than most of us

14   that can hear, so just slow down.

10:32:44   15         MR. SMITH:  Sorry.

16         THE COURT:  Tell me what -- just remind me --

17         MR. SMITH:  This is -- this is -- the last time we were

18   in court I addressed the issue of whether or not there were

19   statements made by co-defendants after their arrest that -- made

10:32:58   20   by co-defendants to law enforcement that we had not received

21   that could affect, you know, whether we went to trial together,

22   whether it raised any *Bruton* issues.  So that motion was -- at

23   that time the Government said that they would essentially

24   identify that at some point in time, but we'd like to have it

10:33:18   25   sooner rather than later, if there were co-defendant statements

1    that implicate Juan Bravo Zambrano.

2              THE COURT:  Is this No. 5?

3              MR. SMITH:  Yes.

4              THE COURT:  Okay.  What is your position?

10:33:48  5              MS. VAN MARTER:  Your Honor, we previously advised

6    Mr. Smith that there are no testifying co-defendants that would

7    create a *Bruton* issue; and of the co-defendants who have

8    provided statements relevant for purposes of trial, they have

9    been disclosed.  It's just the identity at this point.  So I'm

10:34:03  10   not aware of any --

11             THE COURT:  Statements have been disclosed?

12             MS. VAN MARTER:  I'm not aware of any co-defendant

13   statements that pertain directly to the defendant.

14             The cooperating witnesses that we previously discussed

10:34:14  15   earlier, that is a different issue.  But as far as co-defendant

16   statements, this is my understanding what he's asking, so those

17   within this indictment that have now agreed to testify, I've

18   already advised Mr. Smith that I'm not aware of any of their

19   testimony that is a specific statement about Mr. Zambrano.

10:34:33  20             THE COURT:  And that's the nature of your request, isn't

21   it?  It says "co-defendants" --

22             MR. SMITH:  Right.

23             THE COURT:  -- "to law enforcement."

24             MR. SMITH:  This is -- there's two different things.

10:34:42  25   She's saying she's already advised us of statements made by

1    co-defendants identifying Mr. Zambrano.

2              This is statements made by co-defendants after their

3    arrest.

4              So I think she's saying that there are none of those.

10:34:56  5    And number two --

6              THE COURT:  There aren't any what?

7              MR. SMITH:  There aren't any statements made by

8    co-defendants post-arrest that implicate Mr. Bravo Zambrano that

9    would -- that would affect his ability to go to trial with any

10:35:10  10   one of these people.  So there's no *Bruton* issues, is what she's

11   saying.

12             MS. VAN MARTER:  Right.

13             MR. SMITH:  The second part goes to No. 6, and I think

14   there she's saying -- our Motion No. 6, and this is -- we kind

10:35:21  15   of started out with this because, frankly, Your Honor, I thought

16   I had done a separate motion for the -- for the motion in limine

17   with regard to the search.  But, in any event, this -- No. 6

18   goes to the co-conspirator statements that -- that, again,

19   apparently -- what I hear the Government saying is that there

10:35:45  20   are none that implicate Mr. Bravo Zambrano; that there's no

21   percipient witness that's either a cooperating witness or a

22   source of information that implicates him; and there's no

23   statement by some other person saying that "Mr. Zambrano told

24   me" or "I saw Mr. Zambrano do this act."  None of that exists.

10:36:16  25             MS. VAN MARTER:  That is not what I said.

1    As I addressed earlier with the cooperating witness,

2  there's a difference between witnesses who personally observed

3  the defendant do something.  We do have one of those

4  witnesses -- we just addressed it five minutes ago -- based on

10:36:29  5  our disclosure that they were personally present, so we do have

6  a witness who will provide --

7         THE COURT:  This is an undercover person?

8         MS. VAN MARTER:  No.  This is a citizen witness,

9  cooperating individual.

10:36:37  10         THE COURT:  Okay.  So that person is going to say here's

11  what I saw Mr. Zambrano do and what we did together and that

12  sort of thing.

13         MS. VAN MARTER:  Correct.  And I am going to -- based

14  upon clarifications here, I will instruct that person to be

10:36:51  15  debriefed again to ensure we have not missed a statement --

16         THE COURT:  A statement.

17         MS. VAN MARTER:  -- that that person might have heard

18  the defendant state.

