1 Joseph H. Harrington
United States Attorney
2 Eastern District of Washington
Stephanie Van Marter
3 Caitlin Baunsgard
4 Assistant United States Attorneys
Post Office Box 1494
5 Spokane, WA 99210-1494
6 Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FEB 0 4 2019

SEAN F. McAVOY, CLERK
_____, DEPUTY
RICHLAND, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,            )
                                     )
            Plaintiff,               )   4:15-CR-6049-EFS-4
                                     )
      vs.                            )
                                     )   Plea Agreement
ALEXIS GARCIA PALOMINO,              )
                                     )
            Defendant.               )
                                     )

Plaintiff, United States of America, by and through Joseph H. Harrington, United States Attorney for the Eastern District of Washington, and Stephanie Van Marter, Assistant United States Attorney for the Eastern District of Washington, and Defendant ALEXIS GARCIA PALOMINO, and the Defendant's counsel, Jeffrey Niesen, agree to the following Plea Agreement:

1. <u>Guilty Plea and Maximum Statutory Penalties</u>:

The Defendant, ALEXIS GARCIA PALOMINO, agrees to enter a plea of guilty to Count 1 of the Second Superseding Indictment filed on December 6, 2016, charging the Defendant with Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of

Plea Agreement - 1
PleaRevised.docx

Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of N-phenyl-N Propanamide (hereafter Fentanyl), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846.

The Defendant, ALEXIS GARCIA PALOMINO, understands that the charge contained in the Second Superseding Indictment is a Class A felony charge. The Defendant, ALEXIS GARCIA PALOMINO, also understands that the maximum statutory penalty for Count 1, is not less than 10 years imprisonment, which is non-suspendable and non-parolable, and a maximum possible penalty of life imprisonment; a fine not to exceed $10,000,000; a term of supervised release of not less than 5 years up to a life term; denial of certain federal benefits; **Deportation** and a $100 special penalty assessment.

The Defendant, ALEXIS GARCIA PALOMINO, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2.  Denial of Federal Benefits:

The Defendant understands that by entering this plea of guilty the Defendant is no longer eligible for assistance under any state program funded under part A of title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Further, the Court may deny the Defendant's eligibility to any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

Plea Agreement - 2
PleaRevised.docx

3. <u>The Court is Not a Party to the Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing his plea of guilty.

4. <u>Effect on Immigration Status</u>:

The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the Defendant is pleading guilty. Indeed, because the Defendant is pleading guilty to Conspiracy to Distribute various controlled substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846, removal is presumptively mandatory. Removal and

Plea Agreement - 3
PleaRevised.docx

other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that while deportation and/or removal appears to be a virtual certainty, no one, including his attorney or the district court, can predict with absolute certainty the effect of his conviction on his immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if automatic removal from the United States is a virtual certainty.

5.  Waiver of Constitutional Rights:

The Defendant, ALEXIS GARCIA PALOMINO, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

(a). The right to a jury trial;

(b). The right to see, hear and question the witnesses;

(c). The right to remain silent at trial;

(d). The right to testify at trial; and

(e). The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

6.  Elements of the Offense:

The United States and the Defendant agree that in order to convict the Defendant of Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms

Plea Agreement - 4
PleaRevised.docx

or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846, the United States would have to prove beyond a reasonable doubt the following elements:

*First*, beginning on a date unknown but by on or about January 2010 continuing until on or about December 6, 2016, the Defendant, ALEXIS GARCIA PALOMINO, in the Eastern District of Washington, entered into an agreement with one or more persons to commit the crime of distribution of methamphetamine and/or Cocaine and/or Heroin and/or Fentanyl as charged in the Second Superseding Indictment;

*Second*, the Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it and;

*Third*, the agreement to distribute involved more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of Fentanyl and would be reasonably foreseeable to a member of the conspiracy.

7. <u>Factual Basis and Statement of Facts</u>:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis ALEXIS GARCIA PALOMINO's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

Plea Agreement - 5
PleaRevised.docx

Members of the FBI Eastern Washington Safe Streets Violent Gang Task Force- Tri-Cities (EWVGSSTF) have been investigating a transnational drug trafficking organization operating herein the Eastern District of Washington and elsewhere since at least 2011 identified as the Ivan Hernandez Calvillo Drug Trafficking Organization (DTO). During that investigation, Ivan Hernandez Calvillo (hereinafter Ivan) and Jese David Carillo Casillas (hereafter Casillas) were identified as a high-ranking members of the DTO. Members of the Task Force, through the interviews of multiple cooperating Defendants and drug seizures, learned the DTO was utilizing backpackers to physically carry quantities of cocaine and methamphetamine from the Eastern District of Washington through a trail system into Canada for distribution.

