Joseph H. Harrington
United States Attorney
Eastern District of Washington
Stephanie Van Marter
Caitlin Baunsgard
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FEB 0 4 2019

SEAN F. McAVOY, CLERK
_____, DEPUTY
RICHLAND, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MARCIAL BRAVO-ZAMBRANO,

    Defendant.

4:15-CR-6049-EFS-20

Plea Agreement

Plaintiff, United States of America, by and through Joseph H. Harrington, United States Attorney for the Eastern District of Washington, and Stephanie Van Marter, Assistant United States Attorney for the Eastern District of Washington, and Defendant MARCIAL BRAVO-ZAMBRANO, and the Defendant's counsel, Zachary Ayers, agree to the following Plea Agreement:

1. <u>Guilty Plea and Maximum Statutory Penalties</u>:

The Defendant, MARCIAL BRAVO-ZAMBRANO, agrees to enter a plea of guilty to Count 1 of the Second Superseding Indictment filed on December 6, 2016, charging the Defendant with Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of

Plea Agreement - 1

Heroin and 400 grams or More of N-phenyl-N Propanamide (hereafter Fentanyl), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846.

The Defendant, MARCIAL BRAVO-ZAMBRANO, understands that the charge contained in the Second Superseding Indictment is a Class A felony charge. The Defendant, MARCIAL BRAVO-ZAMBRANO, also understands that the maximum statutory penalty for Count 1, is not less than 10 years imprisonment, which is non-suspendable and non-parolable, and a maximum possible penalty of life imprisonment; a fine not to exceed $10,000,000; a term of supervised release of not less than 5 years up to a life term; denial of certain federal benefits; **Deportation** and a $100 special penalty assessment.

The Defendant, MARCIAL BRAVO-ZAMBRANO, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2.      Denial of Federal Benefits:

The Defendant understands that by entering this plea of guilty the Defendant is no longer eligible for assistance under any state program funded under part A of title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Further, the Court may deny the Defendant's eligibility to any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

3.      The Court is Not a Party to the Agreement:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of

Plea Agreement - 2

the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing his plea of guilty.

4.  Effect on Immigration Status:

The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the Defendant is pleading guilty.  Indeed, because the Defendant is pleading guilty to Conspiracy to Distribute various controlled substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846, removal is presumptively mandatory.  Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that while deportation and/or removal appears to be a virtual certainty, no one, including his attorney or the district court, can predict with absolute certainty the effect of his conviction on his

Plea Agreement - 3

immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if automatic removal from the United States is a virtual certainty.

5. <u>Waiver of Constitutional Rights</u>:

The Defendant, MARCIAL BRAVO-ZAMBRANO, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

    (a). The right to a jury trial;

    (b). The right to see, hear and question the witnesses;

    (c). The right to remain silent at trial;

    (d). The right to testify at trial; and

    (e). The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

6. <u>Elements of the Offense</u>:

The United States and the Defendant agree that in order to convict the Defendant of Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (ii)(I), (vi), and (viii); all in violation of 21 U.S.C. § 846, the United States would have to prove beyond a reasonable doubt the following elements:

Plea Agreement - 4

*First*, beginning on a date unknown but by on or about January 2010 continuing until on or about December 6, 2016, the Defendant, MARCIAL BRAVO-ZAMBRANO, in the Eastern District of Washington, entered into an agreement with one or more persons to commit the crime of distribution of methamphetamine and/or Cocaine and/or Heroin and/or Fentanyl as charged in the Second Superseding Indictment;

*Second*, the Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it and;

*Third*, the agreement to distribute involved more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine, 5 Kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More of Fentanyl and would be reasonably foreseeable to a member of the conspiracy.

7. Factual Basis and Statement of Facts:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis MARCIAL BRAVO-ZAMBRANO's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

Members of the FBI Eastern Washington Safe Streets Violent Gang Task Force- Tri-Cities (EWVGSSTF) have been investigating a transnational drug trafficking organization operating here in the Eastern District of Washington and elsewhere since at least 2011. During that investigation, Jese David Carillo

Plea Agreement - 5

Casillas (hereafter Jese/Casillas) was identified as a high-ranking member of this organization, first identified in the spring of 2015.

During this same time-frame, members of the Boston DEA were conducting a parallel investigation into the money laundering activities of the Ivan Hernandez Calvillo DTO. The DTO was moving bulk cash out of Canada that it had gained through the sale of cocaine, heroin, and methamphetamine. The DEA successfully placed an undercover operator (DEA UC) into the money-laundering network. The basic need the DEA UC filled for the organization was his ability to accept Canadian cash, deposit it, wash it electronically through his business, and then wire US currency out in smaller deposits in Mexico and the United States. The DEA UC would then charge a commission or percentage for the washed cash, keep that percentage and report to Ivan and later Jese Casillas as to the remaining amount available for wire transfer. This relationship ultimately cultivated into Ivan and the organization seeking the DEA UC's assistance in developing a new drug distribution group in Vancouver, British Columbia, with ties to China.

