Joseph H. Harrington
United States Attorney
Eastern District of Washington
Stephanie Van Marter
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | 4:15-CR-06049-EFS-21 |
| Plaintiff, | United States' Sentencing Memorandum |
| vs. | |
| MIGUEL REYES-GARCIA, | |
| Defendant. | |

Plaintiff, United States of America, by and through Joseph Harrington, United States Attorney for the Eastern District of Washington, and Stephanie Van Marter, Assistant United States Attorney for the Eastern District of Washington, submits the following Sentencing Memorandum.

**I.     REVIEW OF PRESENTENCE REPORT ("PSIR"):**

The United States has reviewed the PSIR and would note that the author had to review an extremely voluminous amount of data in order to summarize the facts. The United States submits the facts are very well-summarized and accurate. It does not appear the Defendant has any substantive objections to the PSIR which need to be addressed.

Response to Defendant's Sentencing Memorandum and Sentencing Recommendation - 1

The United States is in agreement that the Defendant's final adjusted Base Offense Level is 36 and Criminal History Category is I.  As such, the Defendant's advisory guideline range is 188-235 months.

## II. APPLICATION OF § 3553(a) FACTORS AND SENTENCING RECOMMENDATION:

The Court must not only consider the applicable advisory guidelines, but the factors as set forth in 18 U.S.C. § 3553, which states, in relevant part, that: [t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(1) and (2).

This case involved a confluence of several different investigations conducted by multiple law-enforcement agencies.  In addition to the FBI Safe Streets Violent Gang Task Force- Tri-Cities, members of the Boston Drug Enforcement Administration were conducting a parallel investigation into the money laundering activities of the Ivan Calvillo Drug Trafficking Organization ("DTO").  The DTO was moving bulk cash out of Canada that it had gained through the sale of cocaine, heroin, and methamphetamine.  The DEA

Response to Defendant's Sentencing Memorandum and Sentencing Recommendation - 2

successfully placed an undercover operator ("DEA UC") into the money-laundering network.  The basic need the DEA UC filled for the organization was his ability to accept Canadian cash, deposit it, wash it electronically through his business, and then wire U.S. currency out in smaller deposits to Mexico and the United States.  The DEA UC would charge a commission or percentage for the washed cash, keep that percentage and report to Calvillo, and later the Defendant Reyes-Garcia, as to the remaining amount available for wire transfer.  This relationship ultimately cultivated into Calvillo and the organization seeking the DEA UC's assistance in developing a new drug distribution group in Vancouver BC with ties to China.

In October 2014, an undercover money laundering operation was formally initiated by Royal Canadian Mounted Police Federal Serious Organized Crime Unit ("RCMP FSOC") members to collect bulk money in the area of Vancouver, British Columbia from the DTO and to deliver it to DEA investigators.  RCMP utilized several undercover agents to play the role of the business associates in Vancouver, (hereafter referred to as RCMP UC1, 2 and 3).  Between October 2014 and July 2016, Calvillo, and later co-defendant Casillas, were in direct communication with the DEA UC via recorded What's App messenger and arranged for approximately 15 cash money drops to be laundered by the DEA UC.  A code was utilized between the DEA UC, Calvillo, and later the Defendant Reyes-Garcia, wherein Calvillo or the Defendant Reyes-Garcia provided the DEA UC a serial number of a piece of currency.  The DEA UC would communicate that serial number so that when the two associates would meet, they would compare serial numbers.  Once that was confirmed, the money was handed off.  The amount laundered during these money drops totaled over $1.6 million Canadian Dollars.

Response to Defendant's Sentencing Memorandum and Sentencing Recommendation - 3

On August 23, 2015, Calvillo arranged for a cash drop in Vancouver BC as well as the delivery of one kilogram of heroin. This time Javier Camillo Gomez Calvillo, a.k.a. Angel was sent to make the money drop. The meet was audio/video recorded. Angel was driving a blue Mercedes registered to a residence associated with Sobieda Reynosa (previously identified by the RCMP as a girlfriend/associate of an identified leader/organizer in the Vancouver area). Angel delivered $74,029 in Canadian currency to the Canadian Under Cover ("CUC") and a kilogram of heroin to the CUC. After the DEA UC withdrew the percentage charged for laundering the money, Calvillo directed the DEA UC to wire the remaining funds to accounts in Mexico.

