1

1
2              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF WASHINGTON
2

3     UNITED STATES OF AMERICA,      ) Case No.
                                     ) 4:15-CR-6049-EFS-2, 4, 10,
                Plaintiff,           ) 16, 18, 20, 21
4                                    )
      v.                             ) September 18, 2018
5                                    )
      JESE DAVID CARILLO             ) Richland, Washington
6     CASILLAS (2); ALEXIS JOEL      )
      GARCIA PALOMINO (4); BRITTNEY  ) Pretrial Conference/Motion
7     LEE ZARAGOZA (10); EDGAR OMAR  ) Hearing
      HERRERA FARIAS (16); ALFREDO   )
8     MAGANA GARIBAY (18); MARCIAL   ) Pages 1 to 50
      BRAVO ZAMBRANO (20); and MIGUEL)
9     REYES GARCIA (21),             )
                                     )
10                    Defendants.    )
      _____)

11

12             BEFORE THE HONORABLE EDWARD F. SHEA
            SENIOR UNITED STATES DISTRICT COURT JUDGE

13

14                       APPEARANCES:

15    For the Plaintiff:        Stephanie A. Van Marter
                                Stephanie.Van Marter@usdoj.gov
16                              US Attorney's Office-SPO
                                920 W Riverside, Suite 300
17                              P.O. Box 1494
                                Spokane, WA 99210
18                              509-353-2767

19

20

21

22

23

24

25

```
 1
        For the Defendant Carillo        Nicolas V. Vieth - appearing
 2      Casillas (2):                     telephonically
                                          Nick@viethlaw.com
 3                                        Vieth Law Offices
                                          505 West Riverside
 4                                        Suite 200
                                          Spokane, WA 99201
 5                                        208-664-9448

 6      For the Defendant Garcia
        Palomino (4):                     Jeffrey Scott Niesen
 7                                        Jsniesen1@yahoo.com
                                          Jeffrey S. Niesen Law Office
 8                                        1411 W. Pinehill Road
                                          Spokane, WA  99218
 9                                        509-822-7140

10

11


12      For the Defendant Zaragoza       Victor H. Lara
        (10):                            Vh_lara@hotmail.com
13                                        Hurley Lara & Hehir
                                          411 North Second Street
14                                        Yakima, WA  98901
                                          509-248-4282
15


16      For the Defendant Edgar          Peter Steven Schweda
        Omar Herrera Farias (16):        Pschweda@wsmattorneys.com
17                                        Waldo & Schweda, PS
                                          2206 N Pines Road
18                                        Spokane, WA  99206
                                          509-924-3686
19


20
        For the Defendant Magana         Nicholas Wright Marchi
21      Garibay (18):                    Nmarchi@carmarlaw.com
                                          Carney & Marchi PS
22                                        108 S. Washington
                                          Seattle, WA  98104
23                                        206-224-0909

24

25
```

3

```
1   For the Defendant Bravo        Walter Lynn Ayers
    Zambrano (20):                 Walter@ayerslawfirm.net
2                                  Zachary Ayers
                                   Ayers Law Firm
3                                  1312 N. Monroe
                                   Spokane, WA 99201
4                                  509-863-1432

5
    For the Defendant Reyes        Kenneth D. Therrien
6   Garcia (21):                   Kentherrien@msn.com
                                   Kenneth Therrien Law Office
7                                  413 North Second Street
                                   Yakima, WA  98901
8                                  509-457-5991

9   Court-Certified Interpreters: Carolina Hickey, Susan Evans

10
    Official Court Reporter:       Kimberly J. Allen, CCR #2758
11                                 United States District Courthouse
                                   P.O. Box 685
12                                 Richland, Washington 99352
                                   (509) 943-8175
13
    Proceedings reported by mechanical stenography; transcript
14  produced by computer-aided transcription.

15

16

17

18

19

20

21

22

23

24

25
```

4

1                              **INDEX**

2

3                          **WITNESS INDEX**

4    **Plaintiff Witness:**                          **Page**

5

6       None

7                               *****

8
     **Defense Witnesses:**                          **Page**
9

10      None

11

12

13                       **EXHIBITS ADMITTED**

14   **Plaintiff**
        **Number**        **Description**            **Page**
15                    None

16

17   **Defense**
        **Number**        **Description**            **Page**
18                    None

19

20                       **GENERAL INDEX**

21
                                                     **Page**
22
        Reporter's Certificate............................50
23

24

25

1  (September 18, 2018; 9:13 a.m.)

2          THE COURTROOM DEPUTY:  Please rise.

3          (Call to Order of the Court.)

4          THE COURT:  Good morning to you all.  Please be seated.

09:13:41   5          THE COURTROOM DEPUTY:  Matter before the Court is *United*

6  *States of America v. Carillo Casillas, et al.*, Cause No.

7  4:15-CR-6049-EFS, Defendants Nos. 2, 4, 10, 16, 18, 20, and 21.

8  Time set for pretrial conference and motion hearing.

9          Counsel, please state your presence for the record, with

09:14:03  10  Government's counsel first.

11          MS. VAN MARTER:  Stephanie Van Marter on behalf of the

12  United States, and seated with me is Task Force Officer Brazeau.

13  Good morning.

14          THE COURT:  Good morning.

09:14:14  15          MR. LARA:  Victor Lara for Ms. Brittany Zaragoza.

16          THE COURT:  Thank you.

17          MR. THERRIEN:  Good morning, Your Honor.  Ken Therrien

18  for Miguel Reyes Garcia.

19          MR. ZACHARY AYERS:  Good morning, Your Honor.  Zachary

09:14:25  20  Ayers and Walter Ayers on behalf of Marcial Bravo Zambrano.

21          MR. MARCHI:  Nicholas Marchi on behalf of Mr. Garibay.

22          MR. SCHWEDA:  Pete Schweda with Mr. Herrera Farias, Your

23  Honor.

24          MR. NIESEN:  Good morning, Your Honor.  Jeff Niesen for

09:14:35  25  Mr. Palomino.

1        THE COURT:  And Mr. Vieth, I think, is on the phone for

2   his client.

3        MR. VIETH:  That is correct, Your Honor.  I was just

4   waiting for everybody else to finish.  Nick Vieth for

09:14:48   5   Mr. Carillo Casillas.

6        THE COURT:  And you've talked to your client, and he's

7   approved your appearance by phone, correct?

8        MR. VIETH:  Yes, Your Honor.  I sent an interpreter there

9   last night and -- to confirm that we went over that request with

09:15:01  10   him, and he is okay with proceeding in this fashion.

11        THE COURT:  Is that correct?

12        DEFENDANT CARILLO CASILLAS:  (Nods head.)

13        THE COURT:  The defendant nods affirmatively.  Okay.

14   Ms. Van Marter, bring us up to date.  Where are we?  We're going

09:15:16  15   to trial in just a few weeks, October 10th.

16        MS. VAN MARTER:  We are, Your Honor.

17        THE COURT:  Okay.

18        MS. VAN MARTER:  So as far as an update for the Court,

19   obviously that trial is going to include Ms. Zaragoza,

09:15:32  20   Mr. Farias, Mr. Garcia, and Mr. Garibay at this point.  The

21   other defendants are set for our trial date in March.

22        THE COURT:  What is the status of the remaining counts in

23   Carillo Casillas?

24        MS. VAN MARTER:  Mr. Carillo Casillas?  Your Honor, I

09:15:44  25   wanted -- I told Mr. Vieth I wanted to raise a couple issues

1   with the Court before counsel -- before the United States made a

2   definitive determination as to the remaining counts.

3        THE COURT:  And I recall now that there was a nuance

4   about what could be put in evidence if he was not still a

09:16:00  5   defendant in the case, and I don't know the complexity of that

6   issue, but I recall that you raised that.

7        MS. VAN MARTER:  So, Your Honor, it's -- from the United

8   States' perspective, Mr. Casillas, the substantive counts

9   remain, as he entered into a plea without a plea agreement.  And

09:16:24  10  those substantive counts surround a number of money laundering

11  transactions or money drops that occurred in Canada.  Several of

12  those money drops, from the United States' perspective, relate

13  to defendants who are still pending before the Court;

14  Ms. Zaragoza and Mr. Reyes Garcia.

09:16:41  15       There are also some additional money drops that pertain

16  to a timeline of events that allows the United States to present

17  the scope of the conspiracy to which these defendants are still

18  charged.

