William D. Hyslop
United States Attorney
Eastern District of Washington
Stephanie Van Marter
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

OCT 06 2020

SEAN F. McAVOY, CLERK
_____ DEPUTY
RICHLAND, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA, )
                                                                                               )
                 Plaintiff, )    4:15-CR-6049-EFS-16
vs. )
                                                                           )    PLEA AGREEMENT
EDGAR OMAR HERRERA FARIAS, )    PURSUANT TO FED R. CRIM.
                                                                            )    P. 11(C)(1)(C)
               Defendant. )
)

Plaintiff, United States of America, by and through William D. Hyslop, United States Attorney for the Eastern District of Washington, and Stephanie Van Marter, Assistant United States Attorney for the Eastern District of Washington, and Defendant EDGAR OMAR HERRERA FARIAS, and the Defendant's counsel, Shea Meehan, agree to the following Plea Agreement:

1.    <u>Guilty Plea and Maximum Statutory Penalties</u>:

The Defendant, EDGAR OMAR HERRERA FARIAS, agrees to enter a plea of guilty to Count 1 of the Information Superseding Indictment filed on todays date, charging the Defendant with Conspiracy to Distribute 50 Grams or More of a Mixture or Substance Containing a Detectable Amount of

Plea Agreement - 1
Plea (revised).docx

Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii); all in violation of 21 U.S.C. § 846.

The Defendant, EDGAR OMAR HERRERA FARIAS, understands that the charge contained in the Information Superseding Indictment is a Class B felony charge and the maximum statutory penalty is not less than 5 years, which is non-suspendable and non-parolable, and a maximum possible penalty of 40 years imprisonment; a fine not to exceed $8,000,000; a term of supervised release of not less than 4 years up to a life term; denial of certain federal benefits; and a $100 special penalty assessment.

The Defendant, EDGAR OMAR HERRERA FARIAS, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2.  Denial of Federal Benefits:

The Defendant understands that by entering this plea of guilty the Defendant is no longer eligible for assistance under any state program funded under part A of title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Further, the Court may deny the Defendant's eligibility to any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

3.  The Court is Not a Party to the Agreement:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to

Plea Agreement - 2
Plea (revised).docx

accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant also understands that pursuant to Rule 11(c)(1)(C), the parties have agreed that a range of 60 to 72 months is an appropriate sentence. Should the sentencing judge decide to sentence the Defendant to more than 72 months of incarceration, the Defendant may withdraw from this Plea Agreement and may withdraw his guilty plea. The Defendant also understands that should the sentencing judge decide to sentence the Defendant to less than 60 months, the United States may withdraw from this Plea Agreement.

4.    Effect on Immigration Status:

The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the Defendant is pleading guilty. Indeed, because the Defendant is pleading guilty to Conspiracy to Distribute 50 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that

Plea Agreement - 3
Plea (revised).docx

while deportation and/or removal appears to be a virtual certainty, no one, including his attorney or the district court, can predict with absolute certainty the effect of his conviction on his immigration status. The Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if automatic removal from the United States is a virtual certainty.

5. <u>Waiver of Constitutional Rights</u>:

The Defendant, EDGAR OMAR HERRERA FARIAS, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

(a). The right to a jury trial;

(b). The right to see, hear and question the witnesses;

(c). The right to remain silent at trial;

(d). The right to testify at trial; and

(e). The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

6. <u>Elements of the Offense</u>:

The United States and the Defendant agree that in order to convict the Defendant of Conspiracy to Distribute 50 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii); all in violation of 21 U.S.C. § 846, the

Plea Agreement - 4
Plea (revised).docx

United States would have to prove beyond a reasonable doubt the following elements:

*First*, on a date unknown but by on or about January 2010 continuing until on or about December 6, 2016, in the Eastern District of Washington, the Defendant, entered into an agreement with one or more persons to commit the crime of Distribution of 50 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, as charged in the Information Superseding Indictment;

*Second*, the Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

*Third*, the agreement was to distribute 50 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, which would be reasonably foreseeable to him as a member of the conspiracy.