19         THE COURT:  Sure.

10:36:58  20         MS. VAN MARTER:  So we do have that witness.

21         But at this point --

22         THE COURT:  You understand they have that witness, and

23  he's going to say the things that she says he's going to say.

24         MR. SMITH:  Well, we're going to find out what he's

10:37:08  25  going to say, because in the debrief that we have, in the

1    materials that were provided, there's not one thing that he

2    says.  It says that --

3              THE COURT:  Counsel, I think maybe you're confusing

4    things.  For the record, we're talking about the fact that this

10:37:22  5    witness is going to say your client -- he observed your client

6    do various things.

7              MR. SMITH:  It doesn't say that.

8              THE COURT:  Mr. Smith, I've been listening as carefully

9    as I can, and I believe that's what the Government witness is

10:37:35  10   going to say.

11             But why don't you tell me what you think the witness is

12   going to say, perhaps, for the second or third time.

13             MR. SMITH:  Thank you, Your Honor.

14             THE COURT:  Not you.  Ms. Van Marter.

10:37:44  15             MS. VAN MARTER:  Your Honor, again, as we -- I'll just

16   quote back to the report (reading):  The CW had personal contact

17   with Zambrano and relayed information pertaining to Zambrano's

18   drug trafficking and backpacking of controlled substances.

19             And the grand jury summary that also indicates this

10:38:02  20   witness will testify that the defendant backpacked controlled

21   substances into Canada for the organization, much like the fact

22   that he got caught across the border backpacking drugs into

23   Canada.

24             MR. SMITH:  Well, now she's not reading from that.

10:38:18  25             THE COURT:  I'm sorry?

1    MR. SMITH:  She's not reading from that.

2    MS. VAN MARTER:  And then on the last --

3    THE COURT:  Well, she's given you as much as she can,

4 and she's told you what is in the report.  I've listened to it,

10:38:27  5 and I think you need to tell me now, based on that, what it is

6 that you think that she hasn't done as the AUSA that she needs

7 to do.

8    MR. SMITH:  She has -- what she hasn't done, Your Honor,

9 is provide any information as to what this cooperating witness

10:38:42  10 actually saw or heard, whether he's a percipient witness that

11 saw Mr. Bravo Zambrano do anything or whether he's a percipient

12 witness that heard Mr. Bravo Zambrano say anything.

13    THE COURT:  Well, as to 6, given the nature of it, it's

14 made pursuant to 801(d)(2)(E), [sic] and so let's remind myself

10:39:12  15 of what that is.

16    (Counsel conferring.)

17    THE COURT:  So this is 801(d)(2)(E), and that simply

18 says that the statement is offered against an opposing party and

19 was made by the parties' co-conspirator during and in

10:39:50  20 furtherance of the conspiracy.

21    That's what you cited.

22    Is that right?

23    MR. SMITH:  Yes.

24    THE COURT:  And so how do you think that plays out in

10:39:58  25 this case as to Mr. Zambrano?

1    MR. SMITH:  Well, because in the -- in the information

2    that's been provided, this is supposed to be a witness that they

3    are going to produce at trial against my client.  And that what

4    they've provided is a -- this broad statement that says that he

10:40:21    5    knows somehow, that he -- that he's going to -- that during the

6    debrief, he had personal contact with Zambrano and relayed

7    information pertaining to Zambrano's drug trafficking and

8    backpack -- I don't even know what that means.

9    THE COURT:  Once -- well --

10:40:38    10    MR. SMITH:  Pardon me?

11    THE COURT:  I'm going to permit the testimony as to

12    conspiracy establishment, and if it's established, any

13    statements by co-conspirators as to that conspiracy that are in

14    furtherance of and meet all of the tests necessary for

10:40:51    15    statements by co-conspirators at trial, I'll permit that

16    certainly.

17    And so whether or not those statements actually come up

18    at trial, you can make your objections at trial that the

19    conspiracy hasn't been established or these are not in

10:41:07    20    furtherance of or were after the conspiracy ended or whatever

21    you think is an appropriate objection in the context of trial.

22    But here you're talking about statements made by any

23    indicted or unindicted co-conspirator which directly or

24    indirectly refer to Mr. Juan Bravo Zambrano.  And, to me, I'm

10:41:27    25    not going to -- right at the start, I'm going to deny that

1    motion because there could be statements made which directly

2    refer to Mr. Zambrano that are perfectly adequate or appropriate

3    for percipient witnesses.  So the answer is "denied."