In May and June of 2013, several Defendants were identified and targeted as being new workers for Ivan's organization. One of those individuals, hereafter referred to as CD4 identified the Defendant as working directly with Ivan in his organization. CD4 identified Ivan as the leader organizer of this organization that had an entire cell operating in the EDWA. CD4 stated that he/she met Ivan when he was still living here in 2010 at Ivan's Sunnyside WA residence and started working for Ivan as a driver, taking 10-pound loads of methamphetamine to Missouri and Minnesota. During the summer of 2010, CD4 stated Ivan became "big" due to his ability to smuggle cocaine into Canada. CD4 stated at that time, Ivan was receiving 50-pound shipments of meth and cocaine every week. CD4 was arrested and deported back to Mexico. Ivan requested CD4 return to work for him and as a result paid for CD4's coyote. CD4 returned in January 2012.

When CD4 returned, she/he was asked to backpack approximately 45 kilograms of cocaine across the border for Ivan with two other individuals. CD4

Plea Agreement - 6
PleaRevised.docx

made a number of additional trips after that, meeting several of the backpackers utilized by Ivan. CD4 advised that Ivan was transporting at least 45 kilograms of cocaine across the border every week at that time.

CD4 identified a number of individuals working for Ivan during that time period to include the Defendant. CD4 stated that she/he first met the Defendant when she/he returned in January 2012. CD4 identified the Defendant as one of Ivan's main backpackers who knew the trail system very well. CD4 advised that Ivan sent the Defendant up from their home town in Mexico in order to work for him and that he started backpacking for the organization in 2012. CD4 was aware the Defendant had been arrested on multiple occasions while backpacking for the DTO which is why he was placed in Canada for a period of time. CD4 stated the Defendant would stay at a home owned by the DTO in Canada and assisted with backpackers and shipments on the Canadian side.

During this time, EWVGSSTF was able to also develop a confidential source (CHS)(referred to as CD1 in discovery) who was arrested while working for Ivan's organization. This CHS agreed to cooperate in consideration of those charges. The CHS would testify that he/she has known Ivan his/her entire life and that Ivan has been involved in drug trafficking for as long as the CHS can remember. The CHS moved to the tri-cities in 2009 and knew that Ivan was heavily involved in drug trafficking. The CHS began to make trips for Ivan on and off during that time period. Ultimately, the CHS stopped driving loads but instead, helped by paying rent on properties, paying drivers and assisting with load cars for Ivan. As a result, the CHS met and paid a number of employees working for Ivan.

The CHS testified that Ivan in 2012, was sending approximately 30 kilograms of meth and 30 kilograms of cocaine per shipment to the EDWA every

Plea Agreement - 7
PleaRevised.docx

15 days for distribution to various locations to include EDWA, Canada, Minnesota, North Dakota and Chicago. The cash proceeds were mostly laundered out of Canada however; large sums came back into the EDWA for payment of overhead costs. The CHS further identified and confirmed the Defendant's role in the organization. The CHS knew the Defendant to use the nickname "Trivi" and that he was a frequent backpacker for the organization but and at one point, he lived in Canada in order to assist with drug shipments for the DTO.

In the summer and fall of 2014, another cooperating Defendant was arrested while working for this organization, hereafter referred to as CD5. CD 5 was arrested while on his/her way to backpack a load of 20 kilograms of cocaine across the border. CD5 agreed to cooperate for leniency on his/her sentence. CD5 also identified the Defendant and stated she/he met the Defendant while at a stash house location in Tijuana, Mexico, and understood that he worked for the organization in Canada. CD5 stated she/he had been deported in January 2013 and Ivan agreed to pay for his/her coyote back into the United States. While awaiting the coyote, CD5 was sent to one of Ivan's houses in Tijuana and that is how he/she met the Defendant. After getting back into the United States, CD5 reported he/she had to pay Ivan back and as a result, worked for him in the transportation of narcotics and backpackers, to recruiting young men to backpack. CD5 transported backpackers on several occasions, each time the backpackers transported 20-45 kilograms of cocaine and returned with upwards of $500,000 in cash proceeds.