In October 2014, an undercover money laundering operation was initiated by Royal Canadian Mounted Police Federal Serious Organized Crime Unit (RCMP FSOC) members to collect bulk money in the area of Vancouver, British Columbia, from the DTO and to deliver it to the DEA investigators. Between October 2014 and July 2016, Ivan, and later Casillas, were in direct communication with the DEA UC via recorded What's App messenger and arranged for approximately 15 cash money drops to be laundered by the DEA UC. The way the code worked was that Ivan or Casillas provided the DEA UC a serial number of a piece of currency. The DEA UC would communicate that serial number so that when the two associates would meet, they would compare serial numbers. Once that was confirmed, the money was handed off. The

Plea Agreement - 6

amount laundered during these money drops totaled over $1.6 million Canadian Dollars.

On August 23, 2015, Calvillo arranged for a cash drop in Vancouver, British Columbia, as well as the delivery of one kilogram of heroin. This time Javier Camillo Gomez Calvillo, a.k.a. Angel was sent to make the money drop. The meet was audio/video recorded. Angel was driving a blue Mercedes registered to a residence associated with Sobieda Reynosa (previously identified by the RCMP as a girlfriend/associate of an identified leader/organizer in the Vancouver area). Angel delivered $74,029 in Canadian currency to the Canadian Under Cover (CUC) and a kilogram of heroin to the CUC. After the DEA UC withdrew the percentage charged for laundering the money, Calvillo directed the DEA UC to wire the remaining funds to accounts in Mexico.

Based upon the identification of the blue Mercedes and Gomez Calvillo, the RCMP followed the activities of Gomez Calvillo. This surveillance led them to the Grand Forks, British Columbia, area, an identified location associated with this organization and backpacking narcotics across the border. The RCMP followed the Mercedes to the Ramada Inn and identified that Reynosa registered for a room at the hotel. On August 26, 2015, the RCMP was conducting surveillance at the hotel and observed the aforementioned Mercedes leave the hotel at approximately 5:00am occupied by Reynosa and Gomez Calvillo. Surveillance confirmed its travel toward the border but then lost sight of the vehicle for approximately 15-20 minutes. When the vehicle was located again, it was coming back toward the hotel, this time with 5 occupants. The Mercedes returned to the hotel where the five occupants were seen entering into room 203. A short time later, the vehicle departed the hotel again, this time with four occupants. A traffic stop was initiated and all occupants were arrested. The driver was identified as Sobieda Reynosa the passengers were identified as the

Plea Agreement - 7

Defendant MARCIAL BRAVO-ZAMBRANO, Co-Defendants Juan Zambrano and Javier Camilo Gomez Calvillo.

A search warrant was obtained and on August 27, 2015, the search warrant was executed on the vehicle. Inside a secret compartment in the vehicle, RCMP located approximately 18 kilograms of methamphetamine, 4 kilograms of cocaine, 171 grams of heroin, $50,000 in UC currency, two loaded firearms, ammunition, several backpacks, walkie talkies, jackets and one cellular phone. A search warrant was also obtained for two rooms identified as utilized by these individuals at the Ramada Inn. Located inside the room was Co-Defendant, Miguel Reyes Garcia confirmed to be the fifth person seen earlier in the car. It was further confirmed that the general location where the Mercedes traveled to at 5:00 a.m., returning with three additional passengers, correlates directly with a trail head location utilized by the Calvillo DTO. Inside the motel room agents seized the Defendant's wallet, a receipt and multiple cellular telephones.

The controlled substances were tested in Canada as well as by the DEA laboratory and returned with the following results: (1) 16,606 grams of actual methamphetamine; (2) 2005 kilograms of cocaine[1] and (3) 99.3 grams of heroin. Subsequent fingerprint testing of the packages of controlled substances revealed a number of fingerprints to include several belonging to Co-Defendant Miguel Reyes Garcia.

Much like what occurred in Grand Forks, the United States would further present testimony from two witnesses that the Defendant was identified as a backpacker working for the organization taking loads of narcotics into Canada and cash drug proceeds back to the United States. The United States would further present testimony that the Defendant worked with his brother Co-

---

[1] The DEA laboratory did not re-test the entire 4 kilograms of cocaine; only 2 of the 4 kilograms seized.

Plea Agreement - 8

Defendant Juan Zambrano previously, specifically transporting narcotics for them within the organization.

8. <u>The United States Agrees Not to File Additional Charges</u>:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Second Superseding Indictment, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

9. <u>United States Sentencing Guideline Calculations</u>:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

(a). <u>Base Offense Level and Application of U.S.S.G. §2D1.1 Commentary Note 8(D)</u>:

The Government and Defendant agree and stipulate that based upon the overall quantities of the various drugs involved, his base offense level is $38^2$. See U.S.S.G. §2D1.1(c)(1) and Commentary 8(b). The parties further agree and stipulate that if the Court were to convert the varying amounts and types of controlled substances as directed by the Guidelines pursuant to this section, the resulting offense level would remain the same[3].