Based upon the identification of the blue Mercedes and Gomez Calvillo, the RCMP followed the activities of Gomez Calvillo. This surveillance led them to the Grand Forks area, an identified location associated with this organization and backpacking narcotics across the border. The RCMP followed the Mercedes to the Ramada Inn and identified that Reynosa registered for a room at the hotel. On August 26, 2015, the RCMP was conducting surveillance at the hotel and observed the aforementioned Mercedes leave the hotel at approximately 5:00am occupied by Reynosa and Gomez Calvillo. Surveillance confirmed its travel toward the border but then lost sight of the vehicle for approximately 15-20 minutes. When the vehicle was located again, it was coming back toward the hotel, this time with 5 occupants. The Mercedes returned to the hotel where the five occupants were seen entering into room 203. A short time later, the vehicle departed the hotel again, this time with four occupants. A traffic stop was initiated and all occupants were arrested. The driver was identified as Sobieda Reynosa the passengers were identified as co-defendants Juan Bravo Zambrano, Marciel Zambrano and Javier Camilo Gomez Calvillo.

Response to Defendant's Sentencing Memorandum and Sentencing Recommendation - 4

A search warrant was obtained and on August 27, 2015 was executed on the vehicle. Inside a secret compartment in the vehicle, RCMP located approximately 18 kilograms of methamphetamine, 4 kilograms of cocaine, 171 grams of heroin, $50,000 in U.S. currency, two loaded firearms, ammunition, several backpacks, walkie talkies, jackets and one cellular phone. A search warrant was also obtained for two rooms identified as utilized by these individuals at the Ramada Inn. Located inside the room was Defendant Reyes-Garcia, confirmed to be the fifth person seen earlier in the car. It was further confirmed that the general location where the Mercedes traveled to at 5:00 a.m., returning with three additional passengers, correlates directly with a trail head location utilized by the Calvillo DTO. Inside the motel room agents seized the Defendant's wallet, a receipt and multiple cellular telephones.

The controlled substances were tested in Canada as well as by the DEA laboratory and returned with the following results: (1) 16,606 grams of actual methamphetamine; (2) 2,005 grams of cocaine and (3) 99.3 grams of heroin.

Subsequent fingerprint testing of the packages of controlled substances, specifically the 18 kilograms of methamphetamine, revealed a number of fingerprints to include several belonging to the Defendant Reyes-Garcia.

CD19 also provided information about the Defendant. CD19 advised that the Defendant was one of the backpackers present at the time of Defendant Reyes-Garcia's arrest in Canada and the Defendant Reyes-Garcia identified the methamphetamine as his part of the drug shipment and that he carried one of the firearms that was seized. The Defendant Reyes-Garcia also told CD19 that he was asked to come on this trip by the "higher ups" due to issues over a drug debt owed by the distributor.

Further, several cooperating defendants have positively identified Defendant Reyes-Garcia as trafficking in large quantities of cocaine and

Response to Defendant's Sentencing Memorandum and Sentencing Recommendation - 5

methamphetamine, being supplied by the Calvillo DTO. For example, CD20 was obtaining approximately 1 kilogram of methamphetamine weekly from a distributor known as "Ruso" beginning in approximately April 2016. In the summer of 2016 (approx. a few months after he started getting from "Ruso"), he went with "Ruso" to the Tri-Cities to meet a new source of supply known to CD20 as "Rojo" (positively identified as Defendant Reyes-Garcia). During this meeting, they agreed that Defendant Reyes Garcia would supply "Ruso". CD20 will testify that Defendant Reyes-Garcia provided CD20 and "Ruso" with 1 kilogram of methamphetamine on a "front" at $6,000 a kilogram. CD20 sold the kilogram in Spokane, Washington and returned to the Tri-Cities to pay Defendant Reyes Garcia for the fronted drugs and put a down payment on their next order. In the presence of CD20, "Ruso" paid Defendant Reyes-Garcia $8,000: $6,000 for the previous kilogram and $2,000 was provided as a down payment on next load. Defendant Reyes-Garcia then gave them 2 kilograms of methamphetamine. "Ruso" and CD20 returned to Spokane, where CD20 was provided 4 ounces of methamphetamine by "Ruso" from the 2 kilogram quantity provided by Defendant Reyes-Garcia. This occurred just prior to Defendant Reyes-Garcia's arrest in Canada.