19       The United States' only concern was that counsel may

09:16:57  20  object to the introduction of some of this evidence; for

21  instance, there are some undercover face-to-face meets between

22  Defendant Casillas and the undercover officers in Seattle.  It

23  is the United States' intention to present those during our case

24  in chief, as they are relevant for aspects of the ongoing

09:17:16  25  conspiracy as it pertains to other defendants before the Court.

1  And the United States did not certainly want to limit its

2  ability to present that evidence.

3       I do not believe there's any motion before the Court

4  which would exclude the United States' ability to present

09:17:33    5  evidence relevant to the conspiracy, but given this kind of

6  unique position that we are in, we certainly didn't want to

7  limit.

8       So I told Mr. Vieth I would raise that to the Court

9  today.  I'm not aware of any motions from counsel pertaining to

09:17:48   10  those events in the conspiracy that would limit our ability to

11  do so, but I certainly wanted to raise it, as I didn't want to

12  be surprised the day of trial.

13       THE COURT:  Sure, understandably.  And I'm unaware of any

14  motions filed by anybody that would limit that.

09:18:04   15       Is any defense counsel aware of any motions that I should

16  be considering with regard to the context of this issue?

17       If you object, this is your time to speak.  And I've not

18  seen any objections to that.  I think it's within the ambit of

19  the conspiracy, at least that's intuitive, and my intuition,

09:18:27   20  like yours, yields to precedence.  So I'm not going to get into

21  a trial and then have somebody tell me that, oh, gosh, I just

22  found this case; I should have found it before, but I only found

23  it now.

24       Anybody want to talk?  Any defense counsel?

09:18:45   25       Looks like nobody has a position adverse to yours because

1   nobody has spoken.

2        MS. VAN MARTER:  Yes, Your Honor.  Then I will file some

3   appropriate documentation with respect to Mr. Casillas.  If the

4   United States is not going to be limited as to those substantive

09:18:59   5   acts, then we would anticipate filing a motion to dismiss those

6   remaining substantive counts as to Mr. Casillas.

7        THE COURT:  Yeah, I don't see that the absence of a

8   person who's involved in the conspiracy limits the ability to

9   introduce the activities of that conspirator, co-conspirator in

09:19:23   10   furtherance of the conspiracy, whether by death or otherwise, or

11   fugitive status, at least I'm not aware of any at the present

12   time, and no one's ever told me that that was the case.  Of

13   course, there's a first time for everything.  Okay.

14        MS. VAN MARTER:  Thank you, Your Honor.  And --

09:19:39   15        THE COURT:  There's more.  There's always more --

16        MS. VAN MARTER:  There's always more.

17        THE COURT:  -- especially in this case, so ...

18        MS. VAN MARTER:  I'm not sure where the Court would like

19   me to address next.  I know the Court --

09:19:49   20        THE COURT:  I'll be happy to go wherever you lead us.

21        MS. VAN MARTER:  So, Your Honor, a number of motions have

22   been filed.  There was a motion filed by Defendant Zaragoza --

23        THE COURT:  Yes.

24        MS. VAN MARTER:  -- couched as a motion in limine;

09:20:04   25   however, the United States' concern is really it's in part a

1  motion to suppress aspects of her recorded post-Miranda

2  statement.  And so I don't know if the Court wants to address

3  that.  It was --

4         THE COURT:  I do.

09:20:15   5         MS. VAN MARTER:  -- filed later last week.

6         It's the United States' position that there's nothing

7  objectionable from that statement that should be redacted.  That

8  motion is very late to the Court.  The United States has not had

9  the opportunity to respond in writing; I think it was filed

09:20:31  10  Wednesday or Thursday of last week.  We've reviewed that

11  statement as of this morning.  It is a recorded, not videotaped,

12  statement in English.  The United States intends to admit it in

13  full.

14         THE COURT:  Okay.

09:20:43  15         Mr. Lara.

16         You can share the podium, folks.  We'll be busy all

17  morning at the podium, so ...

18         MR. LARA:  Good morning, Your Honor.

19         THE COURT:  Good morning.

09:20:54  20         MR. LARA:  The basis of my motion is -- succinctly

21  stated, Your Honor, the statement has information not

22  necessarily from Ms. Zaragoza but from the FBI agent that is

23  interrogating her that is saying such things as, "we have

24  information you were selling drugs.  People have said that

09:21:26  25  you're involved," essentially.  And so that information did not

1  come from Ms. Zaragoza.  It is a backdrop to try to get

2  Ms. Zaragoza to provide inculpatory declarations, and --

3      THE COURT:  Well, the first time -- I can't recall; what

4  is your position on that?

09:21:50   5      MS. VAN MARTER:  Well, Your Honor, Ms. Zaragoza was

6  advised fully of her Miranda rights.  She agreed to waive them.

7  The initial part of that interview was to ask her if she

8  understood why she was here; the nature of the investigation.

9  And the defendant's statements are basically an admission that

09:22:10   10  she understood that Mr. Casillas was likely up to illegal

11  activity, and she was asked to take his money and funnel it into

12  her account.

13      The follow-up questions where:  We've received some

14  additional information that you might have been transporting

09:22:23   15  narcotics or selling narcotics.  And she says:  No, I was not

16  transporting or selling narcotics.  I just helped with the

17  money.

18      So from the United States' perspective, the defendant's

19  statements are what are evidence against her.  The agent's

09:22:38   20  questions and her responses with properly admitted in context,

21  but the evidence is her own statements.

22      THE COURT:  Well, remind me:  What's the charge against

23  her?  Is it 1?

24      MR. LARA:  The conspiracy to money launder --

09:22:51   25      MS. VAN MARTER:  Money laundering.

1          THE COURT:  Money laundering.

2          MR. LARA:  -- in two substantive counts, yes.

3          THE COURT:  Not distribution of drugs, then.

4          MS. VAN MARTER:  Correct.

09:22:58  5          MR. LARA:  No.

6          THE COURT:  Okay.  Tell me what you want out, and I'll

7    look at it.

8          MR. LARA:  Your Honor, if you go to Page 5 of the

9    statement -- and I'll clarify that this statement was

09:23:13  10   transcribed by my staff, and -- and some of the answers and

11   questions were not very clear, so I just want to let the Court

12   know that I think we've done the best we could with transcribing

13   the recording.

14         THE COURT:  Well, let's take -- let's take an example.

09:23:28  15         MR. LARA:  Okay.

16         THE COURT:  Let's go to Page 5.

17         MR. LARA:  Page 5, for example, Your Honor, I have -- at

18   the top third of the page when the agent is first talking to

19   Ms. Zaragoza, "Tell us everything you know," and the agent --

09:23:47  20         THE COURT:  Excuse me one second.  I apologize.  I want

21   to make sure that we actually all are on the same page.

22         MR. LARA:  Correct.

23         THE COURT:  And I have three different paginations in my

24   materials.  So I have ECF 883-1, Page 6 of 12, at the top right.

09:24:02  25   That is what I'm looking at.  I want to use the ECF pagination

1    at the top of the page.

2            Are you at Page 5?

3            MR. LARA:  Page 5 as it is written in the middle of the

4    bottom of the page, Your Honor, written in.

09:24:14    5            THE COURT:  And so there's all this business about the

6    sister.

7            What difference does that make to anybody?  Why should

8    that be in?

9            MR. LARA:  And I'm getting to that as well, Your Honor.

09:24:22    10    I --

11            THE COURT:  Was her sister charged?

12            MS. VAN MARTER:  Her sister has not been charged.  Her

13    sister was identified as the likely individual who showed up

14    with the kilo of methamphetamine on one of the deliveries on

09:24:33    15    May 17th in a vehicle.  She's --

16            THE COURT:  She's not charged.

17            MS. VAN MARTER:  She's not been charged.

18            THE COURT:  So why is this relevant to Ms. Zaragoza, her

19    sister, Ms. Zaragoza?