7. <u>Factual Basis and Statement of Facts</u>:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for EDGAR OMAR HERRERA FARIAS's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

Members of the FBI Eastern Washington Safe Streets Violent Gang Task Force- Tri-Cities (EWVGSSTF) have been investigating a transnational drug trafficking organization operating herein the Eastern District of Washington and elsewhere since at least 2011 identified as the Ivan Hernandez Calvillo Drug Trafficking Organization (DTO). During that investigation, Ivan Hernandez

Plea Agreement - 5
Plea (revised).docx

Calvillo (hereinafter Ivan) and Jese David Carillo Casillas (hereafter Casillas) were identified as a high-ranking members of the DTO. Members of the Task Force, through the interviews of multiple cooperating Defendants and drug seizures, learned the DTO was utilizing backpackers to physically carry quantities of cocaine and methamphetamine from the Eastern District of Washington through a trail system into Canada for distribution.

During this same time-frame, members of the Boston DEA were conducting a parallel investigation into the money laundering activities of the Ivan Hernandez Calvillo DTO. The DTO was moving bulk cash out of Canada that it had gained through the sale of cocaine, heroin, and methamphetamine. The DEA successfully placed an undercover operator (DEA UC) into the money-laundering network. The basic need the DEA UC filled for the organization was his ability to accept Canadian cash, deposit it, wash it electronically through his business, and then wire US currency out in smaller deposits in Mexico and the United States. The DEA UC would then charge a commission or percentage for the washed cash, keep that percentage and report to Ivan and later Jese Casillas as to the remaining amount available for wire transfer. This relationship ultimately cultivated into Ivan and the organization seeking the DEA UC's assistance in developing a new drug distribution group in Vancouver BC with ties to China.

In October 2014, an undercover money laundering operation was initiated by Royal Canadian Mounted Police Federal Serious Organized Crime Unit (RCMP FSOC) members to collect bulk money in the area of Vancouver, British Columbia from the DTO and to deliver it to the DEA investigators. Between October 2014 and July 2016, Ivan, and later Casillas, were in direct communication with the DEA UC via recorded What's App messenger and arranged for approximately 15 cash money drops to be laundered by the DEA

Plea Agreement - 6
Plea (revised).docx

UC. The way the code worked was that Ivan or Casillas provided the DEA UC a serial number of a piece of currency. The DEA UC would communicate that serial number so that when the two associates would meet, they would compare serial numbers. Once that was confirmed, the money was handed off. The amount laundered during these money drops totaled over $1.6 million Canadian Dollars.

On December 13, 2015, Ivan Calvillo was killed in Mexico. The United States would present evidence that Casillas was identified as taking over operations for the DTO within the Eastern District of Washington, to include the continued money laundering operations in Canada.

The Defendant was first identified in 2012 as a distributor for the Calvillo organization. On March 22, 2012, the Defendant, a.k.a. "El Burro/Burro" was arrested in Sunnyside, WA following the execution of a narcotics search warrant by members of the LEAD Task Force. In the Defendants' bedroom, officers found two pistols, two shotguns, distribution quantity of methamphetamine, two digital scales, 27.4g of a cutting agent, a drug ledger, and dominion documents for the Defendant. Officers also executed a search warrant on the Defendant's 2003 Hummer H2. Detective R. Tucker, with the LEAD Task Force, advised that it appeared that the interior panels of the vehicle had been removed and put back into place indicative of the presence of secret compartment utilized to transport narcotics. The Defendant was subsequently arrested and convicted for possession of a controlled substance with intent to deliver in approximately August 2012 and he was deported.

The drugs seized from the above search warrant were sent to the Washington state lab and confirmed to be methamphetamine weighing over 100 grams.

Plea Agreement - 7
Plea (revised).docx

After the Defendant's deportation in August 2012, he was again encountered several times by Border Patrol and removed from the United States in December 2012, June 2013 and October 2013. The last removal stemmed from an investigation by the Skagit County Interlocal Drug Enforcement Unit in Mount Vernon, WA.

On August 24, 2014, members of the EWVGSSTF interviewed a Confidential Human Source, herein in after referred to as CHS1. CHS1 identified a Hispanic male named "El Burro/Burro" as a person who was a member of the Calvillo DTO and one who at one point was placed in charge of all drug operations in Washington. CHS1 stated that "El Burro/Burro" was not in charge very long because of the above referenced deportations. In a subsequent interview, CHS1 was shown a Washington DOL photograph, absent any identifiers, of the Defendant. CHS1 identified the person depicted in the photo as being "El Burro/Burro." CHS1 further advised that the Defendant took over drug operations in Washington for the Calvillo DTO after another partner left, referred to below as a Cooperating Defendant 2. CHS1 advised that the Defendant managed the drugs coming into Washington from California, managed drivers for the drugs, and managed the people that backpacked the drugs across the Washington border into Canada.