4         And then it says, "or which otherwise might be used to

10:41:49  5    incriminate Mr. Zambrano or other alleged co-conspirators."  The

6    same ruling.  I was with Mr. Zambrano, we went across the

7    mountains, we both had backpacks, he stuffed his drugs in his;

8    all of that is -- is acceptable and admissible.  And so your

9    motion in that regard is denied.  I'm looking right at your

10:42:12  10   motion.  It says, prohibits statements made by any individual.

11   I'm not going to do that.  An individual has a right to, in

12   fact, say, "This is what I saw."  That is his or her statement.

13   That's what you asked for, prohibit statements made by any

14   indicted or unindicted individual which refer to Zambrano.  "He

10:42:31  15   and I did drugs"; that goes in.

16        You have some nuance that escapes me, make it at trial

17   in the context of trial.  So --

18        MR. SMITH:  No, Your Honor.  I'll do that.  What I'm

19   looking for --

10:42:47  20        THE COURT:  Counsel, what else do you have?

21        MR. SMITH:  That's it.

22        THE COURT:  I don't think so.  This is your motion, and

23   there's actually several other parts to it.

24        MR. SMITH:  Well, they're pretty standard.

10:43:01  25        THE COURT:  I'm sorry?  7 and 8?

1      MR. SMITH:  Right.

2      THE COURT:  I grant No. 8, testifying witnesses excluded

3  except for case agent.

4      MR. SMITH:  Yeah.  Well, 7 goes to -- goes to -- is a

10:43:16  5  follow up on 6, but it's -- I don't know if the Court is denying

6  that or not.  If -- what we're asking for, and -- and, frankly,

7  if -- it is specific to Mr. Zambrano but all statements --

8      THE COURT:  No, stop.  Stop.  If you're saying --

9  perhaps I just, once again, don't understand your motion.  But

10:43:36  10  as I think I understand it, you have a right under Rule 16 to

11  any statements of Mr. Zambrano that somebody else is going to

12  testify to.

13      Is that what you're asking about?

14      MR. SMITH:  Yes.

10:43:50  15  THE COURT:  Because I'm not sure.

16      MR. SMITH:  It is.

17      THE COURT:  Is it?

18      Okay.  Well, that's not really what it says, but -- and

19  I understand that she's told you, and I think she's told us all

10:44:06  20  several times, that she currently has no statements by

21  Mr. Zambrano that are going to be testified to by others.

22      Haven't you?  Haven't we covered this a couple of times?

23      MS. VAN MARTER:  I have, Your Honor.

24      THE COURT:  Did you think we covered that?

10:44:18  25  MR. SMITH:  Well, I think that --

1       THE COURT:  It's a simple question:  Did we cover it?

2       MR. SMITH:  Yes.

3       THE COURT:  Did we cover it?

4       MR. SMITH:  The way the Court has framed the question,

10:44:29  5  yes.

6       THE COURT:  Okay.  That takes care of that, and I think

7  the Government has satisfied their burdens under 7.

8       I think that completes rulings on your motions.  Thanks,

9  Mr. Smith.

10:44:41 10      Who else has a motion that we need to cover?  Anyone

11  else?

12      Okay.

13      MR. SCHWEDA:  All right.  I joined in Mr. Smith's

14  motion.

10:44:55 15      THE COURT:  For the same reasons, I'll make the same

16  rulings, unless you have something that requires a discrete

17  ruling as to your client.

18      MR. SCHWEDA:  No, Your Honor.

19      THE COURT:  Okay.

10:45:04 20      MS. VAN MARTER:  And, Your Honor, to be specific to

21  Mr. Schweda's client, we have disclosed reports.  There are

22  actual statements by his client to co-defendants that have been

23  disclosed regarding --

24      THE COURT:  When you say "disclosed," what do you mean?

10:45:19 25      MS. VAN MARTER:  In reports.  So as I previously --

1    THE COURT:  So you gave him the various investigative

2  reports?

3    MS. VAN MARTER:  Correct.

4    THE COURT:  So is that right, Mr. Schweda?

10:45:27  5    MR. SCHWEDA:  Right.  And -- but the --

6    THE COURT:  Did you get reports --

7    MR. SCHWEDA:  I got --

8    THE COURT:  -- and did they have statements attributed

9  to your client in them?