On November 3rd, 2016, members of the EWVGSSTF interviewed another cooperating defendant, hereinafter referred to as CD6, who had been indicted and arrested as a member of the Calvillo DTO. CD6 was shown a

Plea Agreement - 8
PleaRevised.docx

Washington DOL photograph, absent any identifiers, of the Defendant and identified the person depicted in the photo as "Trivi." CD6 confirmed as did CHS1, CD4 and CD5, that the Defendant was an active member of the Calvillo DTO. CD6 stated that the Defendant was a backpacker for the organization and that CD6 personally participated in at least 4-5 trips where the Defendant backpacked large quantities of narcotics into Canada for the DTO. As noted above, the common load of narcotics into Canada was 20-40 pounds of cocaine and/or methamphetamine per trip. CD6 also stated that one of the Defendant's jobs for the organization was to scout out new trails that could be used to smuggle narcotics and that he/she was very familiar with the trail system utilized by the organization.

Based upon the above information members of the EWVGSSTF search the Defendant's contacts with border patrol and learned the following1.

- December 14, 2014 - the Defendant was observed in the Tri-Cities WA area. On December 24, 2014- the Defendant was contacted by Border Patrol near the Canadian Border in Blaine WA. During that contact, the Defendant admitted to crossing into Canada earlier that day. The Defendant was arrested and deported to Mexico.
- May 30, 2015 - Border Patrol determined individuals in camouflage attire were wearing backpacks walking southbound on an established trail in a wooded area. The trail runs from the international boundary between the United States and Canada to H Street near Blaine, Washington. Border Patrol responded to the scene and attempted to locate the individuals. The subjects once observed by Law Enforcement

---

1 Between June 29, 2012 and December 24, 2014, the Defendant has been removed from the United States 6 additional times.

Plea Agreement - 9
PleaRevised.docx

fled on foot but were later apprehended. The Defendant was apprehended with Jose Manuel Madrigal Mendoza. He was arrested and again deported. No backpacks were recovered. CD4, CD6 and CHS1 were all aware of this arrested and positively identified Madrigal Mendoza as another backpacker working for the DTO. CH1 reported that Ivan was upset about this arrest as CHS1 believed the drugs and/or cash drug proceeds were lost. As a result, the Defendant was reported to have remained in Mexico for a period to time working directly with Ivan.

On March 17, 2016, at approximately 1:00am, the RCMP (Osoyoos Division) Federal Serious and Organized Crime Section (FSOC) was contacted by Border Patrol and advised that a single subject, later identified as the Defendant, was walking northbound towards the Canadian border[2]. RCMP responded to the area but due to the hour it was dark outside. As a result, the RCMP utilized the services of a night vision/Infered device (FLIR) and a service K9 to attempt to locate the Defendant. At approximately 4:01am, the Defendant was observed through the FLIR device, wearing a backpack and crouching next to the highway. When RCMP arrived and identified themselves, as observed though the FLIR device, the Defendant fled. RCMP pursued and located a pair of night vision goggles abandoned in the bush.

---

[2] This is the same trail and area utilized by Co-Defendant's Juan Zambrano, Marciel Zambrano and Miguel Reyes Garcia when they were arrested August 26, 2015 after backpacking 6,606 grams of actual methamphetamine; 2005 kilograms of cocaine and 99.3 grams of heroin.

Plea Agreement - 10
PleaRevised.docx

At approximately 4:42am, the K9 began to track towards an unknown male who was sitting on the ground near a tree. The male was identified as the Defendant, dressed in camouflage clothing. A search incident to his arrest, RCMP located two cellular phones on his person. Agents also located a receipt from Yakima WA for the purchase of the two phones dated March 15, 2016. While walking the Defendant back to the vehicles, he began whistling and singing in Spanish.

Members of the team remained at the location of his arrest and waited until it was light outside. The same service K-9 was able to track the Defendant's steps and located a backpack a short distance from the place of his arrest. A search of the backpack resulted in the seizure of five bricks of methamphetamine that later tested positive for methamphetamine, weighing 5,089.7 grams and one brick of heroin which also tested positive for heroin weighing 1,022 grams.

The Defendant remained in RCMP custody where he was ultimately prosecuted in Canada for the events leading up to his arrest. He was sentenced to approximately 2 years on August 29, 2016. Upon completion of his sentence he was deported back to Mexico. On March 7, 2018, he was again encountered by immigration authorities attempting to enter into the United States via California and was arrested on this Indictment.

The United States would present evidence that the Defendant was still working for this organization at the time of his recent arrest in Canada.

8. <u>The United States Agrees Not to File Additional Charges</u>:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Second

Plea Agreement - 11
PleaRevised.docx

Superseding Indictment, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

9.   <u>United States Sentencing Guideline Calculations</u>:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

(a).   <u>Base Offense Level and Application of U.S.S.G. §2D1.1 Commentary Note 8(D)</u>:

The Government and Defendant agree and stipulate that based upon the overall quantities of the various drugs involved, his base offense level is 38[3]. See U.S.S.G. §2D1.1(c)(1) and Commentary 8(b). The parties further agree and stipulate that if the Court were to convert the varying amounts and types of controlled substances as directed by the Guidelines pursuant to this section, the resulting offense level would remain the same.