---

[2] The United States does not have evidence this Defendant ever transported or distributed Fentanyl during his involvement in the organization.
[3] Converting the amounts seized results in over 135,000 kilograms of marijuana, which equates to an offense level 38.

Plea Agreement - 9

(b).  **Role in the Offense and Adjusted Base Offense Level**:

The United States and the Defendant agree that the Defendant was "substantially less culpable than the average participant" in the conspiracy and was a minimal participant in the criminal activity alleged in the Second Superseding Indictment, resulting in a four-level decrease pursuant to U.S.S.G. §3B1.2(a), Application Note 3(A). The United States and the Defendant further agree that because the Defendant is a minimal participant and the otherwise applicable base offense level is 38 pursuant to the Drug Quantity Table, an additional four-level decrease applies pursuant to U.S.S.G. §2D1.1(a)(5). The United States and the Defendant also agree that the offense involved all of the factors set forth in U.S.S.G. §2D1.1(b)(17) (Guidelines Manuel 2018) and, as a minimal participant, the Defendant qualifies for an additional two-level decrease. The United States and the Defendant agree that the foregoing adjustments result in a cumulative reduction of ten levels.

(c).  **Specific Offense Characteristics- Dangerous Weapon**:

Although there were firearms located inside the backpacks, the United States has evidence that one firearm belonged to Co-Defendant Miguel Reyes Garcia and the other to Co-Defendant Juan Zambrano. The parties therefore agree and stipulate that two levels should not be applied to this Defendant pursuant to U.S.S.G. §2D1.1(b)(1).

(d).  **Acceptance of Responsibility**:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than the next Pre-Trial Conference, the United States will move for a three (3) level downward adjustment in the offense level for the

Plea Agreement - 10

Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

Furthermore, the Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

(e).    Criminal History:

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report.  The United States and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

10.    Safety Valve:

The United States and the Defendant agree that the Defendant may be eligible for the safety valve provisions of 18 U.S.C. § 3553(f) and U.S.S.G. §5C1.2. At the time of this change of plea, the parties acknowledge that the Defendant has not satisfied the fifth requirement of the safety valve.  If the Court finds that the Defendant meets the criteria set forth at 18 U.S.C. § 3553(f)(1)-(5),

Plea Agreement - 11

the Court shall impose a sentence in accordance with the applicable sentencing guidelines without regard to any statutory minimum sentence.

11. <u>Length of Incarceration</u>:

The parties are free to argue any lawful sentence. The Defendant understands however, that unless he qualifies for application of the safety valve, he cannot be sentenced to less than the mandatory minimum of ten years.

12. <u>Criminal Fine</u>:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

13. <u>Supervised Release</u>:

Should the Defendant be allowed to return to the United States lawfully, the parties agree to recommend that the Court impose a 5-year term of supervised release, to include the following special conditions, in addition to the standard conditions of supervised release:

(1) that the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Office; and

(2) that the Defendant have no contact with any witnesses or Co-defendants in this cause number.

14. <u>Mandatory Special Penalty Assessment</u>:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

Plea Agreement - 12

15. **Payments While Incarcerated**:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. **Additional Violations of Law Can Void Plea Agreement**:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

17. **Appeal Rights**:

In return for the concessions that the United States has made in this Plea Agreement, the Defendant agrees to waive his right to appeal the conviction and sentence if the Court imposes a prison term no higher than 60 months and imposes no more than 5 years supervised release. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence. Should the Defendant successfully move to withdraw from this Plea Agreement or should the Defendant's conviction on the Second Superseding Indictment be dismissed, set aside, vacated, or reversed, the Plea Agreement shall become null and void; the United States may move to reinstate all counts of the Second Superseding Indictment No. 4:15-CR-6049-EFS; and the United States may prosecute the Defendant on all available charges involving or arising out of the Second

Plea Agreement - 13

Superseding Indictment No. 4:15-CR-6049-EFS. Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack of the conviction or sentence, including, but not limited to, proceedings pursuant to 28 U.S.C. § 2255 (writ of habeas corpus).

19. **Integration Clause:**

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

### Approvals and Signature

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Joseph H. Harrington
United States Attorney

_____     2/4/19
Stephanie Van Marter                  Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. My attorney has advised me that by pleading guilty to

Plea Agreement - 14

the charge relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____   1-29-2019
MARCIAL BRAVO-ZAMBRANO            Date
Defendant

    I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. I have further advised my client by pleading guilty to the charge relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____   1-29-18
Zachery Ayers                     Date
Attorney for the Defendant

    I hereby certify that I have read and translated the entire foregoing document to the Defendant in a language with which he is conversant. If questions have arisen, I have notified the Defendant's counsel of the questions and have not offered nor given legal advice nor personal opinions.

_____   1-29-19
Interpreter WA State Court Certified   Date
Spanish Interpreter
# 9412

Plea Agreement - 15

CAROLINA HICKEY
INTERPRETER