    CD20 had previously met Defendant Reyes-Garcia at a restaurant in Spokane, Washington where CD20 was dining with another individual from the federal halfway house. This occurred during the winter holidays of 2015 to 2016. During that meet, the other distributor asked if he could use Defendant Reyes-Garcia's "line" to get his cocaine into Canada to his customers. Defendant Reyes-Garcia generally agreed to this, but wanted the cocaine to be commingled, as in, Defendant Reyes-Garcia would take this distributors cocaine on his "line" into Canada, and then give it to his (Defendant Reyes-Garcia's) people in Canada for further distribution. Defendant Reyes-Garcia would then get payment back to

Response to Defendant's Sentencing Memorandum and Sentencing Recommendation - 6

this distributor. According to CD20, this was not acceptable to the distributor as he wanted to maintain his customers in Canada. No agreement was finalized at that meeting.

This Defendant was a member of a major drug trafficking organization. The Defendant's actions resulted in the distribution of multiple kilograms of controlled substances in both the United States and Canada. The Defendant's activities unquestionably furthered the activities and success of this organization.

Another important factor for this Court is the Defendant's history and characteristics. The Defendant appears to have had a stable childhood and a supportive family.

A primary consideration of this Court will be sentencing disparity. The United States must do its best to treat similarly situated defendants, similar, considering and weighing factors such as their backgrounds, criminal history, role in the offense, length of time involved, nature of the plea agreement, and timely and complete acceptance of responsibility. There can be no disparity when the role each defendant plays is different and therefore they are not "similar criminal offenses committed by similar offenders". *See*, U.S.S.G. ch. 1, pt. A, p.s. 3. The following defendants have been sentenced thus far:

*Francisco Figueroa*- **120 months**- pled guilty to Count 1, applicable mandatory minimum 120 months; firearm enhancement; no Safety Valve or U.S.S.G. §5K1.1 reduction and no role adjustments.

*Juvenal Landa*- **120 months**- pled guilty to Count 1, applicable mandatory minimum 120 months; firearm enhancement; no Safety Valve or U.S.S.G. §5K1.1 reduction and no role adjustments.

*Julio Cesar Rosales Saucedo*- **87 months**- pled guilty to Count 2, no applicable mandatory minimum; no Safety Valve or U.S.S.G. §5K1.1 reduction and no role adjustments.

Response to Defendant's Sentencing Memorandum and Sentencing Recommendation - 7

*Gabriela Mendoza Vasquez*- **30 months**- pled guilty to Count 2, no applicable mandatory minimum; no Safety Valve or U.S.S.G. §5K1.1 reduction and no role adjustments.

*Veronica Cortez*- **3 years' Probation**- pled guilty to Misprision of a Felony- no applicable mandatory minimum; Safety Valve equivalent under 18 U.S.S.C. § 3553(a).

*Adam Goldring*- **24 months**- pled guilty to Count 2, no applicable mandatory minimum; no Safety Valve or U.S.S.G. §5K1.1, but received a minimal role adjustment.

*Jese Casillas*- **25 years**- pled guilty to Counts 1and 2, no criminal history, 4-level leader/organizer enhancement applied; 2-level enhancement for firearm possession; and 3-level downward application for timely acceptance of responsibility.

*Alfredo Magana Garibay* – **10 years** - pled guilty to Count 1, no criminal history, 4-level minimal role reduction; no safety valve or U.S.S.G. §5K1.1

The Defendant is not similarly situated to any of the above defendants. The Defendant was very involved in the distribution of the controlled substances and vested in the success of the organization and its viability. The Defendant also had an ownership stake in the "line" into Canada, utilized to traffic these drugs into Canada.

\\

\\

The United States looks to the application of the 18 U.S.C. § 3553(a) factors in assessing a reasonable recommendation for sentence; this includes an analysis of aggravating or mitigating factors. Based upon review of those

Response to Defendant's Sentencing Memorandum and Sentencing Recommendation - 8

aggravating and mitigating factors, a sentence of 180 months is appropriate given the scope of criminal conduct here.

DATED March 8, 2019.

                            Joseph H. Harrington
                            United States Attorney

                            *s/Stephanie Van Marter*
                            Stephanie Van Marter
                            Assistant United States Attorney

## CERTIFICATION

I hereby certify that on March 8, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following, and/or I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant(s):

Ken Therrien: kentherrien@msn.com, jmora.ktlaw@outlook.com, mariana.ktlaw@outlook.com, martha.ktlaw@outlook.com

                            *s/Stephanie Van Marter*
                            Stephanie Van Marter
                            Assistant United States Attorney

Response to Defendant's Sentencing Memorandum and Sentencing Recommendation - 9