09:24:42    20            MS. VAN MARTER:  Your Honor, I think it's relevant

21    because it goes to understanding the scope of knowledge.  Part

22    of the instruction -- she doesn't have to understand the exact

23    criminal activity, based upon the jury instruction, but she has

24    to know the funds are from some unlawful activity.

09:24:55    25            THE COURT:  Why would the crime of the sister be visited

1  upon the defendant?

2       MS. VAN MARTER:  Well, because I think the only reason

3  the sister was involved with Mr. Casillas was through her

4  relationship -- his relationship with Ms. Zaragoza.  And I think

09:25:06  5  it's relevant for the Court -- for the agent to be able to ask,

6  "Hey, if you would like to talk to us, these are the things we

7  want to ask you questions about."

8       THE COURT:  Well, she's not charged with the conspiracy

9  to -- to deliver drugs.

09:25:17  10       MS. VAN MARTER:  She's not.

11       THE COURT:  She's charged with conspiracy to deliver

12  money.  So why -- so your position is that her -- that somehow

13  he recruited her, the sister through her, and that she -- that

14  this person knowingly assisted in recruiting the sister to

09:25:34  15  deliver drugs?  Because that's not a charge in the case.

16       MS. VAN MARTER:  No, but she received $3,000 from the

17  payment of that kilo delivery through her bank account.  So

18  there was an arrangement made for Jese Casillas to deliver a

19  kilo of methamphetamine to the same undercover officers he had

09:25:52  20  been negotiating, as a sample of product.  The undercover was

21  then asked to pay for that through money wire transfer at the

22  direction of Mr. Casillas, and it was -- $3,000 of that was

23  directed to Ms. Zaragoza's bank account, and that was one of the

24  substantive money laundering counts that she is charged with in

09:26:12  25  the overall conspiracy.

1    Part of that timeline of events goes to her scope of

2    knowledge to understand that the source of funds is from some

3    unlawful activity.

4    MR. LARA:  There is absolutely no evidence, other than

09:26:27    5    the deposit of the $3,000, that Ms. Zaragoza had any connection

6    with her sister that relates to the delivery of the

7    methamphetamine on that date.

8    THE COURT:  Well, this is all hearsay, in one sense.

9    What substantive evidence are you going to have that it

09:26:45    10    actually occurred?

11    MS. VAN MARTER:  The delivery of the methamphetamine?

12    THE COURT:  Yeah.

13    MS. VAN MARTER:  It's all on video and audio-recorded.

14    THE COURT:  So you intend to admit that --

09:26:52    15    MS. VAN MARTER:  Yes, Your Honor.

16    THE COURT:  -- to show the conspiracy to deliver drugs.

17    And who are the participants?  An undercover person

18    and ...

19    MS. VAN MARTER:  Jese Casillas, and then you see a female

09:27:02    20    and a male arrive where they retrieve the drugs from --

21    THE COURT:  Are they both -- are they charged in this

22    case, either of them?

23    MS. VAN MARTER:  No.

24    THE COURT:  So of the people who participated, who is

09:27:12    25    charged?

1          MS. VAN MARTER:  Casillas, obviously Ms. Zaragoza

2     because --

3          THE COURT:  Are you talking about Mr. Carillo Casillas?

4          MS. VAN MARTER:  -- she received the funds.

09:27:17    5     Mr. Carillo Casillas.

6          THE COURT:  Okay.

7          MS. VAN MARTER:  And Brittany Zaragoza received funds

8     from that transaction.  And as the jury will be instructed,

9     there can be known and unknown conspirators who are part and

09:27:30   10     party to this.

11          This is the same type of method that Mr. Casillas used in

12     other deliveries, where he would have other people, like

13     Mr. Figueroa, drive the drugs to the meet location and go obtain

14     the drugs from another vehicle rather than driving it himself.

09:27:45   15          MR. LARA:  But there is no connection between the deposit

16     of the money, Your Honor, and my client.

17          THE COURT:  Was it deposited into her account?

18          MR. LARA:  That's the only connection there is.  Nothing

19     more than that.

09:27:59   20          And so the Government is trying to use evidence of a drug

21     transaction with no direct evidence that my client was involved

22     in that transaction.

23          THE COURT:  What's the involvement of the defendant?

24          MS. VAN MARTER:  The -- well, this is the same

09:28:19   25     transaction she admits to receiving money on behalf of Jese

1    Casillas in her post-Miranda statement as well.

2        THE COURT:  Well, take me to that page where she admits

3    the receipt of the money.

4        MS. VAN MARTER:  I don't have the transcript, Your Honor.

09:28:36    5        THE COURT:  Okay.

6        MR. LARA:  The -- I believe it's at Page -- and I'm

7    referring to the written-in page numbers at the bottom of the

8    document, Your Honor -- Page 6 towards the top.

9        THE COURT:  Yeah, and I understand what that is.

09:29:22    10        I don't want to have to do this myself, but I will, if

11    necessary.  There are some statements that, it seems to me,

12    don't bear -- for example, at the very top of the page "we've

13    arrested close to 100 people," things of that nature.

14        So you two confer and get rid of the extraneous material.

09:29:41    15        The tough part about this one is what to do about the

16    sister situation, and I need to focus more on that, so I'll take

17    a look at that, and if you have any authority one way or the

18    other, I'd be happy to receive it, but I'll take that under

19    advisement.

09:29:57    20        MS. VAN MARTER:  And, Your Honor, we also need to, if the

21    Court would allow, on Jese Casillas' cell phone there's

22    communications between the defendant and Jese Casillas, and I

23    believe there's also some reference and communications involving

24    the sister.  If I may have some time to go through what our

09:30:12    25    proposed exhibits may be, I could also present that to the Court

1    in terms of relevancy.

2          THE COURT:  Yeah, I'll take this up.  I'm going to allow

3    most of it in, except the extraneous material which doesn't bear

4    on.  But I want to be sensitive to the question of whether the

09:30:26    5    sister's involvement can be laid at her doorstep or whether it's

6    a context of the conspiracy as such.  If there's going to be

7    hard evidence that the sister was there and was involved, then

8    it may go in because there's hard evidence.  They're going to

9    put in a video, and there's going to be an undercover informant

09:30:43    10    that's going to testify about it, and so, in that sense, it's

11    going to go into evidence, and the question is why is this

12    impacted, if it's already in and hard evidence.  And I don't see

13    there is an impact.

14          But I'm open-minded on it, and I'll --

09:30:57    15          MR. LARA:  Thank you, Your Honor.

16          THE COURT:  Thank you.

17          Okay.  What's next?

18          MS. VAN MARTER:  Your Honor, I believe Mr. Farias filed a

19    series of motions yesterday.

09:31:07    20          THE COURT:  Who?

21          MS. VAN MARTER:  Mr. Schweda on behalf of Mr. Farias,

22    Edgar Farias.

23          THE COURT:  That's -- we'll take that up at the very end

24    of the hearing.

09:31:18    25          Anything else?

1          MS. VAN MARTER:  Your Honor, I know the Court wanted us

2    to discuss trial schedules.  I did have one request of the

3    Court.  One of the deadlines coming up is the entry of

4    electronic evidence into the JERS system, which is currently due

09:31:30    5    on Thursday of next week.

6          The United States would make an oral motion to have that

7    entered Friday, if possible.  We have many trials going out of

8    our office, and it is becoming a bit taxing for our --

9          THE COURT:  So you want a one day --

09:31:45    10          MS. VAN MARTER:  Just one day to the end of Friday.

11          THE COURT:  Sure.  Anybody else?

12          MR. THERRIEN:  I would object on behalf of Mr. Reyes

13    Garcia.

14          MR. SCHWEDA:  I'm not sure what she's asking to delay.

09:31:55    15          THE COURT:  I'm sorry?  Mr. Schweda, I can't hear a thing

16    you're saying.

17          MR. SCHWEDA:  Pardon?

18          THE COURT:  I can't hear you.

19          MR. SCHWEDA:  I didn't understand what she's asking to --

09:32:01    20          THE COURT:  She's asking for a one-day continuance of her

21    deadline to submit the JERS material.

22          MR. SCHWEDA:  The jurors' material?

23          THE COURT:  J-E-R-S.

24          MR. SCHWEDA:  Oh, okay.  I don't have an objection.

09:32:11    25          THE COURT:  You can have the one day.  Granted.