According to CHS1, after the Defendant was deported the drug operations in Washington were then taken over by a Hispanic female known as "La China" confirmed to be co-defendant Rosa Granados. CHS1 personally met "La China" several times to pay for drivers that "La China" organized. CHS further stated that CHS1 paid "La China" money from drug proceeds that came out of Canada.

On October 1, 2015 a Washington State title history was obtained for WA LIC# AHX1507, a 2010 Subaru Impreza; a vehicle previously identified as being

Plea Agreement - 8
Plea (revised).docx

utilized to transport narcotics for the Calvillo DTO. The title history showed the transfer of the vehicle between multiple known members of the Calvillo DTO to include that the Defendant purchased the vehicle on February 19th, 2012. A work order for repairs on the vehicle was included with the history. The work order was dated March 1st, 2012 from AJ's Auto Fix at 1625 A St. in Pasco, WA. The customer name is listed as the Defendant. According to the title history on July 4th, 2012, the Defendant sold the vehicle to Rosa A. Granados "La China."

CHS1 admitted to transporting cocaine for the Calvillo DTO from the area of Riverside, CA to the area of Tonasket, WA. It was there that CHS1 met a Hispanic male known as "Ranchero". CHS1 was transported by "Ranchero" to an area near the Canadian border where a backpacker was waiting. The backpacker was provided with the cocaine and the backpacker turned over approximately $100,000 cash to CHS1 and "Ranchero". A portion of that money was used to pay CHS1, Granados, a.k.a. "La China" and "Ranchero". On August 24, 2014 CHS1 was shown a Washington DOL photo absent any identifiers of Ramon Gijon Jimenez. CHS1 identified the person depicted in the photo as "Ranchero".

On September 23, 2014, at approximately 2130 hours, a black Honda utilized by "Ranchero" was stopped near the border at a location previously identified as utilized by the organization for the purpose of backpacking drugs across the border. "Ranchero" was identified as the driver. A subsequent search of the vehicle yielded the discovery of a secret compartment and two backpacks that contained twenty plastic wrapped and vacuum-sealed packages, each weighed approximately 1 kilogram and were confirmed by the DEA lab to contain approximately 20 kilograms of cocaine. "Ranchero" was arrested and prosecuted federally. *See*, CR-02088-TOR-2.

Plea Agreement - 9
Plea (revised).docx

During the same time period of the investigation into Ranchero, TVGTF was able to identify and place a tracker on the vehicle being operated by Juan Cirino Ramos, a.k.a. El Viejeto. El Viejeto was identified by CHS and subsequently confirmed by CD1, CD2 and CD3 to be a driver for the Calvillo organization. Ramos was able to freely pass across the Mexican border and as a result was one of the regular drivers who transported large quantities of narcotics at the direction of Granados and the Defendant. On September 17th 2014, Ramos was stopped in the EDWA based upon information that he was transporting a load to the Sunnyside location. A subsequent search of his vehicle resulted in the seizure of over 20 pounds of methamphetamine. Ramos was arrested and prosecuted federally. *See*, CR-02088-TOR-1.

On February 6th 2015, members of the EWVGSSTF interviewed a cooperating defendant, herein after referred to as CD1, who had been indicted and arrested as a member of the Calvillo DTO. CD1 advised that in 2014, CD1 was introduced to a male known as "El Burro/Burro". CD1 advised that "El Burro/Burro" was in charge of the backpacking trails that the DTO would use to carry drugs from Washington into Canada and to return with money from Canada into Washington. CD1 witnessed "El Burro/Burro" remove backpacks loaded with several kilograms of drugs from a vehicle with a hidden compartment and give them to hired backpackers to walk into Canada. CD1 stated that "El Burro/Burro" was paid $3,000 per trip to bring drugs to the border since "El Burro/Burro" lived in Sunnyside, WA. CD1 was later shown a Washington DOL photograph, absent any identifiers, of the Defendant and identified the person depicted in the photograph as being "El Burro/Burro".