10:45:38  10    MR. SCHWEDA:  These reports, the identity of who is

11  reporting these is redacted.

12    THE COURT:  So I guess the answer is he did, so ...

13    MS. VAN MARTER:  Yes.

14    THE COURT:  Anything else?

10:45:50  15    MS. VAN MARTER:  No, Your Honor.

16    THE COURT:  So we're good to go to trial.  I think

17  there's nothing else.

18    Anything from you, Mr. Vieth?

19    MR. VIETH:  Your Honor, I am -- I guess just give the

10:46:01  20  Court a quick up to date.  I am working diligently with my

21  investigator, as the Court did approve, I believe, about a month

22  ago.  He's busy working with Behind the Gavel to gather all the

23  information we possibly can, reviewing that with my client --

24    THE COURT:  Would you tell me -- okay.  Just give me a

10:46:21  25  second, Mr. Vieth, so I can add some context.

KIMBERLY J. ALLEN, RMR, CRR, RPR, CCR
OFFICIAL COURT REPORTER

1      Ms. Van Marter, if you'll come back to the podium.

2      Why don't you tell me what you think you're going to

3  prove Mr. Vieth's client did.  Just generally, what do you

4  expect for -- is he a -- just describe his role, if you would.

10:46:39  5      MS. VAN MARTER:  Mr. Vieth's client, out of all of the

6  defendants before the Court, would be considered the

7  leader/organizer.  He is the individual with which we have the

8  most testimony, co-defendant testimony, as well as his own

9  statements captured in his communications with the undercover,

10:46:55  10  who took over the role for Ivan Calvillo after he was murdered.

11      THE COURT:  Are these audio, transcribed statements?

12      MS. VAN MARTER:  The transcriptions have all been

13  provided.  There's some audio/video recordings with his meets

14  with the undercover, as well as the WhatsApp communications,

10:47:10  15  which they would communicate with each other prior to

16  face-to-face meetings.

17      THE COURT:  That's all I need.  Okay.  Thank you.

18      All right.  Mr. Vieth, what is next for you?

19      MR. VIETH:  Well, first off, Your Honor, we would want

10:47:21  20  to make sure that we review as much as we possible can the

21  30,000 pages that have been provided by the Government, and

22  then --

23      THE COURT:  Well, when you say 30,000 pages, you mean

24  the 30,000 pages that Under the Gravel [sic] has analyzed and

10:47:33  25  given you directions on what is attributable to your client;

1    isn't that right?

2          MR. VIETH:  Correct, Judge.  And as the Government has

3    pointed out, my client is in a lot of those reports.

4          The issue that I don't really want to discuss in front

5    of everybody, but I may end up filing something *ex parte* with

6    the Court and potentially requesting some additional time for

7    pretrial motions, but I would like to reserve that for something

8    in writing, Judge.

9          THE COURT:  I believe we've covered all of the pretrial

10   motions for all other defendants except for you and --

11         MR. VIETH:  And I believe Mr. Niesen.

12         THE COURT:  -- those that are going to be separated out

13   for trial in March.

14         MR. VIETH:  And I understand that -- I believe the Court

15   gave us until the 10th for -- or 11th for any and all additional

16   motions, but I just wanted to make sure that the Court was aware

17   that I am contemplating providing the Court with some basis but

18   I don't want to disclose that basis in front of everybody.

19         THE COURT:  Yeah, June 11th is your deadline.  And as

20   far as your preparation, that's fine.

21         When is our trial date, October 12th?

22         MS. VAN MARTER:  I believe so, Your Honor.

23         THE COURTROOM DEPUTY:  October 10th.

24         MR. MARCHI:  October 10th is what I have, Your Honor.  I

25   just want to confirm that date, because I was told to be ready

1    by then.

2            THE COURT:  October 10th we're going to trial.

3            So anything else?

4            MR. VIETH:  No, Judge.

10:49:03  5            THE COURT:  Anything else?

6            MS. VAN MARTER:  Your Honor, I did want to mention one

7    new issue that has come up since Mr. Niesen's appointment in

8    this matter, but the Court has kind of taken care of it by

9    putting his trial at a separate date that I will address with

10:49:17 10   Mr. Niesen for the record and will submit it to the Court *in*

11   *camera*.