(b).   <u>Role in the Offense and Adjusted Base Offense Level</u>:

The United States and the Defendant agree that the Defendant was "substantially less culpable than the average participant" in the conspiracy and was a minor participant in the criminal activity alleged in the Second Superseding Indictment, resulting in a three level decrease pursuant to U.S.S.G. §3B1.2(b), Application Note 3(A). The United States and the Defendant further agree that because the Defendant is a minor participant and the otherwise applicable base offense level is 38 pursuant to the Drug Quantity Table, an additional four-level decrease applies pursuant to U.S.S.G. §2D1.1(a)(5). The United States and the

---

[3] The United States does not have evidence this Defendant ever transported or distributed Fentanyl during his involvement in the organization.

Plea Agreement - 12
PleaRevised.docx

Defendant agree that the foregoing adjustments result in a cumulative reduction of seven levels.

(c). <u>Acceptance of Responsibility</u>:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than the next Pre-Trial Conference, the United States will move for a three (3) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

Furthermore, the Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

(d). <u>Criminal History</u>:

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report. The United States and the Defendant have

Plea Agreement - 13
PleaRevised.docx

made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

10. <u>Safety Valve</u>:

The United States and the Defendant agree that the Defendant may be eligible for the safety valve provisions of 18 U.S.C. § 3553(f) and U.S.S.G. §5C1.2. At the time of this change of plea, the parties acknowledge that the Defendant has not satisfied the fifth requirement of the safety valve. If the Court finds that the Defendant meets the criteria set forth at 18 U.S.C. § 3553(f)(1)-(5), the Court shall impose a sentence in accordance with the applicable sentencing guidelines without regard to any statutory minimum sentence.

11. <u>Length of Incarceration</u>:

The United States agrees to recommend a sentence at the low end of the applicable guideline range as determined by the Court. The Defendant is free to argue his sentence. The Defendant understands however, that unless he qualifies for application of the safety valve, he cannot be sentenced to less than the mandatory minimum of ten years.

12. <u>Criminal Fine</u>:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

13. <u>Supervised Release</u>:

Should the Defendant be allowed to return to the United States lawfully, the parties agree to recommend that the Court impose a 5-year term of supervised release, to include the following special conditions, in addition to the standard conditions of supervised release:

Plea Agreement - 14
PleaRevised.docx

(1) that the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Office; and

(2) that the Defendant have no contact with any witnesses or Co-defendants in this cause number.

14. <u>Mandatory Special Penalty Assessment</u>:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

15. <u>Payments While Incarcerated</u>:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

17. <u>Appeal Rights</u>:

In return for the concessions that the United States has made in this Plea Agreement, the Defendant agrees to waive his right to appeal the conviction and sentence if the Court imposes a prison term no higher than the applicable guideline range as determined by the Court and imposes no more than 5 years

Plea Agreement - 15
PleaRevised.docx

supervised release. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence. Should the Defendant successfully move to withdraw from this Plea Agreement or should the Defendant's conviction on the Second Superseding Indictment be dismissed, set aside, vacated, or reversed, the Plea Agreement shall become null and void; the United States may move to reinstate all counts of the Second Superseding Indictment No. 4:15-CR-6049-EFS; and the United States may prosecute the Defendant on all available charges involving or arising out of the Second Superseding Indictment No. 4:15-CR-6049-EFS. Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack of the conviction or sentence, including, but not limited to, proceedings pursuant to 28 U.S.C. § 2255 (writ of habeas corpus).

19.   Integration Clause:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

Plea Agreement - 16
PleaRevised.docx

Approvals and Signature

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Joseph H. Harrington
United States Attorney

_____        2/4/19_____
Stephanie Van Marter                              Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. My attorney has advised me that by pleading guilty to the charge relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____        1-30-2019_____
ALEXIS GARCIA PALOMINO                   Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's

Plea Agreement - 17
PleaRevised.docx

decision to plead guilty as set forth in the Plea Agreement. I have further advised my client by pleading guilty to the charge relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____          2-1-2019
Jeffrey Niesen                                            Date
Attorney for the Defendant

I hereby certify that I have read and translated the entire foregoing document to the Defendant in a language with which he is conversant. If questions have arisen, I have notified the Defendant's counsel of the questions and have not offered nor given legal advice nor personal opinions.

_____          1-30-19
Interpreter                                               Date

Plea Agreement - 18
PleaRevised.docx