1        MS. VAN MARTER:  Thank you, Your Honor.

2        Did the Court want to get into the trial schedule at this

3  time or ...

4        THE COURT:  Trial schedule.

09:32:19   5        MS. VAN MARTER:  So the United States, since we are

6  starting on that Wednesday --

7        THE COURT:  Right.

8        MS. VAN MARTER:  -- I do believe there is a possibility

9  that we will go into the week of the -- the week of the 20th,

09:32:30   10  into the third week.  I believe that we're going to need at

11  least 10 to 12 full days for our admission of our case in chief.

12        With that being said --

13        THE COURT:  Ten to 12 days, well, that will definitely go

14  into the third week then.

09:32:43   15        MS. VAN MARTER:  Yes, I believe that will be the case,

16  Your Honor.

17        THE COURT:  So let me get this straight.  For

18  presentation of evidence you think you'll need two full weeks of

19  trial?

09:32:50   20        MS. VAN MARTER:  Yes.

21        THE COURT:  Two five-day weeks.

22        MS. VAN MARTER:  Yes, Your Honor.

23        THE COURT:  Well, that takes us into the third week for

24  sure.

09:32:55   25        MS. VAN MARTER:  Yes.  I don't think I would need the

1  full week.  I -- counsel have been provided a summary timeline

2  of all of the events.  We are not going to get into all of the

3  events because of the number of defendants who have pled guilty.

4  However, we are going to get into a number of the face-to-face

09:33:14   5  recorded meetings between Mr. Casillas and the undercovers and a

6  few of the money drops that surround those dates.

7       The United States is not going to play all of those

8  WhatsApp communications, because there are hundreds.  We are

9  going to play a select few that have been translated.

09:33:31  10       THE COURT:  But counsel has access, through Behind the

11  Gavel, to all of that.

12       MS. VAN MARTER:  Yes, Your Honor.

13       THE COURT:  And they can play what tapes they wish.

14       MS. VAN MARTER:  That is correct, Your Honor.

09:33:39  15       THE COURT:  Okay.

16       MS. VAN MARTER:  This will be a circumstance where the

17  undercover officer present who was in communication with both

18  Ivan Calvillo and Jese Casillas is a fluent Spanish-speaker and

19  was a party to the conversation, so he will be testifying not

09:33:53  20  only in summary about the events but specifically as to some of

21  those selected communications that we will be admitting from

22  those money drops.  I anticipate that his testimony will be the

23  lengthiest because of that, and will be on the stand for several

24  days.

09:34:09  25       We have, since this is a large span of time in a

1   conspiracy, we have events stretching from 2012 all the way to

2   present that we will be seeking to admit.  So that's why I

3   believe we will be into that.

4        And I don't know if the Court, then, would be open to

09:34:23   5   having the early release Friday schedule because we will be

6   going into that third week.  I know that you put that in the

7   letter.  I would ask the Court to consider that, given --

8        THE COURT:  Well, I'm open-minded on it.  I'll hear from

9   counsel.  You're talking about maybe a half day on Friday?

09:34:41   10       MS. VAN MARTER:  I think -- I think your proposed letter

11   had recommended a release at 2:30 on Fridays with half an hour

12   lunch and two small breaks.

13       THE COURT:  I'm happy to accommodate counsel.  All

14   counsel are out of town, and there's need to prepare and travel,

09:34:58   15   so from my perspective, a partial day on Friday would be

16   beneficial to people, but I'm not going to impose that on

17   anyone, if anyone objects to that.

18        Does anybody object to a partial day on Friday?

19       MR. SCHWEDA:  No, Your Honor.

09:35:15   20       THE COURT:  Nobody has objected to that, so we'll have a

21   partial day on Friday.

22       MS. VAN MARTER:  Thank you, Your Honor.

23       THE COURT:  At most, it will be 2:30; it might be less.

24       MS. VAN MARTER:  In terms of --

09:35:23   25       THE COURT:  So let's talk about opening statements,

1  length of voir dire, number of peremptory challenges; those

2  sorts of things.

3        MS. VAN MARTER:  I know the Court gives us a full

4  20 minutes for voir dire.  I don't anticipate that the United

09:35:36  5  States will take the full 20 minutes.  I would rather take extra

6  time in the opening.  I would anticipate a 45-minute opening

7  from the United States.  I do utilize a PowerPoint.  I'm well

8  aware of the Court's limitations in terms of what is in opening,

9  but with a case this size, I think that's much easier for the

09:35:57  10  jury to keep track of.

11        THE COURT:  Certainly.

12        MS. VAN MARTER:  In terms of the challenges --

13        THE COURT:  Now, your PowerPoint, will you be giving a

14  preview of that to counsel?

09:36:08  15        MS. VAN MARTER:  I certainly will provide a prior -- I

16  usually -- well, if the Court orders me to.  I have not in the

17  past, necessarily, but if there's anything --

18        THE COURT:  Well, it's a very complex case, and I

19  certainly don't have a grasp of the complexity of it because I

09:36:25  20  haven't done the work that you all have done.  But I don't want

21  to have a lot of interruptions, if we can avoid those, in your

22  opening statement.  But, you know, trial is trial, so if

23  interruptions occur and it's a slow process, so be it.  So if

24  you're confident that you can get through it without many

09:36:42  25  objections, then off you go.

1          MS. VAN MARTER:  I don't know if I have that kind of

2    confidence, but I would certainly consult with counsel if I feel

3    like there is anything that may be an issue.

4          THE COURT:  Well, then we'll deal with it as it comes up,

09:36:53   5    and you don't have to be able to preview.

6          MS. VAN MARTER:  Does the Court have any other questions?

7    At least that was my approach in terms of -- I know I saw the

8    Court's procedure in terms of the jury selection.

9          THE COURT:  Now, there's the whole question about

09:37:05   10    back-striking that I -- over the years I have said "no" to

11    back-striking, but I don't know that -- that it's as -- that I

12    want to be as rigid as that.  So if people want to back-strike,

13    that's okay with me, but ...

14          MS. VAN MARTER:  The last five trials I've had have been

09:37:23   15    simultaneous striking, so just being able to not necessarily

16    have simultaneous striking, back-striking would be nice to have

17    the opportunity, Your Honor.

18          THE COURT:  Mr. Lara?

19          MR. LARA:  I don't have an objection to that, Your Honor.

09:37:35   20    THE COURT:  Mr. Therrien?

21          MR. THERRIEN:  I'm all for back-striking, Your Honor.

22          THE COURT:  That's back-striking, right?  Yeah.  Okay.

23    Mr. Schweda?

24          MR. SCHWEDA:  Me, too, Your Honor.

09:37:46   25    THE COURT:  Okay.  And who else is coming up?

 1   Mr. Marchi?

 2          MR. MARCHI:  No issue with me, Your Honor.

 3          THE COURT:  Okay.  You're really the only four who are

 4   coming up.  So there's only four defendants going, right?

09:37:58   5          MS. VAN MARTER:  Correct.

 6          THE COURT:  Plus Mr. Carillo Casillas.

 7          MS. VAN MARTER:  Correct.

 8          THE COURT:  All right.  So five all together.  All right.

 9   Then back-striking it is, and we'll make sure we have that.

09:38:07  10          MS. VAN MARTER:  Does the Court have any other -- I'm not

11   sure what else the Court would like me to address.

12          THE COURT:  How many experts are you calling?

13          MS. VAN MARTER:  I have sent an e-mail to counsel this

14   morning to try and determine if there can be any stipulations.

09:38:21  15   We do have a number of experts anticipated.  We have a

16   fingerprint expert out of Canada that will still be coming to

17   testify.  We have a number of forensic chemists, based upon the

18   different quantities of narcotics that were seized, that are

19   expected to come testify, unless we can get any stipulations

09:38:38  20   from the parties as to the drug chemist.

21          THE COURT:  Hmm.

22          MS. VAN MARTER:  We also previously noticed modus

23   operandi experts from the RCMP, as well as Special Agent Bill

24   Leahy.  I don't know at this point in time to what extent they

09:38:55  25   will all be called.  We're still working through that, but that

1   was still an issue that we all agreed to kind of table while the

2   trial was going on.