In approximately August, 2015 members of the EWVGSSTF interviewed a second cooperating defendant, herein after referred to as CD2, who had been

Plea Agreement - 10
Plea (revised).docx

indicted and arrested as a member of the Calvillo DTO. CD2 was shown a photo of the Defendant and identified the person depicted in the photo as "El Burro/Burro". CD2 identified the Defendant worked closely with Calvillo in this DTO and who had at one point been in charge of operations in Washington for a short period of time. CD2 provided the following timeline of events. CD2 stated that both CD2 and "El Burro" were initially employed by the Calvillo DTO as transporters of drug shipments and backpackers who would backpack large quantities of cocaine into Canada for the DTO. Specifically CD2 described that each load was typically 10 to 20 kilograms of cocaine.

CD2 described that in the spring of 2012, Calvillo was arrested in California during a 40 kilogram of cocaine transaction and was deported[1]. After Calivillo's deportation, CD2 identified that CD2 took over operations for Calvillo in Washington. "El Burro/Burro" was a partner to CD2 until CD2 stopped working for the organization sometime in 2013. CD2 was subsequently arrested in the summer of 2014 on federal drug charges. CD2 reported that CD2, Calvillo and "El Burro/Burro" had a falling out and as a result, "El Burro/Burro" took over Calvillo's operations in Washington after CD2. This is believed to be the same time period identified by CD1 as when CD1 was introduced to "El Burro/Burro."

On November 3rd, 2016 members of the EWVGSSTF interviewed another cooperating defendant, hereinafter referred to as CD3, who had been indicted and arrested as a member of the Calvillo DTO. CD3 was shown a Washington DOL

---

[1] This event was confirmed by members of EWVGSSTF. Calvillo arranged for the purchase of 40 kilograms of cocaine and brought approximately $400,000 in US currency for the transaction. Calvillo was arrested by a drug task force and deported prior to contacting this District to determine the pending nature of this investigation.

Plea Agreement - 11
Plea (revised).docx

photograph, absent any identifiers, of the Defendant and identified the person depicted in the photo as "El Burro/Burro". CD3 confirmed as did CHS1, CD1 And CD2, that the Defendant a Farias was an active member of the Calvillo DTO. CD3 stated that the Defendant known to CD3 as "El Burro/Burro" would personally pick up money and/or drugs and load vehicles for the organization. CD3 confirmed that the load vehicles would often contained large quantities of both methamphetamine in amounts of 10 to 20 kilograms. CD3 further reported that CD3 worked directly with the Defendant as they would often coordinate the picking up and dropping off of load vehicles and or cash drug proceeds.

CD3 further advised that in 2013/2014 up until Calvillo's murder, the Defendant was in Mexico working directly with Calvillo. However, CD3 stated that as of the time of the interview (2016), the Defendant was back in the United States and living in the Sunnyside, WA area. CD3 stated that the Defendant returned in approximately August 2016. CD3 reported CD3 has been in direct contact with the Defendant in person and over the telephone. CD3 provided the Defendant's new phone number of (509) 831-8948.

Based upon the above reported contact, SA Leahy advised CD3 to remain in communication with the Defendant. As a result, some of these telephonic contacts were monitored and recorded by members of the EVWSSTF. During these contacts, the Defendant asked CD3 to again transport quantities of drugs for the DTO.

On December 6, 2016, in the Eastern District of Washington the Grand Jury indicted the Defendant and an arrest warrant was issued. On December 14th 2016, the Defendant was located as described by CD3 and arrested in Sunnyside, WA. At the time of his arrest, the Defendant was in possession of approximately

Plea Agreement - 12
Plea (revised).docx

½ - 1oz of purported cocaine and an Apple I-phone, the same phone utilized to communicate with CD3.

7. The United States Agrees:

(a). Not to File Additional Charges:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Indictment, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

(b). Penalty Enhancement:

Pursuant to the First Step Act, the Defendant no longer has a prior qualifying conviction for purposes of sentencing enhancement pursuant to 21 U.S.C. §§ 802(44) and 851.