12           THE COURT:  Yeah, I'll prepare a separate scheduling

13   order and those -- and those two individuals will be severed

14   from this trial, and they will be tried together on a date --

10:49:31 15   why don't you folks confer, the three of you, about a date in

16   March, and talk with my deputy clerk about that as well.

17           MS. VAN MARTER:  Yes, Your Honor.

18           THE COURT:  Okay.  And then give me your

19   recommendations, and we can frame a case management order for

10:49:43 20   you.

21           MS. VAN MARTER:  Yes, Your Honor.

22           THE COURT:  Okay.

23           MR. VIETH:  Your Honor, there was one more thing, if I

24   may.

10:49:47 25           THE COURT:  Sure.

1    MR. VIETH:  In regard to Behind the Gavel, and I know

2  the Court understands that I'm the budgeting attorney for -- for

3  their offices moving forward for all counsel, so I just want to

4  make sure that the Court is aware they'll be working with new

10:50:06   5  counsel as they come on board.  So I know that I provided the

6  Court with the request.  That request may increase as more

7  attorneys start coming on board.

8    THE COURT:  Do you anticipate more attorneys coming on

9  board?

10:50:22  10    MR. VIETH:  That is up to the Government, Judge.

11    THE COURT:  Oh, you mean for fugitives.

12    MR. VIETH:  For what, Judge?

13    THE COURT:  For fugitives, people who have not yet been

14  arrested and pursuant to indictment.

10:50:34  15    MR. VIETH:  I -- I just wanted to make sure that the

16  Court is aware that that is not a ceiling yet.  It's rolling --

17    THE COURT:  No, no.  I --

18    MR. VIETH:  -- expertise for us, and I just wanted to

19  make sure that the Court is on notice.

10:50:48  20    THE COURT:  I am.

21    MR. VIETH:  Thank you, Judge.

22    THE COURT:  All right.  I believe that completes

23  matters.

24    Anybody else have anything?

10:50:55  25    Okay.  So the new defendants will confer with Ms. Van

*USA vs. Carillo Casillas, et al./4:15-CR-6049-EFS*
*Pretrial Conference-Motion Hearing/May 29, 2018*
*Colloquy Re: ECF 623*

74

1    Marter and get a scheduling order recommendation.  The new

2    attorneys will talk to Mr. Vieth and the Ninth Circuit resource

3    person on budgeting, and then submit budgets for my review.  And

4    I believe that completes matters.

10:51:12  5          When is our next PTC?

6          MS. VAN MARTER:  That is what I was just going to ask to

7    clarify.  I believe that's set currently as a potential

8    contested hearing date, based on new motions for Mr. Vieth, if

9    he has any, and any other potential trial-related matters, and I

10:51:27 10   believe Ms. Vargas said that date earlier, and I had forgotten

11   it again.

12         THE COURTROOM DEPUTY:  I believe it's September 18th,

13   but I'm going to confirm.

14         THE COURT:  Yeah, so we won't be having any further

10:51:39 15   conferences unless something occurs that requires a special

16   setting.

17         MS. VAN MARTER:  Yes, Your Honor.

18         THE COURT:  All right, folks.  Thank you.  Court's

19   adjourned.  You may go about your business.

10:52:01 20        THE COURTROOM DEPUTY:  All rise.

21        (Hearing concluded at 10:52 a.m.)

22

23

24

25

75

1                     C E R T I F I C A T E

2

3       I, KIMBERLY J. ALLEN, do hereby certify:

4            That I am an Official Court Reporter for the United

5   States District Court for the Eastern District of Washington in

6   Richland, Washington;

7            That the foregoing proceedings were taken on the date

8   and at the time and place as shown on the first page hereto; and

9            That the foregoing proceedings are a full, true and

10  accurate transcription of the requested proceedings, duly

11  transcribed by me or under my direction.

12           I do further certify that I am not a relative of,

13  employee of, or counsel for any of said parties, or otherwise

14  interested in the event of said proceedings.

15           DATED this 18th day of January, 2019.

16

17

18

19       _____

20       Kimberly J. Allen, CRR, RMR, RPR, CCR(WA)
         Washington CCR No. 2758
21       Official Court Reporter
         Richland, Washington
22

23

24

25