3       THE COURT:  Well, I have no role at all in the question

4   of whether people stipulate, and so I'll leave that to you folks

09:39:09   5   to work out with regard to the expert testimony.

6       MS. VAN MARTER:  Yes.

7       THE COURT:  What else do we need to talk about, from your

8   perspective?

9       MS. VAN MARTER:  I'm not sure.  We have provided the

09:39:21   10   disclosures, as previously ordered, regarding those that will be

11   testifying.

12       THE COURT:  Well, there will be confidential informants

13   who will testify.

14       MS. VAN MARTER:  Correct, and cooperating defendants,

09:39:31   15   Your Honor.

16       THE COURT:  And there are cooperating defendants.

17       MS. VAN MARTER:  Yes, Your Honor.

18       THE COURT:  Then those cooperating defendants, whoever

19   they may be, and I don't pretend to know.  Keep in mind, all of

09:39:39   20   those folks that have pled and what their deals are, but the

21   plea agreements are available to all current defendants, right?

22       MS. VAN MARTER:  They've already been provided, Your

23   Honor.

24       THE COURT:  Okay.  So they know, defense counsel know

09:39:51   25   who's cooperating.

1    MS. VAN MARTER:  Correct.

2    THE COURT:  Okay.  So as to each of -- let's just put it

3  this way:  Of the defendants remaining in the case who will

4  actually go to trial, are there confidential informants or

09:40:03   5  co-defendants -- are there co-defendants who will be testifying

6  against them?

7    MS. VAN MARTER:  Yes.  Multiple.  We have disclosed --

8    THE COURT:  Will that be true of -- well, just by name,

9  Reyes Garcia?

09:40:18  10    MS. VAN MARTER:  Yes.

11    THE COURT:  Mr. Farias?

12    MS. VAN MARTER:  Yes.

13    THE COURT:  Ms. Zaragoza?

14    MS. VAN MARTER:  Not as much, no.

09:40:27  15    THE COURT:  Okay.  And who is left?  Your client?

16    MS. VAN MARTER:  Mr. Garibay.

17    MR. MARCHI:  Mr. Garibay is still in, Your Honor, but

18  we'll see this afternoon.

19    THE COURT:  Okay.  Well, I wanted to make sure I had a

09:40:45  20  sense of how this was going to play out.  Okay.

21    MS. VAN MARTER:  And, Your Honor, to solidify the record,

22  we did go back through and do some un-redactions, now that the

23  individuals have been identified --

24    THE COURT:  Sure.

09:40:54  25    MS. VAN MARTER:  -- and re-released some of the discovery

1 pages.  There are still redactions in some of the discovery as

2 it pertains to other individuals or other investigations, and

3 I --

4     THE COURT:  Okay.  We typically would start at

09:41:08  5 10 o'clock, but it seems to me that might be too optimistic in

6 this case, and so we'll be here at 9:00 to take up issues as a

7 final pretrial conference, but I anticipate that we'll need at

8 least a couple of hours for that.

9     So the question is when should we start on Wednesday the

09:41:27  10 10th, and my sense of it would be that we may need, given the

11 redactions that will be -- un-redactions that will take place,

12 plus the continuing redactions, that there might be some

13 extensive final discussions at the pretrial conference.  And I'd

14 like to, of course, get it picked pretty quickly, but it seems

09:41:51  15 to me we're going to roll into at least a second day to pick a

16 jury.

17     MS. VAN MARTER:  Potentially, Your Honor.

18     THE COURT:  I don't see how we get around that.  We have

19 three or four attorneys, they're all going to want 20 minutes

09:42:03  20 for voir dire, plus transition time; you're going to want voir

21 dire, plus the usual number of people we'll have in is robust in

22 this case, so -- I think we're calling 60 or 65 people in this

23 trial.

24     Anything else about peremptory challenges?  There are

09:42:25  25 three defendants and ten peremptories, and you get six, and

1   we're good to go.

2          MS. VAN MARTER:  Yes, Your Honor.

3          THE COURT:  Okay.

4          MS. VAN MARTER:  And, also, we'll communicate with the

09:42:35   5   marshals; it's our intention that any in-custody witnesses will

6   likely be that first week to second week, so we'll coordinate

7   with marshals.  We have FBI doing individual transport, but I

8   will certainly coordinate with the marshal's office, because we

9   do have several witnesses who are in custody.

09:42:52   10          THE COURT:  Okay.  All right.

11          Mr. Lara, let's take up your position on any of these

12   issues, and we'll start there.

13          MR. LARA:  Your Honor, the quantity of evidence the

14   Government is going to provide in regards to Ms. Zaragoza is

09:43:13   15   quite small compared to the other defendants and the general

16   conspiracies that are charged, so as far as my opening

17   statement, it will just take 10, 15 minutes at most, I would

18   estimate at this time; and the same with voir dire, not more

19   than the 20 minutes the Court allows.

09:43:33   20          So I don't expect to take very long.  I think of the

21   three defendants that are going to go to trial, the quantity of

22   information or work that will be provided from Ms. Zaragoza's

23   case is going to be the smallest.

24          THE COURT:  Mr. Therrien?

09:43:55   25          MR. THERRIEN:  Your Honor, regarding an opening

1  statement, I anticipate it will be 15 minutes.

2      THE COURT:  Just for the record, when I open these topics

3  up, it's simply to accommodate counsel's needs, and it's not a

4  rigid approach to it from my part, but I'd like to have a sense

09:44:19   5  of how the week is going to go, and we'll start with voir dire

6  and opening statements, as a -- as two items that would help us

7  understand how to organize our first week.

8      MR. THERRIEN:  Right.

9      So as for voir dire, I usually would like as much time as

09:44:37   10  the Court would allow me.  I would like 30 minutes, if that's

11  possible.

12      THE COURT:  Well, 20 is going to be fine.  I just came

13  back from a conference where judges don't allow any, and I was

14  shocked, but -- it's a remarkable difference between federal and

09:44:53   15  state court as to how much time you get in voir dire, and I'm

16  respectful of that.  But 20 minutes should be enough in this

17  case, depending upon the nature of what's gone on, especially

18  when there are at least three or four attorneys who are going to

19  be asking questions.

09:45:09   20      MR. THERRIEN:  I don't have any comments on the jury

21  selection process, whether back-striking -- I mean, I don't have

22  any comments regarding that.

23      THE COURT:  Okay.  So opening statement you figure for

24  you would be, what?  What are you thinking?

09:45:23   25      MR. THERRIEN:  Fifteen to 20 minutes.

1          THE COURT:  Okay.

2          MR. THERRIEN:  I may reserve, but I don't know.  But --

3          THE COURT:  Sure.  And I -- yeah, that's up to you folks,

4     of course.

09:45:34    5          MR. THERRIEN:  Thank you.

6          THE COURT:  Mr. Schweda?

7          MR. SCHWEDA:  Your Honor, the opening statement would be

8     30 minutes or less, and I might reserve, and I'd like to have

9     20 minutes in voir dire.

09:46:01   10          THE COURT:  Twenty minutes it is.  I'm going to give

11    20 minutes for sure.

12          Mr. Marchi, those all acceptable to you.

13          MR. MARCHI:  They are, Your Honor.

14          THE COURT:  Okay.  All right, folks, I don't know that --

09:46:11   15    let me just check my file.

16          Okay.  Mr. Schweda, I think you're back up with your

17    material which was filed yesterday.  Once again, something that

18    I think you made a motion to file -- continue the last

19    suppression hearing we had back in the spring of this year, the

09:46:41   20    day before, and here you are again.

21          So why should I permit this, Mr. Schweda?  I mean, don't

22    you actually admit that you were not diligent in this matter?

23          MR. SCHWEDA:  Yes, and I think that that's the problem.

24    My client is entitled to a fair trial, and he shouldn't suffer

09:46:56   25    because I was not diligent.  I think that the -- it's the kind

1    of error that might come back to revisit.  So I would ask the

2    Court to, in fairness to my client, to take up his motion or

3    motions.