8. United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

(a). Base Offense Level and Application of U.S.S.G. §1B1.3:

The Government and Defendant agree and stipulate that more than 4.5 kilograms of actual methamphetamine[2] was distributed in furtherance of the criminal activity jointly undertaken by the Defendant and his co-conspirators; this amount was within the scope of the Defendant's agreement; this amount was

---

[2] As noted above, the Defendant also had involvement and knowledge in regard to cocaine shipments in this conspiracy. However, the calculation of those amounts would lead to the same applicable offense level.

Plea Agreement - 13
Plea (revised).docx

reasonably foreseeable to this Defendant in connection with the conspiracy; and this Defendant's relevant conduct for sentencing purposes should be calculated based upon this amount, pursuant to U.S.S.G. §1B1.3.

Thus, the Government and Defendant agree that the base offense level for Count 1, is 38. *See* U.S.S.G. §2D1.1(c)(1) and Commentary 8(b).

(b).    Dangerous Weapon:

The parties agree that firearms were seized at the Defendant's residence in 2012. The United States agrees to leave the application of U.S.S.G. §2D1.1(b)(1) up to the discretion of the Court.

(c).    Role in the Offense:

The United States agrees not to seek this enhancement based upon the Defendant's overall role in the organization. However, should facts be presented which are in dispute, the United States may present facts to clarify for the Court's determination.

(d).    Acceptance of Responsibility:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than the next Pre-Trial Conference, the United States will move for a three (3) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of

Plea Agreement - 14
Plea (revised).docx

sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

Furthermore, the Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

    (d).   Criminal History:

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report. The United States and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

9.   Safety Valve:

The United States and the Defendant agree that the Defendant has not met the qualifications for the application of the safety valve pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. §5C1.2. The Defendant therefore cannot be sentenced to less than the mandatory minimum of 60 months.

10.   Departures:

The Defendant intends to request downward departures and variances from the sentencing guidelines. The United States reserves its right to oppose any downward departure.

Plea Agreement - 15
Plea (revised).docx

11. <u>Length of Incarceration</u>:

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States will recommend a term of incarceration of not to exceed 72 months. The Defendant will recommend a term of incarceration of not less than 60 months.

12. <u>Criminal Fine</u>:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

13. <u>Supervised Release</u>:

The parties agree to recommend that the Court impose a 4-year term of supervised release, to include the following special conditions, in addition to the standard conditions of supervised release:

(1) that the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Office; and

(2) that the Defendant have no contact with any witnesses or Co-defendants in this cause number.

14. <u>Mandatory Special Penalty Assessment</u>:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

15. <u>Payments While Incarcerated</u>:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay

Plea Agreement - 16
Plea (revised).docx

toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

17. <u>Appeal Rights</u>:

In return for the concessions that the United States has made in this Plea Agreement, the Defendant agrees to waive his right to appeal the conviction and sentence if the Court imposes a prison term no higher than 72 months and imposes no more than 4 years supervised release. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence. Should the Defendant successfully move to withdraw from this Plea Agreement or should the Defendant's conviction on Count 1 of the Second Superseding Indictment be dismissed, set aside, vacated, or reversed, the Plea Agreement shall become null and void; the United States may move to reinstate all counts of the Second Superseding Indictment No. 4:15-CR-6049-EFS-16; and the United States may prosecute the Defendant on all available charges involving or arising out of the Second Superseding Indictment No. 4:15-CR-6049-EFS-16. Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction

Plea Agreement - 17
Plea (revised).docx

motion for a reduction of sentence or other attack of the conviction or sentence, including, but not limited to, proceedings pursuant to 28 U.S.C. § 2255 (writ of habeas corpus).

18. <u>Integration Clause</u>:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

<u>Approvals and Signature</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

William D. Hyslop
United States Attorney

_____*Stephanie Van Marter*_____     _____10/06/2020_____
Stephanie Van Marter                                         Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. My attorney has advised me that by pleading guilty to

Plea Agreement - 18
Plea (revised).docx

the charge relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

/s/ Edgar Omar Herrera Farias***

By: _____  9/23/2020
EDGAR OMAR HERRERA FARIAS    Date
Defendant
***As authorized via Zoom

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. I have further advised my client by pleading guilty to the charge relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____  9/23/2020
Shea Meehan              Date
Attorney for the Defendant

Plea Agreement - 19
Plea (revised).docx