4         THE COURT:  Okay.  Ms. Van Marter, why don't you join

5    Mr. Schweda at the podium.

6         I think there are a couple options, obviously.  One is a

7    compressed -- a compressed briefing schedule and a separate

8    hearing for counsel and his client; there's a potential for

9    sanctions against counsel; and a continuance of the trial until

10   March.  And so I'm open-minded on all of these things, and you

11   tell me what seems to be doable.

12        MS. VAN MARTER:  Your Honor, from the United States'

13   perspective, the Skagit County arrest of the defendant was not

14   only in early affidavits, reference his connection to the

15   overall investigation, but the specific police reports were

16   provided in November of 2017.  We also have co-defendant

17   testimony regarding that event and its involvement with the

18   overall conspiracy.

19        THE COURT:  And that was part of the discovery that's

20   been available?

21        MS. VAN MARTER:  That's been provided in free talk

22   discovery at this point.

23        So I received Mr. Schweda's specific request for

24   additional materials.  We're obtaining those now; specifically,

25   the K-9 records and history regarding the traffic stop.  This

09:47:23
09:47:53
09:48:14
09:48:31
09:48:44

1    involves a traffic stop in Skagit County where the defendant

2    was in a vehicle with another --

3          THE COURT:  When you say "additional materials," I may

4    not -- I don't think I grasp that point.

5          MS. VAN MARTER:  Defense attorney requested --

6    Mr. Schweda sent me an e-mail requesting some materials from --

7          THE COURT:  Is this part of the motions that are in front

8    of me?

9          MS. VAN MARTER:  It's related to the same incident.

10         THE COURT:  Are these in the motions that are exactly in

11   front of me today?

12         MS. VAN MARTER:  The request --

13         THE COURT:  I'm only looking at the motions that were

14   filed, albeit, extraordinarily tardy.  So whatever else he's

15   talking about, I don't see how that is before me.

16         MS. VAN MARTER:  Well, it's raised in his motions --

17   specifically, the K-9 records -- and a request in briefing

18   regarding the importance -- or how that testimony is

19   characterized by this Court, as part of his motion in limine,

20   which the United States disagrees with.

21         So I'm just updating the Court in terms of the United

22   States providing the materials he's requested.

23         I feel these motions are very untimely, given the fact

24   that this issue has been disclosed for a period of time.  The

25   defendant was found in possession of additional quantities of

1  methamphetamine and a firearm during this traffic stop, in a

2  vehicle belonging to a co-defendant, as part of the ongoing

3  conspiracy in 2013.

4       So I'm not sure what the Court -- it's our intention

09:50:10  5  to present --

6       THE COURT:  Well, you've got two choices:  You can work

7  out a briefing schedule, or we can kick this over until March.

8  So you make your own mind up about how you want to handle this.

9  My preference is to do an abbreviated briefing schedule and deal

09:50:23  10  with it.  That's -- that's just on the facts.  The question of

11  sanctions is something else.

12       MS. VAN MARTER:  I would prefer not to continue

13  Mr. Farias' matter until March.

14       THE COURT:  Okay.  So what would you like?  What is

09:50:37  15  convenient for you?  Why don't you give it some thought and let

16  me know.  My sense of it would be that we could take it up the

17  day of trial and have the hearing in the morning, and then move

18  jury selection to start at 1:30 or something of that nature.

19       MS. VAN MARTER:  Yes, Your Honor.

09:50:49  20       THE COURT:  Does that sound reasonable to you?

21       MS. VAN MARTER:  Sounds reasonable to me.

22       THE COURT:  How much time would you like to respond?

23  I'll give you whatever time you want.

24       MS. VAN MARTER:  If we could have --

09:51:00  25       THE COURT:  Today is the 17th -- or 18th.  18th.  I'd be

 1   happy to give you at least two weeks.  And if you want more, you

 2   can have more.

 3        MS. VAN MARTER:  Your Honor, if our response could be due

 4   the 3rd of October so we can get through the JERS material

 5   entry.

 6        THE COURT:  Sure.  Okay.

 7        And your response would be when, your reply?

 8        MR. SCHWEDA:  That Monday, the 6th, I think?  Would that

 9   be ... or Monday the 8th.

10        THE COURT:  What is the date on which you propose to have

11   yours filed?  October 3rd is a what?

12        MS. VAN MARTER:  Is a Wednesday.

13        THE COURT:  Okay.  No.  Friday.  So that's a -- that's

14   the 3rd, did you say?

15        MS. VAN MARTER:  Wednesday the 3rd; Friday would be the

16   5th, Your Honor.

17        THE COURT:  Okay.  So your response is due the 5th.  And

18   I'll impose sanctions, monetary sanctions, which I'll put in an

19   order.

20        Is there anything else?

21        MS. VAN MARTER:  No, Your Honor.  We did receive

22   Mr. Schweda's, some reciprocal discovery recently.  We have

23   filed --

24        THE COURT:  I'm sorry.  You're telling me there's

25   reciprocal discovery outside of the deadline for reciprocal

09:51:24
09:51:46
09:52:00
09:52:10
09:52:25

1    discovery?

2         MS. VAN MARTER:  Some was provided within the deadline;

3    some was provided outside of the deadline.

4         THE COURT:  Tell me what it is that he provided you.

09:52:35    5         MS. VAN MARTER:  We filed a document yesterday with the

6    Court that we could possibly address the morning of trial.

7         THE COURT:  I don't think I have that.

8         Do I have that?

9         THE COURTROOM DEPUTY:  Judge, I just printed it to Judge

09:52:46    10   Mendoza's chambers.  I'm going to go grab it.

11        THE COURT:  Okay.

12        MS. VAN MARTER:  If we could also address that the

13   morning of trial or perhaps later on in the trial.

14        THE COURT:  I want to see it right now so I have a sense

09:52:56    15   of the scope of the violation of the case management order.

16             (Pause in proceedings.)

17        THE COURT:  Okay.  I have a copy of your filing which was

18   filed yesterday.  It's 899.  And when you're referring to 899,

19   what is it that you're -- all of the exhibits that are attached

09:57:23    20   thereto are what?  There are exhibits attached to it.

21        MS. VAN MARTER:  I believe those are the exhibits that

22   Mr. Schweda sent to us as reciprocal discovery, the most

23   latest --

24        THE COURT:  What are they?

09:57:35    25        MS. VAN MARTER:  -- August 29th --

1      They are several documents in Spanish, purportedly from

2    locations in Mexico, without certifications or authentication.

3    The last batch we received was August 29th of this year.

4    They've not been translated, so I'm not even sure what they say

09:58:02   5    other than Mr. Schweda did an itemized list on his letter.

6             THE COURT:  What -- how are these admissible?

7             MR. SCHWEDA:  Mr. -- I would attempt to get them in

8    through my client, Your Honor.  They are records of his

9    attending school, having medical insurance, licensing vehicles,

09:58:31   10    registering livestock in Mexico during the course -- the period

11    of time that the conspiracy includes.

12             THE COURT:  Let's see.  Let me just take a look at

13    something I need to look at.

14             (Pause in proceedings.)

09:59:06   15             THE COURT:  Well, it looks like they were dated in your

16    office August 29th of 2018, the Wednesday before the Labor Day

17    weekend, and were received by the U.S. Attorney, according to

18    the stamp, on September 4th, which would be the day after Labor

19    Day.  These are in the nature of reciprocal discovery.

09:59:27   20             MR. SCHWEDA:  They were e-mailed on August 29th, Your

21    Honor, so --

22             THE COURT:  Well, that's great, but remind me -- I would

23    be surprised if your reciprocal discovery date was August 29th.

24             MR. SCHWEDA:  No, and it's not.  But I --

09:59:42   25             THE COURT:  Well, when was it?

 1          MR. SCHWEDA:  I'd have to -- I'm not sure, Your Honor.

 2   I'd have to look at the --

 3          THE COURT:  Would you agree this is well beyond the date?

 4          MR. SCHWEDA:  Yes.  But so is the Government's

09:59:54 5   disclosures that they -- they provided photographs of this

 6   September 6th, 2013, Mt. Vernon arrest on the 29th.  They still

 7   have not provided discovery on --

 8          THE COURT:  Well, so this was in response to that?

 9          MR. SCHWEDA:  No.  But, I mean, Mr. --

10:00:12 10          THE COURT:  So it wasn't in response to their reciprocal

11   discovery.  This was yours.

12          MR. SCHWEDA:  That's correct, Your Honor.

13          THE COURT:  Well beyond the deadline.

14          MR. SCHWEDA:  It's well beyond the deadline.

10:00:19 15          THE COURT:  Much like the motions you filed yesterday.

16          MR. SCHWEDA:  Pardon?

17          THE COURT:  As were the motions you filed yesterday.

18          MR. SCHWEDA:  Yes, Your Honor.

19          THE COURT:  Well, in fairness to you, Mr. Schweda,

10:00:29 20   because of the kinds of sanctions I'm intending to -- at least

21   considering, you really need to make a record at this point.  So

22   I'll listen to you.

23          MR. SCHWEDA:  Well, Your Honor, I guess I feel it's

24   unfair to treat me differently than the Government.  If the

10:00:45 25   Government's going to be late on their disclosures -- and they

1    have been -- then I hope you take that into consideration and --

2          THE COURT:  Mr. Schweda, the Government provided you with

3    so much material that it was necessary to employ Behind the

4    Gavel to analyze it and organize it, at a considerable cost of

10:01:07    5    maybe $50,000, so that all counsel would not be disadvantaged by

6    the volume of it or the complexity of it.  All of that was made

7    available to you, reams of information, and maybe even

8    terabytes, I don't know, but God knows a lot of it.

9          And the notion that you can try to shoehorn in two

10:01:28   10    violations of the amended case management order by saying that

11    the Government is continuing to give you some pictures that it

12    intends to use seems to me, unless you can show a cause and

13    effect -- if you can show a cause and effect, gee, that

14    certainly is understandable.

10:01:50   15          MR. SCHWEDA:  Well, the --

16          THE COURT:  So if you show me cause and effect that on

17    the 29th, when you made, finally, your reciprocal disclosures,

18    that it was caused by something that the Government did, then

19    you really need to explain that to me.

10:02:04   20          Was the material you submitted on the 29th caused by it?

21    Because it sure doesn't look like it.  It's designed to be

22    things that you were producing over the many months which you

23    simply filed on that date.

24          MR. SCHWEDA:  Yeah, no, it wasn't, Your Honor, and I will

10:02:18   25    suffer whatever sanctions the Court imposes.  I do want to

1  remind the Court that the Government, they intend to introduce

2  K-9 alert evidence that they have not provided discovery; that's

3  mandatory.  And I cite a case in my submittal on Page --

4         THE COURT:  I don't know what submittals you're referring

10:02:45  5  to.

6         MR. SCHWEDA:  It's ECF 894.

7         THE COURT:  Hmm.  I think the problem with this is I have

8  a whole courtroom of people, and they're not even related to any

9  of this, and so I think we should -- if it's convenient for the

10:03:15  10  marshals, we should probably excuse everybody and just leave you

11  folks here to argue about it so everybody else can get about

12  their business, unless the -- unless folks want to stay.

13        MR. THERRIEN:  I don't want to stay.

14        THE COURT:  I didn't think you did.  Neither do the

10:03:33  15  people from Spokane, I assume.

16        Okay.  We're going to take a short recess, and we'll

17  reconvene with those folks who want to stay, and those who don't

18  want to are excused.  So the marshals need to do their job, so

19  it may be 15 or 20 minutes before we get it all done.  Only

10:03:54  20  Mr. Schweda's client will remain -- thank you -- unless others

21  want to stay.

22        THE COURTROOM DEPUTY:  Please rise.

23        Court is in recess.

24        (Recess taken: 10:04 a.m. to 10:30 a.m.)

10:23:18  25        (Mr. Schweda and Defendant Herrera Farias present; all

1    other counsel and defendants not present.)

2    (September 18, 2018; 10:30 a.m.)

3            THE COURTROOM DEPUTY:  Please rise.

4            (Call to Order of the Court.)

10:30:11    5            THE COURT:  Please be seated.

6            Okay.  So I think we were at the United States'

7    opposition and objections, that's 899, to the defendant's

8    proposed foreign document trial exhibits.

9            So let's start there, shall we?  Ms. Van Marter?

10:30:38    10            MS. VAN MARTER:  Your Honor, at this point in time, from

11    the documents and information received from counsel, we've

12    received absolutely no certifications whatsoever, no way to

13    authenticate any of these documents, and so pursuant to the

14    motion that --

10:30:51    15            THE COURT:  Counsel suggests his client can put them in.

16    And I -- what is your position on that?

17            MS. VAN MARTER:  His client cannot authenticate a

18    document that's prepared by somebody else.  It would be hearsay.

19    He still has to meet the authentication rule, and we cited to

10:31:07    20    the statute of foreign documents.  There has to be a

21    certification provided by somebody under penalty of perjury.  No

22    such certifications have been provided.  And they would still be

23    if that certification also meets the business records exception,

24    because we have to do the same thing for all of our business

10:31:24    25    records, which is why we've obtained the certifications and

 1  we've done the things required under the Rules of Evidence.

 2  I've not seen any of that done by Mr. Schweda.  His client would

 3  simply be testifying to hearsay, then, and it would be

 4  inadmissible.

10:31:37   5      THE COURT:  Well, that takes care of No. 1, from your

 6  perspective.

 7      What about No. 2 -- let's take them one by one -- receipt

 8  for payment of license plates.

 9      MS. VAN MARTER:  Same thing.  Same thing.  The -- the

10:31:49  10  defendant can certainly testify that I was in Mexico doing

11  things from his own experience.

12      THE COURT:  Sure.

13      MS. VAN MARTER:  The admission of these documents

14  themselves, all of them, from the United States' perspective,

10:32:03  15  have no -- there's no authentication, and they would contain

16  hearsay.

17      THE COURT:  Okay.  So that's your view of it.

18      MS. VAN MARTER:  And, Your Honor, there's --

19      THE COURT:  What about his passport?

10:32:30  20      MS. VAN MARTER:  The passport itself?

21      THE COURT:  It says:  Passport issued, April 11th, 2015.

22  I haven't looked at it.  There's a Mexican passport here, and it

23  shows his picture.  The fact that it was in -- apparently,

24  theoretically, bears a date without any certification.

10:32:54  25      MS. VAN MARTER:  Same issue.  I mean, he can certainly

1    testify he has a passport.

2         THE COURT:  Okay.  Let's hear from Mr. Schweda.  He may

3    have a theory that's acceptable.

4         Mr. Schweda?

10:33:03    5         MS. VAN MARTER:  And, Your Honor, I just wanted to raise

6    one concern.  From all these documents, clearly, the defendant

7    is going to be acknowledging that he was in Mexico for periods

8    of time.  I just am always aware of the issue of deportation and

9    any hint or information that he is not lawfully in the United

10:33:18   10    States.  It's not the United States' intention to raise that

11    type of information in our case in chief.  I just -- I'm always

12    concerned about this type of strategy from counsel.

13         THE COURT:  Well, you can't stop people from saying

14    they're not a citizen of this country.

10:33:34   15         MS. VAN MARTER:  No, we cannot.

16         THE COURT:  Okay.

17         MR. SCHWEDA:  I have the original passport here, so I

18    just wanted to show that this is -- that --

19         THE COURT:  Well, you may have the original documents.  I

10:33:50   20    think the issue is authentication.  And so she says --

21         MR. SCHWEDA:  Right.  So there are some authentications

22    on the individual notaries on these documents.

23         THE COURT:  Well, this is in the nature, I guess, of a --

24    setting aside the violation of the amended case management order

10:34:17   25    for reciprocal disclosure, the issue becomes what to do.  And

1    she's filed -- Ms. Van Marter has filed the objections, and

2    talks about hearsay, the 802, 803, 3505, authentication of

3    foreign records, et cetera.

4         And so all I know is that she's -- that Ms. Van Marter

10:34:45    5    has objected in absentia, or attorneys on her behalf have, and

6    that this is in the nature of a motion in limine to -- I gather,

7    to say these can't be admitted.  That's how I'm construing it.

8         Is that how you construe it?

9         MS. VAN MARTER:  Yes, Your Honor.

10:35:04    10        THE COURT:  It's a motion in limine, basically, that

11    these have to be out.

12        MR. SCHWEDA:  Well, I would submit that they're his

13    records that he kept in the ordinary course of his business --

14        THE COURT:  Well, you just have to give me a -- all

10:35:18    15    you've done is give the United States reciprocal discovery.  The

16    United States, the way I'm interpreting this is a motion in

17    limine to prevent this.  You're going to have to file a

18    memorandum in response to that, though I noticed there have been

19    times in the past when you've simply declined to file any

10:35:42    20    memorandums.

21        And what is your position on this?

22        MR. SCHWEDA:  As to filing a memorandum?

23        THE COURT:  Yeah.  I've had many cases with you, and in

24    some of those cases you've said, "I don't have to file a

10:35:56    25    response."  So ...

1    MR. SCHWEDA:  Well, I chose not to file a response, Your

2  Honor.  I'll file a response on this.

3    THE COURT:  Well, if you don't file a response, I'm going

4  to grant the motions.

10:36:08  5    MR. SCHWEDA:  Okay.

6    THE COURT:  And when you have -- when you've actually had

7  the opportunity to prevail upon the Court, I don't think you get

8  the safe harbor of plain error, but I could be wrong, though I

9  think that's a strategy that some defense counsel employ that I

10:36:28  10  don't have to, because if it's plain error, then even if I

11  didn't, so what?  It's plain error.

12    So if you want to file a response, that's up to you.

13    MR. SCHWEDA:  Yes, I will file a response, Your Honor.

14    THE COURT:  Okay.

10:36:40  15    MR. SCHWEDA:  That's what I indicated.

16    THE COURT:  Yeah.  So you'll file it Monday.

17    MR. SCHWEDA:  Okay.

18    THE COURT:  Monday of next week.

19    And you'll have two days to file a reply, okay, Ms. Van

10:36:53  20  Marter?  You can file a reply, or Ms. Baunsgard on your behalf,

21  by next Wednesday.

22    MS. VAN MARTER:  Okay.  Thank you, Your Honor.

23    THE COURT:  Okay.  So you get until Monday to do that.

24    Okay.  So Monday for the response.  This is an MIL.  And

10:37:12  25  Wednesday for the reply, and that would be the 26th.  And you'd

1    be due on the 25th, as I calculate it.  Correct me if I'm wrong.

2    Today's the 18th.  It's Tuesday, so Monday would be -- let's

3    see, a week from today.  That's not right.  It would be the

4    24th, I guess, huh?  Yeah.  The 24th is your response date, and

10:37:48    5    the 26th is the reply date.

6              Okay.  Now where are we?  Anything else?

7              MS. VAN MARTER:  I --

8              THE COURT:  Okay.  Mr. Schweda, you need to make a

9    record, because the financial sanctions that I am considering

10:38:05   10    are significant, and so you really need to make a record here.

11             MR. SCHWEDA:  All right.

12             THE COURT:  Because in the Court's viewpoint, you've

13   intentionally violated the case management order to gain a

14   strategic advantage for your client.

10:38:18   15             MR. SCHWEDA:  Well, I didn't.

16             THE COURT:  And that's how I view what you've done.

17             MR. SCHWEDA:  Okay.  And I didn't, Your Honor.  As far as

18   the motion to suppress, all of the motions relative to the Mt.

19   Vernon incident, they were -- it was not intentional on my part.

10:38:40   20   I made a mistake.  I -- it was -- I'm not doing this to gain an

21   advantage but to protect my client's interests.  It was not

22   meant, nor I hope the Court will not view it, as being

23   underhanded in any way, and I admit the mistake.

24             As to the discovery, late discovery, Your Honor, it is

10:39:06   25   late.  I admit that, and I apologize.  I am not doing it to gain

1  any advantage.  These similar, very similar documents that are

2  not presented but I will present in my response were provided to

3  the Government back in -- back in January 30th I made -- I made

4  disclosures, and I'll provide those as well.  This was just

5  another batch of documents that my client obtained from his

6  family in Mexico and gave to me on a visit to the Benton County

7  Jail.  I --

8        THE COURT:  Okay.  The Court's view is the opposite.

9  It's one thing for people to make mistakes that disadvantage

10  their client, but you've made theoretical, at least, alleged

11  mistakes which advantage your client and disadvantage the

12  Government.  And I would not permit the Government to

13  disadvantage the defendant so close to trial, believing that the

14  scales should be balanced for the parties, and that the

15  Government has as much right to due process as the defendant

16  does in order that the scales of justice are not favored --

17  tipped in favor of one or the other party.

18        Here, you've continued to bill CJA for time spent, and

19  those CJA filings, including only a recent request for

20  additional investigation expense, which I have under advisement.

21  And so when I look at your filings, the effort to get additional

22  filings September 11th of 2018, additional efforts to

23  investigate a case on September 11th, with trial 30 days away,

24  seems to me to make the point that when I look at all the

25  billings and the -- from the various time periods that you've

10:39:34
10:39:54
10:40:14
10:40:37
10:41:13

1  selected, including several time periods this year for work

2  done, as well as a number of hours that you've spent doing

3  various kinds of tasks, and then to say that it's -- that it's

4  an oversight on your part and neglect when you've been assiduous

10:41:42   5  in filing CJA vouchers and requesting various amounts for work

6  done and various investigation, seems to me to make it clear

7  that you could hardly be said to be, based on your CJA vouchers,

8  to be not diligent.

9      And so if your vouchers show that you've been repeatedly

10:42:06   10  billing for work done, it's seeming strange credulity that you

11  would not be aware of your responsibilities under the case

12  management order and not be aware of your deadlines, and that

13  you went about your business in this case, and, given the late

14  filings, to, in fact, gain an unfair advantage.  And that's the

10:42:29   15  Court's view of what you did.

16      So you can say it was -- it's often said that you intend

17  the probable consequences of your actions.  And, here, they put

18  the Government, in the late stages of preparation, to have to

19  address motions to suppress and the other things that you've

10:42:49   20  addressed.  The motions in limine are different; they can be

21  raised at any time.  But if they are, in fact, a motion to

22  suppress in the guise of a motion in limine, that's a different

23  story.

24      So the Court's going to take this under consideration,

10:43:05   25  and I'm not going to actually set an amount today, because I

1    simply want to take some time before I actually do it.  And if I

2    did it today, it would be a very large amount, and so I think I

3    want to step back and take a day or two before I issue an order

4    with the sanctions in question.

10:43:21   5          Is there anything else that we have to deal with today?

6    Ms. Van Marter?

7          MS. VAN MARTER:  No, Your Honor.

8          MR. SCHWEDA:  No, Your Honor.

9          THE COURT:  Okay.  Court's adjourned.

10:43:32   10         Are we doing Zambrano or Mr. Marchi?

11         MS. VAN MARTER:  I believe that's at 2 o'clock, Your

12   Honor.

13         THE COURT:  Couldn't we do it earlier?

14         THE COURTROOM DEPUTY:  Well, Ms. Van Marter is here for

10:43:40   15   all of the afternoon cases as well.

16         THE COURT:  Okay.  So yeah.

17         THE COURTROOM DEPUTY:  Mr. Marchi has a 1:30 hearing as

18   well.

19         THE COURT:  Fair enough.  All right, folks.  See you

10:43:46   20   then.  Thank you.

21         THE COURTROOM DEPUTY:  All rise.

22         THE COURT:  Court's adjourned -- or in recess until that

23   time.  You may go about your business.

24         (Hearing concluded at 10:43 a.m.)

25

50

C E R T I F I C A T E

    I, KIMBERLY J. ALLEN, do hereby certify:

        That I am an Official Court Reporter for the United States District Court for the Eastern District of Washington in Richland, Washington;

        That the foregoing proceedings were taken on the date and at the time and place as shown on the first page hereto; and

        That the foregoing proceedings are a full, true and accurate transcription of the requested proceedings, duly transcribed by me or under my direction.

        I do further certify that I am not a relative of, employee of, or counsel for any of said parties, or otherwise interested in the event of said proceedings.

        DATED this 22nd day of July, 2019.


                    _____
                    Kimberly J. Allen, CRR, RMR, RPR, CCR(WA)
                    Washington CCR No. 2758
                    Official Court Reporter
                    Richland, Washington